# DEPARTMENT OF COMMERCE

## Bureau of Industry and Security

## 15 CFR Parts 736, 740, 742, 743, 744, 746, 748, 758, 762, 772, and 774

[Docket No. 111227796–5786–01]

RIN 0694–AF47

## Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML)

**AGENCY:** Bureau of Industry and Security, Department of Commerce.

**ACTION:** Proposed rule.

**SUMMARY:** This proposed rule describes how articles the President determines no longer warrant control under United States Munitions List (USML) Category I—Firearms, Close Assault Weapons and Combat Shotguns; Category II—Guns and Armament; and Category III—Ammunition/Ordnance would be controlled under the Commerce Control List (CCL). This proposed rule is being published simultaneously with a proposed rule by the Department of State that would revise Categories I, II, and III of the USML to describe more precisely the articles warranting continued control on that list.

**DATES:** Comments must be received by July 9, 2018.

**ADDRESSES:** You may submit comments by any of the following methods:

• Submit comments via Federal eRulemaking Portal: *http://www.regulations.gov.* You can find this proposed rule by searching on its regulations.gov docket number, which is BIS–2017–0004.

• By mail or delivery to Regulatory Policy Division, Bureau of Industry and Security, U.S. Department of Commerce, Room 2099B, 14th Street and Pennsylvania Avenue NW, Washington, DC 20230. Refer to RIN 0694–AF47.

**FOR FURTHER INFORMATION CONTACT:** Steven Clagett, Office of Nonproliferation Controls and Treaty Compliance, Nuclear and Missile Technology Controls Division, tel. (202) 482–1641 or email *steven.clagett@bis.doc.gov.*

**SUPPLEMENTARY INFORMATION:**

## Background

This proposed rule describes how articles the President determines no longer warrant control under United States Munitions List (USML) Category I—Firearms, Close Assault Weapons and Combat Shotguns; Category II—Guns and Armament; and Category III—Ammunition/Ordnance, would be controlled on the Commerce Control List (CCL) and by the Export Administration Regulations (EAR). This proposed rule is being published in conjunction with a proposed rule from the Department of State, Directorate of Defense Trade Controls, which would amend the list of articles controlled by USML Category I (Firearms, Close Assault Weapons and Combat Shotguns), Category II (Guns and Armament), and Category III (Ammunition/Ordnance) of the USML to describe more precisely items warranting continued control on that list.

The changes described in this proposed rule and in the State Department's companion proposed rule on Categories I, II, and III of the USML are based on a review of those categories by the Department of Defense, which worked with the Departments of State and Commerce in preparing the amendments. The review was focused on identifying the types of articles that are now controlled on the USML that are either (i) inherently military and otherwise warrant control on the USML or (ii) if of a type common to non-military firearms applications, possess parameters or characteristics that provide a critical military or intelligence advantage to the United States, and are almost exclusively available from the United States. If an article satisfies one or both of those criteria, the article remains on the USML. If an article does not satisfy either criterion, it has been identified in the new Export Control Classification Numbers (ECCNs) included in this proposed rule. Thus, the scope of the items described in this proposed rule is essentially commercial items widely available in retail outlets and less sensitive military items.

BIS has created ECCNs, referred to as the ''600 series,'' to control items that would be removed from the USML and controlled under the CCL, or items from the Wassenaar Arrangement on Export Controls for Conventional Arms and Dual Use Goods and Technologies Munitions List (Wassenaar Arrangement Munitions List or WAML) that are already controlled elsewhere on the CCL.

These ECCNs are referred to as the ''600 series'' because the third character in each of the new ECCNs is ''6.'' The first two characters of the ''600 series'' ECCNs serve the same function as any other ECCN as described in § 738.2 of the EAR. The first character is a digit in the range 0 through 9 that identifies the Category on the CCL in which the ECCN is located. The second character is a letter in the range A through E that identifies the product group within a CCL Category. With few exceptions, the final two characters identify the WAML category that covers items that are the same or similar to items in a particular ''600 series'' ECCN. Category II of the USML and category ML2 of the WAML cover large caliber guns and other military weapons such as: Howitzers, cannon, mortars, anti-tank weapons, projectile launchers, military flame throwers and recoilless rifles.

In this proposed rule, items that are currently controlled in Category II of the USML would be controlled on the CCL under four new ''600 series'' ECCNs. Placement of the items currently in USML Category II into the CCL's 600 series would be consistent with existing BIS practice of using 600 series ECCNs to control items of a military nature.

Items currently controlled in Categories I and III of the USML would be controlled in new ECCNs in which the third character is a ''5.'' These items are not appropriate for 600 series control because, for the most part, they have civil, recreational, law enforcement, or other non- military applications. As with 600 series ECCNs, the first character would represent the CCL category, the second character would represent the product group, and the final two characters would represent the WAML category that covers items that are the same or similar to items in the ECCN.

This proposed rule does not deregulate the transferred items. BIS would require licenses to export, or reexport to any country a firearm or other weapon currently on the USML that would be added to the CCL by this proposed rule. BIS would also require licenses for the export or reexport of guns and armament that would be controlled under new ECCN 0A602, such as guns and armaments manufactured between 1890 and 1919 to all destinations except Canada. As compared to decontrolling firearms and other items, in publishing this proposed rule, BIS, working with the Departments of Defense and State, is trying to reduce the procedural burdens and costs of export compliance on the U.S. firearms industry while allowing the U.S. Government to enforce export controls for firearms appropriately and to make better use of its export control resources. BIS encourages comments from the public on this aspect of the proposed rule.

All references to the USML in this rule are to the list of defense articles that are controlled for purposes of export, temporary import, or brokering pursuant to the International Traffic in

Arms Regulations (ITAR), 22 CFR parts 120 through 130, and not to the list of defense articles on the United States Munitions Import List (USMIL) that are controlled by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) for purposes of permanent import under its regulations at 27 CFR part 447. Pursuant to section 38(a)(1) of the Arms Export Control Act (AECA), all defense articles controlled for export or import, or that are subject to brokering controls, are part of the USML under the AECA. All defense articles described in the USMIL or the USML are subject to the brokering controls administered by the U.S. Department of State in part 129 of the ITAR. The transfer of defense articles from the ITAR's USML to the EAR's CCL for purposes of export controls does not affect the list of defense articles controlled on the USMIL under the AECA, 22 U.S.C. 2778 *et seq.,* for purposes of permanent import or brokering controls.

BIS believes the control of these firearms under the EAR is justified because the firearms described in this proposed rule are either not inherently military or do not warrant the obligations that are imposed under the ITAR pertaining to such items. After review, the Defense Department, in conjunction with the Departments of State and Commerce, concluded that the firearms in this proposed rule also do not provide a critical military or intelligence advantage to the United States, are not the types of weapons that are almost exclusively available from the United States, and are manufactured from ''technology'' that is widely available. Moreover, the firearms have commercial and other non-military characteristics that distinguish them from other articles controlled under the ITAR. There is a significant worldwide market for firearms in connection with civil and recreational activities such as hunting, marksmanship, competitive shooting, and other non-military activities. Because of the popularity of shooting sports in the United States, for example, many large chain retailers carry a wide inventory of the firearms described in the new ECCNs for sale to the general public. Firearms available through U.S. retail outlets include rim fire rifles, pistols, modern sporting rifles, shotguns, and large caliber bolt action rifles, as well as their ''parts,'' ''components,'' ''accessories'' and ''attachments.''

An additional justification for the change in the jurisdictional status of the items described in this rule is that the current ITAR controls burden U.S. industry without any proportionate benefits to United States national security or foreign policy objectives. Similar to the challenges faced by other industries, the firearms trade has been negatively affected by the incentives the ITAR creates for foreign manufacturers to avoid U.S.-origin content. Currently, under the ITAR, any part, component, accessory, or attachment for any of the firearms described in this proposed rule remains ITAR controlled, regardless of its significance, when incorporated into foreign-made items or reexported to any third country. Under the EAR, the *de minimis* provisions may, in certain cases, mean a foreign item that incorporates U.S.-origin content may not be subject to the EAR, provided the U.S.-origin items meet the applicable *de minimis* level for the country of reexport. Similarly, a technical drawing of such part, component, accessory or attachment is ITAR controlled, as is the provision of a ''defense service'' to a foreign person concerning those items, such as the application of protective coatings. Moreover, a U.S. person engaged in manufacturing or exporting these items or providing related defense services must register with the State Department under the ITAR. Thus, even if a U.S. company can manufacture or service these items at a lower cost in the United States as compared to the cost for a U.S. or foreign company to manufacture or service the items outside of the United States, the ITAR's restrictions may render the items unattractive or uncompetitive for foreign manufacturers. The EAR does not include a concept of ''defense services,'' and the ''technology'' related controls are more narrowly focused and apply in limited contexts as compared to the ITAR.

The EAR also includes well-established and well understood criteria for excluding certain information from the scope of what is ''subject to the EAR.'' (*See* part 734 of the EAR.) Items that would move to the CCL would be subject to existing EAR concepts of jurisdiction and controls related to ''development'' and ''production,'' as well operation, installation, and maintenance ''technology.'' While controlling such ''technology,'' as well as other ''technology'' is important, the EAR includes criteria in part 734 that would exclude certain information and software from control. For example, if a gun manufacturer posts a firearm's operation and maintenance manual on the internet, making it publicly available to anyone interested in accessing it and without restrictions on further dissemination (*i.e.,* unlimited distribution), the operation and maintenance information included in that published operation and maintenance manual would no longer be ''subject to the EAR.'' (*See* §§ 734.3(b) and 734.7(a).) Non-proprietary system descriptions, including for firearms and related items, are another example of information that would not be subject to the EAR. (*See* § 734.3(b)(3)(v).)

Pursuant to section 38(f) of the AECA, the President shall review the USML ''to determine what items, if any, no longer warrant export controls under'' the AECA. The President must report the results of the review to Congress and wait 30 days before removing any such items from the USML. The report must ''describe the nature of any controls to be imposed on that item under any other provision of law.'' 22 U.S.C. 2778(f)(1).

This Commerce proposed rule is being published simultaneously with a Department of State proposed rule. Collectively, the rules address defense articles currently controlled under Categories I (Firearms, Close Assault Weapons and Combat Shotguns), II (Guns and Armament), and III (Ammunition/Ordnance) of the USML. The Department of State proposed rule would revise Categories I (Firearms, Close Assault Weapons and Combat Shotguns), II (Guns and Armament), and III (Ammunition/Ordnance) of the USML so that they describe in positive terms the defense articles that should remain on the USML. The Department of Commerce rule would add to the CCL items that the President determines no longer warrant control under the USML.

In addition, this rule would clarify the scope of some ECCNs currently on the CCL. This rule would also renumber these ECCNs to place certain firearms-related items currently on the CCL in closer proximity to the firearms-related items that would be removed from the USML and added to the CCL to make it easier to identify and classify such items.

BIS is interested in comments in response to this proposed rule as to whether the public find this reorganization helpful. In some instances, the juxtapositions resulting from this reorganization highlight different license requirements and licensing policies for various firearms and related items. The public is invited to comment on the appropriateness of these license requirements and licensing policies. The public is also encouraged to comment on whether or not the proposed rule describes items that are not widely available in commercial outlets.

**Detailed Description of Changes Proposed by This Rule**

**Creation of New ECCNs**

This proposed rule would create 17 new ECCNs to control items proposed for removal from the USML. A discussion of each new ECCN and the controls that would apply to items under that ECCN follows below.

*New ECCN 0A501: Firearms and Related Commodities*

New ECCN 0A501 would apply national security (NS Column 1), regional stability (RS Column 1), Firearms Convention (FC Column 1), United Nations (UN), and anti-terrorism (AT Column 1) reasons for control to the following firearms, the following enumerated parts and components and to "specially designed" "parts," "components," "accessories" and "attachments" for those firearms and "parts" and "components:"

—Non-automatic and semi-automatic firearms (other than shotguns) with a caliber of less than or equal to .50 inches (12.7 mm);
—Non-automatic and non-semi-automatic rifles, carbines, revolvers or pistols with a caliber greater than .50 inches (12.7 mm) but not greater than .72 inches (18.0 mm);
—Detachable magazines with a capacity of greater than 16 rounds but less than 50 rounds that are "specially designed" for the firearms listed above;
—Receivers (frames) and complete breech mechanisms, including castings, forgings, or stampings thereof, "specially designed" for the firearms listed above; and
—Barrels, cylinders, barrel extensions, mounting blocks (trunnions), bolts, bolt carriers, operating rods, gas pistons, trigger housings, triggers, hammers, sears, disconnectors, pistol grips that contain fire control "parts" or "components," and buttstocks that contain fire control "parts" or "components" (*e.g.,* triggers, hammers, sears, or disconnectors) if "specially designed" for the firearms listed above or for firearms listed in USML Category I (unless the part or component itself is listed in USML Category I(g) or (h) as specified in the Department of State proposed rule entitled "Amendment to the International Traffic in Arms Regulations: Revision of U.S. Munitions List Categories I, II, and III," also published in this issue).

ECCN 0A501.y would be subject only to anti-terrorism (AT Column 1) and United Nations (UN) reasons for control and would cover such items as scope mounts or accessory rails, iron sights, sling swivels, butt plates, recoil pads, bayonets, and stocks or grips that do not contain any fire control "parts" or "components."

This proposed rule would add a technical note to ECCN 0A501 stating that "parts" and "components" include "parts" and "components" that are common to firearms described in ECCN 0A501 and to firearms "subject to the ITAR."

It also would add a second note to ECCN 0A501 to state that certain firearms and similar items are EAR99, *i.e.,* subject to the EAR but not on the CCL. Those items are: Antique firearms (*i.e.,* those manufactured before 1890) and reproductions thereof, muzzle loading black powder firearms except those designs based on centerfire weapons of a post 1937 design, BB guns, pellet rifles, paint ball, and all other air rifles.

In addition, for purposes of new ECCN 0A501 and the rest of the new ECCNs described below, items previously determined to be "subject to the EAR" under a commodity jurisdiction determination issued by the U.S. Department of State that were designated as EAR99 would generally not be classified in any of the new ECCNs that would be created with this proposed rule. This would be consistent with Supplement No. 1 to Part 736, General Order No. 5, paragraph (e)(3) (Prior commodity jurisdiction determination) and the paragraph (b)(1) release from "specially designed." As a conforming change, this proposed rule would revise paragraph (e)(3) of General Order No. 5 to add a reference to "0x5zz" (to account for new ECCNs 0A501, 0A502, 0A503, 0A504, 0A505, 0B501, 0B505, 0D501, 0D505, 0E501, and 0E502 described below). The "600 series" and 9x515 (spacecraft and related items) are already included in paragraph (e)(3), and those references remain unchanged.

*New ECCN 0A502: Shotguns and Certain Related Commodities*

New ECCN 0A502 would control both the shotguns currently on the USML that are to be added to the CCL (barrel length less than 18 inches) and the shotguns and the enumerated "parts" and "components" currently controlled in ECCN 0A984 (barrel length 18 inches or greater). Shotguns currently controlled in ECCN 0A984 would retain their current reasons for control of Firearms Convention (FC), crime control (CC Column 1, 2 or 3 depending on barrel length and end user) and United Nations (UN) reasons. Shotguns with a barrel length less than 18 inches would be controlled under NS Column 1, CC Column 1, FC, UN and AT Column 1 plus regional stability (RS Column 1), consistent with their current control on the USML. The shotguns controlled in 0A502 currently controlled in ECCN 0A984 would not be controlled for national security reasons because they are not on the WAML.

*New ECCN 0A503: Discharge Type Arms, and Certain Other Commodities*

This rule would replace existing ECCN 0A985 with a new ECCN 0A503. The rule would add "non-lethal or less-lethal grenades and projectiles and 'specially designed' 'parts' and 'components' of those projectiles" to the description of controlled items in the header of ECCN 0A985 to make clear that such projectiles are classified in that ECCN 0A503 and not classified under ECCN 0A602 or on the USML. Renumbering this ECCN would cause entries controlling firearms and related items to be placed in close proximity to each other, which would make it easier for readers to identify items on the CCL.

*New ECCN 0A504: Optical Sighting Devices and Certain Related Commodities*

New ECCN 0A504 would replace existing ECCN 0A987, which controls optical sighting devices for firearms. The reasons for control table, which currently states, *inter alia,* that the Firearms Convention (FC) reason for control applies to "optical sights for firearms," would be revised to state specifically that the FC reason for control applies to all paragraphs in the ECCN except the one that controls laser pointing devices. In addition, BIS would add an RS control for certain riflescopes. These riflescopes would be identified in their own paragraph in the ECCN under 0A504.i. The riflescopes in this paragraph would be limited to those "specially designed" for use in firearms that are "subject to the ITAR." An exclusion would be included in the criteria of this paragraph to ensure less sensitive riflescopes that would be moved from ECCN 0A987 to 0A504 on the effective date of a final rule, that currently are not RS controlled under the EAR, would not be controlled under this paragraph. This rule would also add a note to this paragraph (i) to specify that paragraph (a)(1) of the definition of "specially designed" is what would be used to determine whether a riflescope is "specially designed" for purposes of this paragraph.

This change would make clear, consistent with BIS's existing interpretation, that such devices are not optical sights and are not subject to the

FC reason for control. The new number is intended to make identifying items on the CCL easier by grouping similar or related items closer to each other.

*New ECCN 0A505: Ammunition and Certain Related Commodities*

New ECCN 0A505 would impose national security (NS Column 1), regional stability (RS Column 1), Firearms Convention (FC), United Nations (UN), and anti-terrorism (AT Column 1) controls on ammunition not enumerated on the USML, for firearms that would be classified under proposed ECCN 0A501, and for most ''parts'' and ''components'' of such ammunition. Such ammunition would be for small arms, in most cases, firearms of caliber not exceeding 0.50 inches, although some ammunition for firearms of caliber up to 0.72 inches would be included. This proposed rule would retain the CCL reasons for control currently found in ECCNs 0A984 and 0A986 for shotgun shells. Buckshot shotgun shells would be subject to the CC Column 1, FC Column 1 and UN reasons for control. Other shotgun shells would be subject to the FC, UN and AT (North Korea only) reasons for control. Only ''parts'' and ''components'' would be eligible for License Exception LVS. Ammunition for larger caliber weapons such as howitzers, artillery, cannon, mortars, and recoilless rifles would remain in USML Category III. Ammunition that has little or no civil use or that is inherently military such as ammunition that is preassembled into links or belts, caseless ammunition, tracer ammunition, ammunition with a depleted uranium projectile or a projectile with a hardened tip or core and ammunition with an explosive projectile also would remain in USML Category III. Possession of the ammunition that would be added to the CCL by this rule does not provide a critical military advantage to the United States. Blank ammunition for firearms controlled by ECCN 0A501 and not enumerated in Category III of the USML would be controlled for United Nations and anti-terrorism reasons only. Consolidating all ammunition on the CCL into one ECCN would simplify use of the CCL.

Inclusion of this ammunition on the CCL is appropriate because such ammunition is available from a number of countries, some of which are not close allies of the United States or members of multilateral export control regimes. Possession of this ammunition does not confer a military advantage on the United States. This rule proposes adding three notes to clarify the scope of ''parts'' and ''components'' for

ammunition classified under ECCN 0A505. Note 1 to 0A505.c would clarify the relationship between ECCNs 0A505 and 1A984 for shotgun shells, stating that shotgun shells that contain only chemical irritants would be controlled under 1A984 and not 0A505. Separately, Note 2 to 0A505.x would include an illustrative list of the controls on ''parts'' and ''components'' in this entry, such as Berdan and boxer primers. Note 3 to 0A505.x would clarify that the controls in ECCN 0A505 include ''parts'' and ''components'' that are common to ammunition and ordnance described in this entry and to those enumerated in USML Category III.

*New ECCN 0A602: Guns and Armament*

New ECCN 0A602 would impose national security (NS Column 1), regional stability (RS Column 1), United Nations (UN) and anti-terrorism (AT Column 1) controls on guns and armament manufactured between 1890 and 1919 and for military flame throwers with an effective range less than 20 meters. It would impose those same reasons for control on parts and components for those commodities and for defense articles in USML Category II if such parts or components are not specified elsewhere on the CCL or USML. Note 2 to 0A602 confirms that black powder guns and armament manufactured in or prior to 1890 and replicas thereof designed for use with black powder propellants are designated EAR99. Inclusion of these guns and armament on the CCL is appropriate because they do not confer a significant military or intelligence advantage on the United States. The guns controlled in this ECCN are between 98 and 127 years old. The parts, components, accessories and attachments controlled in this ECCN include some that are for modern artillery. Modern artillery will remain on the USML, along with the most sensitive ''parts,'' ''components,'' ''accessories'' and ''attachments'' for these USML items. This proposed rule adds a note to clarify that ''parts,'' ''components,'' ''accessories'' and ''attachments'' specified in USML subcategory II(j) are not subject to the EAR. The USML Order of Review and CCL Order of Review already provide guidance for making such a jurisdictional and classification determination, but to highlight that these ''parts,'' ''components,'' ''accessories'' and ''attachments'' are not classified under paragraph (x) of 0A602, this rule proposes adding a note.

*New ECCN 0B501: Test, Inspection and Production Equipment for Firearms*

New ECCN 0B501 would cover ''Test, inspection and production 'equipment' and related commodities for the 'development' or 'production' of commodities enumerated in ECCN 0A501 or USML Category I.'' This new ECCN would apply the national security (NS Column 1), regional stability (RS Column 1), United Nations (UN) and anti-terrorism (AT Column 1) reasons for control to four specific types of machinery and to one class of items. The four specific types of machinery are: Small arms chambering machines, small arms deep hole drilling machines and drills therefor, small arms rifling machines, and small arms spill boring machines. The class of items covers dies, fixtures and other tooling ''specially designed'' for the ''production'' of items in the State Department proposed rule for USML Category I or ECCN 0A501.

The NS and RS reasons for control do not apply to equipment for the ''development'' or ''production'' of commodities in ECCN 0A501.y because those reasons for control do not apply to the commodities in ECCN 0A501.y themselves.

The first four specific items noted above currently are listed in ECCN 2B018, paragraphs .o, .p, .q, and .r and would be listed in paragraphs .a, .b, .c and .d of ECCN 0B501. In addition, the class of items in new 0B501 that is currently included within ECCN 2B018, paragraph .n (jigs and fixtures and other metal-working implements or ''accessories'' of the kinds exclusively designed for use in the manufacture of firearms, ordnance, and other stores and appliances for land, sea or aerial warfare) would, if applicable to firearms controlled in 0A501, be subsumed in paragraph .e. Jigs, fixtures and metal working implements currently in 2B018 that are applicable to larger guns would be controlled in ECCN 0B602 and are discussed below.

Moving these items from 2B018 to 0B501 would retain the national security (NS Column 1), anti-terrorism (AT Column 1) and United Nations (UN) reasons for control and would raise the regional stability (RS) reason for control from RS Column 2 to RS Column 1. This would cause no change in destination-based license requirements, but would allow consideration of whether the export or reexport could contribute to instability in any region, not just the region to which the item is exported or reexported in considering whether to approve a license.

*New ECCN 0B505: Test, Inspection and Production Equipment for Ammunition*

New ECCN 0B505 would impose national security (NS Column 1), regional stability (RS Column 1), United Nations (UN), and anti-terrorism (AT Column 1) controls on tooling, templates, jigs, mandrels, molds, dies, fixtures, alignment mechanisms, and test equipment, not enumerated in USML Category III, and ''specially designed'' ''parts'' and ''components'' therefor, that are ''specially designed'' for the ''production'' of ammunition other than for the ammunition specified in 0A505.b, .c or .d (certain shotgun shells with buckshot and without buckshot and certain blank ammunition). Equipment for manufacturing shotgun shells that do not contain buckshot would be controlled for the AT (North Korea only) and UN reasons for control, which are the reasons for control that currently apply to this equipment in ECCN 0B986. ECCN 0B505 would not include equipment for the hand loading of cartridges and shotgun shells, so this rule specifies this in the heading.

The equipment controlled in ECCN 0B505 is used to produce conventional ammunition and is similar to equipment that is in operation in a number of countries, some of which are not allies of the United States or members of multinational export control regimes. Possession of such equipment does not confer a significant military advantage on the United States, and thus its inclusion on the CCL is appropriate.

*New ECCN 0B602: Test, Inspection and Production Equipment for Certain Guns and Armament*

New ECCN 0B602 would impose national security (NS Column 1), regional stability (RS Column 1), United Nations (UN), and anti-terrorism (AT Column 1) controls on test, inspection and production equipment enumerated for commodities enumerated or otherwise described in ECCN 0A602.a or USML Category II. ECCN 0B602 would control eight specific types of equipment that currently are listed in paragraphs .e through .l of ECCN 2B018. Those eight specific types of equipment are: Gun barrel rifling and broaching machines and tools therefor; Gun barrel rifling machines; Gun barrel trepanning machines; Gun boring and turning machines; Gun honing machines of 6 feet (183 cm) stroke or more; Gun jump screw lathes; Gun rifling machines; and Gun straightening presses. ECCN 0B602 also would control one class of equipment that is included within ECCN 2B018 paragraph .n (jigs and

fixtures and other metal-working implements or accessories of the kinds exclusively designed for use in the manufacture of items in ECCN 0A602 or USML Category II). Moving these items from 2B018 to 0B501 would retain the national security (NS Column 1), anti-terrorism (AT Column 1) and United Nations (UN) reasons for control and would raise the regional stability reason for control from RS Column 2 to RS Column 1. This would cause no change in destination-based license requirements, but would allow consideration of whether the export or reexport could contribute to instability in any region, not just the region to which the items is exported or reexported in considering whether to approve or reject a license application.

Additionally, ECCN 0B602 would control any other tooling and equipment that is ''specially designed'' for the production of items in ECCN 0A602 or USML Category II along with test and evaluation equipment and test models, including diagnostic instrumentation and physical test models, ''specially designed'' for items in ECCN 0A602 or USML Category II.

*New ECCN 0D501: Software for Firearms and Certain Related Commodities*

New ECCN 0D501 would apply national security (NS Column 1), regional stability (RS Column 1), United Nations (UN), and anti-terrorism (AT Column 1) controls to ''software'' ''specially designed'' for the ''development,'' ''production,'' operation or maintenance of all commodities classified under ECCNs 0A501 or equipment under 0B501 except those commodities classified under 0A501.y. ''Software'' for ECCN 0A501.y would be controlled only for United Nations and anti-terrorism reasons to match the reason for control that applies to commodities classified under that paragraph.

*New ECCN 0D505: Software for Ammunition and Certain Related Commodities*

New ECCN 0D505 would impose national security (NS Column 1), regional stability (RS Column 1), United Nations (UN), and anti-terrorism (AT Column 1) controls on ''software'' ''specially designed'' for the ''development,'' ''production,'' operation or maintenance of commodities controlled by ECCNs 0A505.a and .x (rifle, pistol, carbine and revolver ammunition and ''specially designed'' parts and components therefor) or 0B505.a and .x. However, only United Nations and anti-terrorism

controls would apply to ''software'' for the blank ammunition in ECCN 0A505.d.

*New ECCN 0D602: Software for Guns and Armament and Certain Related Items*

New ECCN 0D602 would impose national security (NS Column 1), regional stability (RS Column 1), United Nations (UN), and anti-terrorism (AT Column 1) controls on ''software'' ''specially designed'' for the ''development,'' ''production,'' operation or maintenance of commodities controlled by ECCNs 0A602 or 0B602.

*New ECCN 0E501: Technology for Firearms and Certain Related Items*

New ECCN 0E501 would apply the national security (NS Column 1), regional stability (RS Column 1), United Nations (UN) and anti-terrorism (AT Column 1) reasons for control to ''technology'' ''required'' for the ''development'' and ''production'' of firearms other than shotguns. This new ECCN also would apply the anti-terrorism and United Nations reasons for control to ''technology'' ''required'' for the operation, installation, maintenance, repair, or overhaul of such firearms. Controlling this ''technology'' under the EAR rather than the ITAR is appropriate because the ''technology'' for the ''development,'' ''production,'' operation, installation, maintenance, repair, and overhaul of the firearms to be described in 0A501 is widely available throughout the world and its possession does not confer a significant military or intelligence advantage on the United States.

*New ECCN 0E502: Technology for Shotguns*

New ECCN 0E502 would apply the crime control (CC Column 1) and United Nations (UN) reasons for control to ''technology'' required for the development or production of shotguns that would be controlled in new ECCN 0A502. Crime control and United Nations are the reasons for control currently imposed on ''technology'' required for the ''development'' or ''production'' of shotguns in ECCN 0E984. The only difference between shotguns currently on the CCL and those that would be added by this proposed rule is barrel length. BIS believes that ''technology'' related to shotguns does not vary significantly based on the barrel length of the shotgun. Attempts to apply different reasons for control or to control different types of technology based

solely on the barrel length of the shotgun would likely be ineffective.

### New ECCN 0E504: Technology for Certain Optical Sighting Devices

New ECCN 0E504 would replace existing ECCN 0E987, which controls ''technology'' ''required'' for the ''development,'' or ''production'' of certain commodities controlled by 0A504. The new ECCN number is intended to make identifying items on the CCL easier by grouping similar or related items closer to each other. New ECCN 0E504 would also impose a United Nations (UN) control on the entire entry.

### New ECCN 0E505: Technology for Ammunition and Related Items

New ECCN 0E505 would impose national security (NS Column 1), regional stability (RS Column 1), United Nations (UN), and anti-terrorism (AT Column 1) controls on ''technology'' ''required'' for the ''development,'' ''production,'' operation, installation, maintenance, repair, overhaul or refurbishing of commodities controlled by 0A505.a and .x (rifle and pistol ammunition and ''parts'' and ''components); 0B505 equipment for those commodities; and ''software'' for that equipment and those commodities controlled by 0D505. ''Technology'' for the ''development'' or ''production'' of buckshot shotgun shells would be controlled for crime control (CC Column 1) and UN reasons. United Nations and anti-terrorism (AT Column 1) controls would apply to ''technology'' for the blank ammunition (controlled in 0A505.d) for firearms controlled in ECCN 0A501 and to ''technology'' for that ammunition and ''technology'' for ''software'' for that ammunition. Inclusion of this ''technology'' on the CCL is appropriate because, like the ammunition and production equipment addressed by this rule, it is widely available, including in countries that are not allies of the United States or members of multilateral export control regimes and thus confers no military advantage on the United States.

### New ECCN 0E602: Technology for Guns and Armament, Including Technology for Test, Inspection and Production Equipment and Software for Guns and Armament

New ECCN 0E602 would impose national security (NS Column 1), regional stability (RS Column 1), United Nations (UN), and anti-terrorism (AT Column 1) controls on ''technology'' ''required'' for the ''development,'' ''production,'' operation, installation, maintenance, repair, overhaul or

refurbishing of commodities controlled by ECCNs 0A602 or 0B602, or ''software'' controlled by 0D602.

### Revisions to Seven ECCNs

To conform to new *Federal Register Drafting Handbook* requirements, the amendatory instructions in this proposed rule would set forth the entire text of the seven ECCNs to be revised. To help the public understand what specific parts of the ECCNs would be different, the narrative below describes the amendments in detail.

### Revision to ECCN 0A018

With the proposed removal of ECCN 0A984 and the addition of 0A502 described above, this proposed rule would make the conforming change of removing and reserving 0A018.c since all the items classified in 0A018.c would be classified under other entries on the CCL. This change includes the removal of the note to 0A018.c.

### Revision to ECCN 0E982

ECCN 0E982 controls ''technology'' exclusively for the ''development'' or ''production'' of equipment controlled by ECCN 0A982 or 0A985. This rule would replace ''0A985,'' which applies to discharge type arms and some other crime control equipment, with 0A503 to conform to the replacement of ECCN 0A985 with new ECCN 0A503 proposed elsewhere in this rule.

### Revision to ECCN 1A984

To clarify an existing agency practice of controlling shotguns shells that contain only chemical irritants under 1A984, this proposed rule would revise the heading of 1A984. As described above, the same type of clarification would be made to ECCN 0A505.c under new Note 1 to paragraph (c). BIS considers these to be conforming changes to the removal of ECCN 0A986 and the addition of ECCN 0A505.c in this proposed rule.

### Revisions to ECCN 2B004

As a conforming change, this rule would replace the reference to ECCN 2B018 in the related controls paragraph of ECCN 2B004 with references to ECCNs 0B501, 0B602 and 0B606. This rule would make no substantive changes to ECCN 2B004.

### Revisions to ECCN 2B018

This proposed rule would remove and reserve paragraphs .e, .f, .g, .h, .i, .j, and .l from ECCN 2B018 because the commodities listed in those paragraphs would be listed in ECCN 0B602. It would remove paragraph .n, because the commodities listed in that paragraph

would be controlled under either ECCNs 0B501 or 0B602 or under existing ECCN 0B606 in this proposed rule. It would remove paragraphs .a through .d, .m and .s, because the commodities listed in those paragraphs would be controlled in ECCN 0B606. It would remove paragraphs .o, .p, .q, and .r because the commodities listed in those paragraphs would be controlled in ECCN 0B501. The commodities described in the MT control in ECCN 2B018 currently listed as MT are controlled elsewhere in the EAR, so no additional changes are needed to add these commodities to other ECCNs.

### Revisions to ECCN 2D018

Currently ECCN 2D018 controls software for the ''development,'' ''production'' or ''use'' of equipment controlled by ECCN 2B018. As a conforming change, this rule would replace the control text of ECCN 2D018 with a statement referring readers to ECCNs 0D501, 0D602 and 0D606.

### Revisions to ECCN 7A611

As a conforming change, this rule would remove the reference to 0A987 in the Related Controls paragraph (2) and add in its place 0A504.

### Removal of Nine ECCNs

### Removal of ECCN 0A918

ECCN 0A918 controls ''bayonets'' for regional stability, anti-terrorism, and United Nations reasons. This proposed rule would remove bayonets from ECCN 0A918 and add them to the .y paragraph of proposed ECCN 0A501, where they would be subject to United Nations and anti-terrorism (AT column 1) reasons for control. Bayonets and the ''technology'' to produce them are available in many countries. Possession of bayonets does not confer a significant military advantage on the United States and attempting to restrict their availability by requiring a license for export to most destinations is unlikely to be effective. Therefore, for these reasons, this proposed rule does not retain a regional stability (RS column 2) control on bayonets because it is no longer warranted.

### Removal of ECCN 0A984

This proposed rule would remove ECCN 0A984 because all of the commodities that it currently controls would be controlled by either proposed ECCN 0A502 or 0A505. As conforming changes, references to ECCN 0A984 would be replaced with references to ECCN 0A502 or 0A505 or both, as appropriate in §§ 742.7(a)(1), (2) and (3); 742.17(f) and 748.12(a)(1) and in ECCN 0A018.

*Removal of ECCN 0A985*

This proposed rule would remove ECCN 0A985 because all of the commodities that it currently controls would be controlled by proposed ECCN 0A503. As conforming changes, references to ECCN 0A985 would be replaced with references to ECCN 0A503 in §§ 740.20(b)(2); 742.7(a)(4) and (c); 746.7(a) and ECCN 0E982.

*Removal of ECCN 0A986*

This proposed rule would remove ECCN 0A986 because all of the commodities that it currently controls would be controlled by proposed 0A505.c, including less than lethal rounds. As conforming changes, references to ECCN 0A986 would be replaced with references to ECCN 0A505, as appropriate in §§ 742.17(f); 742.19(a)(1); 746.3(b)(2) and 748.12(a)(1).

*Removal of ECCN 0A987*

This proposed rule would remove ECCN 0A987 because proposed ECCN 0A504 would control all commodities currently controlled by ECCN 0A987. As conforming changes, references to ECCN 0A987 would be replaced with references to ECCN 0A504, as appropriate in §§ 740.16(b)(2)(iv); 742.7(a)(1); 742.17(f); 744.9(a)(1) and (b); and 748.12(a)(1); and in ECCN 7A611.

*Removal of ECCN 0B986*

This proposed rule would remove ECCN 0B986 because all of the commodities that it controls would be controlled in proposed ECCN 0B505.c. As conforming changes, references to ECCN 0B986 would be replaced with references to 0B505.c in §§ 742.19(a) and 772.1, definition of specially designed Note 1.

*Removal of ECCN 0E918*

This proposed rule would remove ECCN 0E918, which controls "technology" for the "development," "production," or "use" of bayonets for regional stability, United Nations, and anti-terrorism reasons. Because "technology" for the "development," "production," or "use" of bayonets is widely known, any attempt to limit its dissemination through export license requirements is unlikely to be effective.

*Removal of ECCN 0E984*

This proposed rule would remove ECCN 0E984, which controls "technology" for the development of shotguns and buckshot shotgun shells, because such "technology" would be controlled under proposed ECCN 0E502 (shotguns) or 0E505 (buckshot shotgun

shells). As a conforming change, this proposed rule would replace a reference to ECCN 0E984 in § 742.7(a) with references to ECCNs 0E502 and 0E505.

*Removal of ECCN 0E987*

This proposed rule would remove ECCN 0E987 because proposed ECCN 0E504 would control all "technology" currently controlled by ECCN 0E987. As conforming change, references to ECCN 0E987 would be replaced with references to ECCN 0E504, as appropriate in §§ 740.20(b)(2)(ii) and 742.7(a)(1).

**Conforming Change to General Order No. 5**

This proposed rule would amend General Order No. 5, paragraph (e)(3) (Prior commodity jurisdiction determinations), in Supplement No. 1 to part 736, to add a reference in two places to the new 0x5zz ECCNs that would be created by this rule. This change to paragraph (e)(3) is a conforming change and is needed because paragraph (e)(3) now only references the "600 series" and 9x515 ECCNs. 0x5zz ECCNs would include new ECCN 0A501, 0A502, 0A505, 0B501, 0B505, 0D501, 0D505, 0E501, 0E502, 0E505. Paragraph (e)(2) is important because, for example, it ensures that items previously determined to be "subject to the EAR" and designated EAR99, would not be classified in a new ECCN being created to control items moved from the USML to the CCL, unless specifically enumerated by BIS in an amendment to the CCL. For example, most swivels and scope mounts for firearms have previously been determined through the CJ and classification process to not be "subject to the ITAR" and designated as EAR99. The classification of such "parts" would not be changed, provided the "part" was not subsequently changed, which would require a separate jurisdiction and classification analysis.

**Revisions to Regional Stability Licensing Policy for Firearms and Ammunition That Would Be Added to the EAR**

This proposed rule would apply the regional stability licensing policy set forth in § 742.6(b)(1)(i) of the EAR to the items controlled for regional stability reasons in ECCNs 0A501, 0A505, 0B501, 0B505, 0A504, 0D501, 0D505, 0E501, 0E504 and 0E505. That policy, which also applies to "600 series" and 9x515 items is case-by-case review "to determine whether the transaction is contrary to the national security or foreign policy interests of the United

States, including the foreign policy interest of promoting the observance of human rights throughout the world." This proposed rule would also revise the regional stability licensing policy set forth in the last sentence of paragraph (b)(1)(i) that is specific to the People's Republic of China for 9x515 items. This proposed rule would add ECCNs 0A501, 0A504, 0A505, 0B501, 0B505, 0D501, 0D505, 0E501, 0E504, and 0E505 to this sentence to specify that these firearms and related items will be subject to a policy of denial when destined to the People's Republic of China or a country listed in Country Group E:1. Lastly, this proposed rule would add a sentence to the end of paragraph (b)(1)(i) to make it explicit that applications for exports and reexports of ECCN 0A501, 0A504, 0A505, 0B501, 0B505, 0D501, 0D505, 0E501, 0E504, and 0E505 items would be subject to a policy of denial when there is reason to believe the transaction involves certain parties of concern. In addition, transactions involving criminal organizations, rebel groups, street gangs, or other similar groups or individuals, that may be disruptive to regional stability, including within individual countries would be subject to a policy of denial.

**Availability of License Exceptions**

Many of the items in the new "600 series" ECCNs generally would be eligible for the same license exceptions and subject to the same restrictions on use of license exceptions as other "600 series" ECCNs. BIS intends that those restrictions be no more restrictive than the ITAR license exemption restrictions that currently apply to those items.

For the ECCNs currently on the CCL that would be renumbered and placed in closer proximity to the firearms-related items that would be removed from the USML and added to the CCL, these existing firearms-related items would continue to be eligible for the same EAR license exceptions, as they were prior to publication of this rule, unless otherwise restricted under § 740.2, if the requirements of the license exceptions are met.

*License Exception: Shipments of Limited Value (LVS)*

Under this proposed rule, complete firearms controlled under ECCN 0A501 would not be eligible for License Exception LVS, 15 CFR 740.3. Firearms "parts," "components," "accessories," and "attachments" controlled under ECCN 0A501, other than receivers (frames), and complete breech mechanisms, including castings, forgings or stampings thereof, would be eligible for License Exception LVS, with

a limit of $500 on net value per shipment. In addition, receivers (frames), and complete breech mechanisms, including castings, forgings or stampings thereof, would be eligible for License Exception LVS if the ultimate destination is Canada. These limits would be stated in the License Exceptions paragraph of ECCN 0A501, and no revisions to the text of the license exception itself would be needed to implement them. BIS believes that this provision is generally consistent with the license exemption for limited value shipments of firearms in the ITAR (22 CFR 123.17(a)). This LVS proposal would be less restrictive than the current ITAR provision in two respects. First, the value limit per shipment would be $500 compared to $100 in the ITAR. Second, the LVS proposal would allow exports of receivers and complete breech mechanisms to Canada whereas § 123.17(a) does not. However, the $500 LVS limit is based on the actual selling price or fair market value, whereas the ITAR $100 limit is based on ''wholesale'' value. BIS believes that the LVS value standard is more precise and easier to apply than the ITAR standard and is more in keeping with current prices. In addition, with respect to Canada, an LVS limit of $500 per shipment is needed to comply with the Section 517 of the Commerce, Justice, Science, and Related Agencies Appropriations Act of 2015, which prohibits expending any appropriated funds to require licenses for the export of certain non-automatic firearms parts, components, accessories and attachments to Canada when valued at under $500.

Guns and armament and related items controlled under ECCN 0A602 would be eligible for License Exception LVS, with a limit of $500 net value per shipment.

Ammunition controlled under ECCN 0A505 would not be eligible for License Exception LVS; however, ammunition parts and components would be eligible with a limit of $100 net value per shipment.

Test, inspection and production equipment controlled under ECCNs 0B501, 0B602 and 0B505 for firearms, guns and armament and ammunition/ ordnance would be eligible for License Exception LVS with a limit of $3,000 net value per shipment, which is consistent with LVS eligibility for most 600 series ECCNs.

*License Exception: Temporary Imports, Exports, Reexports, and Transfers (In-Country) (TMP)*

This proposed rule would amend the regulations at § 740.9 to state that License Exception TMP would not be available to export or reexport the items that are the subject of this rule to destinations in Country Group D:5 (*See* Supplement No. 1 to part 740). License Exception TMP would also not be available to export or reexport some firearms and ammunition shipped from or manufactured in the Russia (Russian Federation), Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan. In addition, this proposed rule would prohibit the use of License Exception TMP to export or reexport any item controlled by proposed ECCN 0A501 and any shotgun with a barrel length less than 18 inches controlled under ECCN 0A502 that was shipped from or manufactured in Country Group D:5. It also would prohibit use of License Exception TMP to export or reexport any item controlled by proposed ECCN 0A501 that is shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, except for any firearm model controlled by proposed 0A501 that is also excluded under Annex A in Supplement No. 4 to part 740 (the prohibition would not apply to such firearms), and any shotgun with a barrel length less than 18 inches controlled under 0A502 that was shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan. These prohibitions would apply to temporary exports of firearms from the United States, and the export of firearms temporarily in the United States.

This proposed rule would limit temporary exports of firearms controlled under ECCN 0A501 and any shotgun with a barrel length less than 18 inches controlled under ECCN 0A502 pursuant to License Exception TMP to exhibition and demonstration (§ 740.9(a)(5) of the EAR) and inspection, test, calibration, and repair (§ 740.9(a)(6) of the EAR). Consistent with the ITAR requirements previously applicable to temporary exports of the firearms covered by this rule (see 22 CFR 123.17(c), 123.22), exporters would continue to be required to file Electronic Export Information (EEI) to the Automated Export System (AES) for transactions involving such firearms that are authorized pursuant to License Exception TMP (*See* § 758.1(a)(10) of the EAR).

The proposed rule would also authorize the use of License Exception TMP for the export of ECCN 0A501 firearms temporarily in the United States for a period of not more than one year subject to the requirement that the firearms not be imported from or ultimately destined for certain proscribed or restricted countries. Certain information as described below would also be collected by CBP on behalf of BIS and done under existing or new Commerce paperwork collections. The proposed rule would also make eligibility to export under License Exception TMP for ECCN 0A501.a or .b or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 subject to the following conditions:

Upon the entry portion of a temporary import, the temporary importer would be required to provide the required statement to U.S. Customs and Border Protection (CBP), as proposed in paragraph (b)(5)(iv)(A).

The temporary importer would be required to include on the invoice or other appropriate import-related documentation (or electronic equivalents) provided to CBP a complete list and description of the 0A501 firearms being imported, including their serial numbers, model, make, caliber, quantity, and U.S. dollar value, as proposed in paragraph (b)(5)(iv)(B).

If the firearms are temporarily imported for a trade show, exhibition, demonstration, or testing, the temporary importer must provide to CBP the relevant invitation or registration documentation for the event and an accompanying letter that details the arrangements to maintain effective control of the firearms while they are in the United States, as proposed in paragraph (b)(5)(iv)(C).

At the time of export, the temporary importer or its agent as proposed in paragraph (b)(5)(v) would be required to provide the temporary import documentation (*i.e.,* the invoice used at the time of entry for the temporary importation or other appropriate temporary import-related documentation (or electronic equivalents)) related to paragraph (b)(5)(iv)(B) to CBP. This information would be used by CBP to confirm that such firearms were in fact temporarily imported under the EAR for subsequent export under License Exception TMP.

The proposed rule would include a note to License Exception TMP to direct temporary importers and exporters to contact CBP at the port of import or export for the proper procedures to provide any data or documentation required by BIS.

*License Exception: Governments, International Organizations, International Inspections Under the Chemical Weapons Convention, and the International Space Station (GOV)*

This proposed rule would revise the regulations at § 740.11 to limit the applicability of License Exception GOV for firearms, ''parts'' and ''components'' controlled by ECCN 0A501 and ammunition controlled by 0A505 to exports, reexports and transfers for official use by U.S. government agencies and official and personal use by U.S. government employees (and the immediate families and household employees of those government employees) (§ 740.11(b)(2)(i) and (ii) of the EAR). This proposed authorization under License Exception GOV would treat 0A501 firearms in the same manner that other items that are subject to the EAR may be exported to U.S. government employees under License Exception GOV. It would not impose certain restrictions that are imposed by the current ITAR license exemption. The ITAR exemption authorizes exports of only non-automatic firearms and ''parts'' and ''components.'' License Exception GOV would authorize non-automatic and semi-automatic firearms and ''parts'' and ''components.''

The ITAR exemption (22 CFR 123.18) authorizes shipments consigned to and for the use of servicemen's clubs, and for service members or civilian employees if the firearms are for personal use and the shipment is accompanied by a written authorization from the commanding officer concerned. The ITAR exemption also authorizes exports to other U.S. government employees for personal use if the chief of the U.S. diplomatic mission in the country of destination has approved in writing to the Department of State the specific types and qualities of firearms into that country. The exporter must present a copy of the written statement to the CBP Port Director. License Exception GOV would impose none of the foregoing limitations. BIS believes that the limitations are unnecessary. The EAR control exports for national security and foreign policy reasons. BIS believes that the restrictions imposed in the ITAR exemption primarily pertain to concerns over the security of U.S. government personnel and property located outside the United States. Those concerns may be addressed more appropriately through policies and procedures implemented by the U.S. government agencies whose personnel and properties are located outside the United States. Export license requirements are not needed to implement such policies.

All other items that are the subject of this rule would be subject to the limits on use of License Exception GOV that apply to 600 series items generally, *i.e.,* § 740.11(b)—to, for or on behalf of the U.S. Government (including contractors, government employees, their families and household employees) or § 740.11(c) to a government in Country Group A:1 cooperating governments or an agency of NATO. However, this rule would add some additional restrictions for E:1 and E:2 countries. This proposed rule would exclude the use of License Exception GOV for any item listed in a 0x5zz ECCN for E:1 countries, unless authorized under paragraph (b)(2)(i) or (ii) when the items are solely for U.S. government official use. In addition, to better ensure compliance with section 6(j) of the EAA and address concerns with certain end users and uses in Country Group E:1 and E:2 countries, this proposed rule would add a new Note 1 to paragraph (b)(2), which would restrict the use of License Exception GOV for E:1 and E:2 countries for multilaterally controlled items and anti-terrorism (AT) controlled items when destined to certain end users or end uses of concern.

*License Exception: Baggage (BAG)*

This proposed rule would revise License Exception BAG, § 740.14, to allow United States citizens and permanent resident aliens leaving the United States temporarily to take up to three firearms controlled by proposed ECCN 0A501 and up to 1,000 rounds of ammunition for such firearms controlled under ECCN 0A505.a for personal use while abroad. This proposed change to License Exception BAG would be made to be consistent with 22 CFR 123.17(c), which authorizes U.S. persons to take up to three non-automatic firearms and up to 1,000 cartridges therefor abroad for personal use. This proposed amendment to License Exception BAG would apply to both non-automatic and semi-automatic firearms. Consistent with the ITAR requirements previously applicable to temporary exports of the firearms and associated ammunition covered by this rule, BIS is proposing to modify § 758.1 of the EAR to make clear that exporters would continue to be required to file Electronic Export Enforcement (EEI) to the Automated Export System (AES) for transactions involving such firearms and associated ammunition that are otherwise authorized pursuant to License Exception BAG. BIS is aware that U.S. Customs and Border Protection (CBP) has temporarily suspended the requirement to file EEI to the AES for personally-owned firearms and ammunition that are ''subject to the ITAR'' being exported under 22 CFR 123.17(c), due to operational challenges related to implementation. *See* the following CBP website page for additional information: *https:// help.cbp.gov/app/answers/detail/a_id/ 323/~/traveling-outside-of-the-u.s.--- temporarily-taking-a-firearm%2C- rifle%2C-gun%2C.* BIS is proposing in this rule to ensure consistency with the current ITAR filing requirements and any measures that are being used at this time to track such temporary exports of personally-owned firearms and ammunition. Whether and how BIS includes this requirement in a final rule would be based on whether CBP is able to update its processes, and other agencies as needed, to allow for individuals to easily file EEI in AES by the time a final rule is published. If CBP is not able to do so, then the final rule may direct exporters to continue to use CBP's existing process, which is the use of the CBP Certification of Registration Form 4457, until a workable solution is developed or CBP suggests an alternative simplified solution for gathering such information for temporary exports of personally-owned firearms and ammunition. BIS will also take into consideration any public comments submitted on this aspect of the proposed rule regarding imposing an EEI filing requirement in AES, as well as comments on the current practice of using the CBP Form 4457, as well as any other suggestions on alternative approaches for tracking such information.

Though BIS does not require prior authorization to use License Exception BAG, in order to facilitate the physical movement and subsequent importation of firearms authorized under this license exception, this information would need to be collected by CBP by requiring EEI filing in AES.

Travelers leaving the United States temporarily would be required to declare the 0A501 and 0A505 items to a CBP officer prior to departure from the United States and present the firearms, ''parts,'' ''components,'' ''accessories,'' ''attachments,'' and ammunition they are exporting to the CBP officer for inspection, confirming that the authority for the export is License Exception BAG, that the exporter is compliant with its terms. Should exporters desire to contact CBP prior to departure, contact information and a list of U.S. air, land and sea ports of entry can be found at: *http://www.cbp.gov/xp/ cgov/toolbox/ports/.*

This proposed rule also would revise License Exception BAG to allow nonresident aliens leaving the United States to take firearms, ''accessories,'' ''attachments,'' ''components,'' ''parts,'' and ammunition controlled by ECCN 0A501 or 0A505 that they lawfully brought into the United States. This change would be consistent with 22 CFR 123.17(d), which authorizes foreign persons leaving the United States to take firearms and ammunition controlled under Category I(a) of the USML (both non-automatic and semi-automatic) that they lawfully brought into the United States. This proposed rule would not make changes to the availability of License Exception BAG for shotguns and shotgun shells authorized under paragraph (e)(1) or (2).

As a clarification to License Exception BAG, this proposed rule would add two sentences to the introductory text of paragraph (b)(4) to highlight the special provisions that apply in paragraph (e) for firearms and ammunition and in paragraph (h) for personal protective equipment under ECCN 1A613.c or .d. These two sentences would not change the existing requirement and have been included to assist the public in better identifying these special provisions.

*License Exception STA*

This proposed rule would revise the regulations at § 740.20 to make firearms controlled under ECCN 0A501 and most ''parts,'' ''components,'' ''accessories,'' and ''attachments'' controlled under ECCN 0A501 ineligible for License Exception STA. Only those ''parts,'' ''components,'' ''accessories,'' and ''attachments'' that are controlled under paragraph .x (*i.e.,* those ''specially designed'' for 0A501 or ITAR-controlled firearms that are not specifically listed either on the CCL or USML) are eligible for export under License Exception STA. Items controlled under ECCNs 0A502 and 0A503 are also excluded from STA eligibility.

This proposed rule would exempt gun ''parts,'' ''components,'' ''accessories'' and ''attachments'' controlled under ECCN 0A501.x; test, inspection and production equipment and ''parts,'' ''components,'' ''accessories'' and ''attachments'' in ECCN 0B501; ''software'' in 0D501; and ''technology'' in ECCN 0E501 from the License Exception STA end-use limitation set forth in § 740.20(b)(3)(ii) that applies to ''600 series'' items. That end-use limitation is intended to ensure that the military-related items controlled by most 600 series ECCNs are ultimately used by appropriate agencies of the governments of certain U.S allies or multilateral export control regime

members. Because the aforementioned exempted items are not of a military nature, the limitation is not necessary. As a conforming change, this proposed rule also would remove ECCNs 0A985 and 0E987 in paragraph (b)(2)(ii) and add in their place 0A503 and 0E504. This change does not change the availability of License Exception STA, but simply reflects the fact that these items would now be controlled under ECCNs 0A503 and 0E504 and the License Exception STA exclusion would continue to apply to them.

**Support Documentation for Firearms, Parts, Components, Accessories, and Attachments Controlled by ECCN 0A501**

This proposed rule would require that for commodities controlled by ECCN 0A501 exported or reexported transactions for which a license would be required, the exporter or reexporter must obtain, prior to submitting an application, an import permit (or copy thereof) if the importing country requires such permits for import of firearms. That import permit would be a record that must be kept by the exporter or reexporter as required by part 762 of the EAR. The purpose of this requirement is to assure foreign governments that their regulations concerning the importation of firearms are not circumvented. Obtaining an import certificate or equivalent official document issued by member states of the Organization of American States meets this requirement. To implement this change, this proposed rule would revise § 748.12 to include the commodities controlled under ECCNs 0A501 (except 0A501.y), 0A502, 0A504 (except 0A504.f) and 0A505 (except 0A505.d) within the list of commodities that are subject to the requirement and would add a new paragraph (e) requiring that import certificates or permits be obtained from countries other than OAS member states if those states require such a certificate or permit.

**Licenses for Firearms and Ammunition Would Be Limited to the Authorized End Use and End Users**

Consistent with other BIS licenses, including ''600 series'' and 9x515 items, licenses for firearms and ammunition that move from the USML to the CCL would be limited to the authorized end use and end users specified on the license and supporting documentation submitted as part of the license application. This means any change in the authorized end use or end user for a licensed transaction would require a BIS authorization. This existing

requirement of BIS licenses is specified in § 750.7(a) and on the boiler plate text included on all BIS licenses. These requirements would also be applied to firearms and ammunition licenses. A change in end use or end user, including a change of authorized end use or end user within a single foreign country for a firearm or ammunition authorized under a BIS license, would require a BIS authorization. BIS does not propose any changes in this rule to these well-established and understood requirements on using BIS licenses. Applicants for firearms and ammunition licenses are also advised that BIS would continue to exercise its authority, as specified in § 748.11 in the Note 2 to paragraph (a), on a case-by-case basis to require a Statement by Ultimate Consignee and Purchaser as warranted.

The exporter, reexporter or transferor using a BIS license, including for firearms and ammunition licenses, would also be required pursuant to § 750.7(a) to inform the other parties identified on the license, such as the ultimate consignees and end users of the license's scope and of the specific conditions applicable to them. As an additional safeguard for firearms and ammunition licenses, BIS would when warranted include a license condition that would require the exporter, reexporter or transferor to receive from the other parties identified on the license a confirmation in writing that those other parties had received and agreed to the terms and conditions of the license. For example, the condition may state ''Prior to using this license, the exporter (reexporter or transferor) and other parties to the license must agree to the conditions in writing and the exporter (reexporter or transferor) must keep this on file with their other records.'' The documents described in this paragraph would be required to be kept for EAR recordkeeping purposes under part 762 of the EAR.

**Conventional Arms Reporting for Certain Exports of ECCN 0A501.a and .b Commodities**

In § 743.4 (Conventional arms reporting), this rule would revise paragraphs (c)(1)(i) and (c)(2)(i) to add ECCN 0A501.a and .b as commodities that would require Wassenaar Arrangement reporting and United Nations reporting under this conventional arms reporting section of the EAR. This requirement would assist the United States Government to meet its multilateral commitments for the special reporting requirements for exports of certain items listed on the Wassenaar Arrangement Munitions List and the UN Register of Conventional

Arms when these items are authorized for export under License Exceptions LVS, TMP, RPL, STA, or GOV (see part 740 of the EAR) or the Validated End User authorization (see § 748.15 of the EAR) and for United Nations reporting. License Exceptions LVS and STA are identified in § 743.4(b)(1), but because ECCN 0A501.a and .b commodities are not eligible for those two license exceptions, the reporting requirements under § 743.4(c)(1)(i) and (c)(2)(i) would be limited to exports authorized License Exceptions TMP, GOV and RPL or the Validated End User authorization. This rule also adds contact information for these reports.

### Changes to Export Clearance Requirements for Firearms Being Moved to the CCL

In part 758 (Export Clearance Requirements), this rule would make certain changes to clarify that a filing of Electronic Export Information (EEI) to the Automated Export System (AES) would be required for exports of the firearms transferred from the USML pursuant to this rule regardless of value or destination, including exports to Canada. As noted above, this requirement will also apply, as is presently the case under the ITAR, for temporary exports of such items pursuant to License Exception TMP or BAG.

In addition, this rule proposes to expand the data elements required as part of an AES filing for these items to include serial numbers, make, model and caliber. This requirement would ensure law enforcement officials are able to effectively verify that firearms exports are properly authorized and in conformance with all applicable regulations, including those associated with the temporary export and subsequent return of controlled firearms and unused ammunition. Similar to the description above regarding whether BIS would publish an EEI filing requirement in AES for personally-owned firearms and ammunition exported under License Exception BAG in the final rule, these expanded data elements required as part of an AES filing would be included in the final rule if CBP has made such data easily enterable in AES. If the necessary changes were not made by the time the final rule was to be published, CBP may continue to rely on CBP Form 4457 as described above.

### Entry Clearance Requirements for Temporary Imports

Temporary imports are transactions that involve both the temporary entry of an item into the U.S. from a foreign country and the subsequent export of that item from the U.S. To preserve the treatment of temporary import transactions for items in this rule that transfer from the USML in the ITAR to become subject to the EAR, BIS would need to create a process under the EAR to impose entry clearance requirements for temporary imports of such items based on BIS's authorities over U.S. exports.

Therefore, BIS proposes a temporary imports entry clearance requirement by adding new § 758.10. This new section would be limited to items in this rule that are both "subject to the EAR" and on the USMIL in 27 CFR 447.21. To allow such items to temporarily enter the U.S., this rule proposes a process to collect identifying information for the sole purpose of tracking items being temporarily imported for subsequent export. BIS would not impose a license requirement for such imports, but this information would be necessary to facilitate the export after a temporary import. The entry clearance requirement would be an EAR requirement and any false representation made under the new § 758.10 would be a violation of the EAR.

BIS is particularly interested in receiving comments on these temporary import provisions in § 758.10 and the subsequent export under paragraph (b)(5) of License Exception TMP. A license requirement is not being proposed for these temporary imports, but BIS is proposing an entry clearance requirement whereby, as described above, the exporter at the time of import would need to make a legal representation to the U.S. Government under the EAR that the item was being temporarily imported into the United States for subsequent export under paragraph (b)(5) of License Exception TMP. BIS also welcomes comments on whether there are advantages to how the ITAR regulates temporary imports of USMIL items that should be incorporated into the Commerce final rule.

### Changes to EAR Recordkeeping Requirements for Firearms Being Moved to the CCL

In part 762 (Recordkeeping), this rule would make two changes to the recordkeeping requirements under the EAR. These changes would specify that certain records, that are already created and kept in the normal course of business, must be kept by the "exporter" or any other party to the transaction (see § 758.3 of the EAR), that creates or receives such records.

Specifically, in § 762.2 (Records to be retained), this rule would redesignate paragraph (a)(11) as (a)(12) and add a new paragraph (a)(11) to specify the following information must be kept as an EAR record: Serial number, make, model, and caliber for any firearm controlled in ECCN 0A501.a and for shotguns with barrel length less than 18 inches controlled in 0A502. The "exporter" or any other "party to the transaction" that creates or receives such records would be the person responsible for retaining this record.

In § 762.3 (Records exempt from recordkeeping requirements), this rule would narrow the scope of an exemption from the EAR recordkeeping requirements for warranty certificates. This rule would narrow this exclusion to specify the exclusion from the recordkeeping requirements does not apply (meaning the record would need to be kept under the recordkeeping requirements) for warranty certificates for any firearm controlled in ECCN 0A501.a and for shotguns with barrel length less than 18 inches controlled in 0A502, when the certificate issued is for an address located outside the United States. This would be an expansion of the EAR recordkeeping requirements, but because warranty certificates are already created and kept as part of normal business recordkeeping purposes, this expansion is not anticipated to create any new or increased burden under the EAR, because it is a document that is created in the normal course of business and are records that should be easily accessible. These recordkeeping requirements would assist the United States Government because this information is important to have access to for law enforcement concerns for these types of items.

The public may submit comments on whether they agree with this BIS determination that these changes described above to the EAR recordkeeping requirements would not result in increased burdens under the EAR.

### Alignment With the Wassenaar Arrangement Munitions List

This rule maintains the alignment with respect to firearms, guns and armament, and ammunition that exists between the USML and the WAML. USML Category I firearms that would be added to the CCL under ECCN 0A501 are controlled under category ML1 of the WAML. USML Category II guns and armament that would be added to the CCL under 0A602 are controlled under WAML category ML2.

Rather than strictly following the Wassenaar Arrangement Munitions List pattern of placing production

equipment, ''software'' and ''technology'' for munitions list items in categories ML 18, ML 21 and ML 22, respectively, this rule follows the existing CCL numbering pattern for test, inspection and production equipment (0B501, 0B602 and 0B505), ''software'' (0D501, 0D602 and 0D505) and ''technology'' (0E501, 0E602 and 0E505). BIS believes that including the ECCNs for test, inspection and production equipment, ''software,'' and ''technology'' in the same category as the items to which they relate results in an easier way to understand the CCL than using separate categories.

BIS believes that the controls in proposed ECCNs 0A501, 0A602 and 0A505 are consistent with controls imposed by the Wassenaar Arrangement.

## Appropriate Delayed Effective Date for a Final Rule

BIS also invites comments from the public on the appropriate delayed effective date needed to prepare for the changes included in this proposed rule if published in final form. A 180-day delayed effective date was used for many of the other rules that moved items from the USML to the CCL, but certain rules included shorter delayed effective dates. BIS requests the public to provide comments on whether 180-delayed effective date is warranted, or if some shorter period, such as 90-day delated effective date is warranted for this proposed rule if published in final form.

## Request for Comments

All comments on this proposed rule must be in writing and submitted via the Federal rulemaking portal *www.regulations.gov* or by mail or delivery to the address identified in the addresses section of this proposed rule. All comments (including any personal identifiable information) would be available for public inspection and copying. Anyone wishing to comment anonymously may do so by leaving the fields for information that would identify the commenter blank.

## Export Administration Act

Although the Export Administration Act of 1979 expired on August 20, 2001, the President, through Executive Order 13222 of August 17, 2001, 3 CFR, 2001 Comp., p. 783 (2002), as amended by Executive Order 13637 of March 8, 2013, 78 FR 16129 (March 13, 2013) and as extended by the Notice of August 15, 2017, 82 FR 39005 (August 16, 2017), has continued the Export Administration Regulations in effect under the International Emergency

Economic Powers Act. BIS continues to carry out the provisions of the Export Administration Act of 1979, as appropriate and to the extent permitted by law, pursuant to Executive Order 13222, as amended by Executive Order 13637.

## Executive Order Requirements

Executive Orders 13563 and 12866 direct agencies to assess all costs and benefits of available regulatory alternatives and, if regulation is necessary, to select regulatory approaches that maximize net benefits (including potential economic, environmental, public health and safety effects, distribute impacts, and equity). Executive Order 13563 emphasizes the importance of quantifying both costs and benefits, of reducing costs, of harmonizing rules, and of promoting flexibility. This proposed rule has been designated a ''significant regulatory action,'' although not economically significant, under section 3(f) of Executive Order 12866. Although the items identified in this proposed rule have been determined to no longer warrant ITAR control by the President, the proliferation of such items has been identified as a threat to domestic and international security if not classified and controlled at the appropriate level under the EAR. Commerce estimates that the combined effect of all rules to be published adding items removed from the ITAR to the EAR would increase the number of license applications to be submitted to BIS by approximately 30,000 annually.

This proposed rule does not contain policies with Federalism implications as that term is defined under E.O. 13132.

To control these items under the EAR that no longer warrant ITAR control, appropriate controls on the CCL needed to be included in the Department of Commerce proposed rule. This includes creating new ECCNs and revising certain existing ECCNs, as well as making other changes to the EAR to control items that would be moved from these three USML categories to the CCL once the section 38(f) notification process is completed and a final rule is published and becomes effective. Adding new controls and other requirements to the EAR imposes regulatory burdens on exporters and some other parties involved with those items, but compared to the burdens these exporters and other parties faced under the ITAR, these regulatory burdens, including financial costs, would be reduced significantly. The EAR is a more flexible regulatory structure whereby the items can still be controlled appropriately, but in a much

more efficient way that would significantly reduce the burdens on exporters and other parties compared to the regulatory burdens they faced when the item were ''subject to the ITAR.'' Deregulatory does not mean a decontrol of these items.

For those items in USML Categories I, II and III that would move by this rule to the CCL, BIS would be collecting the necessary information using the form associated with OMB Control No. 0694–0088. BIS estimates that this form takes approximately 43.8 minutes for a manual or electronic submission. Using the State Department's estimate that 10,000 applicants annually would move from the USML to the CCL and BIS's estimate that 6,000 of the 10,000 applicants would require licenses under the EAR, that constitutes a burden of 4,380 hours for this collection under the EAR. Those companies are currently using the State Department's forms associated with OMB Control No. 1405–0003 for which the burden estimate is 1 hour per submission, which for 10,000 applications results in a burden of 10,000 hours. Thus, subtracting the BIS burden hours of 4,380 from the State Department burden hours of 10,000, the burden is reduced by 5,620 hours. The other 4,000 applicants may use license exceptions under the EAR or the ''no license required'' designation, so these applicants would not be required to submit license applications under the EAR.

In addition to the reduced burden hours of 5,620 hours, there would also be direct cost savings to the State Department that would result from the 10,000 license applications no longer being required under the ITAR once these items are moved to the EAR. The Department of State charges a registration fee to apply for a license under the ITAR. Pursuant to the AECA, ITAR, and associated delegations of authority, every person who engages in the business of brokering activities, manufacturing, exporting, or temporarily importing any defense articles or defense services must register with the Department of State and pay a registration fee. The Department of State adopted the current fee schedule to align the registration fees with the cost of licensing, compliance and other related activities. The Department of Commerce would incur additional costs to administer these controls and process license applications. However, the Department of Commerce does not charge a registration fee to apply for a license under the EAR, and we are unable to estimate the increase in costs to the Department of Commerce to process the new license applications.

Therefore, we are unable to provide an estimate of the net change in resource costs to the government from moving these items from the ITAR to the EAR. It is the case, however, that the movement of these items from the ITAR would result in a permanent and recurring direct transfer of $2,500,000 per year from the government to the exporting public, less the increased cost to taxpayers, because they would no longer pay fees to the State Department for licenses and there is no fee charged by the Department of Commerce to apply for a license.

*Estimated Cost Savings*

For purposes of E.O. 13771 of January 30, 2017 (82 FR 9339), the Department of State and Department of Commerce proposed rules are expected to be "net deregulatory actions." The Department of Commerce has conducted this analysis in close consultation with the Department of State, because of how closely linked the two proposed rules are for the regulated public and the burdens imposed under the U.S. export control system.

E.O. 13771 and guidance provided to the agencies on interpreting the intended scope of the E.O. do not use the term "net deregulatory action," but rather refer to deregulatory actions. As outlined above, the Departments of State and Commerce proposed rules are closely linked and are best viewed as a consolidated regulatory action although being implemented by two different agencies. Also, as noted above, items may not be subject to both sets of regulations. Therefore, the movement of a substantial number of items from the USML determined to no longer warrant ITAR control to the CCL would result in a significant reduction of regulatory burden for exporters and other persons involved with such items that were previously "subject to the ITAR."

The Departments of State and Commerce for purposes of E.O. 13771 have agreed to equally share the cost burden reductions that would result from the publication of these two integral regulatory actions. The Department of State would receive 50% and the Department of Commerce would receive 50% for purposes of calculating the deregulatory benefit of these two integral regulatory actions.

*Under this agreed formulation, the burden reductions will be calculated as follows:*

For purposes of the Department of Commerce, the "net deregulatory actions" would result in a permanent and recurring cost savings of $1,250,000 per year, and a reduction in burden hours by 2,810 hours. The reduction in

burden hours by 2,810 would result in an additional cost savings of [1] $126,281 to the exporting public. Therefore, the total dollar cost savings would be $1,376,281 for purposes of E.O. 13771 for the Department of Commerce.

For purposes of the Department of State, the "net deregulatory actions" would result in a permanent and recurring cost savings of $1,250,000 per year, and a reduction in burden hours by 2,810 hours. The reduction in burden hours by 2,810 would result in an additional cost savings of $126,281 to the exporting public. Therefore, the total dollar cost savings would be $1,376,281 for purposes of E.O. 13771 for the Department of State.

The Department of Commerce welcomes comments from the public on the analysis under E.O. 13771 described here. Comments from companies that would no longer need to register with the Department of State because the company only deals with items under USML Category I, II, and/or III that would move to the CCL would be particularly helpful for the Department of Commerce and Department of State to receive. Comments are also encouraged on any of the other collections that may be relevant for the items that would move from the USML to the CCL. In particular, data on Department of State forms that would no longer need to be submitted would be helpful to receive.

**Paperwork Reduction Act Requirements**

Notwithstanding any other provision of law, no person may be required to respond to or be subject to a penalty for failure to comply with a collection of information, subject to the requirements of the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*) (PRA), unless that collection of information displays a currently valid OMB control number.

This proposed regulation involves four collections currently approved by OMB under these BIS collections and control numbers: Simplified Network Application Processing System (control number 0694–0088), which includes, among other things, license applications; License Exceptions and Exclusions (control number 0694–0137); Import Certificates and End-User Certificates (control number 0694–0093); Five Year Records Retention Period (control number 0694–0096); and the U.S. Census Bureau collection for

the Automated Export System (AES) Program (control number 0607–0152).

This proposed rule would affect the information collection, under control number 0694–0088, associated with the multi-purpose application for export licenses. This collection carries a burden estimate of 43.8 minutes for a manual or electronic submission for a burden of 31,833 hours. BIS believes that the combined effect of all rules to be published adding items removed from the ITAR to the EAR that would increase the number of license applications to be submitted by approximately 30,000 annually, resulting in an increase in burden hours of 21,900 (30,000 transactions at 43.8 minutes each) under this control number. For those items in USML Categories I, II and III that would move by this rule to the CCL, the State Department estimates that 10,000 applicants annually will move from the USML to the CCL. BIS estimates that 6,000 of the 10,000 applicants would require licenses under the EAR, resulting in a burden of 4,380 hours under this control number. Those companies are currently using the State Department's forms associated with OMB Control No. 1405–0003 for which the burden estimate is 1 hour per submission, which for 10,000 applications results in a burden of 10,000 hours. Thus, subtracting the BIS burden hours of 4,380 from the State Department burden hours of 10,000, the burden would be reduced by 5,620 hours. (*See* the description above for the E.O. 13771 analysis for additional information on the cost benefit savings and designation of the two rules as "net deregulatory actions".)

This proposed rule would also affect the information collection under control number 0694–0137, addressing the use of license exceptions and exclusions. Some parts and components formerly on the USML, and "software" and "technology" for firearms and their parts and components formerly on the USML, would become eligible for License Exception STA under this proposed rule. Additionally, test, inspection and production equipment and "software" and "technology" related to those firearms and "parts" may become eligible for License Exception STA. BIS believes that the increased use of License Exception STA resulting from the combined effect of all rules to be published adding items removed from the ITAR to the EAR would increase the burden associated with control number 0694–0137 by about 23,858 hours (20,450 transactions at 1 hour and 10 minutes each).

[1] The Department of Commerce used the Department of State's estimate that the burden hour cost for completing a license application is $44.94 per hour. Multiplied by the estimated burden hour savings of 2,810 equals a cost savings to the public of $126,281.

BIS expects that this increase in burden as a result of the increased use of License Exception STA would be more than offset by a reduction in burden hours associated with approved collections related to the ITAR. This proposed rule addresses controls on firearms and ''parts,'' production equipment and ''parts'' and related ''software'' and ''technology'' and specifically non-automatic and semi-automatic firearms and their ''parts'' and ''parts,'' ''components,'' ''attachments,'' and ''accessories'' that are used in both semi-automatic and fully automatic firearms. BIS has made this determination on the basis that with few exceptions, the ITAR allows exemptions from license requirements only for exports to Canada, and requires a specific State Department authorization for most exports of firearms used for hunting and recreational purposes and exports of ''parts,'' ''components,'' ''attachments,'' and ''accessories'' that are common to military fully automatic firearms and their semi-automatic civilian counterparts, even when destined to NATO and other close allies and also requires State Department authorization for the exports necessary to produce ''parts'' and ''components'' for defense articles in the inventories of the United States and its NATO and other close allies. However, under the EAR, as specified in this proposed rule, a number of low-level parts would be eligible for export under License Exception STA and would therefore not require a license to such destinations.

This proposed rule would also affect the information collection under control number 0694–0096, for the five-year recordkeeping retention because of two changes this rule would make to part 762 of the EAR. This rule would add a new paragraph (a)(55) to specify the following information must be kept as an EAR record: Serial number, make, model, and caliber for any firearm controlled in ECCN 0A501.a and for shotguns with barrel length less than 18 inches controlled in 0A502. This rule would also require warranty certificates for these items to be retained for EAR recordkeeping. However, because these records are already created and kept as part of normal business recordkeeping, this expansion is not anticipated to create any new or increased burden under the EAR.

Even in situations in which a license would be required under the EAR, the burden would likely be reduced compared to a license requirement under the ITAR. In particular, license applications for exports of ''technology'' controlled by ECCN 0E501 would likely be less complex and burdensome than the authorizations required to export ITAR-controlled technology, *i.e.,* Manufacturing License Agreements and Technical Assistance Agreements (as a result of the differences in the scope of the ITAR's and the EAR's technology controls).

This proposed rule would affect the information collection under control number 0694–0093, import certificates and end-user certificates because of the changes included in this proposed rule. First, this regulation would require that for shipments requiring a license of firearms, ''parts,'' ''components,'' ''accessories,'' and ''attachments'' controlled under ECCN 0A501, the exporter obtain a copy of the import certificate or permit if the importing country requires one for importing firearms. License applications for which an import or end-user certificate is already required under § 748.12 of the EAR would not be subject to this new requirement. BIS expects that this requirement would result in no change in the burden under control number 0694–0093. Second, this proposed rule also would require that prior to departure, travelers leaving the United States and intending to temporarily export firearms, parts, and components controlled under ECCN 0A501 under License Exception BAG declare the firearms and parts to a CBP officer and present the firearms and parts to the CBP officer for inspection. As the State Department also requires that persons temporarily exporting firearms, parts and components declare the items to CBP, BIS does not expect that the requirement in this proposed rule would result in a change in burden under control number 0694–0093.

Third, this proposed rule would affect the information collection under control number 0694–0093 by creating a new temporary import entry clearance requirement by adding § 758.10. This new section would be limited to items in this rule that are both ''subject to the EAR'' and on the United States Munitions List (USMIL) in 27 CFR 447.21. To allow such items to temporarily enter the U.S., this rule proposes a process to collect identifying information for the sole purpose of tracking items being temporarily imported for subsequent export under License Exception TMP. BIS would not impose a license requirement for such imports, but collecting this information would be necessary to facilitate the export after a temporary import. The temporary import entry clearance requirement in § 758.10 would also conform to the requirement in License Exception TMP under § 740.9(b)(5), so providing this information to CBP at the entry after a temporary import would facilitate the export phase of a temporary import under License Exception TMP. At the time of entry for a temporary import, the importer would need to provide a statement to CBP indicating that this shipment was being temporarily imported in accordance with the EAR for subsequent export in accordance with and under the authority of License Exception TMP. The entry clearance requirement would be an EAR requirement and any false representation made under the new § 758.10 would be a violation of the EAR. The importer would also need to provide CBP an invoice or other appropriate import-related documentation (or electronic equivalents) that includes a complete list and description of the items being imported, including their model, make, caliber, serial numbers, quantity, and U.S. dollar value. If imported for a trade show, exhibition, demonstration, or testing, the temporary importer would need to provide CBP with the relevant invitation or registration documentation for the event and an accompanying letter that details the arrangements to maintain effective control of the firearms while they are temporarily in the United States. Lastly, at the time of exportation, as requested by CBP, the exporter, or an agent acting on his or her behalf, would have to provide the entry document number or a copy of the CBP document under which the ''item'' ''subject to the EAR'' on the USMIL was temporarily imported under this proposed entry clearance requirement. As the State Department also requires that persons temporarily importing items in this rule provide the same type of information to CBP, BIS expects that the requirement in this proposed rule would result in a change in burden under control number 0694–0093, but because of the decrease under the burden imposed under the State collection the burden on the public will not change.

This proposed rule would also affect the information collection under control number 0607–0152, for filing EEI in AES because of one change this rule would make to part 758 of the EAR. Under new paragraph (b)(10), EEI would be required for all exports of items controlled under ECCNs 0A501.a or .b, shotguns with a barrel length less than 18 inches controlled under ECCN 0A502, or ammunition controlled under ECCN 0A505 except for .c, regardless of value or destination, including exports to Canada. Exports of these USML firearms and ammunition prior to

moving to the CCL required filing EEI in AES for all items ''subject to the ITAR,'' so the burden in this collection would not change for the exporter. For some exporters, however, there may be an EEI filing requirement that would otherwise not have existed, such as for the export of a firearm that would be controlled under ECCN 0A501.a authorized under License Exception BAG or the export of certain firearms or ammunition to Canada.

The proposed rule would include a requirement that, for all exports of items controlled under ECCNs 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled under ECCN 0A502, in addition to any other required data for the associated EEI filing requirements, the exporter provide to CBP the serial number, make, model, and caliber for each firearm being exported. The Department of Commerce is carrying over the existing CBP filing requirements for items transferred from the USML to the CCL. The Department of Homeland Security currently is collecting these data elements for firearms ''subject to the ITAR'' under OMB Control Number 1651–0010 (CBP Form 4457, Certificate of Registration for Personal Effects Taken Abroad). There is no change to the information being collected or to the burden hours as a result of this rule. Separate from this rule, CBP will update the information collection to reflect the use of AES or some other simplified electronic alternative to CBP Form 4457.

Any comments regarding the collection of information associated with this proposed rule, including suggestions for reducing the burden, may be sent to Jasmeet K. Seehra, Office of Management and Budget (OMB), by email to *Jasmeet_K._Seehra@ omb.eop.gov,* or by fax to (202) 395–7285.

**Administrative Procedure Act and Regulatory Flexibility Act Requirements**

The Regulatory Flexibility Act (RFA), as amended by the Small Business Regulatory Enforcement Fairness Act of 1996 (SBREFA), 5 U.S.C. 601 *et seq.,* generally requires an agency to prepare a regulatory flexibility analysis of any rule subject to the notice and comment rulemaking requirements under the Administrative Procedure Act (5 U.S.C. 553) or any other statute, unless the agency certifies that the proposed rule would not have a significant economic impact on a substantial number of small entities. Under section 605(b) of the RFA, however, if the head of an agency certifies that a proposed rule would not have a significant impact on a

substantial number of small entities, the statute does not require the agency to prepare a regulatory flexibility analysis. Pursuant to section 605(b), the Chief Counsel for Regulation, Department of Commerce, submitted a memorandum to the Chief Counsel for Advocacy, Small Business Administration, certifying that this proposed rule would not have a significant impact on a substantial number of small entities.

*Number of Small Entities*

The Bureau of Industry and Security (BIS) does not collect data on the size of entities that apply for and are issued export licenses. Although BIS is unable to estimate the exact number of small entities that would be affected by this proposed rule, it acknowledges that this proposed rule would affect some unknown number.

*Economic Impact*

This proposed rule and the companion State rule would assist in making the United States Munitions List (22 CFR part 121) (USML) into a more ''positive'' list, *i.e.,* a list that does not use generic, catch-all controls on any ''part,'' ''component,'' ''accessory,'' ''attachment,'' or ''end item'' that was in any way specifically modified for a defense article, regardless of the article's military or intelligence significance or non-military applications. At the same time, articles that are determined no longer to warrant control on the USML would become controlled on the Commerce Control List (CCL). Such items, along with certain military items that currently are on the CCL, would be identified in specific Export Control Classification Numbers (ECCNs) known as the ''600 series'' ECCNs. In addition, some items currently on the CCL would move from existing ECCNs to the new ''600 series'' ECCNs. This proposed rule addresses USML Category I, II and III articles that would be removed from the USML and added to the CCL.

Category I of the USML, entitled ''Firearms, Close Assault Weapons and Combat Shotguns,'' consists of small arms (typically up to a caliber of 0.50 inches) and related parts, components, accessories, attachments, production equipment, software, and technology. Fully automatic firearms would remain on the USML as would parts and components that are used only in fully automatic firearms. However, non-automatic and semi-automatic firearms, their parts and components and the parts and components common to them and to fully automatic firearms would become subject to the EAR. Department of State officials have informed BIS that license applications for such parts and

components are a high percentage of the license applications for USML articles reviewed by that department. Such parts and components are more likely to be produced by small businesses than are complete firearms.

Category II of the USML, entitled ''Guns and Armament,'' encompasses large guns (caliber over 0.50 inches) such as howitzers, mortars, cannon and recoilless rifles along with related parts, components, accessories, attachments, production equipment, software and technology. Modern large guns would remain on the USML. Guns and armament manufactured between 1890 and 1919 would be controlled on the CCL. Unless specified elsewhere on the CCL or the USML, ''parts,'' ''components,'' ''accessories,'' ''attachments,'' production equipment, ''software'' and ''technology'' for large guns would be controlled on the CCL.

Category III of the USML, entitled ''Ammunition/Ordnance,'' encompasses ammunition for a wide variety of firearms that may have military, law enforcement or civilian applications. Ammunition that has only or primarily military applications would remain on the USML as would parts, production equipment, ''software'' and ''technology'' therefor. Ammunition for firearms that have primarily civilian and sporting application and ammunition that is used in civilian, law enforcement and military small arms would move to the CCL. In most instances, these firearms have a caliber of 0.50 inches or less although ammunition for manual firearms with a caliber up to 0.72 inches is included. The proposed rule also applies to ''parts,'' ''components,'' production equipment, and ''technology'' related to that ammunition.

Changing the jurisdictional status of the articles described in this proposed rule would reduce the burden on small entities (and other entities as well) through elimination of some license requirements, simpler license application procedures, and reduced (or eliminated) registration fees. In addition, small entities would be able to take advantage of *de minimis* treatment under the EAR for all items that this proposed rule would transfer from the USML to the CCL, provided those items meet the applicable *de minimis* threshold level. In practice, the greatest impact of this proposed rule on small entities would likely be reduced administrative costs and reduced delay for exports of items that are now on the USML but would become subject to the EAR.

Small entities (and other entities as well) that are affected by this proposed

rule would benefit from the elimination of some license requirements implemented by this proposed rule. Six types of ''parts'' and ''components,'' identified in ECCN 0A501.y, would be designated immediately as ''parts'' and ''components'' that, even if ''specially designed'' for a military use or a Category I firearm, have little or no military significance. These ''parts'' and ''components,'' which under the ITAR require a license to nearly all destinations would, under the EAR, require a license to Cuba, Iran, Sudan, North Korea, Syria and the People's Republic of China as well as to destinations subject to United Nations arms embargoes.

Furthermore, many exports and reexports of Category I firearms along with ''parts'' and ''components'' that would be placed on the CCL by this proposed rule, would become eligible for license exceptions that apply to shipments to United States government agencies, shipments valued at $500 or less, ''parts'' and ''components'' being exported for use as replacement parts, and temporary exports. Similarly, exports and reexports of Category II firearms ''parts,'' ''components,'' ''accessories,'' and ''attachments'' that would be placed on the CCL by this proposed rule would become eligible for those license exceptions, although the value limit would be $3,000. Category III ammunition placed on the CCL by this proposed rule would also become eligible with a value limit of $100.

Even for exports and reexports in which a license would be required, the process would be simpler and less costly under the EAR. When a USML Category I, II, or III article is moved to the CCL, the number of destinations for which a license is required would remain largely unchanged. However, the burden on the license applicant would decrease because the licensing procedure for CCL items is simpler and more flexible than the licensing procedure for USML defense articles.

Under the USML licensing procedure, an applicant must include a purchase order or contract with its application. There is no such requirement under the CCL licensing procedure. This difference gives the CCL applicant at least two advantages. First, the applicant has a way of determining whether the U.S. Government would authorize the transaction before it enters into potentially lengthy, complex and expensive sales presentations or contract negotiations. Under the USML licensing procedure, the applicant would need to caveat all sales presentations with a reference to the need for government approval and would more likely have to engage in substantial effort and expense with the risk that the government might reject the application. Second, a CCL license applicant need not limit its application to the quantity or value of one purchase order or contract. It may apply for a license to cover all of its expected exports or reexports to a particular consignee over the life of a license, reducing the total number of licenses for which the applicant must apply.

In addition, many applicants exporting or reexporting items that this proposed rule would transfer from the USML to the CCL would realize cost savings through the elimination of some or all registration fees currently assessed under the ITAR. This is particularly relevant to small- and medium-sized companies that manufacture or export parts and components for Category I firearms. Registration fees for manufacturers and exporters of articles on the USML start at $2,250 per year, increase to $2,750 for organizations applying for one to ten licenses per year and further increase to $2,750 plus $250 per license application (subject to a maximum of three percent of total application value) for those who need to apply for more than ten licenses per year. There are no registration or application processing fees for applications to export items currently listed on the CCL. Once the items that are the subject to this proposed rulemaking are removed from the USML and added to the CCL, entities currently applying for licenses from the Department of State could find their registration fees reduced if the number of USML licenses those entities need declines. If an entity's entire product line is moved to the CCL, then its ITAR registration and registration fee requirement would be eliminated.

Finally, *de minimis* treatment under the EAR would become available for all items that this proposed rule would transfer from the USML to the CCL. Items subject to the ITAR remain subject to the ITAR when they are incorporated abroad into a foreign-made product regardless of the percentage of U.S. content in that foreign-made product. This proposed rule would apply that same principle to ''600 series'' items only if the foreign-made item is being exported to a country that is subject to a United States arms embargo. In all other cases, foreign-made products that incorporate items that this proposed rule would move to the CCL would be subject to the EAR only if their total controlled U.S.-origin content exceeded 25 percent. Because including small amounts of U.S.-origin content would not subject foreign-made products to the EAR, foreign manufacturers would have less incentive to avoid such U.S.-origin ''parts'' and ''components,'' a development that potentially would mean greater sales for U.S. suppliers, including small entities.

For items currently on the CCL that would be moved from existing ECCNs to the new ''600 series,'' license exception availability would be narrowed somewhat. However, BIS believes that the increased burden imposed by those actions would be offset substantially by the reduction in burden attributable to the moving of items from the USML to CCL and the compliance benefits associated with the consolidation of all WAML items subject to the EAR in one series of ECCNs.

*Conclusion*

BIS is unable to determine the precise number of small entities that would be affected by this proposed rule. Based on the facts and conclusions set forth above, BIS believes that any burdens imposed by this proposed rule would be offset by a reduction in the number of items that would require a license, simpler export license applications, reduced or eliminated registration fees, and application of a *de minimis* threshold for foreign-made items incorporating U.S.-origin ''parts'' and ''components,'' which would reduce the incentive for foreign buyers to design out or avoid U.S.-origin content. For these reasons, the Chief Counsel for Regulation of the Department of Commerce certified to the Chief Counsel for Advocacy of the Small Business Administration that this proposed rule, if adopted in final form, would not have a significant economic impact on a substantial number of small entities.

**List of Subjects**

*15 CFR Parts 736 and 772*

Exports.

*15 CFR Parts 740 and 748*

Administrative practice and procedure, Exports, Reporting and recordkeeping requirements.

*15 CFR Part 742*

Exports, Terrorism.

*15 CFR Part 743*

Administrative practice and procedure, Reporting and recordkeeping requirements.

*15 CFR Part 744*

Exports, Reporting and recordkeeping requirements, Terrorism.

*15 CFR Parts 746 and 774*

Exports, Reporting and recordkeeping requirements.

*15 CFR Part 758*

Administrative practice and procedure, Exports, Reporting and recordkeeping requirements.

*15 CFR Part 762*

Administrative practice and procedure, Business and industry, Confidential business information, Exports, Reporting and recordkeeping requirements.

For the reasons stated in the preamble, parts 736, 740, 742, 743, 744, 746, 748, 758, 762, 772 and 774 of the Export Administration Regulations (15 CFR parts 730–774) are proposed to be amended as follows:

## PART 736—GENERAL PROHIBITIONS

■ 1. The authority citation for 15 CFR part 736 is revised to read as follows:

**Authority:** 50 U.S.C. 4601 *et seq.;* 50 U.S.C. 1701 *et seq.;* 22 U.S.C. 2151 note; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13020, 61 FR 54079, 3 CFR, 1996 Comp., p. 219; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13338, 69 FR 26751, 3 CFR, 2004 Comp., p. 168; Notice of May 9, 2017, 82 FR 21909 (May 10, 2017); Notice of August 15, 2017, 82 FR 39005 (August 16, 2017); Notice of November 6, 2017, 82 FR 51971 (November 8, 2017).

■ 2. Supplement No. 1 to part 736 is amended by revising paragraph (e)(3) to read as follows:

## Supplement No. 1 to Part 736—General Orders

\*    \*    \*    \*    \*

(e) \* \* \*

(3) *Prior commodity jurisdiction determinations.* If the U.S. State Department has previously determined that an item is not subject to the jurisdiction of the ITAR and the item was not listed in a then existing ''018'' series ECCN (for purposes of the ''600 series'' ECCNs, or the 0x5zz ECCNs) or in a then existing ECCN 9A004.b or related software or technology ECCN (for purposes of the 9x515 ECCNs), then the item is per se not within the scope of a ''600 series'' ECCN, a 0x5zz ECCN, or a 9x515 ECCN. If the item was not listed elsewhere on the CCL at the time of such determination (*i.e.,* the item was designated EAR99), the item shall remain designated as EAR99 unless specifically enumerated by BIS or DDTC in an amendment to the CCL or to the USML, respectively.

\*    \*    \*    \*    \*

## PART 740—LICENSE EXCEPTIONS

■ 3. The authority citation for 15 CFR part 740 continues to read as follows:

**Authority:** 50 U.S.C. 4601 *et seq.;* 50 U.S.C. 1701 *et seq.;* 22 U.S.C. 7201 *et seq.;* E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 15, 2017, 82 FR 39005 (August 16, 2017).

■ 4. Section 740.9 is amended by:
■ a. Adding five sentences at the end of paragraph (a) introductory text;
■ b. Adding one sentence at the end of paragraph (b)(1) introductory text;
■ c. Adding paragraph (b)(5); and
■ d. Redesignating notes 1 through 3 to paragraph (b) as notes 2 through 4 to paragraph (b);

The additions read as follows:

## § 740.9  Temporary imports, exports, reexports, and transfers (in-country) (TMP).

\*    \*    \*    \*    \*

(a) \* \* \* This paragraph (a) does not authorize any export of a commodity controlled under ECCNs 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled under ECCN 0A502 to, or any export of such an item that was imported into the United States from, a country in Country Group D:5 (Supplement No. 1 of this part), or from Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan. The only provisions of this paragraph (a) that are eligible for use to export such items are paragraph (a)(5) of this section (''Exhibition and demonstration'') and paragraph (a)(6) of this section (''Inspection, test, calibration, and repair''). In addition, this paragraph (a) may not be used to export more than 75 firearms per shipment. In accordance with the requirements in § 758.1(b)(10) and (g)(4) of the EAR, the exporter or its agent must provide documentation that includes the serial number, make, model, and caliber of each firearm being exported by filing these data elements in an EEI filing in AES. In accordance with the exclusions in License Exception TMP under paragraph (b)(5), the entry clearance requirements in § 758.1(b)(10) do not permit the temporary import of firearms controlled in ECCN 0A501.a or .b that are shipped from or manufactured in a Country Group D:5 country; or that are shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan (except for any firearm model controlled by 0A501 that is specified under Annex A in Supplement No. 4 to part 740, or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that are shipped from or manufactured

in a Country Group D:5 country, or from Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, because of the exclusions in License Exception TMP under paragraph (b)(5).

\*    \*    \*    \*    \*

(b) \* \* \*

(1) \* \* \* No provision of paragraph (b) of this section, other than paragraph (b)(3), (4), or (5), may be used to export firearms controlled by ECCN 0A501.a, .b or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502.

\*    \*    \*    \*    \*

(5) *Exports of firearms and certain shotguns temporarily in the United States.* This paragraph (b)(5) authorizes the export of no more than 75 end item firearms per shipment controlled by ECCN 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that are temporarily in the United States for a period not exceeding one year, provided that:

(i) The firearms were not shipped from or manufactured in a U.S. arms embargoed country, *i.e.,* destination listed in Country Group D:5 in Supplement No. 1 to part 740 of the EAR;

(ii) The firearms were not shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, except for any firearm model controlled by 0A501 that is specified under Annex A in Supplement No. 4 to part 740; and

(iii) The firearms are not ultimately destined to a U.S. arms embargoed country, *i.e.,* destination listed in Country Group D:5 in Supplement No. 1 to part 740 of the EAR, or to Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan;

(iv) When the firearms entered the U.S. as a temporary import, the temporary importer or its agent:

(A) Provided the following statement to U.S. Customs and Border Protection: ''This shipment will be exported in accordance with and under the authority of License Exemption TMP (15 CFR 740.9(b)(5))'';

(B) Provided to U.S. Customs and Border Protection an invoice or other appropriate import-related documentation (or electronic equivalents) that includes a complete list and description of the firearms being temporarily imported, including their model, make, caliber, serial numbers, quantity, and U.S. dollar value; and

(C) Provided (if temporarily imported for a trade show, exhibition,

demonstration, or testing) to U.S. Customs and Border Protection the relevant invitation or registration documentation for the event and an accompanying letter that details the arrangements to maintain effective control of the firearms while they are in the United States.

(v) In addition to the export clearance requirements of part 758 of the EAR, the exporter or its agent must provide the import documentation related to paragraph (b)(5)(iv)(B) of this section to U.S. Customs and Border Protection at the time of export.

*Note 1 to paragraph (b)(5): In addition to complying with all applicable EAR requirements for the export of commodities described in paragraph (b)(5), exporters and temporary importers should contact U.S. Customs and Border Protection (CBP) at the port of temporary import or export, or at the CBP website, for the proper procedures for temporarily importing or exporting firearms controlled in ECCN 0A501.a or .b or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502, including regarding how to provide any data or documentation required by BIS.*

\*    \*    \*    \*    \*

■ 5. Section 740.11 is amended by:
■ a. Adding a sentence at the end of the introductory text;
■ b. Adding Note 2 to paragraph (b)(2); and
■ c. Redesignating note 1 to paragraph (c)(1) as note 3 to paragraph (c)(1) and notes 1 and 2 to paragraph (e) as notes 4 and 5 to paragraph (e).

The additions read as follows:

### § 740.11 Governments, international organizations, international inspections, under the Chemical Weapons Convention, and the International Space Station (GOV).

\*    \*    \* Commodities listed in ECCN 0A501 are eligible only for transactions described in paragraphs (b)(2)(i) and (ii) of this section. Any item listed in a 0x5zz ECCN for export, reexport, or transfer (in-country) to an E:1 country are eligible only for transactions described in paragraphs (b)(2)(i) and (ii) solely for U.S. government official use of this section.

\*    \*    \*    \*    \*

*Note 2 to paragraph (b)(2): Items controlled for NS, MT, CB, NP, FC or AT reasons may not be exported, reexported, or transferred (in-country) to, or for the use of military, police, intelligence entities, or other sensitive end-users of a government in a Country Group E:1, or E:2 country.*

\*    \*    \*    \*    \*

■ 6. Section 740.14 is amended by revising paragraph (b)(4), revising the heading to paragraph (e), and by adding paragraphs (e)(3) and (4) to read as follows:

### § 740.14   Baggage (BAG).

\*    \*    \*    \*    \*

(b) \* \* \*
(4) *Tools of trade.* Usual and reasonable kinds and quantities of tools, instruments, or equipment and their containers and also technology for use in the trade, occupation, employment, vocation, or hobby of the traveler or members of the household who are traveling or moving. For special provisions regarding firearms and ammunition, see paragraph (e) of this section. For special provisions regarding encryption commodities and software subject to EI controls, see paragraph (f) of this section. For a special provision that specifies restrictions regarding the export or reexport of technology under this paragraph (b)(4), see paragraph (g) of this section. For special provisions regarding personal protective equipment under ECCN 1A613.c or .d, see paragraph (h) of this section.

\*    \*    \*    \*    \*

(e) *Special provisions for firearms and ammunition.* \* \* \*
(3) A United States citizen or a permanent resident alien leaving the United States may export under this License Exception firearms, ''parts,'' ''components,'' ''accessories,'' or ''attachments'' controlled under ECCN 0A501 and ammunition controlled under ECCN 0A505.a, subject to the following limitations:

(i) Not more than three firearms and 1,000 rounds of ammunition may be taken on any one trip.

(ii) ''Parts,'' ''components,'' ''accessories,'' and ''attachments'' exported pursuant to this paragraph must be of a kind and limited to quantities that are reasonable for the activities described in paragraph (e)(3)(iv) of this section or that are necessary for routine maintenance of the firearms being exported.

(iii) The commodities must be with the person's baggage.

(iv) The commodities must be for the person's exclusive use and not for resale or other transfer of ownership or control. Accordingly, except as provided in paragraph (e)(4) of this section, firearms, ''parts,'' ''components,'' ''accessories,'' ''attachments,'' and ammunition, may not be exported permanently under this License Exception. All firearms, ''parts,'' ''components,'' ''accessories,'' or ''attachments'' controlled under ECCN 0A501 and all unused ammunition controlled under ECCN 0A505.a exported under this License Exception must be returned to the United States.

(v) Travelers leaving the United States temporarily are required to declare the firearms, ''parts,'' ''components,'' ''accessories,'' ''attachments,'' and ammunition being exported under this license exception to a Customs and Border Protection (CBP) officer prior to departure from the United States and present such items to the CBP officer for inspection, confirming that the authority for the export is License Exception BAG and that the exporter is compliant with its terms.

(4) A nonresident alien leaving the United States may export or reexport under this License Exception only such firearms controlled under ECCN 0A501 and ammunition controlled under ECCN 0A505 as he or she brought into the United States under the provisions of Department of Justice Regulations at 27 CFR 478.115(d).

\*    \*    \*    \*    \*

### § 740.16   [Amended]

■ 7. Section 740.16 is amended by removing ''0A987'' from paragraph (b)(2)(iv) and adding in its place ''0A504''.
■ 8. Section 740.20 is amended by revising paragraph (b)(2)(ii) to read as follows:

### § 740.20   License Exception Strategic Trade Authorization (STA).

\*    \*    \*    \*    \*

(b) \* \* \*
(2) \* \* \*
(ii) License Exception STA may not be used for:
(A) Any item controlled in ECCNs 0A501.a, .b, .c, .d, or .e; 0A981; 0A982; 0A983; 0A503, 0E504, 0E982; or
(B) Shotguns with barrel length less than 18 inches controlled in 0A502.

\*    \*    \*    \*    \*

■ 9. Add Supplement No. 4 to part 740 to read as follows:

### Supplement No. 4 to Part 740—Annex A Firearm Models

(a) *Pistols/revolvers.*
(1) German Model P08 Pistol = SMCR.
(2) IZH 34M, .22 Target pistol.
(3) IZH 35M, .22 caliber Target pistol.
(4) Mauser Model 1896 pistol = SMCR.
(5) MC–57–1 pistol.
(6) MC–1–5 pistol.
(7) Polish Vis Model 35 pistol = SMCR.
(8) Soviet Nagant revolver = SMCR.
(9) TOZ 35, .22 caliber Target pistol.
(10) MTs 440.
(11) MTs 57–1.
(12) MTs 59–1.
(13) MTs 1–5.
(14) TOZ–35M (starter pistol).
(15) Biathlon–7K.
(b) *Rifles.*
(1) BARS–4 Bolt Action carbine.

(2) Biathlon target rifle, .22.
(3) British Enfield rifle = SMCR.
(4) CM2, .22 target rifle (also known as SM2, .22).
(5) German model 98K = SMCR.
(6) German model G41 = SMCR.
(7) German model G43 = SMCR.
(8) IZH–94.
(9) LOS–7, bolt action.
(10) MC–7–07.
(11) MC–18–3.
(12) MC–19–07.
(13) MC–105–01.
(14) MC–112–02.
(15) MC–113–02.
(16) MC–115–1.
(17) MC–125/127.
(18) MC–126.
(19) MC–128.
(20) Saiga.
(21) Soviet Model 38 carbine = SMCR.
(22) Soviet Model 44 carbine-SMCR.
(23) Soviet Model 91/30 rifle = SMCR.
(24) TOZ 18, .22 bolt action.
(25) TOZ 55.
(26) TOZ 78.
(27) Ural Target, .22lr.
(28) VEPR rifle.
(29) Winchester Model 1895, Russian Model rifle = SMCR.
(30) Sever—double barrel.
(31) IZH18MH single barrel break action.
(32) MP–251 over/under rifle.
(33) MP–221 double barrel rifle.
(34) MP–141K.
(35) MP–161K.
(36) MTs 116–1.
(37) MTs 116M.
(38) MTs 112–02.
(39) MTs 115–1.
(40) MTs 113–02.
(41) MTs 105–01.
(42) MTs 105–05.
(43) MTs 7–17 combination gun.
(44) MTs 7–12–07 rifle/shotgun.
(45) MTs 7–07.
(46) MTs 109–12–07 rifle.
(47) MTs 109–07 rifle.
(48) MTs 106–07 combination.
(49) MTs 19–97.
(50) MTs 19–09.
(51) MTs 18–3M.
(52) MTs 125.
(53) MTs 126.
(54) MTs 127.
(55) Berkut–2.
(56) Berkut–2M1.
(57) Berkut–3.
(58) Berkut–2–1.
(59) Berkut–2M2.
(60) Berkut–3–1.
(61) Ots–25.
(62) MTs 20–07.
(63) LOS–7–1.
(64) LOS–7–2.
(65) LOS–9–1.
(66) Sobol (Sable).
(67) Rekord.

(68) Bars–4–1.
(69) Saiga.
(70) Saiga–M.
(71) Saiga–308.
(72) Saiga–308–1.
(72) Saiga–308–2.
(74) Saiga–9.
(75) Korshun.
(76) Ural–5–1.
(77) Ural 6–1.
(78) Ural–6–2.
(79) SM–2.
(80) Biatlon–7–3.
(81) Biatlon–7–4.
(82) Rekord–1.
(83) Rekord–2.
(84) Rekord–CISM.
(85) Rekord–1–308.
(86) Rekord–2–308.
(87) Rekord–1–308–CISM.
(88) VEPR.
(89) VEPR Super.
(90) VEPR Pioner.
(91) VEPR Safari.
(92) TOZ 109.
(93) KO 44–1.
(94) TOZ 78–01.
(95) KO 44.
(96) TOZ 99.
(97) TOZ 99–01.
(98) TOZ 55–01 Zubr.
(99) TOZ 55–2 Zubr.
(100) TOZ 120 Zubr.
(101) MTs 111.
(102) MTs 109.
(103) TOZ 122.
(104) TOZ 125.
(105) TOZ 28.
(106) TOZ 300.

## PART 742—CONTROL POLICY—CCL BASED CONTROLS

■ 10. The authority citation for part 742 is revised to read as follows:

**Authority:** 50 U.S.C. 4601 *et seq.;* 50 U.S.C. 1701 *et seq.;* 22 U.S.C. 3201 *et seq.;* 42 U.S.C. 2139a; 22 U.S.C. 7201 *et seq.;* 22 U.S.C. 7210; Sec. 1503, Pub. L. 108–11, 117 Stat. 559; E.O. 12058, 43 FR 20947, 3 CFR, 1978 Comp., p. 179; E.O. 12851, 58 FR 33181, 3 CFR, 1993 Comp., p. 608; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Presidential Determination 2003–23, 68 FR 26459, 3 CFR, 2004 Comp., p. 320; Notice of August 15, 2017, 82 FR 39005 (August 16, 2017); Notice of November 6, 2017, 82 FR 51971 (November 8, 2017).

■ 11. Section 742.6 is amended by revising the first and sixth sentences of paragraph (b)(1)(i) and adding a seventh sentence at the end of paragraph (b)(1)(i) to read as follows:

### § 742.6   Regional stability.

\*        \*        \*        \*        \*

(b) \* \* \*
(1) \* \* \*

(i) Applications for exports and reexports of ECCN 0A501, 0A505, 0B501, 0B505, 0D501, 0A504, 0D505, 0E501, 0E504, and 0E505 items; 9x515 items and ''600 series'' items and will be reviewed on a case-by-case basis to determine whether the transaction is contrary to the national security or foreign policy interests of the United States, including the foreign policy interest of promoting the observance of human rights throughout the world. \* \* \* When destined to the People's Republic of China or a country listed in Country Group E:1 in supplement no. 1 to part 740 of the EAR, items classified under ECCN 0A501, 0A505, 0B501, 0B505, 0D501, 0D505, 0E501, 0E504, and 0E505 or any 9x515 ECCN will be subject to a policy of denial. In addition, applications for exports and reexports of ECCN 0A501, 0A505, 0B501, 0B505, 0D501, 0D505, 0E501, 0E504, and 0E505 items; when there is reason to believe the transaction involves criminal organizations, rebel groups, street gangs, or other similar groups or individuals, that may be disruptive to regional stability, including within individual countries, will be subject to a policy of denial.

\*        \*        \*        \*        \*

■ 12. Section 742.7 is amended by revising paragraphs (a)(1) through (4) and (c) to read as follows:

### § 742.7   Crime control and detection.

(a) \* \* \*
(1) Crime control and detection instruments and equipment and related ''technology'' and ''software'' identified in the appropriate ECCNs on the CCL under CC Column 1 in the Country Chart column of the ''License Requirements'' section. A license is required to countries listed in CC Column 1 (Supplement No. 1 to part 738 of the EAR). Items affected by this requirement are identified on the CCL under the following ECCNs: 0A502, 0A504, 0A505.b, 0A978, 0A979, 0E502, 0E505 (''technology'' for ''development'' or for ''production'' of buckshot shotgun shells controlled under ECCN 0A505.b), 1A984, 1A985, 3A980, 3A981, 3D980, 3E980, 4A003 (for fingerprint computers only), 4A980, 4D001 (for fingerprint computers only), 4D980, 4E001 (for fingerprint computers only), 4E980, 6A002 (for police-model infrared viewers only), 6E001 (for police-model infrared viewers only), 6E002 (for police-model infrared viewers only), and 9A980.
(2) Shotguns with a barrel length greater than or equal to 24 inches, identified in ECCN 0A502 on the CCL under CC Column 2 in the Country Chart column of the ''License

Requirements'' section regardless of end-user to countries listed in CC Column 2 (Supplement No. 1 to part 738 of the EAR).

(3) Shotguns with barrel length greater than or equal to 24 inches, identified in ECCN 0A502 on the CCL under CC Column 3 in the Country Chart column of the ''License Requirements'' section only if for sale or resale to police or law enforcement entities in countries listed in CC Column 3 (Supplement No. 1 to part 738 of the EAR).

(4) Certain crime control items require a license to all destinations, except Canada. These items are identified under ECCNs 0A982, 0A503, and 0E982. Controls for these items appear in each ECCN; a column specific to these controls does not appear in the Country Chart (Supplement No. 1 to part 738 of the EAR).

*     *     *     *     *

(c) *Contract sanctity.* Contract sanctity date: August 22, 2000. Contract sanctity applies only to items controlled under ECCNs 0A982, 0A503 and 0E982 destined for countries not listed in CC Column 1 of the Country Chart (Supplement No. 1 to part 738 of the EAR).

*     *     *     *     *

■ 13. Section 742.17 is amended by:
■ a. Revising the first sentence of paragraph (a); and
■ b. Revising paragraph (f) to read as follows:

#### § 742.17    Exports of firearms to OAS member countries.

(a) *License requirements.* BIS maintains a licensing system for the export of firearms and related items to all OAS member countries. * * *

*     *     *     *     *

(f) *Items/Commodities.* Items requiring a license under this section are ECCNs 0A501 (except 0A501.y), 0A502, 0A504 (except 0A504.f), and 0A505 (except 0A505.d). (See Supplement No. 1 to part 774 of the EAR).

*     *     *     *     *

#### § 742.19    [AMENDED]

■ 14. Section 742.19(a)(1) is amended by:
■ a. Removing ''0A986'' and adding in its place ''0A505.c''; and
■ b. Removing ''0B986'' and adding in its place ''0B505.c''.

### PART 743—SPECIAL REPORTING AND NOTIFICATION

■ 15. The authority citation for 15 CFR part 743 continues to read as follows:

**Authority:** 50 U.S.C. 4601 *et seq.;* 50 U.S.C. 1701 *et seq.;* E.O. 13222, 66 FR 44025, 3 CFR,

2001 Comp., p. 783; E.O. 13637, 78 FR 16129, 3 CFR, 2014 Comp., p. 223; 78 FR 16129; Notice of August 15, 2017, 82 FR 39005 (August 16, 2017).

■ 16. Section 743.4 is amended by adding paragraphs (c)(1)(i) and (c)(2)(i) and revising paragraph (h) to read as follows:

#### § 743.4    Conventional arms reporting.

*     *     *     *     *

(c) * * *
(1) * * *
(i) ECCN 0A501.a and .b.

*     *     *     *     *

(2) * * *
(i) ECCN 0A501.a and .b.

*     *     *     *     *

(h) *Contacts.* General information concerning the Wassenaar Arrangement and reporting obligations thereof is available from the Office of National Security and Technology Transfer Controls, Tel. (202) 482–0092, Fax: (202) 482–4094. Information concerning the reporting requirements for items identified in paragraphs (c)(1) and (2) of this section is available from the Office of Nonproliferation and Treaty Compliance (NPTC), Tel. (202) 482–4188, Fax: (202) 482–4145.

### PART 744—CONTROL POLICY: END–USER AND END–USE BASED

■ 17. The authority citation for 15 CFR part 744 continues to read as follows:

**Authority:** 50 U.S.C. 4601 *et seq.;* 50 U.S.C. 1701 *et seq.;* 22 U.S.C. 3201 *et seq.;* 42 U.S.C. 2139a; 22 U.S.C. 7201 *et seq.;* 22 U.S.C. 7210; E.O. 12058, 43 FR 20947, 3 CFR, 1978 Comp., p. 179; E.O. 12851, 58 FR 33181, 3 CFR, 1993 Comp., p. 608; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 12947, 60 FR 5079, 3 CFR, 1995 Comp., p. 356; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13099, 63 FR 45167, 3 CFR, 1998 Comp., p. 208; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13224, 66 FR 49079, 3 CFR, 2001 Comp., p. 786; Notice of August 15, 2017, 82 FR 39005 (August 16, 2017); Notice of September 18, 2017, 82 FR 43825 (September 19, 2017); Notice of November 6, 2017, 82 FR 51971 (November 8, 2017); Notice of January 17, 2018, 83 FR 2731 (January 18, 2018).

#### § 744.9    [AMENDED]

■ 18. Section 744.9 is amended by removing ''0A987'' from paragraphs (a)(1) and (b) and adding in its place ''0A504''.

### PART 746—EMBARGOES AND OTHER SPECIAL CONTROLS

■ 19. The authority citation for 15 CFR part 746 is revised to read as follows:

**Authority:** 50 U.S.C. 4601 *et seq.;* 50 U.S.C. 1701 *et seq.;* 22 U.S.C. 287c; Sec 1503, Pub. L. 108–11, 117 Stat. 559; 22 U.S.C. 6004; 22 U.S.C. 7201 *et seq.;* 22 U.S.C. 7210; E.O.

12854, 58 FR 36587, 3 CFR, 1993 Comp., p. 614; E.O. 12918, 59 FR 28205, 3 CFR, 1994 Comp., p. 899; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13338, 69 FR 26751, 3 CFR, 2004 Comp., p 168; Presidential Determination 2003–23, 68 FR 26459, 3 CFR, 2004 Comp., p. 320; Presidential Determination 2007–7, 72 FR 1899, 3 CFR, 2006 Comp., p. 325; Notice of May 9, 2017, 82 FR 21909 (May 10, 2017); Notice of August 15, 2017, 82 FR 39005 (August 16, 2017).

#### § 746.3    [AMENDED]

■ 20. Section 746.3 is amended by removing ''0A986'' from paragraph (b)(2) and adding in its place ''0A505.c''.

#### § 746.7    [AMENDED]

■ 21. Section 746.7 is amended in paragraph (a)(1) by:
■ a. Adding ''0A503'' immediately before ''0A980''; and
■ b. Removing ''0A985''.

### PART 748—APPLICATIONS (CLASSIFICATION, ADVISORY, AND LICENSE) AND DOCUMENTATION

■ 22. The authority citation for 15 CFR part 748 continues to read as follows:

**Authority:** 50 U.S.C. 4601 *et seq.;* 50 U.S.C. 1701 *et seq.;* E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 15, 2017, 82 FR 39005 (August 16, 2017).

■ 23. Section 748.12 is amended by:
■ a. Revising the heading;
■ b. Adding introductory text;
■ c. Revising paragraphs (a) introductory text and (a)(1);
■ d. Redesignating the note to paragraph (c)(8) as note 1 to paragraph (c)(8); and
■ e. Adding paragraph (e).
The revisions and additions read as follows.

#### § 748.12    Firearms import certificate or import permit.

License applications for certain firearms and related commodities require support documents in accordance with this section. For destinations that are members of the Organization of American States (OAS), an FC Import Certificate or equivalent official document is required in accordance with paragraphs (a) through (d) of this section. For other destinations that require a firearms import or permit, the firearms import certificate or permit is required in accordance with paragraphs (e) through (g) of this section.

(a) *Requirement to obtain document for OAS member states.* Unless an exception in § 748.9(c) applies, an FC Import Certificate is required for license applications for firearms and related commodities, regardless of value, that

are destined for member countries of the OAS. This requirement is consistent with the OAS Model Regulations described in § 742.17 of the EAR.

(1) *Items subject to requirement.* Firearms and related commodities are those commodities controlled for "FC Column 1" reasons under ECCNs 0A501 (except 0A501.y), 0A502, 0A504 (except 0A504.f) or 0A505 (except 0A505.d).

\*    \*    \*    \*    \*

(e) *Requirement to obtain an import certificate or permit for other than OAS member states.* If the country to which firearms, parts, components, accessories, and attachments controlled under ECCN 0A501, or ammunition controlled under ECCN 0A505, are being exported or reexported requires that a government-issued certificate or permit be obtained prior to importing the commodity, the exporter or reexporter must obtain and retain on file the original or a copy of that certificate or permit before applying for an export or reexport license unless:

(1) A license is not required for the export or reexport; or

(2) The exporter is required to obtain an import or end-user certificate or other equivalent official document pursuant to paragraphs (a) thorough (d) of this section and has, in fact, complied with that requirement.

(3)(i) The number or other identifying information of the import certificate or permit must be stated on the license application.

(ii) If the country to which the commodities are being exported does not require an import certificate or permit for firearms imports, that fact must be noted on any license application for ECCN 0A501 or 0A505 commodities.

*Note 2 to paragraph (e).* *Obtaining a BIS Statement by Ultimate Consignee and Purchaser pursuant to § 748.11 of the EAR does not exempt the exporter or reexporter from the requirement to obtain a certification pursuant to paragraph (a) of this section because that statement is not issued by a government.*

## PART 758—EXPORT CLEARANCE REQUIREMENTS

■ 24. The authority citation for part 758 continues to read as follows:

**Authority:** 50 U.S.C. 4601 *et seq.;* 50 U.S.C. 1701 *et seq.;* E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 15, 2017, 82 FR 39005 (August 16, 2017).

■ 25. Section 758.1 is amended as follows:
■ a. By revising paragraphs (b)(7), (8) and (9) and adding paragraph (b)(10);
■ b. By revising paragraph (c)(1); and

■ c. By adding paragraph (g)(4) to read as follows:

### § 758.1    The Electronic Export Enforcement (EEI) filing to the Automated Export System (AES).

\*    \*    \*    \*    \*

(b) \* \* \*

(7) For all items exported under authorization Validated End-User (VEU);

(8) For all exports of tangible items subject to the EAR where parties to the transaction, as described in § 748.5(d) through (f) of the EAR, are listed on the Unverified List (Supplement No. 6 to part 744 of the EAR), regardless of value or destination;

(9) For items that fall under ECCNs that list CC Column 1 and 3 and RS Column 2 (see Supplement No. 1 to part 738 of the EAR) as reasons for control and such items are for export, regardless of value, to India; or

(10) For all exports of items controlled under ECCNs 0A501.a or .b, shotguns with a barrel length less than 18 inches controlled under ECCN 0A502, or ammunition controlled under ECCN 0A505 except for .c, regardless of value or destination, including exports to Canada.

(c) \* \* \*

(1) License Exception Baggage (BAG), except for exports of items controlled under ECCNs 0A501.a or .b, shotguns with a barrel length less than 18 inches controlled under ECCN 0A502, or ammunition controlled under ECCN 0A505, as set forth in § 740.14 of the EAR. See 15 CFR 30.37(x) of the FTR;

\*    \*    \*    \*    \*

(g) \* \* \*

(4) *Exports of Firearms and Related Items.* For any export of items controlled under ECCNs 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled under ECCN 0A502, in addition to any other required data for the associated EEI filing, you must report the manufacturer, model number, caliber and serial number of the exported items.

\*    \*    \*    \*    \*

■ 26. Add § 758.10 to read as follows:

### § 758.10    Entry clearance requirements for temporary imports.

(a) *Scope.* This section specifies the temporary import entry clearance requirements for firearms "subject to the EAR" that are on the United States Munitions Import List (USMIL, 27 CFR 447.21). These firearms are controlled in ECCN 0A501.a or .b or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502. Items that are temporarily exported under the EAR for permanent return to the United

States are outside of the scope of this section because the items are not considered temporary imports, but these items must have met the export clearance requirements specified in § 758.1 of the EAR. See paragraph (a)(2) of this section for permanent import requirements.

(1) An authorization under the EAR is *not* required for the temporary import of "items" that are "subject to the EAR," including for "items" "subject to the EAR" that are on the USMIL. Temporary imports of firearms described in this section must meet the entry clearance requirements specified in paragraph (b) of this section.

(2) Permanent imports are regulated by the Attorney General under the direction of the Department of Justice's Bureau of Alcohol, Tobacco, Firearms and Explosives (see 27 CFR parts 447, 478, 479, and 555).

(b) *EAR procedures for temporary imports and subsequent exports.* To the satisfaction of the Port Directors of U.S. Customs and Border Protection, the temporary importer must comply with the following procedures:

(1) At the time of entry into the U.S. of the temporary import:

(i) Provide the following statement to U.S. Customs and Border Protection: "This shipment is being temporarily imported in accordance with the EAR. This shipment will be exported in accordance with and under the authority of License Exception TMP (15 CFR 740.9(b)(5));"

(ii) Provide to U.S. Customs and Border Protection an invoice or other appropriate import-related documentation (or electronic equivalents) that includes a complete list and description of the firearms being temporarily imported, including their model, make, caliber, serial numbers, quantity, and U.S. dollar value; and

(iii) Provide (if temporarily imported for a trade show, exhibition, demonstration, or testing) to U.S. Customs and Border Protection the relevant invitation or registration documentation for the event and an accompanying letter that details the arrangements to maintain effective control of the firearms while they are in the United States.

*Note 1 to paragraph (b)(1):* *In accordance with the exclusions in License Exception TMP under § 740.9(b)(5) of the EAR, the entry clearance requirements in § 758.1(b)(10) do not permit the temporary import of firearms controlled in ECCN 0A501.a or .b that are shipped from or manufactured in a Country Group D:5 country; or that are shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova,*

*Turkmenistan, Ukraine, or Uzbekistan, (except for any firearm model controlled by proposed 0A501 that is specified under Annex A in Supplement No. 4 to part 740, or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that are shipped from or manufactured in a Country Group D:5 country, or from Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, because of the exclusions in License Exception TMP under § 740.9(b)(5).*

(2) At the time of export, in accordance with the U.S. Customs and Border Protection procedures, the eligible exporter, or an agent acting on the filer's behalf, must as required under § 758.1(b)(10) of the EAR file the export information with CBP by filing EEI in AES, noting the applicable EAR authorization as the authority for the export, and provide as requested by CBP, the entry document number or a copy of the CBP document under which the "item" subject to the EAR" on the USMIL was temporarily imported. *See* also the additional requirements inspection in § 758.1(g)(4).

## PART 762—RECORDKEEPING

■ 27. The authority citation for part 762 continues to read as follows:

**Authority:** 50 U.S.C. 4601 *et seq.;* 50 U.S.C. 1701 *et seq.;* E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 15, 2017, 82 FR 39005 (August 16, 2017).

■ 28. Section 762.2 is amended by removing "; and," at the end of paragraph (a)(10), redesignating paragraph (a)(11) as paragraph (a)(12), and adding a new paragraph (a)(11) to read as follows:

### § 762.2    Records to be retained.

(a) * * *

(11) The serial number, make, model, and caliber for any firearm controlled in ECCN 0A501.a and for shotguns with barrel length less than 18 inches controlled in 0A502 that have been exported. The "exporter" or any other party to the transaction (*see* § 758.3 of the EAR), that creates or receives such records is a person responsible for retaining this record; and

*    *    *    *    *

■ 29. Section 762.3 is amended by revising paragraph (a)(5) to read as follows:

### § 762.3    Records exempt from recordkeeping requirements.

(a) * * *

(5) Warranty certificate, except for a warranty certificate issued for an address located outside the United States for any firearm controlled in ECCN 0A501.a and for shotguns with

barrel length less than 18 inches controlled in 0A502;

*    *    *    *    *

## PART 772—DEFINITIONS OF TERMS

■ 30. The authority citation for part 772 continues to read as follows:

**Authority:** 50 U.S.C. 4601 *et seq.;* 50 U.S.C. 1701 *et seq.;* E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 15, 2017, 82 FR 39005 (August 16, 2017).

### § 772.1    [AMENDED]

■ 31. In § 772.1, in the definition of "specially designed," Note 1 is amended by removing "0B986" and adding in its place "0B505.c".

## PART 774—THE COMMERCE CONTROL LIST

■ 32. The authority citation for 15 CFR part 774 continues to read as follows:

**Authority:** 50 U.S.C. 4601 *et seq.;* 50 U.S.C. 1701 *et seq.;* 10 U.S.C. 7420; 10 U.S.C. 7430(e); 22 U.S.C. 287c, 22 U.S.C. 3201 *et seq.;* 22 U.S.C. 6004; 42 U.S.C. 2139a; 15 U.S.C. 1824a; 50 U.S.C. 4305; 22 U.S.C. 7201 *et seq.;* 22 U.S.C. 7210; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 15, 2017, 82 FR 39005 (August 16, 2017).

■ 33. In Supplement No. 1 to part 774, Category 0, revise Export Control Classification Number (ECCN) 0A018 to read as follows:

### Supplement No. 1 to Part 774—The Commerce Control List

*    *    *    *    *

**0A018    Items on the Wassenaar Munitions List (see List of Items Controlled).**

#### License Requirements

*Reason for Control:* NS, AT, UN

| Control(s) | Country chart (see Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry. | NS Column 1 |
| AT applies to entire entry. | AT Column 1 |
| UN applies to entire entry. | See § 746.1(b) of the EAR for UN controls |

#### List Based License Exceptions (See Part 740 for a Description of All License Exceptions)

*LVS:* $3,000 for 0A018.b, $1,500 for 0A018.c and .d
*GBS:* N/A
*CIV:* N/A

#### List of Items Controlled

*Related Controls:* (1) See also 0A979, 0A988, and 22 CFR 121.1 Categories I(a), III(b–d), and X(a). (2) See ECCN 0A617.y.1 and .y.2 for items formerly controlled by ECCN 0A018.a. (3) See ECCN 1A613.c for military helmets providing less than NIJ Type IV

protection and ECCN 1A613.y.1 for conventional military steel helmets that, immediately prior to July 1, 2014 were classified under 0A018.d and 0A988. (4) See 22 CFR 121.1 Category X(a)(5) and (a)(6) for controls on other military helmets.
*Related Definitions:* N/A
*Items:*
a. [RESERVED]
b. "Specially designed" components and parts for ammunition, except cartridge cases, powder bags, bullets, jackets, cores, shells, projectiles, boosters, fuses and components, primers, and other detonating devices and ammunition belting and linking machines (all of which are "subject to the ITAR"). (See 22 CFR parts 120 through 130);

*Note to 0A018.b:* *0A018.b does not apply to "components" "specially designed" for blank or dummy ammunition as follows:*
*a. Ammunition crimped without a projectile (blank star);*
*b. Dummy ammunition with a pierced powder chamber;*
*c. Other blank and dummy ammunition, not incorporating components designed for live ammunition.*
c. [RESERVED]
d. [RESERVED]

■ 34. In Supplement No. 1 to part 774, Category, add, between entries for ECCNs 0A018 and 0A521, entries for ECCNs 0A501, 0A502, 0A503, 0A504, and 0A505 to read as follows:

**0A501    Firearms (except 0A502 shotguns) and related commodities as follows (see List of Items controlled).**

#### License Requirements

*Reason for Control:* NS, RS, FC, UN, AT

| Control(s) | Country chart (see Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry except 0A501.y. | NS Column 1 |
| RS applies to entire entry except 0A501.y. | RS Column 1 |
| FC applies to entire entry except 0A501.y. | FC Column 1 |
| UN applies to entire entry. | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry. | AT Column 1 |

#### List Based License Exceptions (See Part 740 for a Description of All License Exceptions)

*LVS:* $500 for 0A501.c, .d, and .x, $500 for 0A501.c, .d, .e, and .x if the ultimate destination is Canada.
*GBS:* N/A
*CIV:* N/A

#### Special Conditions for STA

*STA:* Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in this entry.

**List of Items Controlled**

*Related Controls:* (1) Firearms that are fully automatic, and magazines with a capacity of 50 rounds or greater, are ''subject to the ITAR.'' (2) See ECCN 0A502 for shotguns and their ''parts'' and ''components'' that are subject to the EAR. (3) See ECCN 0A504 and USML Category XII for controls on optical sighting devices.

*Related Definitions:* N/A

*Items:*

a. Non-automatic and semi-automatic firearms of caliber less than or equal to .50 inches (12.7 mm).

b. Non-automatic and non-semi-automatic rifles, carbines, revolvers or pistols with a caliber greater than .50 inches (12.7 mm) but less than or equal to .72 inches (18.0 mm).

c. The following types of ''parts'' and ''components'' if ''specially designed'' for a commodity controlled by paragraph .a or .b of this entry, or USML Category I (unless listed in USML Category I(g) or (h)): Barrels, cylinders, barrel extensions, mounting blocks (trunnions), bolts, bolt carriers, operating rods, gas pistons, trigger housings, triggers, hammers, sears, disconnectors, pistol grips that contain fire control ''parts'' or ''components'' (*e.g.,* triggers, hammers, sears, disconnectors) and buttstocks that contain fire control ''parts'' or ''components.''

d. Detachable magazines with a capacity of greater than 16 rounds ''specially designed'' for a commodity controlled by paragraph .a or .b of this entry.

e. Receivers (frames) and complete breech mechanisms, including castings, forgings or stampings thereof, ''specially designed'' for a commodity by controlled by paragraph .a or .b of this entry.

f. through w. [Reserved]

x. ''Parts'' and ''components'' that are ''specially designed'' for a commodity classified under paragraphs .a through .c of this entry or the USML and not elsewhere specified on the USML or CCL.

y. Specific ''parts,'' ''components,'' ''accessories'' and ''attachments'' ''specially designed'' for a commodity subject to control in this ECCN or common to a defense article in USML Category I and not elsewhere specified in the USML or CCL.

y.1. Stocks or grips, that do not contain any fire control ''parts'' or ''components'' (*e.g.,* triggers, hammers, sears, disconnectors);''

y.2. Scope mounts or accessory rails;

y.3. Iron sights;

y.4. Sling swivels;

y.5. Butt plates or recoil pads; and

y.6. Bayonets.

***Technical Note 1 to 0A501:*** *The controls on ''parts'' and ''components'' in ECCN 0A501 include those ''parts'' and ''components'' that are common to firearms described in ECCN 0A501 and to those firearms ''subject to the ITAR.''*

***Note 1 to 0A501:*** *Antique firearms (i.e., those manufactured before 1890) and reproductions thereof, muzzle loading black powder firearms except those designs based on centerfire weapons of a post 1937 design, BB guns, pellet rifles, paint ball, and all other air rifles are EAR99 commodities.*

**0A502    Shotguns; complete trigger mechanisms; magazines and magazine**

extension tubes; complete breech mechanisms; except equipment used exclusively to treat or tranquilize animals, and except arms designed solely for signal, flare, or saluting use.

**License Requirements**

*Reason for Control:* RS, CC, FC, UN, AT, NS

| Control(s) | Country chart (see supp. No. 1 to part 738) |
|---|---|
| NS applies to shot-guns with a barrel length less than 18 inches (45.72 cm). | NS Column 1 |
| RS applies to shot-guns with a barrel length less than 18 inches (45.72 cm). | RS Column 1 |
| FC applies to entire entry. | FC Column 1 |
| CC applies to shot-guns with a barrel length less than 24 in. (60.96 cm) and shotgun ''compo-nents'' controlled by this entry re-gardless of end user. | CC Column 1 |
| CC applies to shot-guns with a barrel length greater than or equal to 24 in. (60.96 cm), regard-less of end user. | CC Column 2 |
| CC applies to shot-guns with a barrel length greater than or equal to 24 in. (60.96 cm) if for sale or resale to police or law enforcement. | CC Column 3 |
| UN applies to entire entry. | See § 746.1(b) of the EAR for UN con-trols |
| AT applies to shot-guns with a barrel length less than 18 inches (45.72 cm). | AT Column 1 |

**List Based License Exceptions (See Part 740 for a Description of All License Exceptions)**

*LVS:* N/A
*GBS:* N/A
*CIV:* N/A

**List of Items Controlled**

*Related Controls:* This entry does not control combat shotguns and fully automatic shotguns. Those shotguns are ''subject to the ITAR.''

*Related Definitions:* N/A

*Items:* The list of items controlled is contained in the ECCN heading.

**0A503    Discharge type arms; non-lethal or less-lethal grenades and projectiles, and ''specially designed'' ''parts'' and ''components'' of those projectiles; and devices to administer electric shock, for example, stun guns, shock batons, shock shields, electric cattle prods, immobilization guns and projectiles;**

except equipment used exclusively to treat or tranquilize animals, and except arms designed solely for signal, flare, or saluting use; and ''specially designed'' ''parts'' and ''components,'' n.e.s.

**License Requirements**

*Reason for Control:* CC, UN

| Control(s) | Country chart (see supp. No. 1 to part 738) |
|---|---|
| CC applies to entire entry. | A license is required for ALL destina-tions, except Can-ada, regardless of end use. Accord-ingly, a column specific to this con-trol does not ap-pear on the Com-merce Country Chart. (See part 742 of the EAR for additional informa-tion) |
| UN applies to entire entry. | See § 746.1(b) of the EAR for UN con-trols |

**List Based License Exceptions (See Part 740 For a Description of All License Exceptions)**

*LVS:* N/A
*GBS:* N/A
*CIV:* N/A

**List of Items Controlled**

*Related Controls:* Law enforcement restraint devices that administer an electric shock are controlled under ECCN 0A982. Electronic devices that monitor and report a person's location to enforce restrictions on movement for law enforcement or penal reasons are controlled under ECCN 3A981.

*Related Definitions:* N/A

*Items:* The list of items controlled is contained in the ECCN heading.

**0A504    Optical sighting devices for firearms (including shotguns controlled by 0A502); and ''components'' as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* FC, RS, CC, UN

| Control(s) | Country chart (see Supp. No. 1 to part 738) |
|---|---|
| RS applies to para-graph .i. | RS Column 1 |
| FC applies to para-graphs .a, .b, .c, d, .e, .g and .i of this entry. | FC Column 1 |
| CC applies to entire entry. | CC Column 1 |
| UN applies to entire entry. | See § 746.1(b) of the EAR for UN con-trols |

**List Based License Exceptions (See Part 740 for a Description of All License Exceptions)**

*LVS:* N/A
*GBS:* N/A

*CIV:* N/A

### List of Items Controlled

*Related Controls:* (1) See USML Category XII(c) for sighting devices using second generation image intensifier tubes having luminous sensitivity greater than 350 µA/lm, or third generation or higher image intensifier tubes, that are ''subject to the ITAR.'' (2) See USML Category XII(b) for laser aiming or laser illumination systems ''subject to the ITAR.'' (3) Section 744.9 of the EAR imposes a license requirement on certain commodities described in 0A504 if being exported, reexported, or transferred (in-country) for use by a military end-user or for incorporation into an item controlled by ECCN 0A919.

*Related Definitions:* N/A

*Items:*

a. Telescopic sights.

b. Holographic sights.

c. Reflex or ''red dot'' sights.

d. Reticle sights.

e. Other sighting devices that contain optical elements.

f. Laser aiming devices or laser illuminators ''specially designed'' for use on firearms, and having an operational wavelength exceeding 400 nm but not exceeding 710 nm.

*Note 1 to 0A504.f: 0A504.f does not control laser boresighting devices that must be placed in the bore or chamber to provide a reference for aligning the firearms sights.*

g. Lenses, other optical elements and adjustment mechanisms for articles in paragraphs .a, .b, .c, .d, .e or .i.

h. [Reserved]

i. Riflescopes that were not ''subject to the EAR'' as of [DATE ONE DAY PRIOR TO THE EFFECTIVE DATE OF THE FINAL RULE] and are ''specially designed'' for use in firearms that are ''subject to the ITAR.''

*Note 2 to paragraph i: For purpose of the application of ''specially designed'' for the riflescopes controlled under 0A504.i, paragraph (a)(1) of the definition of ''specially designed'' in § 772.1 of the EAR is what is used to determine whether the riflescope is ''specially designed.''*

### 0A505   Ammunition as follows (see List of Items Controlled).

### License Requirements

*Reason for Control:* NS, RS, CC, FC, UN, AT

| Control(s) | Country chart (see Supp. No. 1 to part 738) |
|---|---|
| NS applies to 0A505.a and .x. | NS Column 1 |
| RS applies to 0A505.a and .x. | RS Column 1 |
| CC applies to 0A505.b. | CC Column 1 |
| FC applies to entire entry except 0A505.d. | FC Column 1 |
| UN applies to entire entry. | See § 746.1 of the EAR for UN controls |
| AT applies to 0A505.a, .d and .x. | AT Column 1 |

| Control(s) | Country chart (see Supp. No. 1 to part 738) |
|---|---|
| AT applies to 0A505.c. | A license is required for items controlled by paragraph .c of this entry to North Korea for anti-terrorism reasons. The Commerce Country Chart is not designed to determine AT licensing requirements for this entry. See § 742.19 of the EAR for additional information |

### List Based License Exceptions (See Part 740 for a Description of All License Exceptions)

*LVS:* $100 for items in 0A505.x

*GBS:* N/A

*CIV:* N/A

### Special Conditions for STA

*STA:* Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0A505.

### List of Items Controlled

*Related Controls:* (1) Ammunition for modern heavy weapons such as howitzers, artillery, cannon, mortars and recoilless rifles as well as inherently military ammunition types such as ammunition preassembled into links or belts, caseless ammunition, tracer ammunition, ammunition with a depleted uranium projectile or a projectile with a hardened tip or core and ammunition with an explosive projectile are ''subject to the ITAR.'' (2) Percussion caps, and lead balls and bullets, for use with muzzle-loading firearms are EAR99 items.

*Related Definitions:* N/A

*Items:*

a. Ammunition for firearms controlled by ECCN 0A501 and not enumerated in paragraph .b, .c or .d of this entry or in USML Category III.

b. Buckshot (No. 4 .24'' diameter and larger) shotgun shells.

c. Shotgun shells (including less than lethal rounds) that do not contain buckshot; and ''specially designed'' ''parts'' and ''components'' of shotgun shells.

*Note 1 to 0A505.c: Shotgun shells that contain only chemical irritants are controlled under ECCN 1A984.*

d. Blank ammunition for firearms controlled by ECCN 0A501 and not enumerated in USML Category III.

e. through w. [Reserved]

x. ''Parts'' and ''components'' that are ''specially designed'' for a commodity subject to control in this ECCN or a defense article in USML Category III and not elsewhere specified on the USML, the CCL or paragraph .d of this entry.

*Note 2 to 0A505.x: The controls on ''parts'' and ''components'' in this entry include Berdan and boxer primers, metallic cartridge cases, and standard metallic projectiles such as full metal jacket, lead core, and copper projectiles.*

*Note 3 to 0A505.x: The controls on ''parts'' and ''components'' in this entry include those ''parts'' and ''components'' that are common to ammunition and ordnance described in this entry and to those enumerated in USML Category III.*

■ 35. In Supplement No. 1 to part 774, Category 0, add, between entries for ECCNs 0A521 and 0A604, an entry for ECCN 0A602 to read as follows:

### 0A602   Guns and Armament as follows (see List of Items Controlled).

### License Requirements

*Reason for Control:* NS, RS, UN, AT

| Control(s) | Country chart (see Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry. | NS Column 1 |
| RS applies to entire entry. | RS Column 1 |
| UN applies to entire entry. | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry. | AT Column 1 |

### List Based License Exceptions (See Part 740 for a Description of All License Exceptions)

*LVS:* $500

*GBS:* N/A

*CIV:* N/A

### Special Conditions for STA

*STA:* Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0A602.

### List of Items Controlled

*Related Controls:* (1) Modern heavy weapons such as howitzers, artillery, cannon, mortars and recoilless rifles are ''subject to the ITAR.'' (2) See ECCN 0A919 for foreign-made ''military commodities'' that incorporate more than a *de minimis* amount of U.S.-origin ''600 series'' items.

*Related Definitions:* N/A

*Items:*

a. Guns and armament manufactured between 1890 and 1919.

b. Military flame throwers with an effective range less than 20 meters.

c. through w. [Reserved]

x. ''Parts,'' and ''components,'' that are ''specially designed'' for a commodity subject to control in paragraphs .a or .b of this ECCN or a defense article in USML Category II and not elsewhere specified on the USML or the CCL.

*Note 1 to 0A602: ''Parts,'' ''components,'' ''accessories'' and ''attachments'' specified in USML subcategory II(j) are subject to the controls of that paragraph.*

*Note 2 to 0A602: Black powder guns and armament manufactured in or prior to 1890 and replicas thereof designed for use with black powder propellants designated EAR99.*

## Supplement No. 1 to Part 774— [Amended]

■ 36. In Supplement No. 1 to part 774, Category 0, remove ECCNs 0A918, 0A984, 0A985, 0A986, and 0A987.

■ 37. In Supplement No. 1 to part 774, Category 0, add, before the entry for ECCN 0B521, entries for ECCNs 0B501 and 0B505 to read as follows:

**0B501    Test, inspection, and production "equipment" and related commodities for the "development" or "production" of commodities enumerated or otherwise described in ECCN 0A501 or USML Category I as follows (see List of Items Controlled).**

### License Requirements

*Reason for Control:* NS, RS, UN, AT

| Control(s) | Country chart (see Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry except equipment for ECCN 0A501.y. | NS Column 1 |
| RS applies to entire entry except equipment for ECCN 0A501.y. | RS Column 1 |
| UN applies to entire entry. | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry. | AT Column 1 |

### List Based License Exceptions (See Part 740 for a Description of All License Exceptions)

*LVS:* $3,000
*GBS:* N/A
*CIV:* N/A

### Special Conditions for STA

*STA:* Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used to ship any item in this entry.

### List of Items Controlled

*Related Controls:* N/A
*Related Definitions:* N/A
*Items:*

a. Small arms chambering machines.
b. Small arms deep hole drilling machines and drills therefor.
c. Small arms rifling machines.
d. Small arms spill boring machines.
e. Dies, fixtures, and other tooling "specially designed" for the "production" of the items controlled in 0A501.a through .x. or USML Category I.

**0B505    Test, inspection, and production "equipment" and related commodities "specially designed" for the "development" or "production" of commodities enumerated or otherwise described in ECCN 0A505 or USML Category III, except equipment for the hand loading of cartridges and shotgun shells, as follows (see List of Items Controlled).**

### License Requirements

*Reason for Control:* NS, RS, UN, AT

| Control(s) | Country chart (see Supp. No. 1 to part 738) |
|---|---|
| NS applies to paragraphs .a and .x. | NS Column 1 |
| RS applies to paragraphs .a and .x. | RS Column 1 |
| UN applies to entire entry. | See § 746.1 of the EAR for UN controls |
| AT applies to paragraphs .a, .d and .x. | AT Column 1 |
| AT applies to paragraph .c. | A license is required for export or reexport of these items to North Korea for anti-terrorism reasons |

### List Based License Exceptions (See Part 740 for a Description of All License Exceptions)

*LVS:* $3,000
*GBS:* N/A
*CIV:* N/A

### Special Conditions for STA

*STA:* Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0B505.

### List of Items Controlled

*Related Controls:* N/A
*Related Definitions:* N/A
*Items:*

a. Tooling, templates, jigs, mandrels, molds, dies, fixtures, alignment mechanisms, and test equipment, not enumerated in USML Category III that are "specially designed" for the "production" of commodities controlled by ECCN 0A505.a or .x or USML Category III.
b. Equipment "specially designed" for the "production" of commodities in ECCN 0A505.b.
c. Equipment "specially designed" for the "production" of commodities in ECCN 0A505.c.
d. Equipment "specially designed" for the "production" of commodities in ECCN 0A505.d.
e. through .w [Reserved]
x. "Parts" and "components" "specially designed" for a commodity subject to control in paragraph .a of this entry.

■ 38. In Supplement No. 1 to part 774, Category 0, add, between entries for ECCNs 0B521 and 0B604, an entry for ECCN 0B602 to read as follows:

**0B602    Test, inspection, and production "equipment" and related commodities "specially designed" for the "development" or "production" of commodities enumerated or otherwise described in ECCN 0A602 or USML Category II as follows (see List of Items Controlled).**

### License Requirements

*Reason for Control:* NS, RS, UN, AT

| Control(s) | Country chart (see Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry. | NS Column 1 |
| RS applies to entire entry. | RS Column 1 |
| UN applies to entire entry. | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry. | AT Column 1 |

### List Based License Exceptions (See Part 740 for a Description of All License Exceptions)

*LVS:* $3,000
*GBS:* N/A
*CIV:* N/A

### Special Conditions for STA

*STA:* Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0B602.

### List of Items Controlled

*Related Controls:* N/A
*Related Definitions:* N/A
*Items:*

a. The following commodities if "specially designed" for the "development" or "production" of commodities enumerated in ECCN 0A602.a or USML Category II:
a.1. Gun barrel rifling and broaching machines and tools therefor;
a.2. Gun barrel rifling machines;
a.3. Gun barrel trepanning machines;
a.4. Gun boring and turning machines;
a.5. Gun honing machines of 6 feet (183 cm) stroke or more;
a.6. Gun jump screw lathes;
a.7. Gun rifling machines; and
a. 8. Gun straightening presses.
b. Jigs and fixtures and other metal-working implements or accessories of the kinds exclusively designed for use in the manufacture of items in ECCN 0A602 or USML Category II.
c. Other tooling and equipment, "specially designed" for the "production" of items in ECCN 0A602 or USML Category II.
d. Test and evaluation equipment and test models, including diagnostic instrumentation and physical test models, "specially designed" for items in ECCN 0A602 or USML Category II.

## Supplement No. 1 to Part 774— [Amended]

■ 39. In Supplement No. 1 to part 774, Category 0, remove ECCN 0B986.

■ 40. In Supplement No. 1 to part 774, Category 0, add, between the entries for ECCNs 0D001 and 0D521, entries for ECCNs 0D501 and 0D505 to read as follows:

**0D501    "Software" "specially designed" for the "development," "production," operation or maintenance of commodities controlled by 0A501 or 0B501.**

### License Requirements

*Reason for Control:* NS, RS, UN, AT

**Federal Register** / Vol. 83, No. 101 / Thursday, May 24, 2018 / Proposed Rules    **24191**

| Control(s) | Country chart (see Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry except "software" for commodities in ECCN 0A501.y or equipment in ECCN 0B501 for commodities in ECCN 0A501.y. | NS Column 1 |
| RS applies to entire entry except "software" for commodities in ECCN 0A501.y or equipment in ECCN 0B501 for commodities in ECCN 0A501.y. | RS Column 1 |
| UN applies to entire entry. | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry. | AT Column 1 |

**List Based License Exceptions (See Part 740 for a Description of All License Exceptions)**

*CIV:* N/A
*TSR:* N/A

**Special Conditions for STA**

*STA:* Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any "software" in 0D501.

**List of Items Controlled**

*Related Controls:* "Software" required for and directly related to articles enumerated in USML Category I is "subject to the ITAR" (See 22 CFR 121.1, Category I).
*Related Definitions:* N/A
*Items:* The list of items controlled is contained in this ECCN heading.

**0D505**    "**Software**" "**specially designed**" **for the** "**development,**" "**production,**" **operation or maintenance of commodities controlled by 0A505 or 0B505.**

**License Requirements**

*Reason for Control:* NS, RS, UN, AT

| Control(s) | Country chart (see Supp. No. 1 to part 738) |
|---|---|
| NS applies to "software" for commodities in ECCN 0A505.a and .x and equipment in ECCN 0B505.a .and .x. | NS Column 1 |
| RS applies to "software" for commodities in ECCN 0A505.a and .x and equipment in ECCN 0B505.a and .x. | RS Column 1 |
| UN applies to entire entry. | See § 746.1 of the EAR for UN controls |

| Control(s) | Country chart (see Supp. No. 1 to part 738) |
|---|---|
| AT applies to "software" for commodities in ECCN 0A505.a, .d or .x and equipment in ECCN 0B505.a, .d or .x. | AT Column 1 |

**List Based License Exceptions (See Part 740 for a Description of All License Exceptions)**

*CIV:* N/A
*TSR:* N/A

**Special Conditions for STA**

*STA:* Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any "software" in 0D505.

**List of Items Controlled**

*Related Controls:* "Software" required for and directly related to articles enumerated in USML Category III is "subject to the ITAR" (See 22 CFR 121.1, Category III).
*Related Definitions:* N/A
*Items:* The list of items controlled is contained in this ECCN heading.

■ 41. In Supplement No. 1 to part 774, Category 0, add, between the entries for ECCNs 0D521 and 0D604, an entry for ECCN 0D602 to read as follows:

**0D602**    "**Software**" "**specially designed**" **for the** "**development,**" "**production,**" **operation or maintenance of commodities controlled by 0A602 or 0B602 as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, RS, UN, AT

| Control(s) | Country chart (see Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry. | NS Column 1 |
| RS applies to entire entry. | RS Column 1 |
| UN applies to entire entry. | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry. | AT Column 1 |

**List Based License Exceptions (See Part 740 for a Description of All License Exceptions)**

*CIV:* N/A
*TSR:* N/A

**Special Conditions for STA**

*STA:* Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0D602.

**List of Items Controlled**

*Related Controls:* (1) "Software" required for and directly related to articles enumerated in USML Category II is controlled under USML Category II(k). (2) See ECCN 0A919 for foreign-made "military commodities" that incorporate more than a *de minimis* amount of U.S.-origin "600 series" items.

*Related Definitions:* N/A
*Items:* "Software" "specially designed" for the "development," "production," operation, or maintenance of commodities controlled by ECCN 0A602 and ECCN 0B602.

■ 42. In Supplement No. 1 to part 774, Category 0, add, between the entries for ECCNs 0E018 and 0E521, entries for ECCNs 0E501, 0E502, 0E504, and 0E505 to read as follows:

**0E501**    "**Technology**" "**required**" **for the** "**development,**" "**production,**" **operation, installation, maintenance, repair, or overhaul of commodities controlled by 0A501 or 0B501 as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, RS, UN, AT

| Control(s) | Country chart (see Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry. | NS Column 1 |
| RS applies to entire entry. | RS Column 1 |
| UN applies to entire entry. | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry. | AT Column 1 |

**List Based License Exceptions (See Part 740 for a Description of All License Exceptions)**

*CIV:* N/A
*TSR:* N/A

**Special Conditions for STA**

*STA:* Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used to ship any "technology" in ECCN 0E501.

**List of Items Controlled**

*Related Controls:* Technical data required for and directly related to articles enumerated in USML Category I are "subject to the ITAR."
*Related Definitions:* N/A
Items:
   a. "Technology" "required" for the "development," or "production" of commodities controlled by ECCN 0A501 (other than 0A501.y) or 0B501.
   b. "Technology" "required" for the operation, installation, maintenance, repair, or overhaul of commodities controlled by ECCN 0A501 (other than 0A501.y) or 0B501.

**0E502**    "**Technology**" "**required**" **for the** "**development**" **or** "**production,**" **of commodities controlled by 0A502.**

**License Requirements**

*Reason for Control:* CC, UN

| Controls | Country chart (see Supp. No. 1 part 738) |
|---|---|
| CC applies to entire entry. | CC Column 1 |
| UN applies to entire entry. | See § 746.1(b) of the EAR for UN controls |

**List Based License Exceptions (See Part 740 for a Description of All License Exceptions)**

*CIV:* N/A
*TSR:* N/A

**List of Items Controlled**

*Related Controls:* N/A
*Related Definitions:* N/A
*Items:* The list of items controlled is contained in the ECCN heading.

**0E504   ''Technology'' ''required'' for the ''development,'' or ''production'' of commodities controlled by 0A504 that incorporate a focal plane array or image intensifier tube.**

**License Requirements**

*Reason for Control:* RS, UN, AT

| Controls | Country chart (see Supp. No. 1 part 738) |
|---|---|
| RS applies to entire entry. | RS Column 1 |
| UN applies to entire entry. | See § 746.1(b) of the EAR for UN controls |
| AT applies to entire entry. | AT Column 1 |

**List Based License Exceptions (See Part 740 for a Description of All License Exceptions)**

*CIV:* N/A
*TSR:* N/A

**List of Items Controlled**

*Related Controls:* N/A
*Related Definitions:* N/A
*Items:* The list of items controlled is contained in the ECCN heading.

**0E505   ''Technology'' ''required'' for the ''development,'' ''production,'' operation, installation, maintenance, repair, overhaul or refurbishing of commodities controlled by 0A505.**

**License Requirements**

*Reason for Control:* NS, RS, UN, CC, AT

| Control(s) | Country chart (see Supp. No. 1 to part 738) |
|---|---|
| NS applies to ''technology'' for ''development,'' ''production,'' operation, installation, maintenance, repair, overhaul or refurbishing commodities in 0A505.a and .x; for equipment for those commodities in 0B505; and for ''software'' for that equipment and those commodities in 0D505. | NS Column 1 |
| RS applies to entire entry except ''technology'' for ''development,'' ''production,'' operation, installation, maintenance, repair, overhaul or refurbishing commodities in 0A505.a and .x; for equipment for those commodities in 0B505 and for ''software'' for those commodities and that equipment in 0D505. | RS Column 1 |
| UN applies to entire entry. | See § 746.1 of the EAR for UN controls |
| CC applies to ''technology'' for the ''development'' or ''production'' of commodities in 0A505.b. | CC Column 1 |
| AT applies to ''technology'' for ''development,'' ''production,'' operation, installation, maintenance, repair, overhaul or refurbishing commodities in 0A505.a, .d and .x. | AT Column 1 |

**List Based License Exceptions (See Part 740 for a Description of All License Exceptions)**

*CIV:* N/A
*TSR:* N/A

**Special Conditions for STA**

*STA:* Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any ''technology'' in 0E505.

**List of Items Controlled**

*Related Controls:* Technical data required for and directly related to articles enumerated in USML Category III are ''subject to the ITAR'' (See 22 CFR 121.1, Category III).
*Related Definitions:* N/A
*Items:* The list of items controlled is contained in this ECCN heading.

■ 43. In Supplement No. 1 to part 774, Category 0, add, between the entries for ECCNs 0E521 and 0E604, an entry for ECCN 0E602:

**0E602   ''Technology'' ''required'' for the ''development,'' ''production,'' operation, installation, maintenance, repair, overhaul or refurbishing of commodities controlled by 0A602 or 0B602, or ''software'' controlled by 0D602 as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, RS, UN, AT

| Control(s) | Country chart (see Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry. | NS Column 1 |
| RS applies to entire entry. | RS Column 1 |
| UN applies to entire entry. | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry. | AT Column 1 |

**List Based License Exceptions (See Part 740 for a Description of All License Exceptions)**

*CIV:* N/A
*TSR:* N/A

**Special Conditions for STA**

*STA:* Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0E602.

**List of Items Controlled**

*Related Controls:* Technical data directly related to articles enumerated in USML Category II are ''subject to the ITAR.''
*Related Definitions:* N/A
*Items:* ''Technology'' ''required'' for the ''development,'' ''production,'' operation, installation, maintenance, repair, or overhaul of commodities controlled by ECCN 0A602 or 0B602, or ''software'' controlled by ECCN 0D602.

**Supplement No. 1 to Part 774— [Amended]**

■ 44. In Supplement No. 1 to part 774, Category 0, remove ECCN 0E918.

■ 45. In Supplement No. 1 to part 774, Category 0, revise ECCN 0E982 to read as follows.

**0E982   ''Technology'' exclusively for the ''development'' or ''production'' of equipment controlled by 0A982 or 0A503.**

**License Requirements**

*Reason for Control:* CC

| Control(s) |
|---|
| CC applies to ''technology'' for items controlled by 0A982 or 0A503. A license is required for ALL destinations, except Canada, regardless of end-use. Accordingly, a column specific to this control does not appear on the Commerce Country Chart. (See part 742 of the EAR for additional information.) |

**List Based License Exceptions (See Part 740 for a Description of All License Exceptions)**

*CIV:* N/A
*TSR:* N/A

**List of Items Controlled**

*Related Controls:* N/A
*Related Definitions:* N/A
*Items:* The list of items controlled is contained in the ECCN heading.

## Supplement No. 1 to Part 774— [Amended]

■ 46. In Supplement No. 1 to part 774, Category 0, remove ECCNs 0E984 and 0E987.

■ 47. In Supplement No. 1 to part 774, Category 1, revise ECCN 1A984 to read as follows:

**1A984    Chemical agents, including tear gas formulation containing 1 percent or less of orthochlorobenzalmalononitrile (CS), or 1 percent or less of chloroacetophenone (CN), except in individual containers with a net weight of 20 grams or less; liquid pepper except when packaged in individual containers with a net weight of 3 ounces (85.05 grams) or less; smoke bombs; non-irritant smoke flares, canisters, grenades and charges; and other pyrotechnic articles (excluding shotgun shells, unless the shotgun shells contain only chemical irritants) having dual military and commercial use, and "parts" and "components" "specially designed" therefor, n.e.s.**

### License Requirements

*Reason for Control:* CC

| Control(s) | Country chart (see Supp. No. 1 to part 738) |
|---|---|
| CC applies to entire entry. | CC Column 1 |

### List Based License Exceptions (See Part 740 for a Description of All License Exceptions)

*LVS:* N/A
*GBS:* N/A
*CIV:* N/A

### List of Items Controlled

*Related Controls:* N/A
*Related Definitions:* N/A
*Items:* The list of items controlled is contained in the ECCN heading.

■ 48. In Supplement No. 1 to part 774, Category 2, revise ECCN 2B004 to read as follows:

**2B004    Hot "isostatic presses" having all of the characteristics described in the List of Items Controlled, and "specially designed" "components" and "accessories" therefor.**

### License Requirements

*Reason for Control:* NS, MT NP, AT

| Control(s) | Country chart (see Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry. | NS Column 2 |
| MT applies to entire entry. | MT Column 1 |
| NP applies to entire entry, except 2B004.b.3 and presses with maximum working pressures below 69 MPa. | NP Column 1 |

| Control(s) | Country chart (see Supp. No. 1 to part 738) |
|---|---|
| AT applies to entire entry. | AT Column 1 |

### List Based License Exceptions (See Part 740 for a Description of All License Exceptions)

*LVS:* N/A
*GBS:* N/A
*CIV:* N/A

### List of Items Controlled

*Related Controls:* (1) See ECCN *2D001* for software for items controlled under this entry. (2) See ECCNs *2E001* ("development"), *2E002* ("production"), and *2E101* ("use") for technology for items controlled under this entry. (3) For "specially designed" dies, molds and tooling, see ECCNs 1B003, 0B501, 0B602, 0B606, 9B004, and 9B009. (4) For additional controls on dies, molds and tooling, see ECCNs 1B101.d, *2B104* and *2B204*. (5) Also see ECCNs *2B117* and *2B999.a*.
*Related Definitions:* N/A
*Items:*

a. A controlled thermal environment within the closed cavity and possessing a chamber cavity with an inside diameter of 406 mm or more; *and*

b. Having any of the following:

b.1. A maximum working pressure exceeding 207 MPa;

b.2. A controlled thermal environment exceeding 1,773 K (1,500 °C); *or*

b.3. A facility for hydrocarbon impregnation and removal of resultant gaseous degradation products.

***Technical Note:*** *The inside chamber dimension is that of the chamber in which both the working temperature and the working pressure are achieved and does not include fixtures. That dimension will be the smaller of either the inside diameter of the pressure chamber or the inside diameter of the insulated furnace chamber, depending on which of the two chambers is located inside the other.*

■ 49. In Supplement No. 1 to part 774, Category 2, revise ECCN 2B018 to read as follows:

**2B018    Equipment on the Wassenaar Arrangement Munitions List.**

No commodities currently are controlled by this entry. Commodities formerly controlled by paragraphs .a through .d, .m and .s of this entry are controlled in ECCN 0B606. Commodities formerly controlled by paragraphs .e through .l of this entry are controlled by ECCN 0B602. Commodities formerly controlled by paragraphs .o through .r of this entry are controlled by ECCN 0B501. Commodities formerly controlled by paragraph .n of this entry are controlled in ECCN 0B501 if they are "specially designed" for the "production" of the items controlled in ECCN 0A501.a through .x or USML Category I and controlled in ECCN 0B602 if they are of the kind exclusively designed for use in the manufacture of items in ECCN 0A602 or USML Category II.

■ 50. In Supplement No. 1 to part 774, Category 2, revise ECCN 2D018 to read as follows:

**2D018    "Software" for the "development," "production," or "use" of equipment controlled by 2B018.**

No software is currently controlled under this entry. See ECCNs 0D501, 0D602 and 0D606 for software formerly controlled under this entry.

■ 51. In Supplement No. 1 to part 774, Category 2, revise ECCN 2E001 to read as follows:

**2E001    "Technology" according to the General Technology Note for the "development" of equipment or "software" controlled by 2A (except 2A983, 2A984, 2A991, or 2A994), 2B (except 2B991, 2B993, 2B996, 2B997, 2B998, or 2B999), or 2D (except 2D983, 2D984, 2D991, 2D992, or 2D994).**

### License Requirements

*Reason for Control:* NS, MT, NP, CB, AT

| Control(s) | Country chart (see Supp. No. 1 to part 738) |
|---|---|
| NS applies to "technology" for items controlled by 2A001, 2B001 to 2B009, 2D001 or 2D002. | NS Column 1 |
| MT applies to "technology" for items controlled by 2B004, 2B009, 2B104, 2B105, 2B109, 2B116, 2B117, 2B119 to 2B122, 2D001, or 2D101 for MT reasons. | MT Column 1 |
| NP applies to "technology" for items controlled by 2A225, 2A226, 2B001, 2B004, 2B006, 2B007, 2B009, 2B104, 2B109, 2B116, 2B201, 2B204, 2B206, 2B207, 2B209, 2B225 to 2B233, 2D001, 2D002, 2D101, 2D201 or 2D202 for NP reasons. | NP Column 1 |
| NP applies to "technology" for items controlled by 2A290, 2A291, or 2D290 for NP reasons. | NP Column 2 |

| Control(s) | Country chart (see Supp. No. 1 to part 738) |
|---|---|
| CB applies to "technology" for equipment controlled by 2B350 to 2B352, valves controlled by 2A226 having the characteristics of those controlled by 2B350.g, and software controlled by 2D351. | CB Column 2 |
| AT applies to entire entry. | AT Column 1 |

**Reporting Requirements**

See § 743.1 of the EAR for reporting requirements for exports under License Exceptions, and Validated End-User authorizations.

**List Based License Exceptions (See Part 740 for a Description of All License Exceptions)**

*CIV:* N/A
*TSR:* Yes, except N/A for MT

**Special Conditions for STA**

*STA:* License Exception STA may not be used to ship or transmit "technology" according to the General Technology Note for the "development" of "software" specified in the License Exception STA paragraph in the License Exception section of ECCN 2D001 or for the "development" of equipment as follows: ECCN 2B001 entire entry; or "Numerically controlled" or manual machine tools as specified in 2B003 to any of the destinations listed in Country Group A:6 (See Supplement No.1 to part 740 of the EAR).

**List of Items Controlled**

*Related Controls:* See also *2E101, 2E201,* and *2E301*
*Related Definitions:* N/A
*Items:* The list of items controlled is contained in the ECCN heading

**Note:** *ECCN 2E001 includes "technology" for the integration of probe systems into coordinate measurement machines specified by 2B006.a.*

■ 52. In Supplement No. 1 to part 774, Category 2, revise ECCN 2E002 to read as follows:

**2E002    "Technology" according to the General Technology Note for the "production" of equipment controlled by 2A (except 2A983, 2A984, 2A991, or 2A994), or 2B (except 2B991, 2B993, 2B996, 2B997, 2B998, or 2B999).**

**License Requirements**

*Reason for Control:* NS, MT, NP, CB, AT

| Control(s) | Country chart ≤(see Supp. No. 1 to part 738) |
|---|---|
| NS applies to "technology" for equipment controlled by 2A001, 2B001 to 2B009. | NS Column 1 |

| Control(s) | Country chart ≤(see Supp. No. 1 to part 738) |
|---|---|
| MT applies to "technology" for equipment controlled by 2B004, 2B009, 2B104, 2B105, 2B109, 2B116, 2B117, or 2B119 to 2B122 for MT reasons. | MT Column 1 |
| NP applies to "technology" for equipment controlled by 2A225, 2A226, 2B001, 2B004, 2B006, 2B007, 2B009, 2B104, 2B109, 2B116, 2B201, 2B204, 2B206, 2B207, 2B209, 2B225 to 2B233 for NP reasons. | NP Column 1 |
| NP applies to "technology" for equipment controlled by 2A290 or 2A291 for NP reasons. | NP Column 2 |
| CB applies to "technology" for equipment controlled by 2B350 to 2B352 and for valves controlled by 2A226 having the characteristics of those controlled by 2B350.g. | CB Column 2 |
| AT applies to entire entry. | AT Column 1 |

**Reporting Requirements**

See § 743.1 of the EAR for reporting requirements for exports under License Exceptions, and Validated End-User authorizations.

**List Based License Exceptions (See Part 740 for a Description of All License Exceptions)**

*CIV:* N/A
*TSR:* Yes, except N/A for MT

**Special Conditions for STA**

*STA:* License Exception STA may not be used to ship or transmit "technology" according to the General Technology Note for the "production" of equipment as follows: ECCN 2B001 entire entry; or "Numerically controlled" or manual machine tools as specified in 2B003 to any of the destinations listed in Country Group A:6 (See Supplement No.1 to part 740 of the EAR).

**List of Items Controlled**

*Related Controls:* N/A
*Related Definitions:* N/A
Items: The list of items controlled is contained in the ECCN heading.

■ 53. In Supplement No. 1 to part 774, Category 7, revise ECCN 7A611 to read as follows:

**7A611    Military fire control, laser, imaging, and guidance equipment, as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, MT, RS, AT, UN

| Control(s) | Country chart (see Supp. No. 1 to part 738). |
|---|---|
| NS applies to entire entry except 7A611.y. | NS Column 1 |
| MT applies to commodities in 7A611.a that meet or exceed the parameters in 7A103.b or .c. | MT Column 1 |
| RS applies to entire entry except 7A611.y. | RS Column 1 |
| AT applies to entire entry. | AT Column 1 |
| UN applies to entire entry except 7A611.y. | See § 746.1(b) of the EAR for UN controls |

**List Based License Exceptions (See Part 740 for a Description of All License Exceptions)**

*LVS:* $1,500
*GBS:* N/A
*CIV:* N/A

**Special Conditions for STA**

*STA:* Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 7A611.

**List of Items Controlled**

*Related Controls:* (1) Military fire control, laser, imaging, and guidance equipment that are enumerated in USML Category XII, and technical data (including software) directly related thereto, are subject to the ITAR. (2) See Related Controls in ECCNs 0A504, 2A984, 6A002, 6A003, 6A004, 6A005, 6A007, 6A008, 6A107, 7A001, 7A002, 7A003, 7A005, 7A101, 7A102, and 7A103. (3) See ECCN 3A611 and USML Category XI for controls on countermeasure equipment. (4) See ECCN 0A919 for foreign-made "military commodities" that incorporate more than a *de minimis* amount of U.S. origin "600 series" controlled content.
*Related Definitions:* N/A
*Items:*

a. Guidance or navigation systems, not elsewhere specified on the USML, that are "specially designed" for a defense article on the USML or for a 600 series item.

b. to w. [RESERVED]

x. "Parts," "components," "accessories," and "attachments," including accelerometers, gyros, angular rate sensors, gravity meters (gravimeters), and inertial measurement units (IMUs), that are "specially designed" for defense articles controlled by USML Category XII or items controlled by 7A611, and that are NOT:

1. Enumerated or controlled in the USML or elsewhere within ECCN 7A611;

2. Described in ECCNs 6A007, 6A107, 7A001, 7A002, 7A003, 7A101, 7A102 or 7A103; or

3. Elsewhere specified in ECCN 7A611.y or 3A611.y.

y. Specific ''parts,'' ''components,'' ''accessories,'' and ''attachments'' ''specially designed'' for a commodity subject to control in this ECCN or a defense article in Category XII and not elsewhere specified on the USML or in the CCL, as follows, and ''parts,'' ''components,'' ''accessories,'' and ''attachments'' ''specially designed'' therefor:

y.1 [RESERVED]

Dated: May 4, 2018.

**Richard E. Ashooh,**

*Assistant Secretary for Export Administration.*

[FR Doc. 2018–10367 Filed 5–21–18; 8:45 am]

**BILLING CODE 3510–33–P**