IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> GURBIR GREWAL, in his official capacity as New Jersey Attorney General; MICHAEL FEUER, in his official capacity as Los Angeles City Attorney; ANDREW CUOMO, in his official capacity as New York Governor; MATTHEW DENN, in his official capacity as Attorney General of the State of Delaware; JOSH SHAPIRO, in his official capacity as Attorney General of Pennsylvania; and THOMAS WOLF, in his official capacity as Pennsylvania Governor, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § § § § | Case No. 1:18-CV-637-RP |

**DECLARATION OF PALOMA HEINDORFF**

I, Paloma Heindorff, declare:

1.      I am a resident of Texas.

2.      I am a custodian of records and Director of Defense Distributed

<u>DEFENSE DISTRIBUTED AND DEFCAD</u>

3.      Defense Distributed is a Texas corporation headquartered in Austin, Texas.

4.      Defense Distributed is organized and operated for the purpose of defending the civil liberty of popular access to arms guaranteed by the United States Constitution.

1

To that end, Defense Distributed facilitates global access to, and the collaborative production of, information and knowledge related to the digital manufacturing of arms; and publishes and distributes, at no cost to the public, such information and knowledge on the internet in promotion of the public interest.

5.     Defense Distributed has distributed computer-aided design ("CAD") files and other digital information that can assist efforts to digitally manufacture or produce firearms or firearm components ("digital firearms information").  With respect to a given firearm component, the digital firearms information that Defense Distributed distributes takes the form of stereolithography (.stl) files about the component, Initial Graphics Exchange Specification (.igs) files about the component, SoLiDworks PaRT (.sldprt) files about the component, SketchUp (.skp) files about the component, Standard for the Exchange of Product Data ("STEP") (.stp) files about the component, diagrams of the component, renderings of the component, "read me" plain text files about the component's assembly methods, "read me" plain text files about the National Firearms Act and the Undetectable Firearms Act, and/or software licenses. Defense Distributed desires and intends to continue distributing digital firearms information lawfully.

6.     Defense Distributed's distributions have included the sale, giving, providing, mailing, delivering, publishing, circulating, disseminating, presenting, exhibiting, displaying, sharing, advertising, offering, and/or making available of digital firearms information.  Defense Distributed desires and intends to continue distributing digital firearms information in these manners lawfully.

7.     To accomplish its distribution activities, Defense Distributed maintains a publicly accessible website at www.defcad.org and www.defcad.com (collectively referred to as "DEFCAD").  Posting information on DEFCAD is a primary means by which Defense Distributed accomplishes its distribution of digital firearms information. Defense Distributed desires and intends to continue maintaining DEFCAD lawfully.

DISTRIBUTION OF DIGITAL FIREARMS INFORMATION—ROUND ONE

8.     Beginning in 2012, Defense Distributed generated digital firearms information in the form of CAD files that can assist an individual in digitally manufacturing or producing a single-shot firearm known as the "Liberator," a firearm receiver for AR-15 rifles, and a magazine for AR-15 rifles.  Defense Distributed posted this digital firearms information on DEFCAD for free download by the public.

9.     The digital firearms files that Defense Distributed published about the "Liberator" are accurately described by docket entry number 36-2 in *Defense Distributed et al. v. United States Department of State et al.*, No. 1:15-372-RP (W.D. Tex.).

10.     Some of the digital firearms information that Defense Distributed posted to DEFCAD at this time was originally created by other information content providers and posted on other websites before Defense Distributed posted the information to DEFCAD.

11.     The digital firearms information that Defense Distributed posted to DEFCAD at this time was downloaded approximately 100,000 times.  News reports documented this.  Exhibit A is an exemplary news article that provides proof of this fact.

12.     In May 2013, Defense Distributed received a letter dated May 8, 2013, from Glenn Smith, Chief of the Enforcement Division at the State Department Directorate of Defense Trade Controls.  Exhibit B is a copy of that letter.

13.     The State Department letter warned that the digital firearms information published on DEFCAD is described in the International Traffic in Arms Regulations, 22 C.F.R. Parts 120-130 ("ITAR"), and that Defense Distributed may have released ITAR-controlled technical data without required prior authorization from the State Department. The State Department letter instructed Defense Distributed to remove the digital firearms information from public access.

14.     At the time it posted this set of digital firearms information on DEFCAD, Defense Distributed did not know that the government would demand to pre-approve its

speech. Defense Distributed believed, and continues to believe, that its right to distribute digital firearms information on the Internet and otherwise is guaranteed by the United States Constitution. Nevertheless, due to fears of adverse civil and criminal legal action, Defense Distributed promptly complied with the State Department's demands and removed this set of digital firearms information from public access on DEFCAD.

15.    But for the State Department's imposition of the prior restraint upon the distribution of the digital firearms information, Defense Distributed would have continued to freely distribute this set of digital firearms information on DEFCAD.

<u>DISTRIBUTION OF DIGITAL FIREARMS INFORMATION—ROUND TWO</u>

16.    In 2015, Defense Distributed and the Second Amendment Foundation, later joined by Conn Williamson, filed a lawsuit in the United States District Court for the Western District of Texas against the State Department and several of its officers, styled *Defense Distributed et al. v. United States Department of State et al.*, No. 1:15-372-RP (W.D. Tex.) (hereinafter "*Defense Distributed I*"). As part of this action, among other things, Defense Distributed challenged the constitutionality of the State Department's prior restraint of public speech imposed under the ITAR.

17.    In June 2018, the *Defense Distributed I* Plaintiffs entered into a settlement agreement with the State Department. The Settlement Agreement requires, among other things, that the State Department issue a license to the *Defense Distributed I* Plaintiffs that allows them to freely publish digital firearms information. Exhibit C is a copy of the Settlement Agreement.

18.    On July 27, 2018, the State Department issued the license to Defense Distributed and the other *Defense Distributed I* Plaintiffs. Exhibit D is a copy of that license.

19.    Beginning on July 27, 2018, Defense Distributed published digital firearms information on the Internet at DEFCAD for free download by the public. This set of

digital firearms information consisted of ten subsets of CAD files, including the Liberator CAD files.  With the exception of the Liberator CAD files, which were previously posted by Defense Distributed before receiving the State Department's letter, the other CAD files posted at this time were created by persons other than Defense Distributed and had been posted on the internet by persons other than Defense Distributed before Defense Distributed republished them on DEFCAD.

20.    The Liberator files that Defense Distributed published to DEFCAD exemplify the kind of digital firearms information that Defense Distributed intends to develop and distribute in the future.  The other files that Defense Distributed published to DEFCAD are accurately described by Exhibit I, and they too exemplify the kind of digital firearms information that Defense Distributed intends to distribute in the future.

21.    Beginning on July 29, 2018, various state attorney generals filed lawsuits in New Jersey, Pennsylvania, and Washington State to stop Defense Distributed's publication of digital firearms information online.  In the course of this litigation, Defense Distributed agreed to take certain measures to block online access to the digital firearms information by persons in New Jersey, Pennsylvania, and Los Angeles.  But for the states' unfounded legal actions, Defense Distributed would not have engaged in these access-blocking activities.

22.    On July 30, 2018, attorney generals of various states sued the State Department and the *Defense Distributed I* Plaintiffs in *State of Washington et al., v. United States Department of State et al.*, No. 2:18-cv-1115-RSL (W.D. Wash.).  In that action, Judge Robert Lasnik issued a temporary restraining order that enjoined the State Department from implementing or enforcing the license and an ITAR regulatory change that the State Department had made for the purpose of complying with the Settlement Agreement.

23.    Despite this ruling, Defense Distributed maintains that the Constitution

5

guarantees its right to distribute the digital firearms information at issue. Nonetheless, out of an abundance of caution and for fear of further prosecution, Defense Distributed ceased posting digital firearms information to DEFCAD for free download by the public.

24. Judge Lasnik issued a preliminary injunction on August 27, 2018. The preliminary injunction reaffirmed the temporary restraining order, enjoining the State Department from implementing the license and the ITAR regulatory change that it had made for the purpose of complying with the Settlement Agreement.

25. During the preliminary injunction proceedings, the State of Washington Attorney General's office, speaking on behalf of all of that case's plaintiffs, and the Department of Justice, speaking on behalf of the State Department, represented to Judge Lasnik that it is legal for Defense Distributed to hand or mail digital firearms information to U.S. persons in the United States. Exhibit E is the transcript of those proceedings.

DISTRIBUTION OF DIGITAL FIREARMS INFORMATION—ROUND THREE

26. After August 27, 2018, in light of the representations that both the state and federal governments made to Judge Lasnik during the preliminary injunction proceedings, Defense Distributed used DEFCAD to advertise and offer digital firearms information for sale to U.S. persons, as defined in the ITAR, inside the United States (i.e., domestic-only sales). Exhibit F is a DEFCAD advertisement that exemplifies these efforts. In advertisements and offers, DEFCAD provided notice that domestic sales of the information were not available to residents of New Jersey, Pennsylvania, and other states involved in the multidistrict litigation (a/k/a states "behind the Blue Wall"). Exhibit G is an exemplary DEFCAD publication that provides such a notice.

27. In conjunction with these advertisements and offers, Defense Distributed sold digital firearms information by using an ecommerce platform on DEFCAD to facilitate the transaction and using the U.S. Postal Service as its means of delivering the information. After customers entered an order using DEFCAD's online ecommerce

platform, and following Defense Distributed's review, Defense Distributed placed purchased information on a USB drive or SD card and mailed the drive or card to domestic-only sales customers via the U.S. Postal Service.

28. On November 2, 2018, Defense Distributed learned that the New Jersey Legislature passed Senate Bill 2465, Section 3(*l*)(2) of which, if signed into law by the Governor, would make it a crime to, among other things "publish, circulate, disseminate, present, exhibit, display, share, advertise, offer, or make available via the Internet or by any other means" to a person in New Jersey any digital instructions in the form of CAD files or other electronic code or instructions that "may be used" to program a 3D printer to manufacture or produce a firearm, firearm receiver, magazine, or firearm component.

29. Realizing that the New Jersey Governor may sign Senate Bill 2465 at any time, Defense Distributed feared criminal enforcement of the new law against Defense Distributed, its officers, its employees, or its agents. Namely, Defense Distributed feared the commencement of criminal enforcement actions under Section 3(*l*)(2) if digital firearms information was ever provided to a person in New Jersey, if digital firearms information was ever offered for sale to a person in New Jersey, if digital firearms information was ever advertised for sale to a person in New Jersey, if digital firearms information was presented or exhibited or displayed to a person in New Jersey, and if digital firearms information was otherwise distributed to a person in New Jersey. Based upon this fear, Defense Distributed ceased offering, advertising, selling, or otherwise distributing digital firearms information on DEFCAD. All distributions of digital firearms information via DEFCAD ceased. This involved blocking all public access to DEFCAD and halting all shipments of digital firearms information via the U.S. Postal Service. Exhibit I provides proof of this fact.

30. I saw New Jersey's Governor sign Senate Bill 2465 on November 11, 2018. At that event, New Jersey's Attorney General stated that Defense Distributed was a focus

of the new law.  This and other official statements made by the New Jersey Governor and Attorney General confirm Defense Distributed's fear that any further distribution of digital firearms information will likely result in enforcement actions against Defense Distributed, as well as against Defense Distributed's officers, employees, and/or agents.

31.    Because of New Jersey's effort to criminalize and otherwise censor the distribution of digital firearms information that "may be used" to program a 3D printer to manufacture or produce a firearm, firearm receiver, magazine, or firearm component, Defense Distributed has incurred and continues to incur the burden of altering its business practices to avoid the risk that the New Jersey Attorney General will prosecute Defense Distributed and/or Defense Distributed's officers, employees, and/or agents for information received or information that is merely viewed by a person in New Jersey.

32.    Because of New Jersey's effort to criminalize and otherwise censor the distribution of digital firearms information, Defense Distributed refrains from engaging in the following constitutionally protected activities that it would otherwise conduct lawfully:

A.    Posting digital firearms information on the DEFCAD website for free download by the public;

B.    Selling digital firearms information to persons in New Jersey on the DEFCAD website for shipment on USB drive or SD cards mailed via the U.S. Postal Service;

C.    Advertising its digital firearms information offerings on the DEFCAD website.

D.    Participating in trade shows where Defense Distributed is unable to determine the state of residence of attendees that may view its displays and other advertisements;

E.    Sending advertisements via email lists where Defense Distributed is unable

to determine the states of residence of the recipients and has no way of knowing in which states recipients will be when they receive emails; and

F.    Participating in any national advertising network, radio communication, televised media, and other media that may advertise and promote Plaintiffs' respective missions.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 3rd day of December, 2018.

Paloma Heindorff
Director, Defense Distributed

# Exhibit A

3D-Printed Gun's Blueprints Downloaded 100,000 Times In Two Days (With Some Help From Kim Dotcom)     11/19/18, 10:03 PM

111,437 views  |  May 8, 2013, 05:12pm

# 3D-Printed Gun's Blueprints Downloaded 100,000 Times In Two Days (With Some Help From Kim Dotcom)



**Andy Greenberg**  Forbes Staff
Security
*Covering the worlds of data security, privacy and hacker culture.*

If gun control advocates hoped to prevent blueprints for the world's first fully 3D-printable gun from spreading online, that horse has now left the barn about a hundred thousand times.

That's the number of downloads of the 3D-printable file for the so-called "Liberator" gun that the high-tech gunsmithing group Defense Distributed has seen in just the last two days, a member of the group tells me. The gun's CAD files have been ten times more popular than any component the group has previously made available, parts that have included the body of an AR-15 and the magazine for an AK-47."This has definitely been our most



Defense Distributed founder Cody Wilson, displaying the world's first fully 3D-printed gun, the "Liberator." Click to enlarge. (Credit: Michael Thad Carter for Forbes)

Case 1:23-cv-00849-EGB   Document 148-76   Filed 04/30/21   Page 12 of 53

well-received download," says Haroon Khalid, a developer working with Defense Distributed. "I don't think any of us predicted it would be this much."

**Update**: The State Department has now demanded Defense Distributed take down its printable gun files due to possible export control violations.

The controversial gun-printing group is hosting those files, which include everything from the gun's trigger to its body to its barrel, on a service that has attracted some controversy of its own: Kim Dotcom's Mega storage site. Although the blueprint is only publicly visible on Defense Distributed's own website Defcad.org, users who click on it are prompted to download the collection of CAD files from Mega.co.nz, which advertises that it encrypts all users' information and has a reputation for resisting government surveillance. **Update**: Mega now says it's deleting the gun files from its servers, and Kim Dotcom has declared the weapon a "serious threat to the security of the community."

Cody Wilson, Defense Distributed's 25-year-old founder, says that the group chose to use Mega mostly because it was fast and free. But he also says he feels a degree of common cause with Kim Dotcom, the ex-hacker chief executive of Mega who has become a vocal critic of the U.S. government after being indicted for copyright infringement and racketeering in early 2012. "We're sympathetic to Kim Dotcom," says Wilson. "There are plenty of services we could have used, but we chose this one. He's down for the struggle."

The most downloads of Defense Distributed's "Liberator," surprisingly, haven't come from the U.S., but from Spain, according to Khalid's count. The U.S. is second, ahead of Brazil, Germany, and the U.K., he says, although he wasn't able to provide absolute download numbers for each country.

Case 1:23-cv-00849-EGB    Document 148-76    Filed 04/30/21    Page 13 of 53

## YOU MAY ALSO LIKE

**Update**: Although Spain was initially outpacing the U.S. in downloads, it seems more Americans have now downloaded the file.

The gun's blueprint, of course, may have also already spread far wider than Defense Distributed can measure. It's also been uploaded to the filesharing site the Pirate Bay, where it's quickly become one of the most popular files in the site's 3D-printing category. "This is the first in what will become an avalanche of undetectable, untraceable, easy-to-manufacture weapons that will turn the tables on evil-doers the world over," writes one user with the name DakotaSmith on the site. "Share and enjoy."

It's worth noting that only a fraction of those who download the printable gun file will ever try to actually create one. Defense Distributed used an $8,000 second-hand Stratasys Dimension SST to print their prototype, a 3D printer that the vast majority of its fans won't have access to.

Nonetheless the "Liberator," which I first revealed last Friday and then witnessed being test-fired over the weekend, has caused an enormous stir online. Defense Distributed says that it received 540,000 users to its website in the two days since its printable gun was released, and its video revealing the gun has attracted 2.8 million views on YouTube.

The project has also already immediately inspired a legal backlash. New York congressmen Steve Israel and Chuck Schumer have both called for the renewal of the Undetectable Firearms Act to ban any gun that can't be spotted with a metal detector.

3D-Printed Gun's Blueprints Downloaded 100,000 Times In Two Days (With Some Help From Kim Dotcom)                                    11/19/18, 10:03 PM

But Defense Distributed's real goal hasn't been to create an undetectable gun so much as an uncensorable, digital one. As the group's founder radical libertarian founder Cody Wilson sees it, firearms can be made into a printable file that blurs the line between gun control and information censorship, blending the First Amendment and the Second and demonstrating how technology can render the government irrelevant.

"Call me crazy, but I see a world where contraband will pass underground through the data cables to be printed in our homes as the drones move overhead," Wilson said when we first spoke in August of last year. "I see a kind of poetry there...I dream of this very weird future and I'd like to be a part of it."

—

Case 1:23-cv-00849-EGB    Document 148-76    Filed 04/30/21    Page 15 of 53

**Follow me on Twitter, and check out my new book, *This Machine Kills Secrets: How WikiLeakers, Cypherpunks and Hacktivists Aim To Free The World's Information*.**

*Related on Forbes:*

---

Case 1:23-cv-00849-EGB    Document 148-76    Filed 04/30/21    Page 16 of 53



## Gallery: Ten Wild Things You Can 3D Print At Home

10 images

View gallery  →

*I'm a technology, privacy, and information security reporter and most recently the author of the book* This Machine Kills Secrets, *a chronicle of the history and future of infor...* **MORE**

3D-Printed Gun's Blueprints Downloaded 100,000 Times In Two Days (With Some Help From Kim Dotcom)    11/19/18, 10:03 PM

106,791 views    |    Nov 1, 2018, 09:00am

# #Futureproofing: Why This Company Sources Talent Locally (And Why You Should Too)



**U.S. Chamber of Commerce Staff**  Brand Contributor
**Grads of Life** BRANDVOICE



**U.S. Chamber of Commerce Staff**  Brand Contributor

<span>Follow</span>

Every day, American businesses are solving some of the world's greatest challenges, and in the process, they're creating opportunity, strengthening their communities, and moving our country forward. Brought to you by the U.S. Chamber of Commerce, Free Enterprise brings their... **Read More**

# Exhibit B



United States Department of State

*Bureau of Political-Military Affairs*
*Office of Defense Trade Controls Compliance*
*Washington, D.C. 20522-0112*

MAY 0 8 2013

In reply refer to


Mr. Cody Wilson
Defense Distributed

Dear Mr. Wilson:

The Department of State, Bureau of Political Military Affairs, Office of Defense Trade Controls Compliance, Enforcement Division (DTCC/END) is responsible for compliance with and civil enforcement of the Arms Export Control Act (22 U.S.C. 2778) (AECA) and the AECA's implementing regulations, the International Traffic in Arms Regulations (22 C.F.R. Parts 120-130) (ITAR). The AECA and the ITAR impose certain requirements and restrictions on the transfer of, and access to, controlled defense articles and related technical data designated by the United States Munitions List (USML) (22 C.F.R. Part 121).

DTCC/END is conducting a review of technical data made publicly available by Defense Distributed through its 3D printing website, DEFCAD.org, the majority of which appear to be related to items in Category I of the USML. Defense Distributed may have released ITAR-controlled technical data without the required prior authorization from the Directorate of Defense Trade Controls (DDTC), a violation of the ITAR.

Technical data regulated under the ITAR refers to information required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of defense articles, including information in the form of blueprints, drawings, photographs, plans, instructions or documentation. For a complete definition of technical data, see § 120.10 of the ITAR. Pursuant to § 127.1 of the ITAR,

- 2 -

it is unlawful to export any defense article or technical data for which a license or written approval is required without first obtaining the required authorization from the DDTC. Please note that disclosing (including oral or visual disclosure) or transferring technical data to a foreign person, whether in the United States or abroad, is considered an export under § 120.17 of the ITAR.

The Department believes Defense Distributed may not have established the proper jurisdiction of the subject technical data. To resolve this matter officially, we request that Defense Distributed submit Commodity Jurisdiction (CJ) determination requests for the following selection of data files available on DEFCAD.org, and any other technical data for which Defense Distributed is unable to determine proper jurisdiction:

1. Defense Distributed Liberator pistol
2. .22 electric
3. 125mm BK-14M high-explosive anti-tank warhead
4. 5.56/.223 muzzle brake
5. Springfield XD-40 tactical slide assembly
6. Sound Moderator – slip on
7. "The Dirty Diane" 1/2-28 to 3/4-16 STP S3600 oil filter silencer adapter
8. 12 gauge to .22 CB sub-caliber insert
9. Voltlock electronic black powder system
10. VZ-58 front sight.

DTCC/END requests that Defense Distributed submit its CJ requests within three weeks of receipt of this letter and notify this office of the final CJ determinations. All CJ requests must be submitted electronically through an online application using the DS-4076 Commodity Jurisdiction Request Form. The form, guidance for submitting CJ requests, and other relevant information such as a copy of the ITAR can be found on DDTC's website at http://www.pmddtc.state.gov.

Until the Department provides Defense Distributed with final CJ determinations, Defense Distributed should treat the above technical data as ITAR-controlled. This means that all such data should be removed from public access immediately. Defense Distributed should also review the remainder of the data made public on its website to

determine whether any additional data may be similarly controlled and proceed according to ITAR requirements.

Additionally, DTCC/END requests information about the procedures Defense Distributed follows to determine the classification of its technical data, to include the aforementioned technical data files. We ask that you provide your procedures for determining proper jurisdiction of technical data within 30 days of the date of this letter to Ms. Bridget Van Buren, Compliance Specialist, Enforcement Division, at the address below:

Office of Defense Trade Controls Compliance



We appreciate your full cooperation in this matter. Please note our reference number in any future correspondence.

Sincerely,

Glenn E. Smith
Chief, Enforcement Division

# Exhibit C

## SETTLEMENT AGREEMENT

Defense Distributed ("DD"), Second Amendment Foundation, Inc. ("SAF"), and Conn Williamson (collectively, "Plaintiffs,") and the United States Department of State ("State"), the Secretary of State, the Directorate of Defense Trade Controls ("DDTC"), the Deputy Assistant Secretary, Defense Trade Controls, and the Director, Office of Defense Trade Controls Policy (collectively, "Defendants"), out of a mutual desire to resolve all of the claims in the case captioned *Defense Distributed, et al. v. Dep't of State, et al.*, Case No. 15-cv-372-RP (W.D. Tex.) (the "Action") without the need for further litigation and without any admission of liability, hereby stipulate and agree as follows:

Plaintiffs and Defendants do hereby settle all claims, issues, complaints, or actions described in the case captioned, and any and all other claims, complaints, or issues that have been or could have been asserted by Plaintiffs against Defendants in accordance with the following terms and conditions:

1.      *Consideration*: In consideration of Plaintiffs' agreement to dismiss the claims in the Action with prejudice as described in paragraph 2, below, Defendants agree to the following, in accordance with the definitions set forth in paragraph 12, below:

(a)     Defendants' commitment to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the <u>Federal Register</u> of a notice of proposed rulemaking and final rule, revising USML Category I to exclude the technical data that is the subject of the Action.

(b)     Defendants' announcement, while the above-referenced final rule is in development, of a temporary modification, consistent with the International

Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that is the subject of the Action. The announcement will appear on the DDTC website, www.pmddtc.state.gov, on or before July 27, 2018.

(c)    Defendants' issuance of a letter to Plaintiffs on or before July 27, 2018, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that the Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13). For the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue this approval.

(d)    Defendants' acknowledgment and agreement that the temporary modification of USML Category I permits any United States person, to include DD's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the letter to Plaintiffs permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files.

(e)    Payment in the amount of $39,581.00.  This figure is inclusive of any interest and is the only payment that will be made to Plaintiffs or their counsel by Defendants under this Settlement Agreement. Plaintiffs' counsel will provide Defendants'

2

counsel with all information necessary to effectuate this payment.

The items set forth in subparagraphs (a) through (e) above constitute all relief to be provided in settlement of the Action, including all damages or other monetary relief, equitable relief, declaratory relief, or relief of any form, including but not limited to, attorneys' fees, costs, and/or relief recoverable pursuant to 2 U.S.C. § 1302, 2 U.S.C. § 1311, 2 U.S.C. § 1317, 22 U.S.C. § 6432b(g), 28 U.S.C. § 1920, Fed. R. Civ. P. 54(d), and the Local Rules.

2.   *Dismissal with Prejudice:* At the time of the execution of this Settlement Agreement, Plaintiffs agree to have their counsel execute and provide to Defendants' counsel an original Stipulation for Dismissal with Prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) and 41(a)(1)(B). Counsel for Defendants agree to execute the stipulation and file it with the Court in the Action, no sooner than 5 business days after the publication of the announcement described in Paragraph 1(b) of this Settlement Agreement and issuance of the letter described in Paragraph 1(c) of this Settlement Agreement. A copy of the Stipulation for Dismissal with Prejudice is attached hereto.

3.   *Release:* Plaintiffs, for themselves and their administrators, heirs, representatives, successors, or assigns, hereby waive, release and forever discharge Defendants, and all of their components, offices or establishments, and any officers, employees, agents, or successors of any such components, offices or establishments, either in their official or

3

individual capacities, from any and all claims, demands and causes of action of every kind, nature or description, whether currently known or unknown, which Plaintiffs may have had, may now have, or may hereafter discover that were or could have been raised in the Action.

4.   *No Admission of Liability:* This Settlement Agreement is not and shall not be construed as an admission by Defendants of the truth of any allegation or the validity of any claim asserted in the Action, or of Defendants' liability therein. Nor is it a concession or an admission of any fault or omission in any act or failure to act. Nor is it a concession or admission as to whether the monetary or equitable relief, attorneys' fees, costs, and expenses sought by Plaintiffs in the Action, are reasonable or appropriate. None of the terms of the Settlement Agreement may be offered or received in evidence or in any way referred to in any civil, criminal, or administrative action other than proceedings permitted by law, if any, that may be necessary to consummate or enforce this Settlement Agreement. The terms of this Settlement Agreement shall not be construed as an admission by Defendants that the consideration to be given hereunder represents the relief that could be recovered after trial. Defendants deny that they engaged in *ultra vires* actions, deny that they violated the First Amendment, Second Amendment, or Fifth Amendment of the United States Constitution, and maintain that all of the actions taken by Defendants with respect to Plaintiffs comply fully with the law, including the United States Constitution.

4

5.    *Merger Clause:* The terms of this Settlement Agreement constitute the entire agreement of Plaintiffs and Defendants entered into in good faith, and no statement, remark, agreement or understanding, oral or written, which is not contained therein, shall be recognized or enforced. Plaintiffs acknowledge and agree that no promise or representation not contained in this Settlement Agreement has been made to them and they acknowledge and represent that this Settlement Agreement contains the entire understanding between Plaintiffs and Defendants and contains all terms and conditions pertaining to the compromise and settlement of the disputes referenced herein. Nor does the Parties' agreement to this Settlement Agreement reflect any agreed-upon purpose other than the desire of the Parties to reach a full and final conclusion of the Action, and to resolve the Action without the time and expense of further litigation.

6.    *Amendments:* This Settlement Agreement cannot be modified or amended except by an instrument in writing, agreed to and signed by the Parties, nor shall any provision hereof be waived other than by a written waiver, signed by the Parties.

7.    *Binding Successors*: This Settlement Agreement shall be binding upon and inure to the benefit of Plaintiffs and Defendants, and their respective heirs, executors, successors, assigns and personal representatives, including any persons, entities, departments or agencies succeeding to the interests or obligations of the Parties.

5

8.  *Consultation with Counsel:* Plaintiffs acknowledges that they have discussed this Settlement Agreement with their counsel, who has explained these documents to them and that they understand all of the terms and conditions of this Settlement Agreement. Plaintiffs further acknowledge that they have read this Settlement Agreement, understand the contents thereof, and execute this Settlement Agreement of their own free act and deed. The undersigned represent that they are fully authorized to enter into this Settlement Agreement.

9.  *Execution:* This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together constitute one and the same instrument, and photographic copies of such signed counterparts may be used in lieu of the original.

10. *Jointly Drafted Agreement:* This Settlement Agreement shall be considered a jointly drafted agreement and shall not be construed against any party as the drafter.

11. *Tax and Other Consequences:* Compliance with all applicable federal, state, and local tax requirements shall be the sole responsibility of Plaintiffs and their counsel. Plaintiffs and Defendants agree that nothing in this Settlement Agreement waives or modifies federal, state, or local law pertaining to taxes, offsets, levies, and liens that may apply to this

6

Settlement Agreement or the settlement proceeds, and that Plaintiffs are executing this Settlement Agreement without reliance on any representation by Defendants as to the application of any such law.

12.    *Definitions*: As used in this Settlement Agreement, certain terms are defined as follows:

- The phrase "*Published Files*" means the files described in paragraph 25 of Plaintiffs' Second Amended Complaint.

- The phrase "*Ghost Gunner Files*" means the files described in paragraph 36 of Plaintiffs' Second Amended Complaint.

- The phrase "*CAD Files*" means the files described in paragraph 40 of Plaintiffs' Second Amended Complaint.

- The phrase "*Other Files*" means the files described in paragraphs 44-45 of Plaintiffs' Second Amended Complaint.

- The phrase "*Military Equipment*" means (1) Drum and other magazines for firearms to .50 caliber (12.7 mm) inclusive with a capacity greater than 50 rounds, regardless of jurisdiction of the firearm, and specially designed parts and components therefor; (2) Parts and components specially designed for conversion of a semi-automatic firearm to a fully automatic firearm; (3) Accessories or attachments specially designed to automatically stabilize aim (other than gun rests) or for automatic targeting, and specially designed parts and components therefor.

- The phrase "*technical data that is the subject of the Action*" means: (1) the Published Files; (2) the Ghost Gunner Files; (3) the CAD Files; and (4) the Other Files insofar as those files regard items exclusively: (a) in Category I(a) of the United States Munitions List (USML), as well as barrels and receivers covered by Category I(g) of the USML that are components of such items; or (b) items

7

covered by Category I(h) of the USML solely by reference to Category I(a), excluding Military Equipment.

Dated: June 29, 2018

Dated: June 29, 2018

Matthew A. Goldstein
Snell & Wilmer LLP
One South Church Ave. Ste. 1500
Tucson, Arizona 85701
*Counsel for Plaintiffs*

Dated: June 29, 2018

Eric J. Soskin
Stuart J. Robinson
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20001
Tel. (202) 353-0533

*Counsel for Defendants*

8

# Exhibit D



**United States Department of State**
*Bureau of Political-Military Affairs*
*Directorate of Defense Trade Controls*
*Washington,* D.C. 20522-0112

July 27, 2018

Mr. Cody R. Wilson, Defense Distributed, and Second Amendment Foundation, Inc.
c/o Mr. Matthew A. Goldstein
Snell & Wilmer
One South Church Avenue
Suite 1500
Tucson, AZ 85701-1630

RE:   Directorate of Defense Trade Controls Approval of Certain Files for Public Release

Dear Mr. Wilson, Defense Distributed, and Second Amendment Foundation, Inc.:

This letter is provided in accordance with section 1(c) of the Settlement Agreement in the matter of *Defense Distributed, et al., v. U.S. Department of State, et al.,* No. 15-cv-372-RP (W.D. Tx.) (hereinafter referred to as *"Defense Distributed"*). As used in this letter,

- The phrase "Published Files" means the files described in paragraph 25 of Plaintiffs' Second Amended Complaint in *Defense Distributed.*
- The phrase "Ghost Gunner Files" means the files described in paragraph 36 of Plaintiffs' Second Amended Complaint in *Defense Distributed.*
- The phrase "CAD Files" means the files described in paragraph 40 of Plaintiffs' Second Amended Complaint in *Defense Distributed.*

The Department understands that Defense Distributed submitted the Published Files, Ghost Gunner Files, and CAD Files to the Department of Defense's Defense Office of Prepublication and Security Review (DOPSR) in 2014 to request review for approval for public release pursuant to International Traffic in Arms Regulations (ITAR) § 125.4(b)(13). It is our further understanding that DOPSR did not make a determination on the eligibility of these files for release, but instead referred you to the Directorate of Defense Trade Controls (DDTC) regarding public release of these files.

I advise you that for the purposes of ITAR § 125.4(b)(13), the Department of State is a cognizant U.S. government department or agency, and DDTC has authority to issue the requisite approval for public release.  To that end, I approve the Published Files, Ghost Gunner Files, and CAD Files for public release (i.e., unlimited distribution).  As set forth in ITAR § 125.4(b)(13), technical data approved for public release by the cognizant U.S. government department or agency is not subject to the licensing requirements of the ITAR.

Sincerely,

Acting Deputy Assistant Secretary for the
Directorate of Defense Trade Controls

2

# Exhibit E

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT SEATTLE

_____

STATE OF WASHINGTON, et al.,    ) C18-1115-RSL
                                )
            Plaintiffs,          ) SEATTLE, WASHINGTON
                                )
v.                              ) August 21, 2018
                                )
UNITED STATES DEPARTMENT OF      ) MOTION HEARING
STATE, et al.,                   )
                                )
            Defendants.          )

_____

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE ROBERT S. LASNIK
UNITED STATES DISTRICT JUDGE

_____


APPEARANCES:



 For the Plaintiffs:      Jeffrey G. Rupert
                          Attorney General's Office
                          PO Box 40110
                          Olympia, WA  98504

                          Jeffrey T. Sprung
                          Kristin Beneski
                          Zachary P. Jones
                          Attorney General's Office
                          800 5th Avenue
                          Suite 2000
                          Seattle, WA  98104

                          Scott J. Kaplan
                          Oregon Department of Justice
                          100 SW Market Street
                          Portland, OR  97201

Stenographically reported - Transcript produced with computer-aided technology
Debbie Zurn - RMR, CRR - Federal Court Reporter - 700 Stewart Street - Suite 17205 - Seattle WA  98101

regulations here are narrowly tailored, and there's a procedure to challenge it with a CJ. And the declaration from Ms. Aguirre indicated that most CJs are granted. By that, I mean you're allowed to export the item.

Finally, there are alternative avenues to produce this information. But here, notably, it only applies to Internet posting. They can hand them around domestically. And also there's a wide exception in the statute for general scientific, mathematical or engineering papers.

I would note that Judge Pitman's decision relied on a Ninth Circuit case, which we again believe controls, is the *Chi Mak* case, from the Ninth Circuit in 2012, where the Ninth Circuit quoted -- quote says, it repeatedly rejected First Amendment challenges to the AECA, its implementation of regulations in its predecessor statute.

So, again, we believe that decides the issue with the First Amendment. But Your Honor only has to reach these issues on the balancing of the equities test for an injunction.

Moving on to the balancing of the equities. We believe there's a real and present danger to the public safety. The President seems to agree. And the preliminary injunction, if it were issued, as with temporary restraining orders, will not harm the government. It would put us back to where we were before this all happened. As to the First Amendment

part of the process; or, we just wanted to change the 50-caliber or less, nonautomatic, and we didn't even think about the 3D printing?

MR. MYERS:  Your Honor, I think the face of the documents that we've relied on and put before the Court suggests that there's been a year's long effort to revise the United States Munitions List.  And as part of that, the judgment has been made that sub-50-caliber nonautomatic firearms ought not be regulated under the AECA and ITAR.  And that extends to professional firearms or plastic firearms, provided that they are nonautomatic and sub-50-caliber.

To be clear, even if the Court were to grant plaintiffs every ounce of relief that they seek in this case, Defense Distributed could still mail every American citizen in the country the files that are at issue here.  And what that gets at, and what I really want to underscore, is the fundamental disconnect between the claims that plaintiffs are asserting here, and the statutory regime at issue.

Again, there are domestic prohibitions on undetectable firearms, on firearm possession.  Some of those are federal.  Some of those are state.  And all remain on the books and capable of being enforced.  But plaintiffs are trying to rely on the wrong statutes.

So let me start by talking about plaintiffs' theory of injury, which is relevant to their claims of both standing

the federal government follow their rules in making the modification and sending the letter?  And I will deal with those in that technical arena.

But a solution to the greater problem is so much better suited to the other two branches of government.  And I really hope and wish that the Executive Branch and Congress would face up to this and say, it's a tough issue, but that's why you got into public service to begin with.

But thanks very much.  Did you have anything else, Mr. Rupert?

MR. RUPERT:  I do not, Your Honor.

THE COURT:  I'm going to take the matter under advisement.  There is some excellent briefing and issues that I want to take a closer look at.  I will definitely get a written decision out by Monday, August 27th.  So you'll have it for sure before the expiration of the TRO on the 28th.

Okay.  Thanks very much, counsel.  We are adjourned.

(Adjourned.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Debbie Zurn*

DEBBIE ZURN
COURT REPORTER

# Exhibit F



INTERNET ARCHIVE
WayBackMachine

https://defcad.com/    Go    JUL  AUG  OCT

272 captures                                    ◄ 30 ►
2 Feb 2011 – 19 Nov 2018                2017 2018 2019                    ▼ About this capture

# DEFCAD
$280K/$400K (70%) DONATE

SEARCH        PARTNER        LOGIN        SIGN UP

## BUY YOUR FILES TODAY. SIGN UP TO SELL.

### DISCOVER



Browse a growing library of files from enthusiasts and engineers.

### BUY



DEFCAD is a public marketplace.

### CONTRIBUTE



Participate in the active development of your Second Amendment.

FEATURED        MOST RECENT        ALPHABETICAL

**AR-15**
💬 77
DEFDIST
JUL 27, 2018
↓ 3263

**VZ. 58**
💬 8
DEFDIST
JUL 27, 2018
↓ 2152

**AR-10**
💬 13
DEFDIST
JUL 27, 2018
↓ 2547

**LIBERATOR**
💬 90
DEFDIST
JUL 27, 2018
↓ 5050

**DD AR-15 80% LOWER**
💬 27
DEFDIST
JUL 27, 2018
↓ 3174

**BERETTA 92FS**
💬 36
DEFDIST
JUL 27, 2018
↓ 3534

**GHOST GUNNER 2**
💬 18
DEFDIST
JUL 27, 2018
↓ 119

**DPMS 308 80% LOWER**
💬 8
DEFDIST
JUL 27, 2018
↓ 98

**RUGER 10/22**
💬 13
DEFDIST
JUL 27, 2018
↓ 2431

**1911**
💬 21
DEFDIST
JUL 27, 2018
↓ 3017



A GHOST FROM THE MACHINE

# DEFCAD

ABOUT          FAQ          CONTACT          PRIVACY

DEFENSE DISTRIBUTED. ALL RIGHTS RESERVED.

  

# Exhibit G




NO LICENSE

 AR15_80_PERCENT_LOWER.
ZIP                                                    SLDPRT, STP


REPORT THIS
CONTENT

💬 COMMENTS (30)



PLEASE LOGIN TO ADD COMMENTS

 **MAXKULIK**

My download link to get ALL the DD files has changed
to:
http://MaxKulik.net/downloads.html
Happy Printing!

2 DAYS, 12 HOURS

 **HARDWIRED79**

Thanks MaxKulik!

3 DAYS, 9 HOURS

 **MAXKULIK**

I would like to just share again:

The files are downloadable on my personal server here:
http://MaxKulik.net/DDCAD.zip

1 WEEK, 4 DAYS

 **HAMMERHEAD1911**

can't download -_-

1 MONTH, 2 WEEKS

 **VYRD**

why i can't download?

1 MONTH, 2 WEEKS

### BLACKCELL

find book on new weapons www.DELTAPress.com

1 MONTH, 3 WEEKS

### TREND777

Is it not downloadable? Im at Puerto Rico

1 MONTH, 3 WEEKS

### MARKHARGRAVE

are these just the mill ones or is the 3D print one out
there?

1 MONTH, 3 WEEKS

### LOBISON

so we still can not download ?

1 MONTH, 3 WEEKS

### NOBACK

Good

1 MONTH, 3 WEEKS

Load more comments

# DEFCAD

ABOUT    FAQ    CONTACT    PRIVACY    TERMS

DEFENSE DISTRIBUTED. ALL RIGHTS RESERVED.

   

Case 1:23-cv-00849-EGB    Document 148-76    Filed 04/30/21    Page 47 of 53

# Exhibit H



Paloma Heindorff <paloma@defdist.org>

---

# DEFCAD file shipping

3 messages

---

**Paloma** <paloma@defdist.org>                 Fri, Nov 2, 2018 at 2:11 PM
To: Stephen Sheftall <sales@ghostgunner.net>, Stacie Frost <shipping@ghostgunner.net>, Justin Frost
<jrf@ghostgunner.net>

Hi guys, quick note: please halt all shipments of DEFCAD files until further notice.


--

Paloma Heindorff
Director

---

Defense Distributed

---

2320 Donley Drive, Unit C
Austin, TX 78758
p:  512.584.8013

---

www.ghostgunner.net

---

This e-mail transmission contains
confidential information that is the property
of the sender and the organization
(DEFENSE DISTRIBUTED, INC.) for which
the sender represents. If you are not the
intended recipient and have by accident
received this email, please do not retain,
disclose, reproduce or distribute the
contents of this e-mail transmission, or take
any action in relevance thereon or pursuant
thereto.  Please notify the sender of the
error by responding to the email
accordingly in a timely and reasonable
fashion otherwise failure to do so may
cause legal action to be taken.
Thank you.

---

**Stephen Sheftall** <sales@ghostgunner.net>           Fri, Nov 2, 2018 at 2:28 PM
To: Paloma <paloma@defdist.org>

Copy that.

Stephen Sheftall
Ghost Gunner Sales

---

Ghost Gunner

---

2320 Donley Drive Suite C
Austin, TX 78758
p:  512.584.8013

---

www.ghostgunner.net

---

This e-mail transmission contains
confidential information that is the property
of the sender and the organization (GHOST
GUNNER, INC.) for which the sender
represents. If you are not the intended
recipient and have by accident received this
email, please do not retain, disclose,

---

reproduce or distribute the contents of this
e-mail transmission, or take any action in
relevance thereon or pursuant thereto.
Please notify the sender of the error by
responding to the email accordingly in a
timely and reasonable fashion otherwise
failure to do so may cause legal action to
be taken.
Thank you.

[Quoted text hidden]

---

**Justin Frost** <jrf@ghostgunner.net>                    Fri, Nov 2, 2018 at 2:31 PM
To: paloma@defdist.org

Got it.

[Quoted text hidden]

--

Justin Frost

Ghost Gunner Tech Support

Ghost Gunner

2320 Donley Drive Suite C
Austin, TX 78758
p:  737-212-1979

www.ghostgunner.net

This e-mail transmission contains
confidential information that is the property
of the sender and the organization (GHOST
GUNNER, INC.) for which the sender
represents. If you are not the intended
recipient and have by accident received this
email, please do not retain, disclose,
reproduce or distribute the contents of this
e-mail transmission, or take any action in
relevance thereon or pursuant thereto.
Please notify the sender of the error by
responding to the email accordingly in a
timely and reasonable fashion otherwise
failure to do so may cause legal action to
be taken.
Thank you.

# Exhibit I

## DECLARATION OF CODY WILSON

I, Cody Wilson, declare:

1.  I am a citizen of the United States and a resident of Texas.

2.  I co-founded and now lead Defense Distributed.

3.  Defense Distributed maintains DEFCAD.com

4.  Each of the ten files posted by Defense Distributed on July 27, 2018 were already in the public domain before that date, as follows:

(1) The AR-15 assembly files were available at the following sites:

Grabcad: https://grabcad.com/library/ar-15-m16-a1
CNCguns: https://www.cncguns.com/downloads.html

(2) The VZ. 58 assembly files were available at the following site:

Grabcad: https://grabcad.com/library/vz-58-rifle-1

(3) The AR-10 assembly files were available at the following site:

Grabcad: https://grabcad.com/library/ar-10-battle-rifle-7-62x51mm-1

(4) The Liberator pistol assembly files were available at the following sites:

Grabcad: https://grabcad.com/library/liberator-guns-full-1

PirateBay:
https://thepiratebay.org/torrent/8444391/DefDist_Liberator_Pistol

(5) The Beretta M9 assembly files were available at the following sites:

Grabcad: https://grabcad.com/library/beretta-92fs

(6) The 1911 assembly files were available at the following sites:

Grabcad: https://grabcad.com/library/colt-m1911-a1-2
CNCguns: https://www.cncguns.com/downloads.html

1000002.1

Scanned with CamScanner

(7) The 10/22 assembly files were available at the following sites:

Grabcad: https://grabcad.com/library/ruger-10-22-1
CNCguns: https://www.cncguns.com/downloads.html

(8)    The Ghost Gunner 2 assembly files (not ITAR-controlled) were available at the following site:

Ghost Gunner: https://ghostgunner.net/downloads/

(9) The 308 80% lower model files were available at the following site:

CNCguns: https://www.cncguns.com/downloads.html

(10)    The AR-15 80% lower model files were available at the following sites:

Grabcad: https://grabcad.com/library/mil-spec-ar-15-lower
CNCguns: https://www.cncguns.com/downloads.html

I declare under penalty of perjury that the foregoing is true and correct.

This the 15th day of August, 2018.

Cody Wilson

Scanned with CamScanner