IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and | § | |
| SECOND AMENDMENT | § | |
| FOUNDATION, | § | |
| | § | Case No. 23-849 C |
| v. | § | |
| | § | |
| THE UNITED STATES | § | |

**PLAINTIFFS' TRANSFER COMPLAINT**

# Table of Contents

I.    Introduction ............................................................................................................ 3

II.   Parties .................................................................................................................... 4

III.  Subject Matter Jurisdiction .................................................................................. 6

IV.   Venue ..................................................................................................................... 7

V.    Facts ...................................................................................................................... 8

    A.    Digital Firearms Information is Speech .......................................................... 8

    B.    Defense Distributed's Digital Firearms Information Publications ................... 10

    C.    The State Department's International Traffic in Arms Regulations. ................. 18

    D.    *Defense Distributed I*: Litigation ................................................................. 20

    E.    *Defense Distributed I*: Settlement Agreement ............................................ 23

    F.    Settlement Agreement Fulfillment Begins ................................................... 27

    G.    The State Department Stopped Fulfilling the Settlement Agreement ............ 29

        1.   The State Department disavowed the license. .......................................... 34

        2.   After disavowal, the State Department refused to supply a license. ......... 34

        3.   The State Department disavowed the Temporary Modification. ............. 35

        4.   After disavowal, the State Department refused to supply a
            Temporary Modification. .................................................................... 36

        5.   The State Department failed to supply the required regulatory
            changes. ............................................................................................ 36

    H.    Irreparable Harm ........................................................................................ 38

VI.   Causes of Action .................................................................................................. 39

    A.    Count One: APA § 706(2)(A). ..................................................................... 39

    B.    Count Two: APA § 706(2)(B). ..................................................................... 42

    C.    Count  Three: APA § 706(2)(C). ................................................................. 44

    D.    Count  Four: APA § 706(2)(D). ................................................................... 46

    E.    Count  Five: Breach of contract ................................................................... 48

    F.    Count Six: Freedom of Speech and of the Press ........................................... 51

    G.    Count Seven: Right to Keep and Bear Arms ............................................... 55

    H.    Count Eight: Due Process ........................................................................... 58

VII.  Requests for Relief ............................................................................................... 61

## I.     Introduction

1.     This case concerns extraordinarily important questions of free speech regarding the First Amendment right to speak about the Second Amendment.  Defense Distributed and the Second Amendment Foundation are peaceful, law-abiding organizations committed to preserving, protecting, and promoting America's individual right to keep and bear Arms in both traditional and modern contexts.  At stake now is the modern right to speak about the Second Amendment by sharing computer files with digital firearms information.  Even though federal free speech laws protect this freedom with full force, both the United States Department of State and the New Jersey Attorney General are breaking the law multiple times over with unprecedented acts of censorship.

2.     The State Department can never abridge the freedom of speech—especially where, as here, the State Department made a legally-enforceable contract to protect Defense Distributed and the Second Amendment Foundation's right to engage in the speech at issue by performing a series of administrative obligations.  But instead of performing those critical protective obligations, the State Department violated administrative law in failing to comply.  Hence, Defense Distributed and the Second Amendment Foundation sue the State Department to halt this wrongdoing and obtain remedies due to them under the Administrative Procedure Act and other federal law.

3.     Meanwhile, New Jersey's Attorney General is abridging Defense Distributed and the Second Amendment Foundation's freedom of speech as well.  Through a torrent of civil and criminal enforcement actions, the NJAG has punished and threatens to continue punishing Defense Distributed and the Second Amendment Foundation's members for exercising their right to speak freely about firearms.  Hence, Defense Distributed and the Second Amendment

Foundation sued the NJAG to halt his censorship under 42 U.S.C. § 1983. The claims against the NJAG are pending elsewhere now, but still form part of the instant case's factual background. For without the State Department's wrongdoing, the NJAG's further offenses would not be possible.

## II.   Parties

### A.   Defense Distributed

4.   Plaintiff Defense Distributed is a private business corporation that is headquartered and has its principal place of business in Austin, Texas. It did so at all relevant times in the past.

5.   Currently and at all relevant times in the past, most of Defense Distributed's activities, including research, design, development, manufacturing, and publishing occurred in and around Austin.

6.   Currently and at all relevant times in the past, all of Defense Distributed's employees lived in or near Austin.

7.   Currently and at all relevant times in the past, a public library that displayed Defense Distributed's publications from time to time has been in Austin, Texas.

8.   Cody Wilson founded Defense Distributed.

9.   Cody Wilson serves as Defense Distributed's Director.

### B.   Second Amendment Foundation, Inc.

10.   Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of the State of Washington. SAF's principal place of business is in Bellevue, Washington.

11.   SAF promotes the right to keep and bear arms by supporting education, research, publications, and legal efforts about the Constitution's right to privately own and possess firearms

and the consequences of gun control.  Some SAF members seek to receive the computer files that Defense Distributed seeks to publish, and some SAF members seek to share their own computer files by utilizing Defense Distributed's facilities.  These SAF members seek to exchange this information because of its technical, scientific, artistic, and political value.

12.      SAF brings this action on behalf of itself.  SAF also brings this action on behalf of its members because at least one of its members would have standing to sue in his own right, the interests the suit seeks to vindicate are germane to the SAF's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

### C.      The State Department

13.      Defendant the United States Department of State is, and was at all relevant times, an executive department of the United States subject to the Administrative Procedure Act ("APA").  *See* 5 U.S.C. § 551(1).  The United States Department of State is located at 2201 C Street, Northwest, Washington, District of Columbia 20520.

14.      Defendant Antony J. Blinken is the United States Secretary of State.  He is sued in his official capacity.  In that capacity, he oversees the United States Department of State, its Bureau of Political Military Affairs, and its Directorate of Defense Trade Controls.  He is responsible for the federal conduct that is the subject of this action and for the related acts and omissions alleged herein.

15.      Defendant Directorate of Defense Trade Controls is, and was at all relevant times, a component of the United States Department of State's Bureau of Political Military Affairs subject to the APA. *See* 5 U.S.C. § 551(1).  The Directorate of Defense Trade Controls is located at SA-1 Columbia Plaza, 2401 E Street Northwest, Washington, District of Columbia 20037.

16.     Defendant Jessica Lewis is the United States Department of State's Deputy Assistant Secretary of State for Defense Trade in the Bureau of Political-Military Affairs (PM). She is sued in her official capacity.  In that capacity, she is responsible for the federal conduct that is the subject of this action and for the related acts and omissions alleged herein.

17.     Defendant Jae Shin is the Director of the Office of Defense Trade Controls Policy within the Directorate of Defense Trade Controls.  She is sued in her official capacity.  In that capacity, she is responsible for the conduct that is the subject of this action and for the related acts and omissions alleged herein.

## III.    Subject Matter Jurisdiction

18.     28 U.S.C. § 1331 supplies the Court with original federal question jurisdiction over this action because it arises under the Constitution and laws of the United States.

19.     28 U.S.C. § 1332 supplies the Court with original diversity jurisdiction over this action because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

20.     28 U.S.C. § 1343 supplies the Court with original federal question jurisdiction over this action because it is an action to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and statutes providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

21.     28 U.S.C. § 1367 supplies the Court with supplemental subject-matter jurisdiction over the action's state-law claims because the state-law claims are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  The action's state-law claims do not raise novel or

complex issues of state law.  The action's state-law claims do not substantially predominate over the claim or claims over which the district court has original jurisdiction.

22.     This action seeks declaratory, injunctive, and other relief pursuant to the Constitution of the United States of America, 5 U.S.C. § 702, 5 U.S.C. § 705, 5 U.S.C. § 706, 28 U.S.C. § 1651(a), 28 U.S.C. § 2201, 28 U.S.C. § 2202, and 42 U.S.C. § 1988.

23.     There exists an active, justiciable controversy amongst the parties about whether the State Department complied with the Settlement Agreement attached to this complaint as Exhibit A.  Declaratory relief will resolve this controversy and eliminate the burden imposed on Plaintiffs stemming therefrom.

24.     There exists an active, justiciable controversy amongst the parties about what the Settlement Agreement attached to this complaint as Exhibit A still requires of the State Department.  Declaratory relief will resolve this controversy and eliminate the burden imposed on Plaintiffs stemming therefrom.

**IV.     Venue**

25.     For the reasons explained at length already, s*ee Def. Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022), Plaintiffs submit for purposes of preservation that the correct venue for this case is the United States District Court for the Western District of Texas.

26.     This Court constitutes a proper venue for this action because a substantial part of the events or omissions giving rise to the claims occurred here.  *See*  28 U.S.C. § 1391(e)(1)(B).

27.     This action arises from actions that the State Department took and intends to take against Defense Distributed's activities in Austin, Texas and Defense Distributed's property in Austin, Texas.

28.     This action arises from actions that The NJAG took and intends to take against Defense Distributed's activities in Austin, Texas and Defense Distributed's property in Austin, Texas. *See Def. Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2020).

**V.     Facts**

   **A.     Digital Firearms Information is Speech.**

29.     This action concerns digital firearms information.  Digital firearms information is "digital" because it exists in the form of coded computer files, as opposed to analog media like printed books.  It is "information" because it conveys knowledge without advocating action.  It pertains to both entire firearms and individual firearm components, and addresses their physical properties, production methods, and uses.

30.     Digital firearms information exists in a wide variety of computer file formats. Common formats include portable document format (.pdf) files, DWG (.dwg) files, Standard for the Exchange of Product Data ("STEP") (.stp) files, stereolithography (.stl) files, Initial Graphics Exchange Specification (.igs) files, SoLiDworks PaRT (.sldprt) files, and SketchUp (.skp) files, as well as plain text (.txt) files with notes, instructions, and comments.

31.     Digital firearms information includes, but is not limited to, what authorities refer to as "Computer Aided Design files" or "CAD files."   *See, e.g.*, Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML), 85 Fed. Reg. 4136, 4140-42, 4172 (Jan. 23, 2020).  CAD files are used primarily for abstract design.  Users with the requisite computer hardware, software, and expertise can employ CAD files to construct and manipulate complex two- and three-dimensional digital models of physical objects.  These models serve a wide variety of

important purposes apart from object fabrication.  Examples include the computerized study of object properties, rendition of object images for product visualization, and parametric modeling of object families.  According to authorities, CAD files are not ready for insertion into object-producing equipment such as computer numerically controlled machine tools and additive manufacturing equipment (e.g., 3D printers). *See, e.g.*, *id.*

32.     Digital firearms information also includes, but is not limited to, what authorities refer to as "Computer Aided Manufacturing files" or "CAM files."  *See, e.g.*, Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML), 85 Fed. Reg. 4136, 4140-42, 4172 (Jan. 23, 2020).  Like CAD files, CAM files can be used to construct and manipulate the digital two-  and three-dimensional models of physical objects that serve design purposes apart from production. According to authorities, unlike CAD files, CAM files are ready for insertion into object-producing equipment such as computer numerically controlled machine tools and additive manufacturing equipment (*e.g.*, 3D printers). *See, e.g.*, *id.*

33.     With respect to 3D-printing processes in particular, CAD files and CAM files do not produce anything automatically.  They are not functional software.  They do not self-execute. They are mere information stores.  To fabricate an object as designed in a CAD or CAM file, a user must know how and choose to orchestrate a process involving substantial additional software (to interpret and implement the files into the motions of a 3D print head), substantial additional hardware (e.g., the computer running the software, the 3D printer), substantial physical labor, substantial amounts of time, and the requisite raw materials.

34.     The physical laws governing 3D-printer fabrication processes apply to all objects, including firearms.  Even with a perfectly accurate set of digital firearms information, the most powerful software, and a state-of-the-art 3D printer, the digital model of a firearm component does not fabricate the component on its own.  Firearm component fabrication is not an automatic process.  It occurs only if and when a person chooses to perform a complex series of actions entailing considered volition and judgment, such as adapting and tailoring the design, selecting suitable component materials, choosing an effective manufacturing process, and opting to personally complete an extensive set of fabrication steps with the requisite software, hardware, and raw materials.

**B.     Defense Distributed's Digital Firearms Information Publications.**

35.     Defense Distributed exists to promote the Second Amendment's individual right to keep and bear Arms.  To that end, Defense Distributed has published, is publishing, and intends to continue publishing digital firearms information to the American public.

36.     The digital firearms information that Defense Distributed has published, is publishing, and intends to continue publishing is an important expression of technical, scientific, artistic, and political matter.  Each and every computer file at issue has these values in the abstract, apart from any application that the information's recipient might choose to devote it to. Akin to blueprints, each computer file's sole purpose is to supply information in the abstract.  It is constitutionally protected speech in every respect.

37.     The digital firearms information that Defense Distributed has published, is publishing, and intends to continue publishing includes, but is not limited to, what authorities refer to as "Computer Aided Design files" or "CAD files."  *See, e.g.*, Control of Firearms, Guns,

10

Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML), 85 Fed. Reg. 4136, 4140-42, 4172 (Jan. 23, 2020).

38.     The digital firearms information that Defense Distributed has published, is publishing, and intends to continue publishing includes, but is not limited to, what authorities refer to as "Computer Aided Manufacturing files" or "CAM files." *See, e.g.*, *id.*

39.     The digital firearms information that Defense Distributed has published, is publishing, and intends to continue publishing includes, but is not limited to, non-CAD and non-CAM files such as plain text (.txt) files with notes, instructions, and comments.

40.     The digital firearms information that Defense Distributed has published, is publishing, and intends to continue publishing pertains to both entire firearms and to individual firearm components.  A representative example of the digital firearms information that Defense Distributed has published concerns the single-shot pistol known as the "Liberator."

41.     The digital firearms information that Defense Distributed has published, is publishing, and intends to continue publishing does not and is not intended to advocate action.  It especially does not advocate or intend to advocate any imminent action.

42.     The digital firearms information that Defense Distributed has published, is publishing, and intends to continue publishing does not and is not intended to incite action.  It especially does not incite or intend to incite any imminent action.

43.     The digital firearms information that Defense Distributed has published, is publishing, and intends to continue publishing does not and is not intended to produce action.  It especially does not produce or intend to produce any imminent action.

44.     None of the digital firearms information that Defense Distributed has published, is publishing, and intends to continue publishing involves "imminent" fabrication.  The 3D-printing technologies at issue necessarily require a user to knowingly apply deliberate, focused will over the course of an extended period of time to fabricate an object.

45.     Defcad.com (hereinafter "DEFCAD") is a website for which Defense Distributed is and at all relevant times has been responsible.  Via DEFCAD, Defense Distributed has published, republished, and facilitated the distribution of a wide variety of digital firearms information.

**1.     Defense Distributed's 2012–2013 Publications.**

46.     From approximately December 2012 to May 2013, Defense Distributed published a substantial set of computer files with digital firearms information to DEFCAD by letting any site visitor download them directly for free.  The computer files with digital firearms information published via DEFCAD during this period included the following:

(a)     files concerning a single-shot firearm known as the "Liberator";

(b)     files concerning a firearm receiver for AR-15 rifles;

(c)     files concerning a magazine for AR-15 rifles;

(d)     stereolithography (.stl) files about firearm components;

(e)      Initial Graphics Exchange Specification (.igs) files about firearm components;

(f)     SoLiDworks PaRT (.sldprt) files about firearm components;

(g)     SketchUp (.skp) files about firearm components;

(h)     Standard for the Exchange of Product Data ("STEP") (.stp) files about firearm components;

(i)     diagrams of firearm components;

12

(j)      renderings;

(k)       "read me" plain text files about firearm assembly methods;

(l)       "read me" plain text files about the National Firearms Act and the Undetectable Firearms Act; and

(m)     software licenses.

47.     The computer files that Defense Distributed published to DEFCAD during this period were downloaded millions of times.

### 2.      Defense Distributed's July 2018 Publications.

48.     From the evening of July 27, 2018 until the afternoon of July 31, 2018, Defense Distributed published a substantial set of computer files with digital firearms information to DEFCAD by letting any site visitor download them directly for free.   The State Department provided advance approval of these publications.   The computer files with digital firearms information so published via DEFCAD during this period included the following:

(a)     files concerning a single-shot firearm known as the "Liberator";

(b)     files concerning an assembly of the AR-15 rifle and magazine;

(c)     files concerning an assembly of the AKM rifle and magazine;

(d)     stereolithography (.stl) files about firearm components;

(e)     Initial Graphics Exchange Specification (.igs) files about firearm components;

(f)      SoLiDworks PaRT (.sldprt) files about firearm components;

(g)     SketchUp (.skp) files about firearm components;

(h)     Standard for the Exchange of Product Data ("STEP") (.stp) files about firearm components;

(i)     diagrams of firearm components;

(j)     renderings;

(k)     NC files concerning fire control pocket milling;

(l)     "read me" plain text files about firearm assembly methods;

(m)    "read me" plain text files about the National Firearms Act and the Undetectable

Firearms Act; and

(n)     software licenses.

49.     The computer files that Defense Distributed published to DEFCAD during this period were downloaded hundreds of thousands of times.

50.     During this period, Defense Distributed also published the same computer files with digital firearms information at a brick-and-mortar public library in Austin, Texas by hosting the computer files in formats that patrons could access via computer workstations.

### 3.     Defense Distributed's August–November 2018 Publications.

51.     From approximately August 2018 to November 2018, Defense Distributed distributed a substantial set of computer files with digital firearms information via the mail by making its computer files available for shipment on physical storage devices.  Defense Distributed did so by using an ecommerce platform on DEFCAD to facilitate the transaction and using the U.S. Postal Service as its means of delivering the information.  After customers entered an order using DEFCAD's online ecommerce platform, Defense Distributed put the information on a USB drive or SD card and mailed the drive or card to customers via the U.S. Postal Service.

52.     During this period, Defense Distributed also offered and advertised its mailed distribution of digital firearms information to potential recipients.  These efforts included

advertisements and offers on DEFCAD itself, participation in trade shows, and e-mail advertisements.

53.     For anyone dealing with digital firearms information, the postal mail alternative to internet publication is not an adequate substitute.  Internet communication of and about Defense Distributed's digital firearms information is essential for many reasons.  Moreover, internet communication is important because it is the *only* way to ensure open source development and commitment to the public domain/ placement outside the bounds of intellectual property strictures.

### 4.     Defense Distributed's 2020-Present Publications.

54.     From March 27, 2020, to present, Defense Distributed published a substantial set of computer files with digital firearms information via DEFCAD.  The computer files with digital firearms information published via DEFCAD during this period include original and legacy firearms models, CAD data, CAM data, blueprints and drawings.

55.     Unlike Defense Distributed's prior periods of publication on DEFCAD, Defense Distributed in this publication period did not let DEFCAD visitors download files freely.  In this publication period, Defense Distributed used DEFCAD to facilitate secure file transfer via electronic transmissions that comply with current federal law by, *inter alia*, utilizing secure end-to-end encryption.

56.     Unlike Defense Distributed's prior periods of publication on DEFCAD, Defense Distributed in this publication period did not let DEFCAD visitors access the files at issue without any screening.  In this publication period, Defense Distributed's screening procedures deemed certain DEFCAD visitors ineligible for file distribution.

57.     Unlike Defense Distributed's prior periods of publication on DEFCAD, Defense Distributed in this publication period did not let DEFCAD make files available to persons outside the United States.

58.     Unlike Defense Distributed's prior periods of publication on DEFCAD, Defense Distributed in this publication period did *not* make its files available to residents of and persons in the State of New Jersey who lack a federal firearms license.

59.     As compared to Defense Distributed's prior methods of publication on DEFCAD, Defense Distributed's latest method of publication on DEFCAD substantially burdens Defense Distributed's exercise of free speech and would not be utilized but for the wrongful actions of the State Department and The NJAG.

60.     Currently, Defense Distributed continues to publish a substantial set of computer files with digital firearms information via DEFCAD in the manner that it has done so since March 27, 2020.  The number of files published in this manner to date is at least 16,354.

### 5.     Published files will always remain online.

61.     The computer files with digital firearms information that Defense Distributed published in the past will always be available on the internet, regardless of whether or not Defense Distributed itself continues to publish them.  Without any coordination, many recipients of Defense Distributed's digital firearms information have persistently republished those same files online via their own websites.  The independently-republished versions of Defense Distributed's files are not hidden in dark or remote recesses of the internet.  Simple Google searches yield the republished Defense Distributed files with ease.

### 6.     Defense Distributed's Future Publications.

62.     To the extent that and as soon as it is legal to do so, Defense Distributed currently intends to publish the following computer files with digital firearms information online at DEFCAD by letting any site visitor download them directly for free:

(a)     The computer files that Defense Distributed published online via DEFCAD from December 2012 to May 2013.  These include CAD files, CAM files, and non-CAD and non-CAM files.

(b)     The computer files that Defense Distributed published online via DEFCAD from July 27, 2018, to July 31, 2018.  These include CAD files, CAM files, and non-CAD and non-CAM files.

(c)     The computer files that Defense Distributed published via the mail from late August 2018 through early November 2018.  These include CAD files, CAM files, and non-CAD and non-CAM files.

(d)     The computer files that Defense Distributed published online via DEFCAD from March 27, 2020, to present.  These include CAD files, CAM files, and non-CAD and non-CAM files.

(e)     Computer files authored by Defense Distributed that Defense Distributed has not published before.  These include CAD files, CAM files, and computer files with other digital firearms information.

**C.      The State Department's International Traffic in Arms Regulations.**

63.     The Arms Export Control Act of 1976, 22 U.S.C. ch. 22 (the "AECA"), addresses the President's authority to control the import and export of defense articles and defense services.

64.     The International Traffic in Arms Regulations, 22 C.F.R. Parts 120-130 ("ITAR"), constitute AECA's primary implementing regulations.

65.     The State Department administers the AECA and the ITAR.  Within the State Department, primary responsibility for administering the AECA and the ITAR lies with the Directorate of Defense Trade Controls ("DDTC") in the Bureau of Political-Military Affairs.

66.     The AECA provides that "no defense articles or defense services . . . may be exported or imported without a license for such export or import."  22 U.S.C. § 2778(b)(2).  It provides for criminal penalties up to a $1,000,000 fine and 20 years in prison for "[a]ny person who willfully violates any provision of this section ... or any rule or regulation issued under this section." *Id.* § 2778(c).

67.     The AECA authorizes the President "to designate those items which shall be considered as defense articles and defense services for the purposes of this section and to promulgate regulations for the import and export of such articles and services. The items so designated shall constitute the United States Munitions List." *Id.* § 2778(a)(1).  The President, by executive order, has delegated to the State Department the authority to regulate under the AECA and to designate defense "articles" and "services" for inclusion on the United States Munitions List ("USML"). *See* Exec. Order No. 13,637, § 1(n)(i), 78 Fed. Reg. 16,129 (Mar. 8, 2013).

68.     DDTC has from time to time promulgated regulations known as the International Traffic in Arms Regulations ("ITAR"). *See* 22 C.F.R. pts. 120-130 (2019). The ITAR make it unlawful to, *inter alia*, "export or attempt to export from the United States any defense article or technical data or to furnish or attempt to furnish any defense service for which a license or written approval is required" without such a license. *Id.* § 127.1(a)(1).

69.     The ITAR's definition of "export" includes the "actual shipment or transmission out of the United States, including the sending or taking of a defense article out of the United States in any manner." *Id.* § 120.17(a)(1). The ITAR also provides that a "deemed export," defined as "[r]eleasing or otherwise transferring technical data to a foreign person in the United States," constitutes an "export." *Id.* § 120.17(a)(2).

70.     The ITAR also include, at 22 C.F.R. § 121.1, the USML, which enumerates the "articles, services, and related technical data [that] are designated as defense articles or defense services" for purposes of the AECA and ITAR. Id. § 121.1(a). The USML organizes the designated items into twenty-one categories, encompassing various forms of weaponry, ammunition, explosives, military-type equipment and vessels, toxicological agents, classified data, and more. Each of the twenty-one categories includes as a designated item "[t]echnical data" and "defense services" that are "directly related to the defense articles" listed in that category. *See, e.g.*, id. §§ 121.1(I)(i), (II)(k), (III)(e), (IV)(i), (V)(j), (VI)(g), (VII)(h). The ITAR define "technical data" to include "[i]nformation ... required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of defense articles." *Id.* § 120.10(a)(1).

**D.   *Defense Distributed I*: Litigation**

71.   "*Defense Distributed I*" refers to a federal civil action docketed in the United States District Court for the Western District of Texas, Austin Division as *Defense Distributed, et al. v. United States Department of State, et al.*, No. 1:15-CV-372-RP (W.D. Tex.), and in the United States Court of Appeals for the Fifth Circuit first as *Defense Distributed, et al. v. United States Department of State, et al.*, No. 15-50759 (5th Cir.) and later as *Defense Distributed, et al. v. United States Department of State, et al.*, No. 18-50811 (W.D. Tex.).  *Defense Distributed I* yielded the following reported opinions:

(a)   *Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680 (W.D. Tex. 2015)

(b)   *Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451 (5th Cir. 2016) (panel opinion)

(c)   *Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451, 461–76 (Jones, J., dissenting)

(d)   *Def. Distributed v. U.S. Dep't of State*, 865 F.3d 211 (5th Cir. 2017) (Elrod, Jones, Smith and Clement, JJ., dissenting from the denial of rehearing en banc)

(e)   *Def. Distributed v. United States Dep't of State*, 947 F.3d 870 (5th Cir. 2020).

72.   The plaintiffs in *Defense Distributed I* were Defense Distributed, SAF, and an individual SAF member, Conn Williamson.

73.   The defendants in *Defense Distributed I* match the defendants in this case: the United States Department of State, the Secretary of State, the State Department's Directorate of Defense Trade Controls, the Acting Deputy Assistant Secretary of State for Defense Trade Controls in the Bureau of Political-Military Affairs, and the Acting Director of the Office of Defense Trade Controls Policy Division.  They are referred to collectively as "the State Department."

74.     *Defense Distributed I* concerned four categories of computer files defined by that action's pleadings: the "Published Files," the "Ghost Gunner Files," "CAD Files," and the "Other Files."  Together, these categories of files are referred to as the "*Defense Distributed I* Files."

(a)     The "Published Files" category of *Defense Distributed I* Files consists of ten separate sets of files.  It includes stereolithography (.stl) files about firearm components, Initial Graphics Exchange Specification (.igs) files about firearm components, SoLiDworks PaRT (.sldprt) files about firearm components, SketchUp (.skp) files about firearm components, Standard for the Exchange of Product Data ("STEP") (.stp) files about firearm components, diagrams of firearm components, renderings, "read me" plain text files about firearm assembly methods, "read me" plain text files about the National Firearms Act and the Undetectable Firearms Act, and software licenses.  From approximately December 2012 to May 2013, Defense Distributed published these files to DEFCAD for free download by the public.

(b)     The "Ghost Gunner Files" category of *Defense Distributed I* Files consists of software, data files, project files, coding, and models containing technical information for a machine, named the "Ghost Gunner," that can be used to manufacture a variety of items, including gun parts.

(c)     The "CAD Files" category of *Defense Distributed I* Files consists of STEP (.stp) and stereolithography (.stl) files about a lower receiver to the AR-15 rifle.

(d)    The "Other Files" category of *Defense Distributed I* Files consists of files that contain technical information, to include design drawings, rendered images, written manufacturing instructions, and other technical information that Defense Distributed intends to post to public forums on the Internet; provided, however, that this category only extends insofar as those files regard items that, as of June 29, 2018, were exclusively: (i) in Category I(a) of the United States Munitions List, as well as barrels and receivers covered by Category I(g) of the United States Munitions List that are components of such items; or (ii) items covered by Category I(h) of the United States Munitions List solely by reference to Category I(a), excluding Military Equipment.

75.    *Defense Distributed I* began after the State Department used the AECA and ITAR regime to impose an illegal prior restraint on public speech concerning technical firearms data, including the *Defense Distributed I* Files.  Under this regime, the State Department required that Defense Distributed obtain prior United States government approval before publication of the *Defense Distributed I* Files could occur on the internet and at other public venues.

76.    The *Defense Distributed I* plaintiffs challenged the legality of the State Department's enforcement of the AECA/ITAR regime vis-à-vis the *Defense Distributed I* Files.  In particular, they challenged the State Department's governance of the *Defense Distributed I* Files as ultra vires action not authorized by the statutes and regulations at issue, and as violations of the First, Second, and Fifth Amendments of the Constitution.

77.     At a preliminary stage, the district court in *Defense Distributed I* denied the *Defense Distributed I* plaintiffs' motion for a preliminary injunction. *Def. Distributed v. Dep't of State*, 121 F. Supp.3d 680 (W.D. Tex. 2015).

78.     An interlocutory appeal of the *Defense Distributed I* preliminary injunction denial was taken to the Fifth Circuit.  A divided Fifth Circuit panel affirmed the district court's decision. *Def. Distributed v. United States Dep't of State*, 838 F.3d 451 (5th Cir. 2016).  But it declined to reach the merits, ruling solely based on "the balance of harm and the public interest." *Id.* at 461.

79.     The merits of *Defense Distributed I*'s preliminary injunction were, however, reached by two important opinions.  Judge Jones emphasized the protected nature of this speech in a panel dissent: "the State Department's application of its 'export' control regulations to this domestic Internet posting appears to violate the governing statute, represents an irrational interpretation of the regulations, and violates the First Amendment as a content-based regulation and a prior restraint." *Id.* at 463–64. (Jones, J. dissenting).  The judges dissenting from the denial of rehearing en banc also reached the merits.  *Def. Distributed v. U.S. Dep't of State*, 865 F.3d 211 (5th Cir. 2017). Their opinion explained that the lower court's "flawed preliminary injunction analysis permits perhaps the most egregious deprivation of First Amendment rights possible: a content based prior restraint." *Id.* at 212.

E.     *Defense Distributed I*: Settlement Agreement

80.     After the *Defense Distributed I* interlocutory appeal concluded, the district court in *Defense Distributed I* ordered the parties to engage in settlement negotiations.  The parties did so successfully and settled their dispute by agreement.

81.    The *Defense Distributed I* settlement amounted to a victory for the plaintiffs.  Press reports correctly understood that the State Department's decision to settle "essentially surrenders" to the constitutional challenge Defense Distributed and SAF had been pressing all along; that the settlement "promises to change the export control rules surrounding any firearm below .50 caliber – with a few exceptions like fully automatic weapons and rare gun designs that use caseless ammunition – and move their regulation to the Commerce Department, which won't try to police technical data about the guns posted on the internet"; and that, in the meantime, the settlement "gives [Defense Distributed] a unique license to publish data about those weapons anywhere [it] chooses."  Andy Greenberg, *A Landmark Legal Shift Opens Pandora's Box for DIY Guns*, Wired Magazine (July 18, 2018), available at https://bit.ly/2QK3is6.

82.    The *Defense Distributed I* settlement agreement is memorialized by the "Settlement Agreement": a written contract that all sides executed validly on June 29, 2018.  A copy of that instrument is attached to this complaint as Exhibit A.  Among other things, the Settlement Agreement obligates the State Department to do the following:

(a)    Settlement Agreement Paragraph 1(a) - New Rule

Settlement Agreement Paragraph 1(a) requires the State Department to draft and fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule, revising United States Munitions List ("USML") Category I to exclude the *Defense Distributed I* Files.  The pertinent text provides as follows: "Defendants agree to the following . . . : (a) Defendants' commitment to draft and to fully pursue, to the extent authorized by law (including the

24

Administrative Procedure Act), the publication in the <u>Federal Register</u> of a notice of proposed rulemaking and final rule, revising USML Category I to exclude the technical data that is the subject of the Action."

(b)     <u>Settlement Agreement Paragraph 1(b) - Temporary Modification:</u>

Settlement Agreement Paragraph 1(b) requires the State Department to announce, while the above-referenced final rule is in development, a temporary modification, consistent with International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the *Defense Distributed I* Files; and to publish the announcement on the Directorate of Defense Trade Controls website on or before July, 27, 2018.  The pertinent text provides as follows: "Defendants agree to the following . . . (b) Defendants' announcement, while the above-referenced final rule is in development, of a temporary modification, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that is the subject of the Action. The announcement will appear on the DDTC website, www.pmddtc.state.gov, on or before July 27, 2018."

(c)     <u>Settlement Agreement Paragraph 1(c) - License</u>

Settlement Agreement Paragraph 1(c) requires the State Department to issue a license to the *Defense Distributed I* plaintiffs on or before July 27, 2018, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that the Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution) in any form and are exempt from the export licensing

requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13). The pertinent text provides as follows: "Defendants agree to the following . . . (c) Defendants' issuance of a letter to Plaintiffs on or before July 27, 2018, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that the Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution ) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13). For the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue this approval."

(d)     <u>Settlement Agreement Paragraph 1(d) - Acknowledgement</u>

Settlement Agreement Paragraph 1(d) requires the State Department to acknowledge and agree that the temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the *Defense Distributed I* Files, and that the license issued to the *Defense Distributed I* plaintiffs permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files. The pertinent text provides as follows: "Defendants agree to the following . . . (d) Defendants' acknowledgment and agreement that the temporary modification of USML Category I permits any United States person, to include DD's customers

and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the letter to Plaintiffs permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files."

83.     The Settlement Agreement binds all of the parties to *Defense Distributed I* and all of this action's parties.   Settlement Agreement paragraph 7 provides that the "Settlement Agreement" shall be binding upon and inure to the benefit of Plaintiffs and Defendants, and the respective heirs, executors, successors, assigns and personal representatives, including any persons, entities, departments or agencies succeeding to the interest of obligations of the Parties."

**F.     Settlement Agreement Fulfillment Begins**

84.     After the Settlement Agreement's execution on July 27, 2018, the State Department began to fulfill—temporarily—certain of its Settlement Agreement obligations:

(a)     Settlement Agreement Paragraph 1(a) - New Rule

By July 27, 2018, the State Department had taken steps to comply with the obligation imposed by Settlement Agreement Paragraph 1(a).  It published in the Federal Register a notice of proposed rulemaking revising USML Category I to exclude the *Defense Distributed I* Files.  *See* 83 Fed. Reg. 24,198 (May 24, 2018).

(b)     Settlement Agreement Paragraph 1(b) - Temporary Modification

By July 27, 2018, the State Department had taken steps to comply with the obligation imposed by Settlement Agreement Paragraph 1(b).  It made a temporary modification to USML Category I, pursuant to 22 C.F.R. § 126.2, to "exclude" the *Defense Distributed I* Files from Category I.  A copy of that instrument is attached

to this complaint as Exhibit B.

(c)     Settlement Agreement Paragraph 1(c) - License

By July 27, 2018, the State Department had taken steps to comply with the obligation imposed by Settlement Agreement Paragraph 1(c). It issued Defense Distributed a license—a letter issued by the State Department's Acting Deputy Assistant Secretary for the Directorate of Defense Trade Controls—authorizing the Defendants to publish the Published Files, Ghost Gunner Files, and CAD Files for "unlimited distribution." A copy of that instrument is attached to this complaint as Exhibit C.

(d)     Settlement Agreement Paragraph 1(d) - Acknowledgement

By July 27, 2018, the State Department had taken steps to comply with the obligation imposed by Settlement Agreement Paragraph 1(d). It acknowledged and agreed that the temporary modification permits any United States person to access, discuss, use, reproduce, or otherwise benefit from the *Defense Distributed I* Files; and that the license issued to the *Defense Distributed I* plaintiffs permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files. *See* Ex. A at 2.

85.     On June 29, 2018, the parties to *Defense Distributed I* filed a joint stipulation of dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). The filing provided as follows: "Pursuant to Federal Rule of Civil Procedure 41 (a)( I )(A)(ii) and 41(a)( I )(B), and a settlement agreement among Plaintiffs (Defense Distributed, Second Amendment Foundation, Inc., and Conn Williamson) and Defendants (the United States Department of State, the Secretary of State,

28

the Directorate of Defense Trade Controls, the Deputy Assistant Secretary, Defense Trade Controls. and the Director, Office of Defense Trade Controls Policy), the Plaintiffs and the Defendants hereby stipulate to the dismissal with prejudice of this action."

86.     On July 30, 2018, the *Defense Distributed I* district court entered an order providing that "the case is **DISMISSED WITH PREJUDICE**" and the "action is **CLOSED**."

87.     The State Department's temporary fulfillment of the Settlement Agreement obligations lasted from July 27, 2018 until the afternoon of July 31, 2018.  During that period, Defense Distributed engaged in the publication addressed *supra* at Part V.B.2 ("Defense Distributed's July 2018 Publications").

### G.     The State Department Stopped Fulfilling the Settlement Agreement

88.     On July 30, 2018, The NJAG and a group of state attorneys general (hereinafter "the States") initiated a civil action against the State Department, Defense Distributed, SAF, and Conn Williamson.  The States chose to sue in their forum of choice, the Western District of Washington's Seattle division, before Judge Robert Lasnik.  The suit was docketed in the district court as *State of Washington et al., v. United States Department of State et al.*, No. 2:18-cv-1115-RSL.

89.     The NJAG explained the nature of the States' involvement in this litigation by saying the following on the record: "The federal government is no longer willing to stop Defense Distributed from publishing this dangerous code, and so New Jersey must step up."

90.     The States' *Washington* complaint alleged that, by issuing the Temporary Modification and license, the State Department had violated the Administrative Procedure Act (APA).  The suit sought a preliminary nationwide injunction and a final judgment vacating the Temporary Modification and license.  These claims went against the State Department alone.

91.     The Settlement Agreement was never the subject of any claim in the *Washington* case.  The States never claimed that the Settlement Agreement was illegal and never sought relief against the Settlement Agreement.   Their only claims targeted two of the actions the State Department took in an attempt to fulfill the Settlement Agreement.

92.     Nor were Defense Distributed and SAF the subject of any claim.   The States asserted no cause of action and sought no relief against Defense Distributed or SAF.   The APA claim about the license went against the State Department alone, did not allege that Defense Distributed or SAF did anything wrong, and did not seek relief against them.   Likewise for the APA claim about the Temporary Modification.   It too went against the State Department alone, did not allege that Defense Distributed or SAF did anything wrong, and did not seek relief against Defense Distributed or SAF.

93.     On July 31, 2018, the States obtained from the United States District Court for the Western District of Washington a temporary restraining order against the State Department: "The federal government defendants and all of their respective officers, agents, and employees are hereby enjoined from implementing or enforcing the 'Temporary Modification of Category I of the United States Munitions List' and the letter to Cody R. Wilson, Defense Distributed, and Second Amendment Foundation issued by the U.S. Department of State on July 27, 2018, and shall preserve the status quo ex ante as if the modification had not occurred and the letter had not been issued."

94.     A key concession occurred during the preliminary injunction proceedings: Both the State Department and the States conceded that there *is nothing inherently illegal about the computer files at issue*.  Aside from concerns about Defense Distributed's files being *on the internet*, the States

and State Department took no issue with anyone's right to distribute the very same computer files via other channels.  At the preliminary injunction hearing, counsel for the States took the position that, apart from internet publication, Defense Distributed had a right to distribute digital firearms information via the mail or otherwise "hand them around domestically" without violating any law. Counsel for the State Department agreed, stating that, "even if the Court were to grant plaintiffs every ounce of relief that they seek in this case, Defense Distributed could still mail every American citizen in the country the files that are at issue here."   In light of this concession, Defense Distributed engaged in the publication addressed *supra* at Part V.B.3 ("Defense Distributed's August-November 2018 Publications").

95.     On August 27, 2018, the States obtained from the United States District Court for the Western District of Washington a preliminary injunction against the State Department: "The federal defendants and all of their respective officers, agents, and employees are hereby enjoined from implementing or enforcing the 'Temporary Modification of Category I of the United States Munitions List' and the letter to Cody R. Wilson, Defense Distributed, and the Second Amendment Foundation issued by the U.S. Department of State on July 27, 2018, and shall preserve the status quo ex ante as if the modification had not occurred and the letter had not been issued until further order of the Court."  *Washington v. U.S. Dep't of State*, 318 F. Supp. 3d 1247, 1264 (W.D. Wash. 2018).

96.     Even though the State Department had a right to appeal the *Washington* case's preliminary injunction decision, and even though it had preserved arguments that would have succeeded in having the district court's judgment vacated or reversed, the State Department refused to appeal.  It let the deadline for that interlocutory appeal come and go without taking any

appellate action.  The State Department refused to appeal this preliminary injunction because of partisan politics and in spite of federal legal advisors that deemed an appeal legally necessary.

97.     The rest of the *Washington* case's key decisions occurred on summary judgment. On the merits, the *Washington* district court accepted both of the States' APA claims.  First, the *Washington* district court held that the State Department's issuance of the Temporary Modification was "without observance of procedure required by law," 5 U.S.C. § 706, because a Congressional notice requirement had not been met.  *Washington v. U.S. Dep't of State*, 420 F. Supp. 3d 1130, 1141-43  (W.D. Wash. 2019).  Second, the *Washington* district court held that the State Department's issuance of both the Temporary Modification and the license were "arbitrary and capricious," 5 U.S.C. § 706, because of insufficient explanation and evidentiary support in the administrative record.  *Id.* at 1144-47.  Neither of these claims are meritorious.

98.     The *Washington* action's final judgment orders as follows: "The July 27, 2018, 'Temporary Modification of Category I of the United States Munitions List' and letter to Cody R. Wilson, Defense Distributed, and the Second Amendment Foundation were unlawful and are hereby VACATED."  Part of the *Washington* district court's decision addressed the First Amendment implications of vacating the Temporary Modification and license.  It held the Constitution's First Amendment was "not relevant to the merits": "Whether or not the First Amendment precludes the federal government from regulating the publication of technical data under the authority granted by the AECA is not relevant to the merits of the APA claims plaintiffs assert in this litigation."  *Washington v. U.S. Dep't of State*, 420 F. Supp. 3d 1130, 1147 (W.D. Wash. 2019).  It also held that the First Amendment can be "abridged" so long as it is not "abrogated."  *Washington v. U.S. Dep't of State*, 318 F. Supp. 3d 1247, 1264 (W.D. Wash. 2018).

99.     Defense Distributed and SAF demanded that the State Department appeal.  The demand asserted that a failure to appeal constituted a breach of the Settlement Agreement.  The demand occurred in a January 15, 2020, letter from counsel for Defense Distributed and SAF to the State Department.  A copy of that instrument is attached to this complaint as Exhibit E.

100.     Even though the State Department had a right to appeal the final judgment, and even though it had preserved arguments that would have succeeded in having the district court's judgment vacated or reversed, the State Department refused to appeal.  It let the deadline for that appeal come and go without taking any appellate action.  The State Department refused to appeal this final injunction because of partisan politics and in spite of federal legal advisors that deemed an appeal legally necessary.

101.     Defense Distributed and SAF appealed the *Washington* action's final judgment.  Defense Distributed's appellant's brief showed that the district court both lacked subject-matter jurisdiction because of multiple Article III shortcomings and was wrong on the merits because the APA cannot require abridgement of the First Amendment.  So rather than be squarely defeated, the States moved to dismiss both appeals as moot.  Defense Distributed and SAF responded jointly, opposing the dismissal request with several categories of argument.  First, the response defeated the States' mootness suggestion on its own terms.  Second, it showed that mootness-based dismissals cannot occur unless and until disputes regarding the district court's subject-matter jurisdiction are resolved.  Third, the response showed that, if the case were moot, *Munsingwear* required vacatur of the district court's judgment.

102.     The *Washington* action's Ninth Circuit panel accepted the mootness suggestion and dismissed the appeal.  *Washington v. Def. Distributed*, No. 20-35030, 2020 WL 4332902 (9th Cir.

July 21, 2020).  Its order gives no meaningful indication of the mootness reasoning.  It says nothing about the district court's jurisdiction.  And it says nothing about *Munsingwear*, silently leaving the district court's judgment intact.  A petition for rehearing en banc is now pending.

### 1.    The State Department disavowed the license.

103.    On or before August 2, 2018, the State Department disavowed the license it had originally issued to Defense Distributed and SAF in July 2018.

104.    The State Department's disavowal of the July 2018 license constitutes final agency action.

105.    The State Department's disavowal of the July 2018 license is reflected in an August 2, 2018, letter from counsel for the State Department.  A copy of that instrument is attached to this complaint as Exhibit D.

106.    The August 2, 2018, letter from counsel for the State Department established that, as of August 2, 2018, the State Department had decided to proceed as though the July 2018 license "had not been issued."  This indicates the State Department's disavowal of the July 2018 license.

107.    The August 2, 2018, letter from counsel for the State Department establishes that, as of August 2, 2018, the State Department had decided to proceed as though the license was a "nullity."  This letter indicates the State Department's disavowal of the July 2018 license.

### 2.    After disavowal, the State Department refused to supply a license.

108.    After the State Department disavowed the license it had originally issued to Defense Distributed and SAF in July 2018, the State Department refused to supply Defense Distributed and SAF with the license that Settlement Agreement Paragraph 1(c) requires the State Department to supply.

109.    The State Department's refusal to supply Defense Distributed and SAF with the license that Settlement Agreement Paragraph 1(c) requires the State Department to supply entitles them to constitutes final agency action.

110.    Defense Distributed and SAF demanded that the State Department issue a license in compliance with Settlement Agreement Paragraph 1(c) on January 15, 2020.  They did so by transmitting a letter from counsel for Defense Distributed and SAF to counsel for the State Department.  A copy of that instrument is attached to this complaint as Exhibit E.

111.    Defense Distributed and SAF demanded that the State Department issue a license in compliance with Settlement Agreement Paragraph 1(c) on February 11, 2020.  They did so by transmitting a letter from counsel for Defense Distributed and SAF to counsel for the State Department.  A copy of that instrument is attached to this complaint as Exhibit F.

### 3.    The State Department disavowed the Temporary Modification.

112.    On or before August 2, 2018, the State Department disavowed the Temporary Modification that it had originally issued in July 2018.

113.    The State Department's August 2018 disavowal of the July 2018 Temporary Modification constitutes final agency action.

114.    The State Department's disavowal of the July 2018 Temporary Modification is reflected in the August 2, 2018, letter from counsel for the State Department. A copy of that instrument is attached to this complaint as Exhibit D.

115.    The August 2, 2018, letter from counsel for the State Department establishes that, as of August 2, 2018, the State Department had decided to cease "implementing or enforcing" the

July 2018 Temporary Modification.  This letter indicates the State Department's disavowal of the July 2018 Temporary Modification.

116.    The August 2, 2018, letter from counsel for the State Department establishes that, as of August 2, 2018, the State Department had decided to proceed as though the July 2018 Temporary Modification "had not occurred."  This indicates the State Department's disavowal of the July 2018 Temporary Modification.

117.    The State Department removed the July 2018 Temporary Modification from its website on July 31, 2018.  This removal indicates the State Department's disavowal of the July 2018 Temporary Modification.

### 4.    After disavowal, the State Department refused to supply a Temporary Modification.

118.    After the State Department disavowed the July 2018 Temporary Modification, the State Department refused to supply Defense Distributed and SAF with the temporary modification that Settlement Agreement Paragraph 1(b) requires the State Department to supply.

119.    The State Department's refusal to supply Defense Distributed and SAF with the temporary modification that Settlement Agreement Paragraph 1(b) requires the State Department to supply constitutes final agency action.

### 5.    The State Department failed to supply the required regulatory changes.

120.    The State Department refused to supply Defense Distributed and SAF with the regulatory results that Settlement Agreement Paragraph 1(a) requires the State Department to supply.

121.    The State Department's refusal to supply Defense Distributed and SAF with the regulatory results that Settlement Agreement Paragraph 1(a) requires the State Department to supply constitutes final agency action.

122.    The State Department's refusal to supply Defense Distributed and SAF with the regulatory results that Settlement Agreement Paragraph 1(a) requires the State Department to supply constitutes a breach of the Settlement Agreement.

123.    The State Department issued a new final rule that pertains to the Settlement Agreement in January 2020.  *See* International Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and III, 85 Fed. Reg. 3819 (Jan. 23, 2020).  It did so in conjunction with a new rule issued by the Commerce Department.  *See* Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML), 85 Fed. Reg. 4136, 4140-42, 4172 (Jan. 23, 2020).  These new rules do not discharge the State Department's obligations under Settlement Agreement Paragraph 1(a) because they do not exclude *all* of the technical data that was the subject of *Defense Distributed I* from United States Munitions List ("USML") Category I.  Separately, these new rules do not discharge the State Department's obligations under Settlement Agreement Paragraph 1(a) because they have been enjoined by the United States District Court for the Western District of Washington.

124.    On April 29, 2020, Defense Distributed and SAF demanded that the State Department supply Defense Distributed and SAF with the regulatory results that Settlement Agreement Paragraph 1(a) requires the State Department to supply.  They did so by transmitting

a letter from counsel for Defense Distributed and SAF to counsel for the State Department.  A copy of that instrument is attached to this complaint as Exhibit G.

### H.    Irreparable Harm

125.    In the past, the State Department's illegal conduct irreparably harmed Defense Distributed and SAF by abridging rights guaranteed by the First Amendment, Second Amendment, Fourteenth Amendment, and other federal speech protections.

126.    In the past, the State Department's illegal conduct irreparably harmed Defense Distributed and SAF by causing Defense Distributed and SAF to refrain from publishing digital firearms information that Defense Distributed and SAF had a right to publish, by causing Defense Distributed and SAF to refrain from receiving digital firearms information that Defense Distributed and SAF had a right to receive, and by causing Defense Distributed and SAF to refrain from republishing digital firearms information that Defense Distributed had a right to republish.

127.    In the past, the State Department's illegal conduct irreparably harmed Defense Distributed and SAF by chilling Defense Distributed and SAF's exercise of First Amendment rights.

128.    In the past, the State Department's illegal conduct irreparably harmed Defense Distributed and SAF by chilling Defense Distributed and SAF's exercise of Second Amendment rights.

129.    At present, the State Department's illegal conduct irreparably harms Defense Distributed and SAF by abridging rights guaranteed by the First Amendment, Second Amendment, Fourteenth Amendment, and other federal speech protections.

130.    At present, the State Department's illegal conduct irreparably harms Defense Distributed and SAF by causing Defense Distributed and SAF to refrain from publishing digital firearms information that Defense Distributed and SAF have a right to publish, by causing Defense Distributed and SAF to refrain from receiving digital firearms information that Defense Distributed and SAF have a right to receive, and by causing Defense Distributed and SAF to refrain from republishing digital firearms information that Defense Distributed and SAF have a right to republish.

131.    At present, the State Department's illegal conduct irreparably harms Defense Distributed and SAF by chilling Defense Distributed and SAF's exercise of First Amendment rights.

132.    At present, the State Department's illegal conduct irreparably harms Defense Distributed and SAF by chilling Defense Distributed and SAF's exercise of Second Amendment rights.

133.    Absent relief from this Court, the State Department will continue to engage in the illegal conduct that has caused Defense Distributed and SAF irreparable harm in the past and is causing Defense Distributed and SAF irreparable harm at present.

## VI.    Causes of Action

### A.    Count One: APA § 706(2)(A).

134.    Defense Distributed & SAF incorporate the preceding paragraphs.

135.    The Administrative Procedure Act requires the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

136.    The State Department committed a final agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), by disavowing the license it had originally issued to Defense Distributed and SAF in July 2018. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful and setting it aside.

137.    The State Department committed a final agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), by refusing to issue a letter to Defense Distributed & SAF, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that (1) *Defense Distributed I*'s Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution ) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13), and (2) for the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue the approval. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

138.    The State Department committed a final agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), by refusing to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule revising USML Category I to exclude the technical data that was the subject of *Defense Distributed I*.  Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

139.    The State Department committed a final agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), by disavowing the temporary modification it had originally issued to Defense Distributed and SAF in July 2018. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful and setting it aside.

140.    The State Department committed a final agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), by refusing to announce, while the above-referenced final rule is in development, a temporary modification, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that was the subject of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

141.    The State Department committed a final agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), by refusing to acknowledge and agree that the 2018 temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the 2018 License permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

142.    In each of these respects, the State Department's conduct was *not* substantially justified within the meaning of 28 U.S.C. § 2412(d)(1).

41

**B.      Count Two: APA § 706(2)(B).**

143.     Defense Distributed & SAF incorporate the preceding paragraphs.

144.     The Administrative Procedure Act requires the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(B).

145.     The State Department committed a final agency action that was "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), by disavowing the license it had originally issued to Defense Distributed and SAF in July 2018.  Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful and setting it aside.

146.     The State Department committed a final agency action that was "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), by refusing to issue a letter to Defense Distributed & SAF, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that (1) *Defense Distributed I*'s Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution ) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13), and (2) for the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue the approval.  Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

147.     The State Department committed a final agency action that was "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), by refusing to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the

publication in the Federal Register of a notice of proposed rulemaking and final rule revising USML Category I to exclude the technical data that was the subject of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

148.    The State Department committed a final agency action that was "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), by disavowing the temporary modification it had originally issued to Defense Distributed and SAF in July 2018. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful and setting it aside.

149.    The State Department committed a final agency action that was "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), by refusing to announce, while the above-referenced final rule is in development, a temporary modification, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that was the subject of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

150.    The State Department committed a final agency action that was "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), by refusing to acknowledge and agree that the 2018 temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the 2018 License permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files of *Defense*

*Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

151.    In each of these respects, the State Department's conduct was *not* substantially justified within the meaning of 28 U.S.C. § 2412(d)(1).

**C.    Count Three: APA § 706(2)(C).**

152.    Defense Distributed & SAF incorporate the preceding paragraphs.

153.    The Administrative Procedure Act requires the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

154.    The State Department committed a final agency action that was "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), by disavowing the license it had originally issued to Defense Distributed and SAF in July 2018. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful and setting it aside.

155.    The State Department committed a final agency action that was "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), by refusing to issue a letter to Defense Distributed & SAF, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that (1) *Defense Distributed I*'s Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution ) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13), and (2) for the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the

Directorate of Defense Trade Controls has delegated authority to issue the approval. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

156.    The State Department committed a final agency action that was "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), by refusing to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule revising USML Category I to exclude the technical data that was the subject of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

157.    The State Department committed a final agency action that was "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), by disavowing the temporary modification it had originally issued to Defense Distributed and SAF in July 2018. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful and setting it aside.

158.    The State Department committed a final agency action that was "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), by refusing to announce, while the above-referenced final rule is in development, a temporary modification, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that was the subject of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

159.    The State Department committed a final agency action that was "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), by refusing to acknowledge and agree that the 2018 temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the 2018 License permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files of *Defense Distributed I*.  Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

160.    In each of these respects, the State Department's conduct was *not* substantially justified within the meaning of 28 U.S.C. § 2412(d)(1).

**D.    Count Four: APA § 706(2)(D).**

161.    Defense Distributed & SAF incorporate the preceding paragraphs.

162.    The Administrative Procedure Act requires the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "without observance of procedure required by law."  5 U.S.C. § 706(2)(D).

163.    The State Department committed a final agency action that was "without observance of procedure required by law," 5 U.S.C. § 706(2)(D), by disavowing the license it had originally issued to Defense Distributed and SAF in July 2018.  Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful and setting it aside.

164.    The State Department committed a final agency action that was "without observance of procedure required by law," 5 U.S.C. § 706(2)(D), by refusing to issue a letter to

Defense Distributed & SAF, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that (1) *Defense Distributed I*'s Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution ) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13), and (2) for the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue the approval.  Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

165.    The State Department committed a final agency action that was "without observance of procedure required by law," 5 U.S.C. § 706(2)(D), by refusing to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule revising USML Category I to exclude the technical data that was the subject of *Defense Distributed I*.  Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

166.    The State Department committed a final agency action that was "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), by disavowing the temporary modification it had originally issued to Defense Distributed and SAF in July 2018. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful and setting it aside.

167.    The State Department committed a final agency action that was "without observance of procedure required by law," 5 U.S.C. § 706(2)(D), by refusing to announce, while the above-referenced final rule is in development, a temporary modification, consistent with the

International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that was the subject of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

168.    The State Department committed a final agency action that was "without observance of procedure required by law," 5 U.S.C. § 706(2)(D), by refusing to acknowledge and agree that the 2018 temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the 2018 License permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

169.    In each of these respects, the State Department's conduct was *not* substantially justified within the meaning of 28 U.S.C. § 2412(d)(1).

**E.    Count Five: Breach of contract.**

170.    Defense Distributed & SAF incorporate the preceding paragraphs.

171.    Defense Distributed, SAF, and Conn Williamson timely performed all of their obligations under the Settlement Agreement. Defense Distributed, SAF, and Conn Williamson did not commit any material breach of the Settlement Agreement.

172.    The State Department committed an unexcused material breach of the Settlement Agreement by disavowing the license it had originally issued to Defense Distributed and SAF in July 2018. Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins further breaches of this kind, (3) awards Defense Distributed & SAF

nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

173.    The State Department breached the Settlement Agreement by refusing to issue a letter to Defense Distributed & SAF, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that (1) *Defense Distributed I*'s Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution ) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13), and (2) for the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue the approval.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins further breaches of this kind, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

174.    The State Department committed an unexcused material breach of the Settlement Agreement by refusing to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule revising USML Category I to exclude the technical data that was the subject of *Defense Distributed I*.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins further breaches of this kind, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages,

and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

175.    The State Department committed an unexcused material breach of the Settlement Agreement by refusing to announce, while the above-referenced final rule is in development, a temporary modification, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that was the subject of *Defense Distributed I.* Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins further breaches of this kind, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

176.    The State Department committed an unexcused material breach of the Settlement Agreement by disavowing the temporary modification it had originally issued to Defense Distributed and SAF in July 2018. Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins further breaches of this kind, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

177.    The State Department committed an unexcused material breach of the Settlement Agreement by refusing to acknowledge and agree that the 2018 temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data

that is the subject of the Action, and that the 2018 License permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files of *Defense Distributed I*.   Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins further breaches of this kind, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

178.   The State Department waived any and all grounds of opposition to court enforcement of the Settlement Agreement.  Settlement Agreement paragraph 4 entails the State Department's consent to "any civil, criminal, or administrative action . . . permitted by law, if any, that may be necessary to consummate or enforce this Settlement Agreement."

179.   In each of these respects, the State Department's conduct was *not* substantially justified within the meaning of 28 U.S.C. § 2412(d)(1).

**F.    Count Six: Freedom of Speech and of the Press**

180.   Defense Distributed & SAF incorporate the preceding paragraphs.

181.   The First Amendment of the Constitution of the United States forbids government actions abridging the freedom of speech or of the press.  It applies to the State Department.

182.   The State Department's conduct violates the First Amendment doctrine regarding prior restraints.   *See, e.g.*, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963).   The State Department's conduct constitutes a prior restraint of expression; as such, it is an unconstitutional abridgement of First Amendment freedoms because the State Department cannot carry the heavy

burden of justifying a prior restraint and because the prior restraint does not operate under sufficient judicial superintendence.

183.     The State Department's conduct violates the First Amendment doctrine regarding content-based speech restrictions.  *See, e.g.*, *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015). The State Department's conduct imposes content-based speech restrictions; as such, the conduct is an unconstitutional abridgement of First Amendment's freedoms because the State Department cannot carry the heavy burden of justifying a content-based speech restriction and because it does not serve a compelling governmental interest and is not narrowly drawn to serve any such interest.

184.     The State Department's conduct violates the First Amendment doctrine regarding content-neutral speech restrictions.  *See, e.g., McCullen v. Coakley*, 134 S. Ct. 2518 (2014).  Even if the State Department's conduct is deemed to impose content-neutral speech restrictions, it is an unconstitutional abridgement of First Amendment's freedoms because it does not serve a significant governmental interest and is not narrowly drawn to serve any such interest.

185.     The State Department's conduct violates the First Amendment doctrine regarding overbreadth. *See, e.g.*, *City of Houston, Tex. v. Hill*, 482 U.S. 451 (1987).  The State Department's conduct forbids a substantial amount of constitutionally protected speech and is not narrowly tailored to prohibit only constitutionally unprotected speech; as such, it is an unconstitutional abridgement of First Amendment's freedoms.

186.     The State Department violated Defense Distributed and SAF's First Amendment rights by disavowing the license it had originally issued to Defense Distributed and SAF in July 2018.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF

nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

187.    The State Department violated Defense Distributed and SAF's First Amendment rights by refusing to issue a letter to Defense Distributed & SAF, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that (1) *Defense Distributed I*'s Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution ) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13), and (2) for the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue the approval.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

188.    The State Department violated Defense Distributed and SAF's First Amendment rights by refusing to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule revising USML Category I to exclude the technical data that was the subject of *Defense Distributed I*.  Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense

Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

189.    The State Department violated Defense Distributed and SAF's First Amendment rights by disavowing the temporary modification it had originally issued to Defense Distributed and SAF in July 2018.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

190.    The State Department violated Defense Distributed and SAF's First Amendment rights by refusing to announce, while the above-referenced final rule is in development, a temporary modification, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that was the subject of *Defense Distributed I*.  Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

191.    The State Department violated Defense Distributed and SAF's First Amendment rights by refusing to acknowledge and agree that the 2018 temporary modification of USML

Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the 2018 License permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files of *Defense Distributed I*.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

192.    In each of these respects, the State Department's conduct was *not* substantially justified within the meaning of 28 U.S.C. § 2412(d)(1).

**G.    Count Seven: Right to Keep and Bear Arms**

193.    Defense Distributed & SAF incorporate the preceding paragraphs.

194.    The Second Amendment of the Constitution of the United States forbids laws abridging the individual right to keep and bear Arms.

195.    The State Department violated the Second Amendment by subjecting Defense Distributed & SAF to an unconstitutional abridgement of Second Amendment rights.  *See District of Columbia v. Heller*, 554 U.S. 570, 627 (2008).  The State Department's conduct infringes the individual right to make and acquire Arms, which is part and parcel of the right to keep and bear Arms; as such, it is an unconstitutional abridgement of Second Amendment rights.

196.    The State Department violated Defense Distributed and SAF's Second Amendment rights by disavowing the license it had originally issued to Defense Distributed and

SAF in July 2018.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

197.    The State Department violated Defense Distributed and SAF's Second Amendment rights by refusing to issue a letter to Defense Distributed & SAF, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that (1) *Defense Distributed I*'s Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution ) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13), and (2) for the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue the approval. Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

198.    The State Department violated Defense Distributed and SAF's Second Amendment rights by refusing to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule revising USML Category I to exclude the technical data that

was the subject of *Defense Distributed I*.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

199.   The State Department violated Defense Distributed and SAF's Second Amendment rights by disavowing the temporary modification it had originally issued to Defense Distributed and SAF in July 2018.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

200.   The State Department violated Defense Distributed and SAF's Second Amendment rights by refusing to announce, while the above-referenced final rule is in development, a temporary modification, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that was the subject of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

201.    The State Department violated Defense Distributed and SAF's Second Amendment rights by refusing to acknowledge and agree that the 2018 temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the 2018 License permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files of *Defense Distributed I*.    Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

202.    In each of these respects, the State Department's conduct was *not* substantially justified within the meaning of 28 U.S.C. § 2412(d)(1).

### H.    Count Eight: Due Process

203.    Defense Distributed & SAF incorporate the preceding paragraphs.

204.    The Due Process Clause of the Fifth Amendment of the Constitution of the United States forbids the federal government from depriving any person of life, liberty, or property without due process of law.

205.    The State Department violated the Due Process Clause of the Fifth Amendment of the Constitution of the United States by depriving Defense Distributed & SAF of liberty and property without due process of law. *See, e.g.*, *Matthews v. Eldridge*, 424 U.S. 319 (1976). The State Department's conduct deprives Defense Distributed & SAF of a license issued by the Secretary of

State pursuant to federal law, and does so without supplying adequate pre-deprivation notice and an opportunity to be heard; as such, it is an unconstitutional deprivation of property without due process of law.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages in an amount no less than five million dollars.

206.    The State Department violated Defense Distributed and SAF's Fifth Amendment rights by disavowing the 2018 License.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

207.    The State Department violated Defense Distributed and SAF's Fifth Amendment rights by refusing to issue a letter to Defense Distributed & SAF, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that (1) *Defense Distributed I*'s Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution ) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13), and (2) for the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue the approval.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4)

awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

208.    The State Department violated Defense Distributed and SAF's Fifth Amendment rights by refusing to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule revising USML Category I to exclude the technical data that was the subject of *Defense Distributed I*.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

209.    The State Department violated Defense Distributed and SAF's Fifth Amendment rights by disavowing the temporary modification it had originally issued to Defense Distributed and SAF in July 2018.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

210.    The State Department violated Defense Distributed and SAF's Fifth Amendment rights by refusing to announce, while the above-referenced final rule is in development, a temporary modification, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that was the subject of *Defense

*Distributed I.*  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

211.     The State Department violated Defense Distributed and SAF's Fifth Amendment rights by refusing to acknowledge and agree that the 2018 temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the 2018 License permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files of *Defense Distributed I.*  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

212.     In each of these respects, the State Department's conduct was *not* substantially justified within the meaning of 28 U.S.C. § 2412(d)(1).

## VII.    Requests for Relief

213.     Defense Distributed and SAF request a judgment in their favor as to all claims against the State Department awarding them all relief they are entitled to.

214.   Defense Distributed and SAF request a judgment against the State Department declaring unlawful and setting aside the State Department's disavowal of the license it had originally issued to Defense Distributed and SAF in July 2018.  Defense Distributed & SAF request an injunction protecting Defense Distributed & SAF from such unlawful conduct in the future—both on a preliminary basis while this action is pending and permanently.  With respect to this conduct, Defense Distributed & SAF request an award of nominal damages, punitive damages, and actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

215.   Defense Distributed and SAF request a judgment against the State Department declaring unlawful and setting aside the State Department's disavowal of the temporary modification it had originally issued to Defense Distributed and SAF in July 2018.  Defense Distributed & SAF request an injunction protecting Defense Distributed & SAF from such unlawful conduct in the future—both on a preliminary basis while this action is pending and permanently.  With respect to this conduct, Defense Distributed & SAF request an award of nominal damages, punitive damages, and actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

216.   Defense Distributed and SAF request a judgment against the State Department declaring unlawful the State Department's refusal to issue a letter to Defense Distributed & SAF, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that (1) *Defense Distributed I*'s Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution ) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13), and (2) for the purposes

of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue the approval. Defense Distributed & SAF request an injunction protecting Defense Distributed & SAF from such unlawful conduct in the future—both on a preliminary basis while this action is pending and permanently.  With respect to this conduct, Defense Distributed & SAF request an award of nominal damages, punitive damages, and actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

217.    Defense Distributed and SAF request a judgment against the State Department declaring unlawful the State Department's refusal to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule revising USML Category I to exclude the technical data that was the subject of *Defense Distributed I*. Defense Distributed & SAF request an injunction protecting Defense Distributed & SAF from such unlawful conduct in the future— both on a preliminary basis while this action is pending and permanently.  With respect to this conduct, Defense Distributed & SAF request an award of nominal damages, punitive damages, and actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

218.    Defense Distributed and SAF request a judgment against the State Department declaring unlawful the State Department's refusal to announce, while the above-referenced final rule is in development, a temporary modification, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that was the subject of *Defense Distributed I*. Defense Distributed & SAF request an injunction protecting

Defense Distributed & SAF from such unlawful conduct in the future—both on a preliminary basis while this action is pending and permanently.  With respect to this conduct, Defense Distributed & SAF request an award of nominal damages, punitive damages, and actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

219.    Defense Distributed and SAF request a judgment against the State Department declaring unlawful the State Department's refusal to acknowledge and agree that the 2018 temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the 2018 License permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files of *Defense Distributed I*. Defense Distributed & SAF request an injunction protecting Defense Distributed & SAF from such unlawful conduct in the future— both on a preliminary basis while this action is pending and permanently.  With respect to this conduct, Defense Distributed & SAF request an award of nominal damages, punitive damages, and actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

220.    Defense Distributed & SAF request an award against the State Department of costs, including reasonable attorney fees, against the State Department.  The State Department conduct giving rise to liability was *not* substantially justified within the meaning of 28 U.S.C. § 2412(d)(1). Defense Distributed and SAF request any other relief against the State Department to which they are entitled.

Respectfully submitted,

By /s/ Chad Flores
_____
Chad Flores
cf@chadfloreslaw.com
Texas Bar No. 24059759
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, TX 77002
(713) 893-9444

Counsel for Plaintiffs Defense Distributed
and Second Amendment Foundation, Inc.