IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 23-849 Senior Judge Bruggink |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) ) | |

---

### DEFENDANT'S MOTION TO DISMISS

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

L. MISHA PREHEIM
Assistant Director

NATHANAEL B. YALE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0464

October 19, 2023                          *Attorneys for Defendant*

## TABLE OF CONTENTS

INTRODUCTION AND STATEMENT OF THE ISSUES ........................................................1

STATEMENT OF THE CASE ...............................................................................................5

    I.    Statutory And Regulatory Background ..................................................................5

    II.    Statement Of Facts And Procedural History ..........................................................7

        A.  *Defense Distributed I* — Defense Distributed Sues To Remove 3-D-Gun Files From USML Category I And ITAR ............................................................7

        B.  The Settlement Agreement And Dismissal of *Defense Distributed I* ................8

        C.  *Washington I* — Various States Sue To Block The Department of State's Compliance With The Settlement Agreement ...................................................10

        D.  *Washington II* — States Challenge The Final Rules Removing 3-D-Gun Files From USML ..............................................................................................12

        E.  *Defense Distributed II* — Plaintiffs Sue To Block State From Regulating 3-D-Gun Files And Allege Breaches Of The Settlement Agreement ..............13

    III.    Plaintiffs' Transfer Complaint ...........................................................................15

SUMMARY OF THE ARGUMENT .....................................................................................16

ARGUMENT .......................................................................................................................17

    I.    Standards Of Review ..........................................................................................17

    II.    This Court Does Not Possess Jurisdiction To Entertain Plaintiffs' Constitutional Claims And Claims Under the APA (Counts 1-4, 6-8) ..........................................18

        A.  This Court's Limited Jurisdiction ...................................................................18

        B.  This Court Lacks Jurisdiction To Entertain Plaintiffs' Constitutional And APA Claims Because They Are Not Money-Mandating ..................................20

    III.    The Court Lacks Jurisdiction To Entertain Plaintiffs' Breach Of Settlement Agreement Claim (Count 5) ..............................................................................21

        A.  This Court Lacks Jurisdiction Under Section 1500 .........................................21

i

B.  This Court Lacks Jurisdiction To Consider Plaintiffs' Challenges To The District Court's Judgments .................................................................... 26

IV.   Additional Jurisdictional Defects ........................................................................ 27

A.  The Court Does Not Possess Jurisdiction To Entertain Plaintiffs' Request For Injunctive Relief ........................................................................... 27

B.  The Court Does Not Possess Jurisdiction To Entertain Plaintiffs' Claims Against Individuals and Entities Other Than The United States ...................... 29

V.   Plaintiffs Fail To State A Claim That The Government Breached The Settlement Agreement ........................................................................................... 30

A.  Plaintiffs Fail To State A Breach Of Contract Claim Because The Government Complied With Its Obligations Under The Settlement Agreement ................. 31

B.  Plaintiffs Fail To State A Breach Of Contract Claim Because They Fail To Allege Any Causal Connection Between The Alleged Contractual Breaches And Their Reported Damages ......................................................................... 37

C.  Any Government Breach Of The Settlement Agreement Was Excused By The Doctrine Of Impossibility ........................................................................ 38

CONCLUSION ................................................................................................................... 40

## TABLE OF AUTHORITIES

**Cases**                                                               **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................ 38

*Beberman v. United States*,
   129 Fed. Cl. 539 (2016)......................................................................... 24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................ 18

*Bell/Heery v. United States*,
   739 F.3d 1324 (Fed. Cir. 2014) .............................................................. 31

*Bluebonnet Sav. Bank, F.S.B. v. United States*,
   339 F.3d 1341 (Fed. Cir. 2003) .............................................................. 37

*Blueport Co., LLC v. United States*,
   533 F.3d 1374 (Fed. Cir. 2008) .............................................................. 19

*Borup v. Western Operating Corp.*,
   130 F.2d 381 (2d Cir. 1942) ................................................................... 39

*Bram v. United States*,
   102 Fed. Cl. 752 (2012)......................................................................... 30

*Brandt v. United States*,
   710 F.3d 1369 (Fed. Cir. 2013) .............................................................. 22

*Brown v. United States*,
   105 F.3d 621 (Fed. Cir. 1997) ................................................................ 29

*Cedars-Sinai Med. Ctr. v. Watkins*,
   11 F.3d 1573 (Fed. Cir. 1993) ................................................................ 17

*Cent. Pines Land Co., L.L.C. v. United States*,
   697 F.3d 1360 (Fed. Cir. 2012) ......................................................... 22, 23

*Claude Mayo Constr. Co. v. United States*,
   132 Fed. Cl. 634 (2017)......................................................................... 31

*Columbus Reg'l Hosp. v. United States*,
   990 F.3d 1330 (Fed. Cir. 2021) .............................................................. 28

*Def. Distributed v. United States Dep't of State*,
  121 F. Supp. 3d 680 (W.D. Tex. 2015), *aff'd*, 838 F.3d 451 (5th Cir. 2016).................... *passim*

*Def. Distributed v. United States Dep't of State*,
  583 U.S. 1052 (2018) ............................................................................................ 8

*Def. Distributed v. United States Dep't of State*,
  838 F.3d 451 (5th Cir. 2016) .............................................................................. 7, 8

*Def. Distributed v. United States Dep't of State*,
  865 F.3d 211 (5th Cir. 2017) .................................................................................. 8

*Def. Distributed v. United States Dep't of State*,
  947 F.3d 870 (5th Cir. 2020) ................................................................................ 11

*Def. Distributed v. United States Dep't of State*,
  No. 15-cv-372 (W.D. Tex. 2015) ....................................................................... 1, 2

*Def. Distributed v. U.S. Dep't of State*,
  No. 15-cv-372, 2018 WL 9866515 (W.D. Tex. Oct. 22, 2018), *aff'd* 947 F.3d 870 (5th Cir. 2020)
  ............................................................................................................................ 34

*Def. Distributed v. United States Dep't of State et al.*,
  No. 18-cv-637 (W.D. Tex. 2018) ................................................................. 3, 13, 14

*Def. Distributed v. United States Dep't of State et al*,
  No. 18-cv-637, 2023 WL 2544334 (W.D. Tex. Mar. 15, 2023) ................................... 3, 15, 17

*Def. Distributed v. United States Dep't of State*,
  No. 20-35030, 2020 WL 4332902 (9th Cir. July 21, 2020) .................................... 12

*Diaz v. United States*,
  141 Fed. Cl. 161 (2018)........................................................................................ 38

*Dimare Fresh, Inc. v. United States*,
  808 F.3d 1301 (Fed. Cir. 2015) ............................................................................. 7

*District of Columbia v. United States*,
  67 Fed. Cl. 292 (2005)......................................................................................... 19

*Dow Jones & Co., Inc. v. Ablaise Ltd.*,
  606 F.3d 1338 (Fed. Cir. 2010) ........................................................................... 17

iv

*Elkins v. United States*,
  229 Ct. Cl. 607 (1981) ........................................................................... 21

*Everett Plywood Corp. v. United States*,
  651 F.2d 723 (Ct. Cl. 1981) .................................................................. 40

*FDIC v. Meyer*,
  510 U.S. 471 (1994) ............................................................................... 18

*Fisher v. United States*,
  402 F.3d 1167 (Fed. Cir. 2005) ............................................................ 19

*Fullard v. United States*,
  78 Fed. Cl. 294 (2007) ........................................................................... 30

*Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*,
  490 F.3d 940 (Fed. Cir. 2007) ............................................................... 28

*Griffin v. United States*,
  590 F.3d 1291 (Fed. Cir. 2009) ..................................................... 4, 22, 23

*Harbuck v. United States*,
  378 F.3d 1324 (Fed. Cir. 2004) ..................................................... 4, 22, 23

*Hughes Communications Galaxy, Inc. v. United States*,
  271 F.3d 1060 (Fed. Cir. 2001) ............................................................. 37

*Hunt Constr. Grp. v. United States*,
  281 F.3d 1369 (Fed. Cir. 2002) ............................................................. 31

*Hutchens v. United States*,
  89 Fed. Cl. 553 (2009) ........................................................................... 18

*Ind. Mich. Power Co. v. United States*,
  422 F.3d 1369 (Fed. Cir. 2005) ............................................................. 37

*James v. Caldera*,
  159 F.3d 573 (Fed. Cir. 1998) ............................................................... 28

*Jordan v. United States*,
  128 Fed. Cl. 46 (2016) ........................................................................... 20

*Joshua v. United States*,
  17 F.3d 378 (Fed. Cir. 1994) ................................................................. 27

*Kanemoto v. Reno*,
    41 F.3d 641 (Fed. Cir. 1994) ............................................................. 28

*Katz v. Cisneros*,
    16 F.3d 1204 (Fed. Cir. 1994) ........................................................... 26

*Keene Corp. v. United States*,
    508 U.S. 200 (1993) ........................................................................... 22

*Klamath Irrig. Dist. v. United States*,
    113 Fed. Cl. 688 (2013)...................................................................... 23

*LeBlanc v. United States*,
    50 F.3d 1025 (Fed. Cir. 1995) ........................................................... 20

*Marcum LLP v. United States*,
    753 F.3d 1380 (Fed. Cir. 2014) ......................................................... 18

*Martinez v. United States*,
    333 F.3d 1295 (Fed. Cir. 2003) ......................................................... 20

*McNutt v. Gen. Motors Acceptance Corp.*,
    298 U.S. 178 (1936) ........................................................................... 17

*Medlin Constr. Grp., Ltd. v. Harvey*,
    449 F.3d 1195 (Fed. Cir. 2006) ......................................................... 31

*Mitchell v. United States*,
    930 F.2d 893 (Fed. Cir. 1991) ........................................................... 20

*Murphy v. United States*,
    993 F.2d 871 (Fed. Cir. 1993) ........................................................... 20

*Nat'l Ctr. for Mfg. Scis. v. United States*,
    114 F.3d 196 (Fed. Cir. 1997) ........................................................... 26

*Ont. Power Generation, Inc. v. United States*,
    369 F.3d 1298 (Fed. Cir. 2004) ......................................................... 19

*Petro-Hunt, L.L.C. v. United States*,
    862 F.3d 1370 (Fed. Cir. 2017) ............................................. 22, 23, 25

*Pierce v. United States*,
    590 F. App'x 1000 (Fed. Cir. 2015) .................................................. 20

*Reynolds v. Army and Air Force Base Exch. Serv.*,
846 F.2d 746 (Fed. Cir. 1988) ................................................................. 17, 18

*Roberts v. United States*,
745 F.3d 1158 (Fed. Cir. 2014) ..................................................................... 19

*San Carlos Irrigation & Drainage Dist. v. United States*,
111 F.3d 1557 (Fed. Cir. 1997) ..................................................................... 37

*San Carlos Irrigation & Drainage Dist. v. United States*,
877 F.2d 957 (Fed. Cir. 1989) ................................................................. 31, 37

*Schneiter v. United States*,
159 Fed. Cl. 356 (2022) ................................................................................. 35

*Seabord Lumber Co. v. United States*,
308 F.3d 1283 (Fed. Cir. 2002) ............................................................... 38, 40

*Sergent's Mech. Sys., Inc. v. United States*,
157 Fed. Cl. 41 (2021) ................................................................................... 28

*Shinnecock Indian Nation v. United States*,
782 F.3d 1345 (Fed. Cir. 2015) ..................................................................... 27

*State of Wash., et al. v. U.S. Dep't of State, et al.*,
No. 18-cv-1115 (W.D. Wash. 2018) .......................................................*passim*

*Suess v. United States*,
535 F.3d 1348 (Fed. Cir. 2008) ..................................................................... 36

*Textron Def. Sys. v. Widnall*,
143 F.3d 1465 (Fed. Cir. 1998) ..................................................................... 31

*United States v. Connolly*,
716 F.2d  882 (Fed.  Cir. 1983) ..................................................................... 20

*United States v. County of Cook, Ill.*,
170 F.3d 1084 (Fed. Cir. 1999) ............................................................. *passim*

*United States v. Mitchell*,
463 U.S. 206 (1983) ...................................................................................... 19

*United States v. Sherwood*,
312 U.S. 584 (1941) ................................................................................ 19, 29

*United States v. Testan*,
424 U.S. 392 (1976) ................................................................................. 18, 19, 20

*United States v. Tohono O'Odham Nation*,
563 U.S. 307 (2011) ........................................................................................ *passim*

*United States v. White Mtn. Apache Tribe*,
537 U.S. 465 (2003) ................................................................................................ 19

*United States v. Winstar Corp.*,
518 U.S. 839 (1996) ................................................................................................ 39

*Walsh v. United States*,
250 F. App'x 310 (Fed. Cir. 2007) ......................................................................... 30

*Wash. v. Def. Distributed*,
No. 20-35030, 2020 WL 4332902 (9th Cir. July 21, 2020) ................................... 12

*Wash. v. U.S. Dep't of State*,
20-cv-111 (W.D. Wash 2020) ........................................................................... 12, 14

*Wash. v. U.S. Dep't of State*,
318 F. Supp. 3d 1247 (W.D. Wash. 2018) ......................................................... 10, 11

*Wash. v. U.S. Dep't of State*,
420 F. Supp. 3d 1130 (W.D. Wash. 2019) .......................................................... 2, 11

*Wash. v. U.S. Dep't of State*,
443 F. Supp. 3d 1245 (W.D. Wash. 2020) ............................................................. 12

*Wash. v. U.S. Dep't of State*,
996 F.3d 552 (9th Cir. 2021) .................................................................................. 13

*Wash. v. U.S. Dep't of State*,
No. 20-35391, ECF Nos. 65-66 (9th Cir. May 26, 2021) .................................... 6, 13

*Wells Fargo Bank, N.A. v. United States*,
88 F.3d 1012 (Fed. Cir. 1996) ................................................................................ 37

*Westover v. United States*,
71 Fed. Cl. 635 (2006) ............................................................................................ 38

*Wopsock v. Natchees*,
454 F.3d 1327 (Fed. Cir. 2006) .............................................................................. 20

*Zulueta v. United States*,
    No. 09-681, 2013 WL 363389 (Fed. Cl. Jan. 29, 2013) ........................................................... 38

**Statutes**

5 U.S.C. § 702 .................................................................................................................... 20

22 U.S.C. § 2778(a) ............................................................................................................. 5

22 U.S.C. § 2778(b) ............................................................................................................. 5

22 U.S.C. § 2778(h) ............................................................................................................. 12

28 U.S.C. § 1491(a) ...................................................................................................... 19, 28, 30

28 U.S.C. § 1491(b) ............................................................................................................. 28

28 U.S.C. § 1500 ........................................................................................................... *passim*

28 U.S.C. § 1631 ................................................................................................................. 22

50 U.S.C. § 4821(a) ............................................................................................................. 13

Arms Export Control Act (AECA),
    22 U.S.C. § 2751 *et seq* ................................................................................................... 5

**Rules**

RCFC 12(b) ................................................................................................................... *passim*

Fed. R. Civ. P. 41(a) ........................................................................................................... 10

**Regulations**

15 C.F.R. § 734.7 ................................................................................................................. 6

22 C.F.R. § 120.10(a) ........................................................................................................... 5

22 C.F.R. § 120.10(a) (2014) ............................................................................................... 6

22 C.F.R. § 120.33(a)..................................................................................................... 6

22 C.F.R. § 125.4(b) ................................................................................................. 9, 32

22 C.F.R. § 126.2 ........................................................................................................ 32

28 C.F.R. § 0.20 ......................................................................................................... 35

**Federal Register**

Administration of Reformed Export Controls, Exec. Order No. 13,637,
    78 Fed. Reg. 16,129 § 1(n) (Mar. 8, 2013)................................................................ 5

*Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer
    Warrant Control Under the United States Munitions List (USML)*,
    85 Fed. Reg. 4,136 (Dep't of Commerce Jan. 23, 2020) .................................... 6, 12

*Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer
    Warrant Control Under the United States Munitions List (USML); Notifying the Public of the
    Transfer of Jurisdiction of Certain Technology and Software as a Result of a Vacated March 6,
    2020 Injunction*, 86 Fed. Reg. 29,189 (Dep't of Commerce June 1, 2021) ............................ 13

*International Traffic in Arms Regulations: U.S. Munitions List Categories I, II and III*,
    83 Fed. Reg. 24,198 (Dep't of State May 24, 2018) ............................................ 9, 32

*International Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and III*,
    85 Fed. Reg. 3,819 (Dep't of State Jan. 23, 2020) ............................................*passim*

*International Traffic in Arms Regulations: U.S. Munitions List Categories; Preliminary Injunction
    Vacated by a Federal Court of Appeals*,
    86 Fed. Reg. 29,196 (Dep't of State June 1, 2021) .................................................. 13

**Other Authorities**

Restatement (Second) of Contracts § 264 .................................................................39

Restatement (Second) of Contracts § 456 .................................................................40

U.S. Const. amend. I ............................................................................................ 3, 15, 20

U.S. Const. amend. II..........................................................................................*passim*

U.S. Const. amend. V..........................................................................................*passim*

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court dismiss the complaint of Defense Distributed, a private business corporation, and the Second Amendment Foundation, a non-profit membership organization (plaintiffs), for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted.

## INTRODUCTION AND STATEMENT OF THE ISSUES

In 2012, Defense Distributed posted computer files on the internet enabling individuals worldwide to produce operable plastic firearms or firearm components with the use of a 3-D printer. The United States Department of State (State) determined that some of the files were technical data related to defense articles described on the then-applicable United States Munitions List (USML) and that Defense Distributed had therefore lacked the authorization required by the International Traffic in Arms Regulations (ITAR) to post the files. Posting ITAR-controlled technical data to the internet is treated as an export because it gives foreign persons access to that information in the same way as if they were given the data in a file on a hard drive. Because all defense articles, including technical data, are equally controlled for purposes of export, the law requires authorization to post and export technical data for firearms the same way it does for rockets or missiles. After State's determination that Defense Distributed's files contained technical data, Defense Distributed and the Second Amendment Foundation subsequently sued State in the United States District Court for the Western District of Texas. They alleged that the ITAR export regulations, which required a would-be poster to obtain a license before publishing 3-D-gun files on the internet, violated the First, Second, and Fifth Amendments to the Constitution. *Def. Distributed v. U.S. Dep't of State*, No. 15-cv-372 (W.D. Tex. 2015) (*Defense Distributed I*). The district court in *Defense Distributed I* denied

plaintiffs' motion for a preliminary injunction, and the United States Court of Appeals for the Fifth Circuit affirmed. *Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680 (W.D. Tex. 2015), *aff'd*, 838 F.3d 451 (5th Cir. 2016).

On June 29, 2018, the parties entered into a settlement agreement (the Settlement Agreement) in which State agreed to take certain actions concerning regulation of the 3-D-gun files at issue "to the extent authorized by law (including the Administrative Procedure Act)" in exchange for dismissal of plaintiffs' claims with prejudice. In accordance with the Settlement Agreement, on July 27, 2018, State announced that it was temporarily modifying the USML to exclude the relevant 3-D-gun files, and it issued a letter to Defense Distributed approving the files for public release. Plaintiffs then dismissed their complaint in *Defense Distributed I* with prejudice.

After this dismissal, on July 30, 2018, a group of several states filed suit in the United States District Court for the Western District of Washington alleging that State's actions with respect to the Settlement Agreement, including State's temporary modification of the USML, violated the Administrative Procedure Act (APA). *See State of Wash., et al. v. U.S. Dep't of State, et al.*, No. 18-cv-1115 (W.D. Wash. 2018) (*Washington I*). In *Washington I*, the district court entered a temporary restraining order followed by a preliminary injunction against State, finding that it was likely violating the APA, and enjoining it from enforcing or implementing the temporary USML modification and the letter issued to Defense Distributed. On November 12, 2019, the *Washington I* court granted summary judgment in the states' favor, holding that State had violated the APA. *Wash. v. U.S. Dep't of State*, 420 F. Supp. 3d 1130, 1135 (W.D. Wash. 2019). The district court thereby permanently vacated State's temporary modification of the USML and its letter to Defense Distributed. *Id.* at 1148.

Plaintiffs subsequently brought claims against other defendants, including the Attorney General for the State of New Jersey (NJAG) in the United States District Court for the Western District of Texas, No. 18-cv-637 (W.D. Tex. 2018) (*Defense Distributed II*).  For over two years, those claims continued without the claims made here against State, until November 10, 2020, when plaintiffs filed a second amended complaint to add State as a defendant, seeking declaratory and injunctive relief, as well as money damages for an alleged breach of the June 2018 Settlement Agreement, and for violations of various constitutional provisions and the APA. *Id.*, ECF. 117 (*Def. Distributed II* Comp.).  Following a long procedural history, the district court in *Defense Distributed II* transferred the breach of contract claims to this Court and dismissed the remainder of the claims as moot.  *Def. Distributed v. U.S. Dep't of State et al*, No. 18-cv-637, 2023 WL 2544334 (W.D. Tex. Mar. 15, 2023); ECF Nos. 182-183.

On July 6, 2023, despite the district court having transferred only their breach of contract claims, plaintiffs filed an eight-count complaint in this Court alleging that State's actions in regulating the 3-D-gun files at issue breached the Settlement Agreement and violated the APA, as well as the First, Second, and Fifth Amendments (Fed. Cl. Comp., ECF No. 189).

Plaintiffs' complaint, however, suffers from several fatal deficiencies that mandate dismissal.  As an initial matter, this Court lacks jurisdiction to entertain plaintiffs' claims under the APA, as well as the First Amendment, Second Amendment, and Due Process Clause of the Fifth Amendment (Counts 1-4, 6-8).  It is black-letter law that neither the APA nor these constitutional provisions are money-mandating so as to provide this Court with subject-matter jurisdiction.

Plaintiffs' sole remaining claim—alleging breach of the Settlement Agreement (Count 5)—falters on jurisdictional grounds for two reasons.  First, this Court is statutorily barred

pursuant to 28 U.S.C. § 1500 from entertaining Count 5.  For more than 150 years, Congress has

ensured that plaintiffs cannot simultaneously maintain a suit against the Government in both the

Court of Federal Claims and a Federal district court, if the suit in this Court is based on the same

operative facts as other claims pending in district court.  Here, longstanding precedent of the

Court of Appeals for the Federal Circuit establishes that the breach of contract claim transferred

to this Court is deemed filed as of the date it was originally filed in the district court (November

10, 2020), ECF No. 117.  *See Griffin v. United States*, 590 F.3d 1291, 1293-95 (Fed. Cir. 2009);

*Harbuck v. United States*, 378 F.3d 1324, 1327-28 (Fed. Cir. 2004); *United States v. County of*

*Cook, Ill.*, 170 F.3d 1084, 1089-91 (Fed. Cir. 1999).  Accordingly, the plaintiffs' breach of

contract claim is barred under section 1500 because it must be considered to have been pending

at the same time that the plaintiffs were pursuing related claims based on the same operative

facts.

Second, this Court lacks jurisdiction to hear Count 5 because, properly characterized,

plaintiffs' breach of contract claim seeks to collaterally challenge the district court's decisions

enjoining the Government in *Washington I*.  Such a challenge is well beyond the scope of this

Court's authority.

Even assuming that the Court possessed jurisdiction to entertain Count 5, plaintiffs fail to

state a claim for breach of contract for at least three reasons.  First, plaintiffs fail to identify any

contractual obligation in the Settlement Agreement with which State allegedly did not comply.

Plaintiffs' core allegation that State breached the Settlement Agreement by failing to comply

with the agreement's terms after the district court had granted injunctive relief to the states in

*Washington I* ignores that the Settlement Agreement only obligated the Government to take

action "authorized by law (including the Administrative Procedure Act)."  Second, plaintiffs fail

4

to allege any facts demonstrating that any purported breach of the Settlement Agreement caused them damages.  By their own admission, Defense Distributed gave away the 3-D-gun files at issue on the internet for free, and plaintiffs fail to articulate any theory under which they are entitled to recover breach of contract damages.  Third, any breach would be excused pursuant to the doctrine of impossibility once the district court had enjoined State for violating the APA.

For all these reasons, the complaint should be dismissed.

## STATEMENT OF THE CASE

### I.      Statutory And Regulatory Background

The Arms Export Control Act (AECA), 22 U.S.C. § 2751 *et seq.*, authorizes the President, "[i]n furtherance of world peace and the security and foreign policy of the United States," to "control the import and the export of defense articles and defense services."  *Id.* § 2778(a)(1).  "[T]he President is authorized to designate those items which shall be considered as defense articles and defense services," by identifying them on the USML.  *Id.*  In addition, the President is authorized to "promulgate regulations for the import and export of such articles and services."  *Id.*  With exceptions not applicable here, "no defense articles or defense services designated . . . may be exported or imported without a license for such export or import."  22 U.S.C. § 2778(b)(2).

Pursuant to the AECA, the President has delegated authority to State to administer ITAR, 22 C.F.R. parts 120-130.  *See* Administration of Reformed Export Controls, Exec. Order No. 13,637, 78 Fed. Reg. 16,129 § 1(n) (Mar. 8, 2013).  These regulations control the export, temporary import, and brokering of defense articles and defense services described on the USML.  The USML includes both physical defense articles and related "technical data."  22 C.F.R. § 120.10(a). As of the date of the Settlement Agreement, the applicable regulations

5

defined "Technical data" as including "[i]nformation . . . which is required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of defense articles," such as "information in the form of blueprints, drawings, photographs, plans, instructions or documentation." *Id.* § 120.10(a)(1) (2014); *see id*. § 120.33(a)(1)

The technical data that the USML previously controlled included the files at issue in this litigation: Defense Distributed's 3-D-gun files.  State, however, no longer regulates the export of the 3-D-gun files.  On January 23, 2020, State published a final rule removing certain items and their technical data—including that related to the 3-D-gun files at issue here—from the USML, effective March 9, 2022. *International Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and III*, 85 Fed. Reg. 3,819 (Dep't of State Jan. 23, 2020) (State Final Rule).[1] The export of these items removed from the USML, including the 3-D-gun files, has since been controlled by the Export Administration Regulations, which the Department of Commerce administers. *See* 15 C.F.R. § 734.7; *Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML)*, 85 Fed. Reg. 4,136 (Dep't of Commerce Jan. 23, 2020) (Commerce Final Rule).

---

[1] A preliminary injunction delayed the removal of these files, but effective May 26, 2021, that injunction was lifted by the Ninth Circuit, and the final rule removing certain technical data, including the 3-D-gun files, went into full effect. *See Wash. v. U.S. Dep't of State*, No. 20-35391, ECF Nos. 65-66 (9th Cir. May 26, 2021).

II.    **Statement Of Facts And Procedural History**

A.      *Defense Distributed I* — **Defense Distributed Sues To Remove 3-D-Gun Files From USML Category I And ITAR**

In 2012, Defense Distributed posted certain computer files on the internet enabling individuals with 3-D printers around the world to produce operable plastic firearms.  *See Defense Distributed I*, 121 F. Supp. 3d at 687; Fed. Cl. Comp. ¶ 74.[2]  In May 2013, State advised Defense Distributed that it may have exported technical data regulated under then-operable USML Category I without the required ITAR authorization.  *Def. Distributed*, 121 F. Supp. 3d at 687; Fed. Cl. Comp. ¶ 75.  Defense Distributed removed the technical data from its website and submitted a commodity jurisdiction request.  *Def. Distributed*, 121 F. Supp. 3d at 687.  State ultimately determined that some files were subject to the ITAR, and other files were not.  *Id.* at 687-88; *see* Fed. Cl. Comp. ¶ 75.

In *Defense Distributed I*, Defense Distributed and the Second Amendment Foundation, the plaintiffs in this case, sued State in the United States District Court for the Western District of Texas, alleging that the ITAR export regulations, and specifically the requirement that an exporter of technical data obtain a license prior to publishing 3-D-gun files on the internet, violated the First, Second, and Fifth Amendments.  Fed. Cl. Comp. ¶ 76; *see Def. Distributed v. U.S. Dep't of State,* 838 F.3d 451, 456 (5th Cir. 2016).  In that case, plaintiffs moved for a preliminary injunction that would have allowed it to post the regulated files on the internet without a license and to publish similar files in the future.  The district court denied the

---

[2] "Fed. Cl. Comp. ¶ __" refers to paragraphs in plaintiffs' complaint in this Court filed on July 6, 2023 (ECF No. 189).  In addition to the complaint, the Court may consider matters incorporated by reference or integral to the claim, items subject to judicial notice, and matters of public record.  *Dimare Fresh, Inc. v. United States,* 808 F.3d 1301, 1306 (Fed. Cir. 2015) (citation omitted).

preliminary injunction motion, and the Fifth Circuit affirmed. *Defense Distributed I*, 121 F.

Supp. 3d at 701; *Defense Distributed I,* 838 F.3d at 460-61; *see* Fed. Cl. Comp. ¶ 78.  In

addition, the Fifth Circuit denied rehearing *en banc*, over a four-judge dissent, 865 F.3d 211, 212

(5th Cir. 2017), and the Supreme Court declined to review the denial of the preliminary

injunction, 583 U.S. 1052 (2018).

### B.        The Settlement Agreement And Dismissal of *Defense Distributed I*

Following the Supreme Court's denial, the district court in *Defense Distributed I* ordered

the parties to engage in settlement discussions, which resulted in execution of the Settlement

Agreement on June 29, 2018.  Fed. Cl. Comp. ¶¶ 80-83; *id*. Ex. A.  Under the agreement, State

agreed to take certain actions concerning its regulation of technical data in the form of certain 3-

D-gun files, "to the extent authorized by law (including the Administrative Procedure Act)."

Settlement Agreement ¶ 1(a).

First, in the Settlement Agreement the "[d]efendants[] commit[ed] to draft and to fully

pursue" the publication in the Federal Register of a notice of proposed rulemaking and final rule,

revising the USML Category I to exclude the technical data that is the subject of [*Defense

Distributed I*]."  Settlement Agreement ¶ 1(a) (emphasis omitted).  Second, the defendants

agreed to "announce[], while the above-referenced final rule [was] in development, . . . a

temporary modification, consistent with the [ITAR Regulations] of USML Category I to exclude

the technical data that is the subject of [*Defense Distributed I*]."  Settlement Agreement, ¶ 1(b).

The Settlement Agreement further stated that this "announcement will appear on the DDTC

website . . . on or before July 27, 2018."  *Id*.  Third, the defendants agreed to "issu[e] a letter to

Plaintiffs on or before July 27, 2018, signed by the Deputy Assistant Secretary for Defense Trade

Controls, advising that the [*Defense Distributed I* files] are approved for public release (i.e.,

8

unlimited distribution) in any form and are exempt from the export license requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13)."  Settlement Agreement ¶ 1(c).  Fourth, the defendants agreed "that the temporary modification of USML Category I permits any United States person, to include [Defense Distributed's] customers and [Second Amendment Foundation's] members, to access, discuss use, reproduce, or otherwise benefit from the technical data that is the subject of [*Defense Distributed I*]."  Settlement Agreement ¶ 1(d).[3]

For their part, plaintiffs agreed to stipulate to dismissal of their claims with prejudice and executed a broad release of claims that discharged State "from any and all claims, demands and causes of action of every kind, nature or description, whether currently known or unknown, which Plaintiffs may have had, may now have, or may hereafter discover that were or could have been raised in the Action."  Settlement Agreement ¶ 3.

 In accordance with paragraph 1(a) of the Settlement Agreement, State published a notice of proposed rulemaking in the Federal Register on May 24, 2018, and then a final rule on January 23, 2020.  *See International Traffic in Arms Regulations: U.S. Munitions List Categories I, II and III*, 83 Fed. Reg. 24,198, 24,198 (Dep't of State May 24, 2018); State Final Rule, 85 Fed. Reg. 3,819, 3,823; Fed. Cl. Comp. ¶ 84(a) (noting that "the State Department had taken steps to comply with the obligation imposed by Settlement Agreement Paragraph 1(a)" by publishing the notice of proposed rulemaking in the Federal Register).  This rulemaking revised the USML to exclude certain technical data, including the 3-D-gun files at issue.

---

[3] Under the agreement, the Government was also required to pay plaintiffs $39,581. Settlement Agreement ¶ 1(e).  Plaintiffs have made no allegations that this payment was not made.

In accordance with paragraphs 1(b) and 1(c) of the Settlement Agreement, on July 27, 2018, State announced it was temporarily modifying the USML to exclude the 3-D-gun files at issue in the *Defense Distributed I* litigation, and sent a letter to Defense Distributed approving the 3-D-gun files for public release.  Fed. Cl. Comp. ¶ ¶ 84(b), (c); *id*. Exs. B-C.  In addition, in compliance with paragraph 1(d) of the Settlement Agreement, by July 27, 2018, State had "acknowledged and agreed that the temporary modification permits any United States person to access, discuss, use, reproduce, or otherwise benefit from the *Defense Distributed I* Files; and that the license issued to the *Defense Distributed I* plaintiffs permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files."  Fed. Cl. Comp. ¶ 84(d).

After the defendants in *Defense Distributed I* complied with their obligations under the Settlement Agreement, the parties filed a stipulation of dismissal with prejudice pursuant to Federal Rules of Civil Procedure 41(a)(1)(A)(ii) and 41(a)(1)(B).  *Id*. ¶ 85.  On July 30, 2018, the district court entered an order dismissing the case with prejudice.  *Id.* ¶ 86.

**C.**      ***Washington I* — Various States Sue To Block The Department of State's Compliance With The Settlement Agreement**

On that same day, July 30, 2018, in *Washington I*, several states filed suit in the district court for the Western District of Washington alleging that State's actions with respect to the Settlement Agreement had violated the APA.  *See State of Wash., et al. v. U.S. Dep't of State, et al.*, No. 18-cv-1115 (W.D. Wash. 2018); Fed. Cl. Comp. ¶ 88.   In *Washington I*, State defended its actions as lawful, but the district court entered a temporary restraining order against the Government, followed by a preliminary injunction.  *See Wash. v. U.S. Dep't of State,* 318 F. Supp. 3d 1247, 1264 (W.D. Wash. 2018); Fed. Cl. Comp. ¶¶ 93-95.  Specifically, the court

enjoined the Government "from implementing or enforcing the 'Temporary Modification of Category I of the [USML]' and the letter to Cody R. Wilson . . . issued by the U.S. Department of State on July 27, 2018." *Wash.,* 318 F. Supp. 3d at 1264; Fed. Cl. Comp. ¶ 95.  The district court also ordered the Government to "preserve the status quo *ex ante* as if the modification had not occurred and the letter had not been issued." *Id.*

In order to comply with the injunctive relief ordered by the court in *Washington I*, State removed the announcement arising from the Settlement Agreement from its website and informed plaintiffs that the letter to Defense Distributed should be considered a nullity during the pendency of the injunction.  Fed. Cl. Comp. Ex. D.  After the *Washington I* court issued its injunction, the *Defense Distributed I* plaintiffs moved to set aside the dismissal with prejudice and reopen that case in the Western District of Texas, arguing that the *Washington I* court order rendered the Settlement Agreement a legal nullity.  The district court in *Defense Distributed I* denied that request, and the Fifth Circuit affirmed that decision on appeal.  *Def. Distributed v. United States Dep't of State*, 947 F.3d 870, 874 (5th Cir. 2020).

On November 12, 2019, the *Washington I* court granted summary judgment in the states' favor, holding that State had violated the APA.  *Wash. v. U.S. Dep't of State*, 420 F. Supp. 3d 1130, 1135 (W.D. Wash. 2019); *see* Fed. Cl. Comp. ¶¶ 97-98.  The district court permanently vacated State's temporary modification of the USML and its letter to Defense Distributed. *Washington I*, 420 F. Supp. 3d at 1148.  State did not appeal that final decision given its intention to publish a final rule removing the relevant 3-D-gun files from USML Category I.  Indeed, by that time State was finalizing its final rule, which was issued just two months later, in January 2020.  Moreover, it was apparent that the issuance of the final rule would moot the issue and any

11

appeal.  *See Wash. v. Def. Distributed*, No. 20-35030, 2020 WL 4332902, at *1 (9th Cir. July 21, 2020) (dismissing plaintiffs' appeal to the Ninth Circuit as moot).

     **D.**    ***Washington II* — States Challenge The Final Rules Removing 3-D-Gun Files From USML**

In two final rules published on January 23, 2020, State removed certain items and their technical data, including the 3-D-gun files, from the USML and the Commerce Department in turn added the same items and files to the Commerce Control List (CCL).  State Final Rule, 85 Fed. Reg. 3,819; Commerce Final Rule, 85 Fed. Reg. 4,136.  Under the Commerce Final Rule, a license is required to export certain 3-D-gun files defined in the rule, including by public posting on the internet.  Several states then sued State and Commerce alleging that the final rules violated the APA.  *Wash. v. U.S. Dep't of State*, 20-cv-111 (W.D. Wash 2020) (*Washington II*).  In *Washington II*, the Government argued, among other things, that the district court lacked jurisdiction to review the rules.  *Wash. II*, 443 F. Supp. 3d 1245, 1253 (W.D. Wash. 2020).  The district court rejected that argument and issued a preliminary injunction enjoining the State Final Rule "insofar as it alters the status quo restrictions on technical data and software directly related to the production of firearms or firearm parts using a 3-D-printer or similar equipment."  *Id.* at 1262-63.  The court severed those enjoined provisions from the rest of the challenged rules, determining that the other modifications made by the rules "are part of a decade-long reform to the export-control system," and would have been promulgated even without the changes to the regulation of 3-D printed firearm files.  *Id.* at 1256.  The *Washington II* court did not enjoin the Final Commerce Rule.

The Government appealed, and on April 27, 2021, the Ninth Circuit held that "Congress expressly precluded review of the relevant agency actions here" in 22 U.S.C. § 2778(h) and 50

U.S.C. § 4821(a).  *Wash. v. U.S. Dep't of State*, 996 F.3d 552, 557 (9th Cir. 2021).  Because the

"district court erred in reviewing" the final rules, *id.* at 565, the Court "vacate[d] the injunction

and remand[ed] with instructions to dismiss," *id.* at 557.  On May 26, 2021, the Ninth Circuit

issued its mandate—vacating the preliminary injunction and instructing the district court to

dismiss.  *Wash. v. U.S. Dep't of State*, No. 20-35391, ECF Nos. 65 & 66 (9th Cir. May 26,

2021).  As a result, the entirety of State's final rule went into effect, and it no longer regulates the

export of technical data related to producing certain 3-D printed firearms or components.  *See*

*also International Traffic in Arms Regulations: U.S. Munitions List Categories; Preliminary*

*Injunction Vacated by a Federal Court of Appeals*, 86 Fed. Reg. 29,196 (Dep't of State June 1,

2021) (explaining that State no longer regulates the items); *Control of Firearms, Guns,*

*Ammunition and Related Articles the President Determines No Longer Warrant Control Under*

*the United States Munitions List (USML); Notifying the Public of the Transfer of Jurisdiction of*

*Certain Technology and Software as a Result of a Vacated March 6, 2020 Injunction*, 86 Fed.

Reg. 29,189 (Dep't of Commerce June 1, 2021) (explaining Commerce's regulation).

     **E.**     ***Defense Distributed II* — Plaintiffs Sue To Block State From Regulating 3-D Gun Files And Allege Breaches Of The Settlement Agreement**

On July 29, 2018—after the Settlement Agreement was executed but before the

*Washington I* court enjoined the letter and temporary modification to the USML—the plaintiffs

in *Defense Distributed II* filed suit in the United States District Court for the Western District of

Texas against the NJAG.  Plaintiffs' claims against the NJAG "revolved around the NJAG's

2018 cease-and-desist letter warning Defense Distributed that its dissemination of printable gun

files to New Jersey residents constituted a violation of New Jersey law."  ECF No. 145 at 1–2.

After extensive litigation in the district court and the Fifth Circuit concerning the district court's

jurisdiction over the NJAG, Defense Distributed filed a second amended complaint on November 10, 2020, adding as defendants State, the Secretary of State, the Directorate of Defense Trade Controls, the Deputy Assistant Secretary of Defense Trade Controls, and the Director for the Office of Defense Trade Controls Policy.  *See Def. Distributed II* Comp., ECF No. 117.  The district court eventually severed the claims against the NJAG and transferred them to the District of New Jersey, while retaining the claims against the Federal Government defendants including State.  ECF No. 145.

In their second amended complaint in *Defense Distributed II*, plaintiffs brought two sets of claims against the Federal defendants:  (1) claims seeking injunctive and declaratory relief alleging that the Government had violated the APA and various constitutional provisions in its regulation of the 3-D-gun files and carrying out the Settlement Agreement, *Def. Distributed II* Comp. ¶¶ 184–215, 225-254 (Counts 1–4, 6-8); and (2) a claim seeking more than $5 million in damages arising from alleged breaches of the Settlement Agreement, *id*. ¶¶ 216–24 (Count 5)*.*[4]

After the Ninth Circuit issued its mandate in *Washington II*, the Government submitted a suggestion of mootness, advising the court that the case should be dismissed in light of the Ninth Circuit's ruling setting aside the district court's attempt to review State's final rule.  ECF No. 159.  The Government then filed a motion to dismiss, which the district court granted on March

---

[4] On April 30, 2021, plaintiffs moved for emergency injunctive relief, after they posted approximately 16,000 3-D-gun files on the internet for free download by the public.  ECF No. 149.  The district court denied the temporary restraining order.  ECF No. 151.  Plaintiffs then moved for a preliminary injunction on May 5, 2021, seeking an injunction against State to: "(1) cease and desist from enforcing the International Traffic in Arms Regulations … against Defense Distributed and the Second Amendment Foundation, Inc., and (2) cease and desist from otherwise censoring Defense Distributed and the Second Amendment Foundation, Inc. by way of civil or criminal enforcement efforts and threats of the same."  ECF No. 152-2.  Plaintiffs later withdrew their motion for a preliminary injunction.  *See* ECF No. 166.

15, 2023.  *Def. Distributed v. U.S. Dep't of State et al*, No. 18-cv-637, 2023 WL 2544334 (W.D. Tex. Mar. 15, 2023).  The court held that plaintiff's non-contract claims were moot because "the federal regulations themselves . . . make clear that Defendants no longer regulate the export of 3-D-gun files."  *Id*. at *4.  With respect to plaintiffs' breach of contract claims, the court determined that plaintiffs' claim for specific performance under the Settlement Agreement "was mooted once State stopped regulating the relevant 3-D gun files."  *Id*. at *6.  In addition, the court observed that State did not consent to have the district court enforce terms of the Settlement Agreement.  *See id*. at *7.  With respect to the breach of contract claims seeking monetary damages, the court found that such claims belonged in this Court unless plaintiffs amended their complaint to fall under the $10,000 jurisdictional threshold for Little Tucker Act jurisdiction.  *Id*.  After plaintiffs failed to amend their complaint, the court transferred the breach of contract claim for money damages to this Court.  ECF No. 183.

III.   <u>**Plaintiffs' Transfer Complaint**</u>

On July 6, 2023, plaintiffs filed their transfer complaint in this Court.  Although the district court transferred only plaintiffs' breach of contract claim to this Court, ECF No. 183, plaintiffs' complaint contains eight claims, which include alleged statutory and constitutional violations that were dismissed in *Defense Distributed II*.  Fed. Cl. Comp. ¶¶ 134-212.  In Counts 1-4, and 6-8, plaintiffs allege that State violated various provisions of the APA as well as the First and Second Amendments, and the Fifth Amendment's Due Process Clause, by not taking the actions that plaintiffs contend were required under the Settlement Agreement.  Fed. Cl. Comp. ¶¶ 134-169, 180-212.  Although this Court lacks authority to grant injunctive relief and punitive damages, plaintiffs nonetheless seek injunctive relief "protecting [plaintiffs] from such

unlawful conduct in the future," as well as "an award of nominal damages, punitive damages, and actual damages," and attorney fees and costs. *Id*. ¶¶ 213-220.

In Count 5, plaintiffs allege that State breached the Settlement Agreement by (1) disavowing the license it had originally issued in July 2018; (2) refusing to issue a letter signed by the Deputy Assistant Secretary for Defense Trade Controls advising that Defense Distributed's 3-D-gun files are approved for public release and exempt from the ITAR's export licensing requirements; (3) refusing to draft and to fully pursue, to the extent authorized by law (including the APA) the publication in the Federal Register of a notice of proposed rulemaking and final rule revising USML Category I to exclude the technical data that was the subject of *Defense Distributed I*; (4) refusing to announce a temporary modification consistent with ITAR of USML Category I to exclude the technical data that was the subject of *Defense Distributed I*; and (5) refusing to acknowledge and agree that the 2018 temporary modification of USML Category 1 and 2018 license permits any United States person to access and use the technical data that was the subject of *Defense Distributed I*.  Fed. Cl. Comp. ¶¶ 170-177.

## SUMMARY OF THE ARGUMENT

This Court lacks jurisdiction to entertain plaintiffs' transfer complaint.  To begin, this Court does not possess jurisdiction to entertain plaintiffs' claims under the APA, or the First Amendment, Second Amendment, and Due Process Clause of the Fifth Amendment (Counts 1-4, 6-8), because neither the APA nor the constitutional amendments identified by plaintiffs are money-mandating.

Count 5 of plaintiffs' complaint alleging breach of contract is jurisdictionally barred for two reasons.  First, this Court lacks jurisdiction to entertain the claim pursuant to 28 U.S.C. § 1500, because Federal Circuit precedent deems that claim to have been filed at the same time as

the plaintiffs' other claims in *Defense Distributed II*, and under section 1500 a plaintiff may not

pursue a claim in this court that was pending at the same time as other claims arising out of the

same operative set of facts.  Second, properly characterized, plaintiffs' breach of contract claim

seeks to challenge the district court's decisions enjoining the Government in *Washington I*, a

challenge that this Court lacks authority to consider.

Additionally, this court lacks jurisdiction to entertain plaintiffs' claims for injunctive

relief or against parties other than the United States.

Beyond these jurisdictional defects, plaintiffs fail to state a claim for breach of contract.

First, plaintiffs fail to point to any contractual obligation in the Settlement Agreement with

which State allegedly did not comply.  Second, plaintiffs fail to allege any facts demonstrating

that any purported breach of the Settlement Agreement caused them damages.  And third, any

alleged breach is excused pursuant to the doctrine of impossibility given the ruling in

*Washington I* enjoining State from taking the challenged actions.

## ARGUMENT

### I.    Standards Of Review

Subject-matter jurisdiction is a threshold requirement that must be determined at the

outset of a case.  *Dow Jones & Co., Inc. v. Ablaise Ltd.,* 606 F.3d 1338, 1348 (Fed. Cir. 2010).

When a RCFC 12(b)(1) motion challenges the Court's subject-matter jurisdiction based upon the

sufficiency of the pleading's allegations, those allegations are taken as true and construed in a

light most favorable to the complainant.  *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583

(Fed. Cir. 1993).  Plaintiffs bear the burden of proving, by a preponderance of the evidence, that

the Court possesses subject-matter jurisdiction.  *McNutt v. Gen. Motors Acceptance Corp.*, 298

U.S. 178, 189 (1936); *Reynolds v. Army and Air Force Base Exch. Serv.*, 846 F.2d 746, 748 (Fed.

Cir. 1988).  The Court may look to evidence outside of the pleadings to determine the existence of subject-matter jurisdiction.  *Reynolds*, 846 F.2d at 747.

Pursuant to RCFC 12(b)(6), a complaint may also be dismissed for "failure to state a claim upon which relief can be granted."  When considering whether to dismiss an action for failure to state a claim, the Court "must assess whether the complaint adequately states a claim and whether plaintiffs can allege 'facts plausibly suggesting (not merely consistent with) a showing of entitlement to relief.'"  *Hutchens v. United States*, 89 Fed. Cl. 553, 562 (2009) (cleaned up).  The plaintiffs' factual allegations must be substantial enough to raise the right to relief "above the speculative level," accepting all factual allegations in the complaint as true and "indulg[ing] all reasonable inferences in favor of the non-movant."  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## II. This Court Does Not Possess Jurisdiction To Entertain Plaintiffs' Constitutional Claims And Claims Under the APA (Counts 1-4, 6-8)

Even though the district court dismissed plaintiffs' APA and constitutional claims on mootness grounds and did not transfer them to this Court, ECF Nos. 182-183, plaintiffs nonetheless attempt to resurrect those dismissed claims by raising them again in their transfer complaint.  Fed. Cl. Comp. ¶¶ 134-169, 180-212 (Counts 1-4, 6-8).  This Court lacks jurisdiction to entertain these claims because none are predicated on a money-mandating source of law.

### A. This Court's Limited Jurisdiction

This Court's jurisdiction is limited.  *Marcum LLP v. United States*, 753 F.3d 1380, 1382-83 (Fed. Cir. 2014).  The Court's authority to grant relief against the United States is defined by the extent to which the United States has waived sovereign immunity.  *United States v. Testan*, 424 U.S. 392, 399 (1976); *see FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver,

18

sovereign immunity shields the Federal Government and its agencies from suit."). Accordingly, "except as Congress has consented to a cause of action against the United States 'there is no jurisdiction in the Court of [Federal] Claims more than in any other court to entertain suits against the United States.'" *Testan*, 424 U.S. at 399 (quoting *United States v. Sherwood*, 312 U.S. 584, 587–88 (1941)). Pursuant to the Tucker Act, this Court possesses jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department." 28 U.S.C. § 1491(a)(1); *see United States v. Mitchell*, 463 U.S. 206, 215-18 (1983). But the Tucker Act "does not create a substantive cause of action[.]" *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*). Moreover, "[n]ot every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act." *Mitchell*, 463 U.S. at 216.

Instead, to fall within this Court's jurisdiction, the statutory or constitutional claims that a plaintiff asserts must be "money-mandating." *See Testan*, 424 U.S. at 398. In turn, to be money-mandating, a statute must grant the claimant "'expressly or by implication, a right to be paid a certain sum.'" *District of Columbia v. United States*, 67 Fed. Cl. 292, 304 (2005) (quoting *Ont. Power Generation, Inc. v. United States*, 369 F.3d 1298, 1301 (Fed. Cir. 2004)); *see Blueport Co., LLC v. United States*, 533 F.3d 1374, 1383 (Fed. Cir. 2008) (quoting *Mitchell,* 463 U.S. at 216-17). The statute must be "reasonably amenable to the reading that it mandates a right of recovery in damages. While the premise to a Tucker Act claim will not be 'lightly inferred,' a fair inference will do." *United States v. White Mtn. Apache Tribe*, 537 U.S. 465, 473 (2003) (citation omitted); *see Roberts v. United States*, 745 F.3d 1158, 1162 (Fed. Cir. 2014).

**B.     This Court Lacks Jurisdiction To Entertain Plaintiffs' Constitutional And APA Claims Because They Are Not Money-Mandating**

It is settled that the APA is not a money-mandating statute such that this Court may exercise jurisdiction under the Tucker Act.  *See Martinez v. United States*, 333 F.3d 1295, 1313 (Fed. Cir. 2003) (holding that "the Court of Federal Claims lacks APA jurisdiction"); *Murphy v. United States*, 993 F.2d 871, 874 (Fed. Cir. 1993) (determining that "the Claims Court has no authority to invoke the APA").  Instead, it is a limited waiver of sovereign immunity for claims seeking relief other than money damages, *see* 5 U.S.C. § 702.  *See Wopsock v. Natchees*, 454 F.3d 1327, 1333 (Fed. Cir. 2006) (emphasizing that "the APA does not authorize an award of money damages at all"); *Pierce v. United States*, 590 F. App'x 1000, 1002 (Fed. Cir. 2015) (non-precedential); *cf. Mitchell v. United States*, 930 F.2d 893, 895 (Fed. Cir. 1991).  Because the APA does not provide a substantive source of law giving rise to Tucker Act jurisdiction, the Court should dismiss for lack of jurisdiction Counts 1-4 of the transfer complaint. *See Testan*, 424 U.S. at 398.

Similarly, this Court lacks jurisdiction to entertain Counts 6-8 of the transfer complaint because the First Amendment, Second Amendment, and the Fifth Amendment's Due Process Clause are not money-mandating constitutional provisions.  *See, e.g.*, *United States v. Connolly*, 716 F.2d  882, 887 (Fed.  Cir. 1983) (the First Amendment does not confer jurisdiction because it does not "command the payment of money"); *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (finding the Due Process Clause of the Fifth Amendment insufficient for jurisdiction because it does "not mandate payment of money by the government"); *Jordan v. United States*, 128 Fed. Cl. 46, 53 (2016) (explaining that "the Second Amendment is not

money-mandating") (citing *Elkins v. United States*, 229 Ct. Cl. 607, 608 (1981) (*per curiam*)).

Thus, the Court should dismiss Counts 6-8 as well.

## III.   The Court Lacks Jurisdiction To Entertain Plaintiffs' Breach Of Settlement Agreement Claim (Count 5)

This Court also lacks jurisdiction to hear plaintiffs' breach of contract claim (Count 5) for

at least two independent reasons.  First, pursuant to 28 U.S.C. § 1500, at the time that the breach

of contract claim was deemed filed in this Court, plaintiffs had claims pending in the district

court based on the same cause of action.  Second, properly characterized, Count 5 challenges

several decisions of the United States District Court for the Western District of Washington,

challenges that are outside the scope of this Court's authority.

### A.        This Court Lacks Jurisdiction Under Section 1500

This Court does not possess jurisdiction to entertain plaintiffs' breach of contract claim

because, at the time that this claim was deemed effectively filed in this Court, plaintiffs had a

suit pending in the United States District Court for the Western District of Texas against the

Government raising other claims based on the same alleged conduct.

Since 1868, Congress has imposed a "broad prohibition" on the ability of plaintiffs to

simultaneously pursue related actions in the Court of Federal Claims and the district court.

*United States v. Tohono O'Odham Nation*, 563 U.S. 307, 312 (2011).  That restriction is

currently codified in 28 U.S.C. § 1500, which provides that the Court of Federal Claims "shall

not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has

pending in any other court any suit or process against the United States . . . ."  28 U.S.C. § 1500.

"In other words, § 1500 bars the Court of Federal Claims' jurisdiction over a suit if a plaintiff,

upon filing in the Court of Federal Claims, has a suit pending in any other court 'for or in respect

to' the same claim." *Petro-Hunt, L.L.C. v. United States*, 862 F.3d 1370, 1381 (Fed. Cir. 2017) (citation omitted). The statute's underlying purpose is "to save the Government from burdens of redundant litigation." *Tohono*, 563 U.S. at 315.

"To determine whether § 1500 applies, a court must make two inquiries: (1) whether there is an earlier-filed 'suit or process' pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action." *Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013) (citation omitted).

The first prong of the section 1500 analysis requires the Court to determine whether a "suit or process" was "pending" as of the date of the filing of the Court of Federal Claims complaint. The Court is guided by the longstanding principle that "the jurisdiction of the Court depends upon the state of things at the time of the action brought." *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (citation omitted). Accordingly, the Court "look[s] to the facts as they exist when a plaintiff filed his Claims Court complaint." *Cent. Pines Land Co., L.L.C. v. United States*, 697 F.3d 1360, 1364 (Fed. Cir. 2012) (citation omitted).

In addition, as relevant here, where a claim is transferred pursuant to 28 U.S.C. § 1631, the claim in this Court is deemed filed as of the date on which it was actually filed in the court from which it was transferred. *Griffin v. United States*, 590 F.3d 1291, 1293-94 (Fed. Cir. 2009); *Harbuck v. United States*, 378 F.3d 1324, 1328-29 (Fed. Cir. 2004); *United States v. County of Cook, Ill.*, 170 F.3d 1084, 1089-90 (Fed. Cir. 1999). Because section 1631 deems claims transferred to this Court as having been filed on the day on which they were filed in the transferring court, the Federal Circuit has held that such transferred claims are "simultaneously" filed with any non-transferred claims filed in the transferring court. *See Harbuck*, 378 F.3d at

1328; *County of Cook*, 170 F.3d at 1090.  The Federal Circuit has further held that these "simultaneously" filed claims are considered "pending" with respect to one another, by operation of law, for the purposes of section 1500.  *See Harbuck*, 378 F.3d at 1328; *County of Cook*, 170 F.3d at 1091.  Therefore, as the Federal Circuit has articulated the rule, "if a plaintiff files multiple related claims in district court, and the court transfers one of those claims to the Court of Federal Claims, the original claims are 'pending' at the time the transferred claim is considered filed, and § 1500 may deprive the Court of Federal Claims of jurisdiction over the transferred claim."  *Griffin*, 590 F.3d at 1293.

In this case, because plaintiffs' breach of contract claim was transferred pursuant to section 1631, the claim is deemed filed as a matter of law as of the date on which the claim was filed in the district court, November 10, 2020, ECF No. 117.  *See County of Cook*, 170 F.3d at 1089-90.  And on that date, plaintiffs had a district court suit "pending" that consisted of several related claims simultaneously filed on that date.  *See* ECF No. 117.  Accordingly, the first prong of Section 1500's jurisdictional bar is satisfied.  *See County of Cook*, 170 F.3d at 1089-90; *Cent. Pines*, 697 F.3d at 1364.

Under the second prong, the Court examines whether the two suits are "for or in respect to" the same claim.  "Two suits are 'for or in respect to' the same claim . . . if they are based on substantially the same operative facts, regardless of the relief sought in each suit, or the legal theories asserted."  *Petro-Hunt*, 862 F.3d at 1382 (quoting *Tohono*, 563 U.S. at 317; citing *Keene*, 508 U.S. at 212).  The Court compares the operative facts in the two complaints to determine whether the Section 1500 bar attaches.  *See Petro-Hunt*, 862 F.3d at 1382.  The operative facts "need not be identical."  *Klamath Irrig. Dist. v. United States*, 113 Fed. Cl. 688,

702 (2013).  All that section 1500 requires is "substantial factual overlap."  *Tohono*, 563 U.S. at 311.

A comparison of Count 5 in this case with the claims in the operative district court complaint reveals that the two suits are based on the same operative facts.  The two complaints involve the same alleged Government conduct—State's actions with respect to the regulation of the 3-D-gun data at issue.  Indeed, a comparison of the factual allegations in the two suits shows that the allegations concerning the breach of contract claim and the other district court claims are nearly identical.  This factual similarity goes beyond just the background facts and extends to the core facts on which the claims in both courts are based.  *Compare Def. Distributed II* Comp. ¶¶ 1-17, 19-33, 36-131, 162-170 *with* Fed. Cl. Comp. ¶¶ 1-133.  In short, the factual overlap between the claims is more than sufficient for the Section 1500 bar to apply.  *See Tohono*, 563 U.S. at 311; *Beberman v. United States*, 129 Fed. Cl. 539, 546 (2016) ("Although the operative facts must substantially overlap, they need not be identical.") (citation omitted).

Moreover, the principles of *res judicata* confirm that the two suits are based on the same set of operative facts.  In *Tohono*, the Supreme Court highlighted that section 1500 was "enacted in part to address the problem that judgments in suits against officers were not preclusive in suits against the United States," and that it was therefore appropriate to look to "the principles of preclusion law" in construing the scope of the statute.  563 U.S. at 315-16.  In that case, the Court looked to the two tests for *res judicata* when Section 1500 was enacted: (1) the act or contract test, and (2) the evidence test.  *Tohono*, 563 U.S. at 315-16; *see Beberman*, 129 Fed. Cl. at 547.  The Court stated that the evidence test looks to whether "the same evidence support[s] and establish[es] both the present and former cause of action," and that the act test looks to whether the claim arises

24

"out of one and the same act or contract" or "out of different acts or contracts."  *Tohono*, 563 U.S. at 315-16 (citations omitted).

Under the evidence test, the two suits are based on the same operative facts because plaintiffs pointed to the same evidence in both suits, including various documents attached to both complaints. *Compare Def. Distributed II* Comp. Exs. A-G *with* Fed. Cl. Comp. Exs. A-G.  Likewise, applying the act test, in both suits plaintiffs' allegations focus on the same governmental actions—i.e., the Government's alleged deficiencies in taking actions pursuant to the Settlement Agreement with respect to the regulation of plaintiffs' 3-D-gun files.  *Compare Def. Distributed II* Comp. ¶¶ 36-131 *with* Fed. Cl. Comp. ¶¶ 29-124.  Therefore, the *res judicata* principles in effect at the time when section 1500 was enacted confirm that Count 5 and the district court litigation are based upon the same set of operative facts.

Finally, although plaintiffs' breach of contract claim seeks different relief (in part) and proceeds under a different legal theory than the district court claims seeking declaratory and injunctive relief pursuant to the APA and various constitutional provisions, these differences are not germane to the section 1500 analysis.  As noted, the jurisdictional bar of 28 U.S.C. § 1500  applies irrespective of the relief sought and the legal theories asserted.  *Tohono*, 563 U.S. at 317; *Petro-Hunt*, 862 F.3d at 1382.

Thus, because plaintiffs' breach of contract claim was effectively filed on the same date that plaintiffs had other claims pending in district court based on the same set of operative facts, the Court should dismiss the transfer complaint for lack of jurisdiction under 28 U.S.C. § 1500. *See Tohono*, 563 U.S. at 317; *Cent. Pines Land*, 697 F.3d at 1367 (explaining that suit barred under section 1500 must be dismissed, and that this Court cannot retroactively acquire jurisdiction through complaint amendment); *County of Cook*, 170 F.3d at 1089-90.

**B.     This Court Lacks Jurisdiction To Consider Plaintiffs' Challenges To The District Court's Judgments**

This Court also lacks jurisdiction to entertain plaintiffs' breach of contract claim because it is necessarily dependent on challenging the decisions of the district court in *Washington I*.  It is well established that in evaluating jurisdiction, the Court looks to the true nature of the action. *Katz v. Cisneros*, 16 F.3d 1204, 1207 (Fed. Cir. 1994) ("Regardless of the characterization of the case ascribed by [plaintiff] in its complaint, we look to the true nature of the action in determining the existence or not of jurisdiction."); *Nat'l Ctr. for Mfg. Scis. v. United States,* 114 F.3d 196, 199 (Fed. Cir. 1997).  Here, properly characterized, plaintiffs' breach of contract claim is necessarily predicated on their contention that the district court in *Washington I* had improperly granted injunctive relief to a group of states based on State's alleged violation of the APA.  *See* Fed. Cl. Comp. ¶¶ 88-102.

Plaintiffs allege that the district court in *Washington I* preliminarily enjoined the Government "from implementing or enforcing the 'Temporary Modification of Category I of the [USML]' and the letter to Cody R. Wilson . . . issued by the U.S. Department of State on July 27, 2018," and ordered the Government to "preserve the status quo ex ante as if the modification had not occurred and the letter had not been issued."  Fed. Cl. Comp. ¶ 95.  Plaintiffs further allege that the *Washington I* court granted summary judgment in the states' favor, holding that State had violated the APA because the temporary modification was procedurally invalid and the temporary modification and letter to Defense Distributed were arbitrary and capricious because of insufficient evidentiary support in the record.  Fed. Cl. Comp. ¶¶ 97-98.

In support of their breach of contract claims, plaintiffs allege that "[n]either of these claims [by the *Washington I* court] are meritorious."  *Id*. ¶ 97.  In other words, plaintiffs' claim is

necessarily dependent on their assertion that the district court's decision granting the states' APA

claim was incorrect, particularly given that the Settlement Agreement provided that the

Government's actions under the agreement needed to be "authorized by law (including the

Administrative Procedure Act)."  Settlement Agreement ¶ 1(a).  Stated differently, if the district

court in *Washington I* were correct that State had violated the APA, there could be no breach of

contract claim pursuant to the plain language of the Settlement Agreement.

But plaintiffs cannot challenge the decisions of the district in *Washington I* in this Court.

It is well settled that this Court lacks jurisdiction to review the decisions of other federal courts.

*See, e.g.*, *Shinnecock Indian Nation v. United States*, 782 F.3d 1345, 1352 (Fed. Cir.

2015) ("Binding precedent establishes that the Court of Federal Claims has no jurisdiction to

review the merits of a decision rendered by a federal district court." (citations omitted)); *Joshua*

*v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994) (holding that "the Court of Federal Claims

does not have jurisdiction to review the decisions of district courts").  Accordingly, even if

Count 5 were not barred pursuant to section 1500, the Court should still dismiss that claim for

lack of jurisdiction.

**IV.**   **Additional Jurisdictional Defects**

   **A.**   **The Court Does Not Possess Jurisdiction To Entertain Plaintiffs' Request For Injunctive Relief**

This Court also lacks jurisdiction to entertain plaintiffs' request for injunctive relief.

With respect to each of their claims, plaintiffs repeatedly seek injunctive relief including by

requesting injunctions "protecting [plaintiffs] from . . . unlawful conduct in the future.  Fed. Cl. Comp. ¶¶ 214-219.

It is well accepted, however, that such relief is outside the jurisdiction of this Court because the Tucker Act does not provide jurisdiction to entertain freestanding claims for equitable relief.  Under the Tucker Act, this Court cannot award injunctive relief that is not "an incident of and collateral to any such [money] judgment," or that falls within other statutorily defined exceptions.  28 U.S.C. § 1491(a)(2), (b); *see James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998).  In accordance with the plain language of the Tucker Act, the Federal Circuit has consistently interpreted the statute as prohibiting this Court from granting injunctive relief outside of these narrow circumstances that are inapplicable in this case.[5]  *See, e.g.*, *Kanemoto v. Reno*, 41 F.3d 641, 644-45 (Fed. Cir. 1994) ("The remedies available in [the Court of Federal Claims] extend only to those affording monetary relief; the court cannot entertain claims for injunctive relief or specific performance, except in narrowly defined, statutorily provided circumstances[.]"), *quoted in Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1354 (Fed. Cir. 2021); *see also Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*, 490 F.3d 940, 943 (Fed. Cir. 2007) ("In order for a claim to be brought under either the Tucker

---

[5]  This Court  "may award equitable or other nonmonetary relief in Tucker Act cases in only three statutorily defined circumstances: (1) in bid protest actions brought pursuant to 28 U.S.C. § 1491(b); (2) as "incident of and collateral to" a monetary judgment, as set out in the first two sentences of 28 U.S.C. § 1491(a)(2); and (3) for certain types of nonmonetary [Contract Disputes Act] claims, as described in the last sentence of § 1491(a)(2)."  *Sergent's Mech. Sys., Inc. v. United States*, 157 Fed. Cl. 41, 47 (2021).  Plaintiffs' requests for injunctive relief do not fall within any of these exceptions.

Act or the Little Tucker Act, the claim must be for monetary relief; it cannot be for equitable

relief, except in very limited circumstances not at issue here.").

Because this Court does not possess jurisdiction to award plaintiffs' requested injunctive

relief, these claims should be dismissed.

> **B.    The Court Does Not Possess Jurisdiction To Entertain Plaintiffs' Claims
> Against Individuals and Entities Other Than The United States**

Although the caption to plaintiffs' complaint properly lists the United States as the sole

defendant, plaintiffs allege in the body of their complaint that a number of other entities and

individuals are "parties" to this suit, including State, Antony J. Blinken, the Secretary of State;

the Directorate of Trade Controls; Jessica Lewis, the Assistant Secretary of State for Defense

Trade; and Jae Shin, the Director of the Office of Defense Trade Control Policy.  Fed. Cl. Comp.

¶¶ 13-17. [6]  As the United States is the only proper defendant in this Court, to the extent that

plaintiffs are attempting to assert claims against these federal employees and entities, they should

be dismissed as parties.  *See United States v. Sherwood*, 312 U.S. 584, 588 (1941) (holding that

this Court's "jurisdiction is confined to the rendition of money judgments in suits brought for

that relief against the United States . . . and if the relief sought is against others than the United

States the suit as to them must be ignored as beyond the jurisdiction of the court."); *Brown v.*

*United States*, 105 F.3d 621, 624 (Fed. Cir. 1997).

Similarly, this Court does not possess jurisdiction to entertain plaintiffs' claims

concerning the actions of the NJAG  *See* Fed. Cl. Comp.  ¶¶ 1-4.  According to plaintiffs, the

---

[6] Jessica Lewis is the Assistant Secretary of State for Political-Military Affairs, and does not have a DDTC or defense-trade specific position.  Mr. Jae Shin has never been the Director of the Office of Defense Trade Controls Policy.  He is the current director of the Office of Defense Trade Controls Compliance. The Government does not know how either individual is responsible for the conduct alleged.

"[NJAG] [is] breaking the law multiple times over with unprecedented acts of censorship," and that "[t]hrough a torrent of civil and criminal enforcement actions, the NJAG has punished and threatens to continue punishing Defense Distributed and the Second Amendment Foundation's members for exercising their right to speak freely about firearms."  Fed. Cl. Comp.  ¶¶ 1, 3.  But there can be no reasonable dispute that this Court lacks jurisdiction with respect to claims against State government officials.  28 U.S.C. § 1491(a); *Walsh v. United States*, 250 F. App'x 310, 311 (Fed. Cir. 2007) (non-precedential); *Bram v. United States*, 102 Fed. Cl. 752, 754 (2012); *Fullard v. United States*, 78 Fed. Cl. 294, 301 (2007).  Therefore, to the extent that plaintiffs' claims purport to attack actions of the New Jersey Attorney General, this Court lacks jurisdiction to entertain them as well.

## V.      Plaintiffs Fail To State A Claim That The Government Breached The Settlement Agreement

If the Court were to conclude that it has jurisdiction over plaintiffs' breach of contract claim, then it should find that plaintiffs fail to state a claim for at least three reasons.  First, based on plaintiffs' own allegations and the plain language of the Settlement Agreement, State complied with the terms of the agreement, and the Court should reject plaintiffs' attempts to read in non-existent contractual obligations.  Second, plaintiffs fail to allege facts demonstrating that any purported breach of the Settlement Agreement caused the plaintiffs any damages.  Third, even assuming plaintiffs sufficiently alleged a breach of the Settlement Agreement, any breach would be excused pursuant to the doctrine of impossibility given the injunctive relief imposed in *Washington I*.

A.      **Plaintiffs Fail To State A Breach Of Contract Claim Because The Government Complied With Its Obligations Under The Settlement Agreement**

As an initial matter, plaintiffs fail to state a claim for breach of the Settlement Agreement because the Government complied with all of its obligations under the agreement's plain language.

To establish a breach of contract claim, a plaintiff must meet "four elements: 1) a valid contract between the parties; 2) an obligation or duty arising from that contract; 3) a breach of that duty; and 4) damages caused by that breach." *Claude Mayo Constr. Co. v. United States*, 132 Fed. Cl. 634, 637 (2017) (citing *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989)).

Contract interpretation is a matter of law that may be decided on a motion to dismiss. *See Medlin Constr. Grp., Ltd. v. Harvey*, 449 F.3d 1195, 1199-200 (Fed. Cir. 2006); *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014). In interpreting a contract, courts "begin with the plain language." *Hunt Constr. Grp. v. United States*, 281 F.3d 1369, 1372 (Fed. Cir. 2002). "When the contract language is unambiguous on its face, our inquiry ends, and the plain language of the contract controls." *Id*. at 1373 (citing *Textron Def. Sys. v. Widnall*, 143 F.3d 1465, 1469 (Fed. Cir. 1998)).

Here, plaintiffs have identified a valid contract with the United States—the Settlement Agreement. But plaintiffs have not pleaded facts plausibly demonstrating that the Government actually breached any obligation under the agreement. We address each of the Settlement Agreement provisions that plaintiffs allege were breached by the Government in turn.

***First***, in paragraph 1(a), "[d]efendants commit[ed] to draft and fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal

31

Register of a notice of proposed rulemaking and final rule, revising the USML Category I to exclude the technical data that is the subject of [*Defense Distributed I*]." (emphasis omitted). The Government fulfilled this obligation by publishing the proposed rule in the Federal Register on May 24, 2018, and a final rule on January 23, 2020.  *See* 83 Fed. Reg. 24,198; 85 Fed. Reg. 3,819; *see also* Comp. ¶ 84(a) (noting that "the State Department had taken steps to comply with the obligation imposed by Settlement Agreement Paragraph 1(a)" by publishing the notice of proposed rulemaking in the Federal Register on May 24, 2018).  Through this rulemaking, State revised the USML to exclude certain technical data, including the 3-D-gun files at issue.  Once the Government made those two publications, under the plain language of paragraph 1(a) of the Settlement Agreement, there was nothing further that State was required to do.

*Second*, in paragraph 1(b), State agreed to "announce[], while the above-referenced final rule [was] in development, [] a temporary modification, consistent with the [ITAR Regulations] of USML Category I to exclude the technical data that is the subject of [*Defense Distributed I*]." The Settlement Agreement further stated that the "announcement will appear on the DDTC website . . . on or before July 27, 2018."  *Id*.  Plaintiffs acknowledge that the State Department "made a temporary modification to USML Category I, pursuant to 22 C.F.R. § 126.2, to 'exclude' the *Defense Distributed I* Files from Category I."  Fed. Cl. Comp. ¶ 84(b).  Plaintiffs also attach a copy of the announcement published on the DDTC website demonstrating that State had complied with the requirement to have the announcement appear on the applicable website on or before July 27, 2018.  *Id*. Ex. B.  Accordingly, based on the Settlement Agreement's clear and unambiguous language, and plaintiffs' own allegations, the State Department fulfilled its contractual obligations with respect to paragraph 1(b).

32

*Third*, in paragraph 1(c), State agreed to issue "a letter to [p]laintiffs on or before July 27, 2018, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that the [*Defense Distributed I* files] are approved for public release (i.e., unlimited distribution) in any form and are exempt from the export license requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13)."  As plaintiffs acknowledge in their own complaint, on July 27, 2018, State "issued Defense Distributed a license—a letter issued by the State Department's Acting Deputy Assistant Secretary for the Directorate of Defense Trade Controls—authorizing the Defendants to publish the Published Files, Ghost Gunner Files, and CAD Files for 'unlimited distribution.'"  Fed. Cl. Comp. ¶ 84(c).  Indeed, plaintiffs attach the letter to their complaint.  *Id*. Ex. C.  After issuing the letter as required under the terms of the agreement, State had no further contractual obligations under paragraph 1(c) based on the agreement's plain language.

*Fourth*, in paragraph 1(d), State "acknowledg[ed] and agree[d] that the temporary modification of USML Category I permits any United States person, to include [Defense Distributed's] customers and [Second Amendment Foundation's] members, to access, discuss use, reproduce, or otherwise benefit from the technical data that is the subject of [*Defense Distributed I*]."  Once again, plaintiffs concede that by July 27, 2018, State "acknowledged and agreed that the temporary modification permits any United States person to access, discuss, use, reproduce, or otherwise benefit from the *Defense Distributed I* Files; and that the license issued to the *Defense Distributed I* plaintiffs permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files."  Fed. Cl. Comp. ¶ 84(d).  Therefore, State satisfied its contractual obligations under ¶ 1(d).  In any event, plaintiffs' reliance on paragraph 1(d) is a non-sequitur because the ability of United States persons to access the 3D-gun-files is not at issue given that ITAR does not restrict what such

33

individuals have access to.  Instead, the ITAR restricts the distribution of defense articles, including technical data, in a way that *foreign persons* can access them.

In sum, the Government upheld its end of the Settlement Agreement by issuing the required temporary modifications, granting an authorization, and pursuing the publication of a rule that would remove the technical data in question from the USML.  Fed. Cl. Comp. ¶ 84; Exs. A-C.

Plaintiffs devote a significant portion of their complaint to allegations that State stopped fulfilling its obligations under the Settlement Agreement after a group of states filed suit to enjoin State's actions under the APA, and the Western District of Washington granted the states a temporary injunction and a preliminary injunction.  *Id.* ¶¶ 88-124.  Plaintiffs contend that State's compliance with the orders of the district court violate the Settlement Agreement, but plaintiffs' allegations fail as a matter of law.  First, as set forth above, plaintiffs fail to identify any specific contractual language that State supposedly violated even after the district court's injunction.  Second, the Settlement Agreement expressly contemplated this very scenario. Settlement Agreement ¶1(a) ("Defendants' commit to draft and fully pursue, to the extent authorized by law (*including the Administrative Procedure Act*). . . .") (emphasis added).  As the district court in *Defense Distributed I* astutely found in adjudicating plaintiffs' motion to set aside the dismissal in that case, the "express terms of the settlement agreement reflect that the parties anticipated potential review of the agreement under the Administrative Procedure Act (APA)," and it was therefore "reasonably foreseeable that a court reviewing government action for compliance with the APA might enjoin performance of the challenged action during the pendency of litigation," given that such injunctive relief is "common practice."  *Def. Distributed v. U.S. Dep't of State*, No. 15-cv-372, 2018 WL 9866515, at *2 (W.D. Tex. Oct. 22, 2018), *aff'd*

947 F.3d 870 (5th Cir. 2020).  "The terms of the settlement agreement reflect that [p]laintiffs

were well aware of the regulatory landscape in which the parties were litigating[.]"  *Id.* at *3.

Thus, the Settlement Agreement clearly contemplated a district court granting injunctive relief

under the APA and that the Government's obligations under the agreement were subject to and

cabined by any such rulings.

Plaintiffs' other allegations that State breached the Settlement Agreement also fail as a

matter of law because none are supported by the contract's text or principles of contract law.  In

their complaint, plaintiffs second guess the Government's decision not to appeal *Washington I* to

the Ninth Circuit, Fed. Cl. Comp. ¶¶ 99-100, but this breach claim fails on two fronts.  First,

there is nothing in the Settlement Agreement that suggests, let alone requires, that State appeal

any court decision.  Nor is there plainly any provision delegating the Federal Government's

authority to decide whether to appeal a final decision of the district court to plaintiffs.  The

Government does not breach a contract by not complying with a non-existent obligation.  *See,*

*e.g., Schneiter v. United States*, 159 Fed. Cl. 356, 372 (2022) (dismissing a breach of contract

claim for failure to state a claim where "the alleged contractual obligation that provides the basis

for plaintiff's claim for breach of contract is absent from the purported contract").

Second, plaintiffs fail to make any allegation that the Federal defendant parties to the

Settlement Agreement had the authority to contract away the Government's appellate authority

to plaintiffs.  Pursuant to 28 C.F.R. § 0.20, the Solicitor General has the sole authority to

"determin[e] whether, and to what extent, appeals will be taken by the Government to all

appellate courts."  Plaintiffs have not alleged and cannot demonstrate that the Settlement

Agreement authorized plaintiffs to usurp the Solicitor General's authority to decide whether to

bring an appeal in *Washington I*.  Accordingly, to the extent that plaintiffs interpret paragraph

1(a) of the Settlement Agreement to require appeal of *Washington I*, they fail to allege facts demonstrating that State or their officials who had entered into the Settlement Agreement had such authority, a necessary requirement of all contracts with the Government.  *See, e.g.*, *Suess v. United States*, 535 F.3d 1348 1359 (Fed. Cir. 2008) (explaining that requisite authority is required element of any valid contract with the Government).

In addition, plaintiffs' allegation that State breached its obligation under paragraph 1(c) with respect to the letter to Defense Distributed fails based on the plain text of that provision. Plaintiffs acknowledge that State "issued Defense Distributed a license—a letter issued by the State Department's Acting Deputy Assistant Secretary for the Directorate of Defense Trade Controls—authorizing the Defendants to publish the Published Files, Ghost Gunner Files, and CAD Files for 'unlimited distribution,'" and that the letter was vacated by the district court's final judgment.  Fed. Cl. Comp. ¶¶ 84, 97.  Although plaintiffs complain that State did not supply another letter following the district court's injunction, *see id*. ¶¶ 108-11, there is no such obligation in the Settlement Agreement.  Indeed, the plain language of the Settlement Agreement mandates only the letter that State already provided to plaintiffs—nothing in the Settlement Agreement required State to violate a court order by recognizing the validity of that letter, nor does any language in the Settlement Agreement require the issuance of a *second* letter simply because the district court vacated the first one.  Settlement Agreement ¶1(c).

The bottom line is that State complied with its obligations under the Settlement Agreement, and plaintiffs' breach allegations are predicated on contractual obligations absent from the parties' agreement.

**B.**     **Plaintiffs Fail To State A Breach Of Contract Claim Because They Fail To Allege Any Causal Connection Between The Alleged Contractual Breaches And Their Reported Damages**

In addition, plaintiffs fail to state a breach of contract claim because they make no attempt to allege a causal connection between the alleged contractual breaches by State and the monetary damages that they seek.

A necessary element of a breach of contract claim is that the plaintiff plead and prove "damages caused by the breach." *See San Carlos*, 877 F.2d at 959.  Monetary damages awarded in breach-of-contract cases "place the injured party in as good a position as it would have been had the breaching party fully performed." *Ind. Mich. Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005); *accord Bluebonnet Sav. Bank, F.S.B. v. United States*, 339 F.3d 1341, 1344-45 (Fed. Cir. 2003).  Plaintiffs must therefore allege that "but for" the Government's alleged breach, they would not have suffered their claimed damages.  *See San Carlos Irrigation & Drainage Dist. v. United States*, 111 F.3d 1557, 1563 (Fed. Cir. 1997); *Hughes Communications Galaxy, Inc. v. United States*, 271 F.3d 1060, 1065 (Fed. Cir. 2001); *Wells Fargo Bank, N.A. v. United States*, 88 F.3d 1012, 1020 (Fed. Cir. 1996).

The plaintiffs' complaint, however, fails to identify any nexus between the alleged breaches of the Settlement Agreement and the purported monetary damages suffered by plaintiffs.  Instead, plaintiffs nakedly allege that they are entitled to $5 million for each purported breach of the Settlement Agreement.  Fed. Cl. Comp. ¶¶ 172-176.  But missing from their complaint is any theory as to how the Government's alleged breaches of the Settlement Agreement caused even one dollar of damage to plaintiffs.  This hole in the complaint is particularly striking in light of plaintiffs' allegations that they have given the 3-D-gun files at issue away for "free" on the internet.  *Id.* ¶¶ 48-62.  Thus, even assuming for the sake of

37

argument that State breached the Settlement Agreement, plaintiffs fail to plausibly allege facts

necessary to establish that they suffered any damages (much less the amount of their claimed

damages) on account of the State's alleged breaches, and therefore Count 5 should be dismissed.

*See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Diaz v. United States*, 141 Fed. Cl. 161, 167-

68 (2018) (dismissing breach of settlement agreement claim where plaintiff failed to allege and

establish damages resulting from any breach); *Westover v. United States*, 71 Fed. Cl. 635, 640

(2006) (dismissing breach of contract claim for failure to state a claim where "plaintiff has

claimed damages," but "proffered no allegations" to demonstrate that the damages were caused

by the breach); *Zulueta v. United States*, No. 09-681, 2013 WL 363389 at *7 (Fed. Cl. Jan. 29,

2013) (dismissing breach claim where plaintiff "failed to allege damages caused by the breach of

contract").

**C.    Any Government Breach Of The Settlement Agreement Was Excused By
        The Doctrine Of Impossibility**

Finally, even assuming for argument's sake that plaintiffs otherwise stated a claim for

breach of the Settlement Agreement, any alleged breach of the agreement would be excused as a

matter of law because the injunctive relief granted by the district court in *Washington I* made

performance "objectively impossible."  *Seabord Lumber Co. v. United States*, 308 F.3d 1283,

1294 (Fed. Cir. 2002).

"[T]he doctrine of impossibility does not require a showing of actual or literal

impossibility of performance but only a showing of commercial impracticability."  *Id.*  "[W]here,

after a contract is made, a party's performance is made impracticable without his fault by the

occurrence of an event the non-occurrence of which was a basic assumption on which the

contract was made, his duty to render that performance is discharged, unless the language or the

38

circumstances indicate the contrary." *Id.* (quoting *United States v. Winstar Corp.*, 518 U.S. 839, 904 (1996)). The promisor must therefore "show that (i) a supervening event made performance impracticable; (ii) the non-occurrence of the event was a basic assumption upon which the contract was based; (iii) the occurrence of the event was not [the promisor's] fault; and (iv) [the promisor] did not assume the risk of occurrence." *Id.*

The Government satisfies each element here. First, the district court's injunction in *Washington I* rendered State's performance of its obligations under the Settlement Agreement impossible. *See* Restatement (Second) of Contracts § 264 ("If the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which was a basis assumption on which the contract was made."). The Government's "duty to render that performance" was thus "discharged[.]" *Seabord Lumber*, 308 F.3d at 1294 (quoting *Winstar*, 518 U.S. at 904); *see also Borup v. Western Operating Corp.*, 130 F.2d 381, 385 (2d Cir. 1942) ("[A] promisor is excused, except in unusual circumstances, if performance becomes unlawful by a change in the law made after the contract was executed.").

Second, although the plain language of the agreement establishes that the parties contemplated that the Government was not required to take actions that were unauthorized by law, including the APA, and that this precludes a breach claim, *see* Section VI.A., even assuming that were not the case, under this counter-factual scenario then the non-occurrence of the injunction would be an assumption on which the contract was based.

Third, the suit in *Washington I* was plainly not the fault of State. The suit was brought by a group of states, and decided by an independent federal district court.

Fourth, there is nothing in the Settlement Agreement indicating that the Government had assumed the risk that its conduct would be enjoined.  "[T]he court must look at the contract as a whole to see if, fairly read, the party claiming an excuse is charged with the risk of the event's occurrence."  *Everett Plywood Corp. v. United States*, 651 F.2d 723, 730 (Ct. Cl. 1981); *accord* Restatement (Second) of Contracts § 456, cmt. c ("Risk is not assumed by a promisor unless, on an interpretation of the contract in light of the accompanying circumstances and usages, an intention is manifested that it shall be assumed.  Otherwise, the risk is on the promisee.").  Once again, if anything plaintiffs, and not State, assumed the risk that State's actions would be enjoined pursuant to the APA.  Settlement Agreement ¶ 1(a).

Accordingly, to the extent that State failed to meet any contractual obligations, any alleged breach would be excused because the performance was rendered impossible by the district court's injunction, thereby rendering the Government's "duty to render that performance" "discharged[.]"  *Seabord Lumber*, 308 F.3d at 1294 (quoting *Winstar*, 518 U.S. at 904).

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss plaintiffs' transfer complaint pursuant to RCFC 12(b)(1) for lack of subject-matter jurisdiction, or, in the alternative, pursuant to RCFC 12(b)(6), for failure to state a claim upon which relief may be granted.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

s/Nathanael B. Yale
NATHANAEL B. YALE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0464

October 19, 2023                              *Attorneys for Defendant*