IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, | ) ) ) | |
| | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 23-849 Senior Judge Bruggink |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) | |

---

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

L. MISHA PREHEIM
Assistant Director

NATHANAEL B. YALE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0464

February 21, 2024                                         *Attorneys for Defendant*

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT..................................................................................................... 1

ARGUMENT ............................................................................................................................... 3

    I.      This Court Does Not Possess Jurisdiction To Entertain Plaintiffs' Constitutional
            Claims And Claims Under the APA (Counts 1-4, 6-8) ........................................... 3

    II.     The Court Lacks Jurisdiction To Entertain Plaintiffs' Breach Of Settlement
            Agreement Claim (Count 5)....................................................................................... 3

           A.      This Court Lacks Jurisdiction Under Section 1500 ................................... 3

           B.      This Court Lacks Jurisdiction To Consider Plaintiffs' Challenges To The
                  District Court's Judgments........................................................................... 7

    III.    The Court Does Not Possess Jurisdiction To Entertain Plaintiffs' Request For
            Injunctive Relief And Their Claims Against Individuals And Entities Other Than
            the United States ........................................................................................................ 9

    IV.    Plaintiffs Fail To State A Claim That The Government Breached The Settlement
            Agreement.................................................................................................................. 9

           A.      Plaintiffs Fail To State A Breach Of Contract Claim Because The
                  Government Complied With Its Obligations Under The Settlement
                  Agreement.................................................................................................... 9

           B.      Plaintiffs Fail To State A Breach Of Contract Claim Because They Fail
                  To Allege Any Causal Connection Between The Purported Breaches
                  And Their Reported Damages ................................................................... 13

           C.      Any Government Breach Of The Settlement Agreement Was Excused
                  By The Doctrine Of Impossibility ............................................................ 15

    V.     The Court Should Dismiss And Not Transfer Plaintiffs' Claims .......................... 17

CONCLUSION.......................................................................................................................... 20

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013)................................................................................................... 18, 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................... 13

*Bailey-Johnson v. United States*,
  155 Fed. Cl. 166 (Fed. Cl. 2021),
  aff'd, No. 2021-2351, 2021 WL 7162534 (Fed. Cir. Nov. 23, 2021)......................... 6

*Brown v. United States*,
  105 F.3d 621 (Fed. Cir. 1997)..................................................................................... 9

*Cent. Pines Land Co., L.L.C. v. United States*,
  697 F.3d 1360 (Fed. Cir. 2012)................................................................................... 4

*Christoper Village, L.P. v. United States*,
  360 F.3d 1319 (Fed. Cir. 2004).................................................................................... 6

*Def. Distributed v. U.S. Dep't of State*,
  No. 15-cv-372, 2018 WL 9866515 (W.D. Tex. Oct. 22, 2018),
  *aff'd* 947 F.3d 870 (5th Cir. 2020)...................................................................... passim

*Def. Distributed v. U.S. Dep't of State et al*,
  No. 18-cv-637, 2023 WL 2544334 (W.D. Tex. Mar. 15, 2023)...................... passim

*Diffenderfer v. Central Baptist Church of Miami, Fla, Inc.*,
  404 U.S. 412 (1972)................................................................................................... 19

*Distributed v. U.S. Dep't of State*,
  No. 15-cv-372, 2018 WL 9866515 (W.D. Tex. Oct. 22, 2018)........................... 12, 18

*Everett Plywood Corp. v. United States*,
  651 F.2d 723 (Ct. Cl. 1981) ...................................................................................... 15

*Fisherman's Harvest, Inc. v. PBS & J*,
  490 F.3d 1371 (Fed. Cir. 2007).................................................................................. 17

*Griffin v. United States*,
  590 F.3d 1291 (Fed. Cir. 2009)................................................................................ 2, 4

*Harbuck v. United States*,
    378 F.3d 1324 (Fed. Cir. 2004)..................................................................... 2, 5

*Henderson v. United States*,
    152 Fed. Cl. 460 (2021) ................................................................................ 18

*Hunt Constr. Grp. v. United States*,
    281 F.3d 1369 (Fed. Cir. 2002)..................................................................... 10

*Jackson v. United States*,
    162 Fed. Cl. 282 (2022) ................................................................................ 17

*Maehr v. United States*,
    767 F. App'x 914 (Fed. Cir. 2019) ................................................................ 18

*McCorvey v. Hill*,
    385 F.3d 846 (5th Cir. 2004) ........................................................................ 19

*Murphy v. Hunt*,
    455 U.S. 478 (1982)...................................................................................... 18

*Philbert v. United States*,
    779 F. App'x 733 (Fed. Cir. 2019) ................................................................ 18

*Resource Investments, Inc. v. United States*,
    785 F.3d 660 (Fed. Cir. 2015)....................................................................... 17

*Schneiter v. United States*,
    159 Fed. Cl. 356 (2022) ................................................................................ 16

*Seaboard Lumber Co. v. United States*,
    308 F.3d 1283 (Fed. Cir. 2002)................................................................ 15, 16

*Shinnecock Indian Nation v. United States*,
    782 F.3d 1345 (Fed. Cir. 2015)....................................................................... 8

*SmithKline Beecham Corp. v. Apotex Corp.*,
    439 F.3d 1312 (Fed. Cir. 2006)....................................................................... 8

*Spell v. Edwards*,
    962 F.3d 175 (5th Cir. 2020) ........................................................................ 19

*Suess v. United States*,
    535 F.3d 1348  (Fed. Cir. 2008)..................................................................... 16

*Taylor v. United States*,
   128 Fed. Cl. 635 (2016) ........................................................................................... 4

*United States v. Connolly*,
   716 F.2d  882 (Fed.  Cir. 1983)................................................................................ 14

*United States v. County of Cook, Ill.*,
   170 F.3d 1084 (Fed. Cir. 1999)......................................................................... 2, 4, 5, 7

*United States v. Tohono O'Odham Nation*,
   563 U.S. 307 (2011)......................................................................................... 4, 5, 6

*Washington v. U.S. Dep't of State*,
   420 F. Supp. 3d 1130 (W.D. Wash. 2019)................................................................ 15

*West Virginia v. EPA*,
   597 U.S. 697 (2022)................................................................................................. 19

*Westover v. United States*,
   71 Fed. Cl. 635 (2006) ............................................................................................ 14

## STATUTES

28 U.S.C. § 1491(a)(1)................................................................................................... 3
28 U.S.C. § 1491(a)(2)................................................................................................... 9
28 U.S.C. § 1491(b) ....................................................................................................... 9
28 U.S.C. § 1500................................................................................................... passim
28 U.S.C. § 1631................................................................................................. 4, 5, 17
Restatement (Second) of Contracts § 456................................................................... 15

## RULES

RCFC 12(b)(1) .............................................................................................................. 20
RCFC 12(b)(6) .............................................................................................................. 20

## REGULATIONS

15 C.F.R. § 734.7 .......................................................................................................... 20
22 C.F.R. § 125.4(b)(13)............................................................................................... 10
22 C.F.R. § 126.2 .......................................................................................................... 14
28 C.F.R. § 0.20 ............................................................................................................ 16
83 Fed. Reg. 24,198 ...................................................................................................... 11
85 Fed. Reg. 3,819 ............................................................................................. 11, 19, 20
85 Fed. Reg. 4,136 ................................................................................................ 19, 20

Pursuant to Rule 7.2(b) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully submits this reply in support of our motion to dismiss the complaint of Defense Distributed and the Second Amendment Foundation (plaintiffs).

## PRELIMINARY STATEMENT

Plaintiffs' brief response to our motion to dismiss (ECF No. 198) confirms that this Court lacks jurisdiction to entertain each of the claims in their transfer complaint, ECF No. 189 (Fed. Cl. Compl.). Accordingly, the Court should dismiss the complaint for lack of jurisdiction.

On July 6, 2023, despite the United States District Court for the Western District of Texas transferring only plaintiffs' breach of contract claims in *Defense Distributed v. U.S. Department of State*, No. 18-cv-637 (W.D. Tex. 2018) (*Defense Distributed II*), plaintiffs filed an eight-count complaint in this Court alleging that the actions of the Department of State (State) in regulating certain 3-D-gun files breached a June 29, 2018 settlement agreement (Settlement Agreement), and violated the Administrative Procedure Act (APA), as well as the First, Second, and Fifth Amendments. As established in our motion to dismiss, plaintiffs' complaint suffers from several fatal deficiencies.

To begin, and as plaintiffs do not contest, this Court lacks jurisdiction to entertain plaintiffs' claims under the APA and the First, Second, and Fifth Amendments (Counts 1-4, 6-8) because none of these sources of law are money-mandating.

Moreover, this Court lacks jurisdiction to entertain plaintiffs' lone remaining claim— alleging breach of the Settlement Agreement (Count 5)—because 28 U.S.C. § 1500 prohibits this Court from exercising jurisdiction over that claim. Well-established precedent demonstrates that the breach of contract claim transferred to this Court is deemed filed as of the date it was

originally filed in district court (November 10, 2020), ECF No. 117. *See Griffin v. United States*, 590 F.3d 1291, 1293-95 (Fed. Cir. 2009); *Harbuck v. United States*, 378 F.3d 1324, 1327-28 (Fed. Cir. 2004); *United States v. County of Cook, Ill.*, 170 F.3d 1084, 1089-91 (Fed. Cir. 1999). Count 5 is therefore barred under section 1500 because it is deemed to have been pending at the same time that the plaintiffs were pursuing related claims based on the same operative facts. Plaintiffs fail to address the applicable precedent and offer no meaningful response as to why section 1500 is not a barrier to this Court's jurisdiction.

Even assuming that Count 5 were not barred by section 1500, this Court would still lack jurisdiction because, properly characterized, the breach of contract claim seeks to collaterally attack the district court's decisions enjoining the Government in *State of Washington, et al. v. U.S. Department of State, et al.*, No. 18-cv-1115 (W.D. Wash. 2018) (*Washington I*).

And even setting jurisdictional flaws aside, Count 5 fails to state a claim for breach of contract for at least three reasons: (1) plaintiffs fail to allege facts plausibly establishing that State breached the Settlement Agreement; (2) plaintiffs fail to allege facts establishing damages; and (3) any purported breach would be excused pursuant to the doctrine of impossibility given the injunctive relief imposed in *Washington I*. Plaintiffs' arguments that they have properly alleged a breach of contract are divorced from the plain text of the Settlement Agreement.

Finally, the Court should reject plaintiffs' cursory suggestion to hold dismissal of the complaint in abeyance, and transfer this case to district court. Plaintiffs identify no avenue to circumvent section 1500's bar with respect to Count 5. And transfer would not be in the interest of justice given that the district court lacks jurisdiction to entertain the remaining counts both because plaintiffs now seek $5 million in monetary damages for each claim, and because the claims are moot given that State no longer regulates the 3-D-gun files at issue.

2

**ARGUMENT**

**I.     This Court Does Not Possess Jurisdiction To Entertain Plaintiffs' Constitutional Claims And Claims Under the APA (Counts 1-4, 6-8)**

In our motion to dismiss, we established that this Court lacks jurisdiction to entertain plaintiffs' APA and constitutional claims (Counts 1-4, 6-8) because none of these claims are based on a money-mandating source of law.  Def. Mot., ECF No. 193, at 18-21.  In response, plaintiffs do not dispute that this Court lacks jurisdiction to entertain their constitutional and APA claims.  Instead, they readily acknowledge that the claims do not belong in this Court.  Pl. Opp., ECF No. 198, at 2.  Thus, the parties agree that these claims are outside this Court's limited subject-matter jurisdiction.  28 U.S.C. § 1491(a)(1).

**II.    The Court Lacks Jurisdiction To Entertain Plaintiffs' Breach Of Settlement Agreement Claim (Count 5)**

Our motion further demonstrated that this Court lacks jurisdiction to hear plaintiffs' breach of contract claim (Count 5) for at least two independent reasons.  First, pursuant to 28 U.S.C. § 1500, at the time that the breach of contract claim was deemed filed in this Court, plaintiffs had claims pending in the district court based on the same set of operative facts.  Def. Mot. 21-25.  Second, properly characterized, Count 5 challenges decisions of the United States District Court for the Western District of Washington, an attack that falls outside the scope of this Court's authority.  Def. Mot. 26-27.

**A.    This Court Lacks Jurisdiction Under Section 1500**

This Court lacks jurisdiction to entertain plaintiffs' breach of contract claim because, at the time the claim was deemed effectively filed in this Court, plaintiffs had a suit pending in district court against the Government raising separate claims based on the same alleged conduct.

Pursuant to 28 U.S.C. § 1500, the Court of Federal Claims "shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States . . . ." *See United States v. Tohono O'Odham Nation*, 563 U.S. 307, 312 (2011) (explaining that section 1500 imposes a "broad prohibition" on a plaintiff's ability to simultaneously pursue related actions in this Court and other courts).

The first prong of the section 1500 analysis requires the Court to determine whether a "suit or process" was "pending" as of the date of the filing of the Court of Federal Claims complaint, and therefore, the Court "look[s] to the facts as they exist when a plaintiff filed his Claims Court complaint." *Cent. Pines Land Co., L.L.C. v. United States*, 697 F.3d 1360, 1364 (Fed. Cir. 2012) (citation omitted). Under settled Federal Circuit law, "if a plaintiff files multiple related claims in district court, and the court transfers one of those claims to the Court of Federal Claims, the original claims are 'pending' at the time the transferred claim is considered filed, and § 1500 may deprive the Court of Federal Claims of jurisdiction over the transferred claim." *Griffin*, 590 F.3d at 1293. Because plaintiffs' breach of contract claim was transferred pursuant to 28 U.S.C. § 1631, the claim is deemed filed as a matter of law as of November 10, 2020—the date on which the claim was filed in the district court, ECF No. 117; *see County of Cook*, 170 F.3d at 1089-90; *Taylor v. United States*, 128 Fed. Cl. 635, 638-41 (2016). On that date, plaintiffs had a district court suit "pending" that consisted of several related claims simultaneously filed on that date. *See* ECF No. 117. Thus, the first prong of Section 1500's jurisdictional bar is satisfied. *See County of Cook*, 170 F.3d at 1089-90.

Under the second prong of the section 1500 analysis, the Court examines whether the two suits are "for or in respect to" the same claim. Here, plaintiffs do not dispute that this prong is met. That is not surprising because the two complaints involve the same alleged Government

4

conduct—State's actions with respect to the regulation of the 3-D-gun data at issue. *Compare Def. Distributed II* Compl. ¶¶ 1-17, 19-33, 36-131, 162-170 *with* Fed. Cl. Compl. ¶¶ 1-133.

In the face of section 1500's jurisdictional bar, plaintiffs offer little resistance. With respect to the first prong of the analysis, plaintiffs contend that section 1500 is not implicated because "there have never been any claims existing simultaneously in two courts." Pl. Opp. 4 (emphasis omitted). Plaintiffs are incorrect, and ignore the binding Federal Circuit precedent which conclusively addresses the interaction of sections 1500 and 1631. *See Harbuck*, 378 F.3d at 1328; *County of Cook*, 170 F.3d at 1090. This precedent indisputably deems Count 5 to be filed by operation of law on November 10, 2020, and therefore makes it pending at the same time as the related district court claims. *See id.*, ECF No. 117. Indeed, plaintiffs fail to cite, let alone address, the Federal Circuit precedent that controls this issue—and merely state that "if the [G]overnment's cited cases hold what they are claimed to hold, the Court must of course oblige," Pl. Opp. 4.

Plaintiffs only other defense is to suggest that section 1500 "operates as an illogical trap for reasonably-proceeding litigants," Pl. Opp. 4. While plaintiffs were not subject to any trap here for the reasons discussed below, courts, including the Supreme Court, have consistently rejected similar arguments as having any bearing on the statute's application. *See Tohono*, 563 U.S. at 316 ("There is no merit to the [plaintiff's] assertion that the interpretation adopted [by the Supreme Court] cannot prevail because it is unjust, forcing plaintiffs to choose between partial remedies available in different courts."); *id*. at 317 (explaining that "[e]ven were some hardship to be shown, consideration of policy divorced from the statute's text and purpose could not override its meaning"). Moreover, because the scope of section 1500 is clear, any concerns about its applicability must come from Congress, not this Court. *Id*. at 317 ("If indeed

the statute leads to incomplete relief, and if plaintiffs . . . are dissatisfied, they are free to direct their complaints to Congress."). Plaintiffs' reliance on *Bailey-Johnson v. United States*, 155 Fed. Cl. 166, 169 (Fed. Cl. 2021), Pl. Opp. 4, does not advance the plaintiffs' argument. While this Court cataloged criticism of section 1500 in that case, the Court nevertheless applied the statute to *preclude* jurisdiction. 155 Fed. Cl. at 169, *aff'd*, No. 2021-2351, 2021 WL 7162534 (Fed. Cir. Nov. 23, 2021).

In any event, plaintiffs' contention, Pl. Opp. 4-5, that the Government set a jurisdictional trap in this case misses the mark for a number of reasons. First, plaintiffs are in charge of their own complaint, and the forum in which to file. In November 2020, there was nothing stopping plaintiffs, represented by sophisticated counsel, from filing a breach of settlement agreement action against the United States in this Court prior to amending its complaint in *Defense Distributed II* to add claims against State and other Federal Government defendants. *See Tohono*, 563 U.S. at 316 (explaining that plaintiff's hardship was "far from clear," and noting that plaintiff "could have filed in the CFC alone and if successful obtained monetary relief to compensate for any losses caused by the [Government]").

Second, plaintiffs criticize a statement from the Government in *Defense Distributed II* that Count 5 "may be brought, *if at all*, in the Court of Federal Claims." Pl. Opp. 5 (citing ECF No. 162 at 20) (emphasis added). But that qualified statement is accurate given that the Court of Federal Claims has exclusive jurisdiction to entertain breach of contract claims above the Little Tucker Act's amount in controversy limit. *Christoper Village, L.P. v. United States*, 360 F.3d 1319, 1321 (Fed. Cir. 2004). Moreover, the statement expressly recognized that there might be reasons why the claim could not properly be brought even in the Court of Federal Claims. *See* ECF No. 162 at 20.

6

Third, plaintiffs ignore that the Government put them on notice of the potential applicability of section 1500 in *Defense Distributed II*. In its motion to dismiss, the Government noted that the district court could not transfer the contract claims to this Court while also not dismissing the claims for non-monetary relief because this would raise a section 1500 problem. ECF No. 162 at 20 n.4. Although the motion did not reference every potential section 1500 permutation, plaintiffs cannot reasonably assert that they were unaware of the existence of section 1500 and its possible application here. Moreover, the district court provided plaintiffs with the opportunity to amend their complaint to fall within the Little Tucker Act, and therefore bring their contract claims seeking monetary relief in district court, but plaintiffs declined to do so. *See* ECF Nos. 182-83. There was no jurisdictional trap here.

In sum, plaintiffs offer no basis for this court to decline to apply the section 1500 bar. Because Count 5 was effectively filed on the same date that plaintiffs had other claims pending in district court based on the same set of operative facts, the Court should dismiss the transfer complaint pursuant to 28 U.S.C. § 1500. *See County of Cook*, 170 F.3d at 1089-90.

**B.      This Court Lacks Jurisdiction To Consider Plaintiffs' Challenges To The District Court's Judgments**

This Court also lacks jurisdiction to entertain plaintiffs' breach of contract claim because it is dependent on challenging the decisions of the district court in *Washington I*. As we established, Def. Mot. 26-27, plaintiffs' claim is necessarily predicated on their contention that the district court in *Washington I* improperly granted injunctive relief to a group of states based on State's alleged violation of the APA. *See* Fed. Cl. Compl. ¶¶ 88-102. The Settlement Agreement provided that the Government's actions under the agreement needed to be "authorized by law (including the Administrative Procedure Act)." Settlement Agreement ¶ 1(a).

7

It is well settled, however, that this Court lacks jurisdiction to review the decisions of other Federal courts. *See, e.g.*, *Shinnecock Indian Nation v. United States*, 782 F.3d 1345, 1352 (Fed. Cir. 2015) ("Binding precedent establishes that the Court of Federal Claims has no jurisdiction to review the merits of a decision rendered by a federal district court." (citations omitted)).

Plaintiffs contend that "*Washington I* was just about whether the State Department has violated the APA in one particular attempt to comply with the Settlement Agreement," and that "what the State Department had to do was give Settlement Agreement Compliance another try." Pl. Opp. 6 (emphasis omitted). But this argument is untethered from the actual provisions of the Settlement Agreement. *See* Pl. Opp. 6. To the extent that plaintiffs are contending that State should have given it "another try" by taking the same or similar actions, they point to nothing in the Settlement Agreement requiring such pointless steps. And plaintiffs fail to explain how State had the authority to give it "another try" by repeating its prior actions once the district court in *Washington I* determined that the actions under the Settlement Agreement violated the APA, particularly given that the Settlement Agreement was expressly conditioned on APA compliance. *See* Settlement Agreement ¶ 1(a). To the extent that plaintiffs are suggesting that State was required to take different actions that would comply with the APA, they make no developed argument as to what steps could be taken to effectively sidestep the district court's order in *Washington I*. *See, e.g.*, *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (explaining that undeveloped arguments are waived).

Accordingly, even if Count 5 were not barred pursuant to section 1500, the Court should still dismiss that claim for lack of jurisdiction as an impermissible collateral attack on *Washington I*.

**III.    The Court Does Not Possess Jurisdiction To Entertain Plaintiffs' Request For Injunctive Relief And Their Claims Against Individuals And Entities Other Than the United States**

This Court also lacks jurisdiction to entertain plaintiffs' requests for injunctive relief, and their claims against State and various individuals employed by State.  Def. Mot. 27-29.  Under the Tucker Act, this Court cannot award injunctive relief that is not "an incident of and collateral to any such [money] judgment," or that falls within other statutorily defined exceptions not implicated here.  28 U.S.C. § 1491(a)(2), (b).  Moreover, the United States is the only proper defendant in this Court.  *See Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997).  Plaintiffs offer no response to these well-established principles.  Accordingly, these claims should be dismissed.  *See Brown*, 105 F.3d at 624.

**IV.    Plaintiffs Fail To State A Claim That The Government Breached The Settlement Agreement**

Even if the Court were to conclude that it has jurisdiction over plaintiffs' breach of contract claim, plaintiffs fail to state a claim because (1) they fail to allege facts that plausibly support their claim that State breached the Settlement Agreement; (2) they fail to allege facts establishing damages; and (3) any purported breach would be excused pursuant to the doctrine of impossibility.  Def. Mot. 30-40.

**A.    Plaintiffs Fail To State A Breach Of Contract Claim Because The Government Complied With Its Obligations Under The Settlement Agreement**

As we established in our motion, plaintiffs fail to state a claim for breach of the Settlement Agreement because the Government complied with all of its obligations under the agreement's plain language.  Def. Mot. 30-36.  Plaintiffs' arguments to the contrary, Pl. Opp. 8-9, misconstrue the Settlement Agreement.

9

*First*, plaintiffs contend that the Settlement Agreement "requires the provision of a license, and [State] is in breach because it is not providing that license." Pl. Opp. 8.  In actuality, in the Settlement Agreement, State agreed to issue "a letter to [p]laintiffs on or before July 27, 2018, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that the [*Defense Distributed I* files] are approved for public release (i.e., unlimited distribution) in any form and are exempt from the export license requirements of the [International Traffic in Arms Regulations (ITAR)] because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13)." Settlement Agreement 1(c).  Plaintiffs acknowledge in their complaint that State issued this letter, Fed. Cl. Compl. ¶ 84(c), Ex. C.  Nevertheless, they contend that State only complied with paragraph 1(c) "temporarily," Pl Opp. 7, because State's letter was vacated by the district court's final judgment, Fed. Cl. Compl. ¶¶ 84, 97, and State did not supply another letter following the district court's injunction, Pl. Opp. 8 (citing Fed. Cl. Compl. ¶¶ 172-173).

But the plain language of the Settlement Agreement requires only the letter that State already provided to plaintiffs. *Hunt Constr. Grp. v. United States*, 281 F.3d 1369, 1373 (Fed. Cir. 2002) ("When the contract language is unambiguous on its face, our inquiry ends, and the plain language of the contract controls.").  There is nothing in the Settlement Agreement that required State to violate a court order by continuing to recognize the validity of its letter, nor does any language in the Settlement Agreement require the issuance of a *second* letter simply because the district court vacated the first one.  Settlement Agreement ¶1(c).  The plain language of the Settlement Agreement certainly does not require that State issue any sort of *permanent* license to Defense Distributed irrespective of any future developments with respect to the regulation or prohibition of the 3-D-gun files at issue. *See id.*

10

***Second***, plaintiffs mistakenly contend that they adequately plead a breach of the Settlement Agreement based on the agreement requiring "actual regulatory modifications," which State only complied with "for a short time." Pl. Opp. 8 (emphasis omitted). Plaintiffs again misconstrue the text of the Settlement Agreement under which "[d]efendants commit[ed] to draft and fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule, revising the USML Category I to exclude the technical data that is the subject of [*Defense Distributed I*]." Settlement Agreement ¶1(a). Contrary to plaintiffs' suggestions, Pl. Opp. 8, the Government fulfilled this obligation by publishing the proposed rule in the Federal Register on May 24, 2018, and a final rule on January 23, 2020. *See* 83 Fed. Reg. 24,198 (May 24, 2018); 85 Fed. Reg. 3,819 (Jan. 23, 2020); *see also* Fed. Cl. Compl. ¶ 84(a) (noting that "the State Department had taken steps to comply with the obligation imposed by Settlement Agreement Paragraph 1(a)" by publishing the notice of proposed rulemaking in the Federal Register on May 24, 2018). Pursuant to this rulemaking, State revised the United States Munitions List (USML) to exclude certain technical data, including the 3-D-gun files at issue. Once the Government made those two publications, under the plain language of paragraph 1(a) of the Settlement Agreement, there was nothing more that State was required to do.

***Third***, plaintiffs' assertion that the complaint pleads factual allegations plausibly establishing a breach of the "provisions requiring validity acknowledgments for the license and regulatory modifications" is similarly misguided. Pl. Opp. 8. In paragraph 1(b), State agreed to "announce[], while the above-referenced final rule [was] in development, [] a temporary modification, consistent with the [ITAR Regulations] of USML Category I to exclude the technical data that is the subject of [*Defense Distributed I*]." And in paragraph 1(d), State

11

"acknowledg[ed] and agree[d] that the temporary modification of USML Category I permits any United States person, to include [Defense Distributed's] customers and [Second Amendment Foundation's] members, to access, discuss use, reproduce, or otherwise benefit from the technical data that is the subject of [*Defense Distributed I*]."  Plaintiffs concede in their complaint that by July 27, 2018, State had made these acknowledgments, Fed. Cl. Compl. ¶ 84(b), (d), Ex. B, and plaintiffs' argument that the acknowledgments needed to be made a second time is not a requirement in the agreement.

Finally, plaintiffs' argument that State breached the Settlement Agreement is refuted by the fact that the Settlement Agreement expressly contemplated the very scenario that occurred and eliminated the government's contractual obligation in such an event.  Settlement Agreement ¶1(a) ("Defendants' commitment to draft and to fully pursue, to the extent authorized by law (*including the Administrative Procedure Act*). . . .") (emphasis added).  As the district court in *Defense Distributed v. U.S. Department of State*, No. 15-cv-372 (W.D. Tex. 2015) (*Defense Distributed I*), correctly found in adjudicating plaintiffs' motion to set aside the dismissal in that case, the "express terms of the settlement agreement reflect that the parties anticipated potential review of the agreement under the [APA]," and it was therefore "reasonably foreseeable that a court reviewing government action for compliance with the APA might enjoin performance of the challenged action during the pendency of litigation," given that such injunctive relief is "common practice."  *Def. Distributed v. U.S. Dep't of State*, No. 15-cv-372, 2018 WL 9866515, at *2 (W.D. Tex. Oct. 22, 2018), *aff'd* 947 F.3d 870 (5th Cir. 2020).  To account for this possibility that a district court might grant injunctive relief under the APA, the Government's obligations under the agreement were expressly made subject to and limited by any such ruling.

12

Plaintiffs suggest that the express inclusion of the reference to the APA "helps the [p]laintiffs," and "makes the State Department's failure to deliver in attempt #1 . . . more egregious." Pl. Opp. 8-9. But plaintiffs' argument simply ignores the actual context in which the reference to the APA appears in the settlement agreement, which was clearly designed to limit the nature of the Government's contractual obligation. Moreover, as stated above, plaintiffs fail to make any developed argument as to how the Government could have complied with the APA and issued a new license in light of *Washington I* without violating the court's order. And to the extent that plaintiffs are simply asserting that State was contractually required to give it "another try" by repeating the same or similar actions, this argument fails on two fronts: (1) the Settlement Agreement's text does not mandate such steps; and (2) State did not have the authority to violate the district court's order.

In sum, because plaintiffs fail to allege facts plausibly establishing a breach of the Settlement Agreement, Count 5 fails to state a claim.

### B.    Plaintiffs Fail To State A Breach Of Contract Claim Because They Fail To Allege Any Causal Connection Between The Purported Breaches And Their Reported Damages

Plaintiffs' breach of contract also fails because, as their response only confirms, they have not alleged a causal connection between the asserted contractual breaches by State and the monetary damages that they seek. Def. Mot. 37-38.

Plaintiffs highlight their repeated allegation of suffering "actual damages proximately caused by this wrongdoing in an amount no less than five million dollars," Pl. Opp. 9, but such a "naked assertion[] devoid of further factual enhancement" is insufficient to satisfy their pleading obligation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (cleaned up).

13

Plaintiffs further contend that their damages allegations "account for the high value of the speech rights at issue," but they provide no legal support for the proposition that they can recover for the damage to "speech rights" in a breach of contract case. Pl. Opp. 9. This Court lacks jurisdiction to entertain a claim for damages arising from a violation of the First Amendment. *See United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983). And plaintiffs otherwise fail to identify any support for the notion that breach of contract damages encompass compensation for damage to "speech rights." Plaintiffs also suggest that their damages allegations "account for the license's high monetary value as a commercial tool," Pl. Opp. 10, but this contention conflicts with the plaintiffs' acknowledgement that they have given the 3-D-gun files at issue away for "free" on the internet. Fed. Cl. Compl. ¶¶ 48-62. And plaintiffs' speculative observation that they may eventually charge money for something they have been giving away for free, Pl. Opp. 10, only reinforces that they have not suffered any monetary damages. *Westover v. United States*, 71 Fed. Cl. 635, 640 (2006) (dismissing breach claim for failure to state a claim where "plaintiff has claimed damages," but "proffered no allegations" to demonstrate that the damages were caused by the breach).[1]

---

[1] To the extent plaintiffs suggest they suffered damages from a possible breach of paragraph 1(d)—where State "acknowledg[es] and agree[s] that the temporary modification of USML Category I permits any United States person, to include [Defense Distributed's] customers and [Second Amendment Foundation's] members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of [*Defense Distributed I*]"— that argument is meritless. *See* Pl. Opp. 8-10. Plaintiffs apparently predicate that particular breach allegation on State's obligation to furnish an acknowledgement with respect to the effect on United States persons of State's temporary modification under the ITAR, 22 C.F.R. § 126.2. Pl. Opp. 8, Fed. Cl. Compl. ¶¶ 82, 112-118. But the ability of *United States persons* to access the 3D-gun-files cannot be at issue because the ITAR does not restrict access for such individuals. Instead, the ITAR restricts the distribution of defense articles, including technical data, to address access by *foreign persons*. Plaintiffs cannot suffer damages from any failure to receive an acknowledgement that is disconnected from the ITAR's regulatory reach.

14

C.    **Any Government Breach Of The Settlement Agreement Was Excused By The Doctrine Of Impossibility**

Even assuming that plaintiffs otherwise stated a claim for breach of the Settlement Agreement, our motion established that any alleged breach of the agreement would be excused as a matter of law because the injunctive relief granted by the district court in *Washington I* made performance impossible.  Def. Mot. 38-40; *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1294 (Fed. Cir. 2002).

Plaintiffs first assert that the doctrine of impossibility is inapplicable because *Washington I* dealt with retrospective relief and "had nothing to do with prospective relief."  Pl. Opp. 11 (emphasis omitted).  According to plaintiffs, the "sole question" in *Washington I* "was whether one particular past attempt at complying with the Settlement Agreement met APA technicalities."  Pl. Opp. 11.  But plaintiffs fail to explain how State could have overcome the APA deficiencies identified by the district court in "another round" as plaintiffs suggest.  Pl. Opp. 11; *see Wash. v. U.S. Dep't of State*, 420 F. Supp. 3d 1130, 1144-47 (W.D. Wash. 2019) (identifying the rationale for finding State's actions arbitrary and capricious).  In addition, plaintiffs' naked contention that State's performance was rendered impracticable because of State's own fault fails because the suit in *Washington I* was plainly not the fault of State—it was brought by a group of states, and decided by an independent district court.  *See id.* at 1135-36.

Moreover, plaintiffs argument that the Government assumed the risk that its conduct would be enjoined turns the Settlement Agreement on its head.  Pl. Opp. 12.  "[T]he court must look at the contract as a whole to see if, fairly read, the party claiming an excuse is charged with the risk of the event's occurrence."  *Everett Plywood Corp. v. United States*, 651 F.2d 723, 730 (Ct. Cl. 1981); *accord* Restatement (Second) of Contracts § 456, cmt. c.  As discussed, the

15

Settlement Agreement placed the risk on plaintiffs not State by limiting State's obligation to perform in the event of an injunction pursuant to the APA.  Settlement Agreement ¶ 1(a).

Finally, plaintiffs' assertion that State did not engage in "a good faith and diligent effort to avoid the court order" in *Washington I,* including by appealing the decision, is facially flawed. Pl. Opp. 11.  To start, there is nothing in the Settlement Agreement that suggests, let alone requires, or even *could* require, that State appeal any court decision.  *See Schneiter v. United States*, 159 Fed. Cl. 356, 372 (2022) (dismissing a breach of contract claim for failure to state a claim where "the alleged contractual obligation that provides the basis for plaintiff's claim for breach of contract is absent from the purported contract").  And plaintiffs fail to address the lack of authority of the Federal defendant parties to the Settlement Agreement to contract away the Government's appellate authority.  Pursuant to 28 C.F.R. § 0.20, the Solicitor General has the sole authority to "determin[e] whether, and to what extent, appeals will be taken by the Government to all appellate courts."  Plaintiffs' repeated interpretation of paragraph 1(a) of the Settlement Agreement as requiring appeal of *Washington I* cannot be squared with the regulation governing the authority to take such an action, a necessary requirement of all contracts with the Government.  *See, e.g.*, *Suess v. United States*, 535 F.3d 1348 1359 (Fed. Cir. 2008) (explaining that a required element of any valid contract with the Government is that the government officials must have the requisite contracting authority).

Accordingly, to the extent that State failed to meet any contractual obligations, any alleged breach would be excused because the performance was rendered impossible by the district court's injunction, thereby rendering the Government's "duty to render that performance" "discharged[.]" *Seaboard Lumber*, 308 F.3d at 1294 (citation omitted).

16

## V.    The Court Should Dismiss And Not Transfer Plaintiffs' Claims

Plaintiffs suggest that if the Court were to determine that it lacks jurisdiction, it should "hold the dismissal decision in abeyance" and transfer the case back to the United States District Court for the Western District of Texas pursuant to 28 U.S.C. § 1631.  Pl. Opp. 5, 12.  The Court should deny this request and instead should dismiss the complaint.

As an initial matter, plaintiffs' contention that "there is still work to be done" with respect to Count 5 is premised on a fundamental misinterpretation of section 1500.  Pl. Opp. 5.  The Federal Circuit has long held that section 1500 deficiencies cannot be ameliorated by procedural ploys such as amending a complaint or holding this Court's case in abeyance until the conclusion of the district court case.  *See Resource Investments, Inc. v. United States*, 785 F.3d 660, 669 (Fed. Cir. 2015).  Because section 1500 is predicated on the date that Count 5 was filed in this Court, and because by operation of law the claim was deemed filed simultaneously with the district court claims, the section 1500 problem in this case is not curable in any manner suggested by plaintiffs.

Nor would the transfer of Count 5, or any of the other seven counts be justified pursuant to section 1631.  *See* Pl. Opp. 5, 12.  The Federal transfer statute authorizes a court, upon finding a "want of jurisdiction," to cure a deficiency by transferring the case to a court where the action "could have been brought" as long as such a transfer "is in the interest of justice."  Transfer is appropriate under section 1631 when three conditions are met: (1) the transferor court lacks subject matter jurisdiction; (2) the transferee court possesses jurisdiction; and (3) transfer is in the interest of justice.  *Fisherman's Harvest, Inc. v. PBS & J*, 490 F.3d 1371, 1374 (Fed. Cir. 2007); *Jackson v. United States*, 162 Fed. Cl. 282, 291 (2022).

17

Here, there is no reasonable dispute that this Court lacks jurisdiction over plaintiffs' claims. And despite having the burden to justify transfer, *see Maehr v. United States*, 767 F. App'x 914, 916 (Fed. Cir. 2019), plaintiffs make no showing with respect to whether the transferee court possesses jurisdiction, and whether the transfer is in the interests of justice. Indeed, Count 5 is clearly outside the scope of the district court's jurisdiction because only this Court possesses exclusive jurisdiction to entertain contract claims against the Government above the Little Tucker Act's amount in controversy. *See Philbert v. United States*, 779 F. App'x 733, 734-35 (Fed. Cir. 2019); *Henderson v. United States*, 152 Fed. Cl. 460, 469 (2021) ("[T]he Court of Federal Claims has exclusive jurisdiction over claims in excess of $10,000 that arise under the Tucker Act."). The district court also lacks jurisdiction to entertain Counts 1-4 and 6-8. That is because plaintiffs make clear in their complaint that they are now seeking monetary damages against the Government for violations of the APA, and the First and Second Amendments and Due Process Clause of the Fifth Amendment, *see* Fed. Cl. Compl. ¶¶ 187-90, despite the fact that these provisions are not money mandating. Plaintiffs, however, offer no legal support for the proposition that the United States has waived sovereign immunity to bring such claims for money damages in district court (or at all).

In addition, contrary to plaintiffs' contention that there is "work left to be done" in the district court and that transfer would be in the interests of justice, *see* Pl. Opp. 5, that court has already found plaintiffs' claims to be moot. *Def. Distributed v. U.S. Dep't of State et al*, No. 18-cv-637, 2023 WL 2544334, at *3-6 (W.D. Tex. Mar. 15, 2023). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481

18

(1982) (*per curiam*)); *West Virginia v. EPA*, 597 U.S. 697, 719 (2022).  A lawsuit "challenging a statute, executive order, or local ordinance usually becomes moot if the challenged law has expired or been repealed."  *Spell v. Edwards*, 962 F.3d 175, 178-79 (5th Cir. 2020)  (citation omitted)).  The underlying rationale for this principle is that "[o]nce the law is off the books, there is nothing injuring the plaintiff and, consequently, nothing for the court to do."  *Id*.  There can be no live controversy over a repealed regulation because it is no longer in force.  *See Diffenderfer v. Central Baptist Church of Miami, Fla, Inc.*, 404 U.S. 412, 414-15 (1972) (*per curiam*); *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004) (citing *Diffenderfer*, 404 U.S. at 414-15).

As Plaintiffs make clear with respect to their non-breach of contract claims, they seek to challenge State's since-repealed regulation of the export of technical data related to certain firearms through claims under the APA, and the First, Second, and Fifth Amendments.  Fed. Cl. Compl. ¶¶ 103-124, 134-169.  With respect to the relief sought, plaintiffs seek to obtain a "judgment that [] declares this conduct unlawful" and "enjoins . . . further wrongdoing."  *See* Fed. Cl. Compl. ¶ 187.  Plaintiffs, however, cannot obtain this relief because the regulation at issue is no longer in place, and State no longer regulates the export of the 3-D-gun files at issue. In January 2020, State and Commerce promulgated a pair of final rules which modified the regulatory regime for controlling the export of certain firearms, firearm parts, and related technical data for those firearms and parts. Def. Mot 12-13; *see*  85 Fed. Reg. 3,819 (Jan. 23, 2020); 85 Fed. Reg. 4,136 (Jan. 23, 2020).  State's final rule removed certain firearms, related items, and associated technical data from the USML, and the Department of Commerce added the relevant firearms and data to the Commerce Control List through its final rule.  The export of technical data related to producing certain 3-D-printed firearms or components is therefore no

longer controlled by the ITAR.  Instead, the export of software or technology is now controlled by the Export Administration Regulations, administered by the Department of Commerce.  *See* 15 C.F.R. § 734.7; 85 Fed. Reg. 4,136.  Thus, as the district court properly found, State no longer regulates the export of 3-D gun files and there remains no live case or controversy between the parties.  *Defense Distributed II*, 2023 WL 2544334 at *4 (holding that the Federal regulations themselves "make clear that Defendants no longer regulate the export of 3-D gun files").

Nor, as the district court already held, *id*. at *4-6, is there any legitimate question regarding whether the voluntary cessation exception to mootness applies.  As the district court correctly found, the voluntary cessation doctrine is inapplicable because State published its Final Rule in the Federal Register ceasing the regulation of the 3-D gun files at issue in January 2020, ten months before it was even added as a party in *Defense Distributed II*.  *Id*. at *4. Accordingly, because State did not "automatically moot [the] case simply by ending its unlawful conduct once sued," the limited exception for voluntary cessation has no applicability here. *Already, LLC*, 568 U.S. at 91.

In sum, because plaintiffs cannot cure their section 1500 problem, because the district court does not possess jurisdiction to entertain any of the claims alleged in plaintiffs' transfer complaint which purport to seek money damages, and because transfer would not be in the interests of justice because the district court has already found the non-contract claims moot, this Court should dismiss the complaint and decline to transfer the case.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss plaintiffs' transfer complaint pursuant to RCFC 12(b)(1) for lack of subject-matter jurisdiction, or, alternatively, pursuant to RCFC 12(b)(6), for failure to state a claim upon which relief may be granted.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

s/Nathanael B. Yale
NATHANAEL B. YALE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0464

February 21, 2024                         *Attorneys for Defendant*